# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Adelina Garcia et al.,**

        **Plaintiffs,**

**v.**                                                                  **Case No. 06-2198-JWL**

**Tyson Foods, Inc. and**
**Tyson Fresh Meats, Inc.,**

        **Defendants.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs, individually and on behalf of others similarly situated, filed this suit against defendants alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.  Specifically, plaintiffs, all current or former employees at defendants' beef processing facility in Finney County, Kansas, allege that defendants failed to compensate them for time spent performing compensable activities such as donning and doffing required protective clothing and gear; cleaning equipment; walking to and from the changing area, work areas and break areas; waiting for the production line to operate; and performing production work during unpaid meal periods.

This matter is presently before the court on defendants' motion for partial summary judgment (doc. 363).  Specifically, defendants move for summary judgment on plaintiffs' donning and doffing claims.  For purposes of defendants' motion, a distinction is drawn between the donning and doffing of standard protective clothing and gear worn by all production employees, on the one hand, and the donning and doffing of additional specialized protective

clothing and gear worn only by knife-wielding employees, on the other.  It is undisputed that defendants do not compensate any employees for time spent donning and doffing standard protective clothing and gear.  It is further undisputed that defendants compensate knife-wielding employees for an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear worn by those employees.

To the extent plaintiffs seek compensation for time spent donning and doffing standard protective clothing and gear worn by all production employees, defendants move for summary judgment on the grounds that those claims are barred by *Reich v. IBP, Inc*., 38 F.3d 1123 (10th Cir. 1994), in which the Tenth Circuit held that the donning and doffing of standard protective clothing and gear is not "work" within the meaning of the FLSA and therefore not compensable. To the extent plaintiffs seek compensation for time in excess of four minutes spent by knife-wielding employees donning and doffing specialized protective clothing and gear, defendants move for summary judgment on the grounds that such claims are barred by a negotiated settlement between defendants and the Department of Labor pursuant to which the parties agreed that compensating knife-wielding employees for an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear is a reasonable method of complying with the permanent injunction ultimately issued by the district court in *Reich*.

As will be explained, defendants' motion is denied.[1]

_____

[1]In their initial motion, defendants also assert that their reliance on the negotiated settlement and the permanent injunction entitles them to summary judgment pursuant to the FLSA's good faith defense. *See* 29 U.S.C. § 259.  In their reply brief, however, defendants expressly abandon that argument for summary judgment purposes and advise the court that it

## I.     Prior Litigation and Pertinent Facts

In 1988, the Secretary of Labor brought an action against IBP[2] at all of its non-union facilities nationwide (including the Finney County facility) alleging, among other things, that pre- and post-shift time spent donning and doffing protective clothing and gear was compensable under the FLSA.  *See Reich v. IBP, Inc*., 820 F. Supp. 1315 (D. Kan. 1993).  The *Reich* trial was bifurcated.  During the first phase, the trial court determined only the compensability issue and ultimately concluded that the donning and doffing of standard protective clothing and gear worn by all production employees was not compensable but that the donning and doffing of specialized protective clothing and gear worn by knife-wielding employees was compensable. *See id.* at 1326-27.  The Tenth Circuit then granted the parties' petitions for leave to appeal under 28 U.S.C. § 1292(b).  Thereafter, the Tenth Circuit affirmed the trial court's conclusions concerning compensability, *see Reich v. IBP, Inc*., 38 F.3d 1123 (10th Cir. 1994), for reasons that will be explained in the text of this opinion.

The second phase of the *Reich* trial concerned the amount of defendants' backpay liability and whether the court should permanently enjoin defendants from future violations.  See Reich v. IBP, Inc., 1996 WL 137817, at *1 (D. Kan. Mar. 21, 1996).  For purposes of calculating defendants' backpay liability, the trial court utilized the "reasonable time" that knife-wielding

---

need not separately decide that issue at this juncture.

[2]In September 2001, defendants merged with IBP and succeeded to the assets and liabilities of IBP, including those covered by *Reich* and subsequent related litigation.  Thus, in this opinion, the court refers to "defendants" in place of IBP for clarity.

employees spent donning and doffing specialized protective clothing and gear rather than the actual time employees spent performing these activities. The court also permanently enjoined defendants from future violations of the FLSA regarding the pre- and post-shift activities found compensable by the court. On appeal, the Tenth Circuit affirmed the trial court's issuance of the permanent injunction and affirmed the trial court's estimate concerning the reasonable time required for donning and doffing required protective clothing and gear. *See Metzler v. IBP, Inc*., 127 F.3d 959 (10th Cir. 1997).

At the conclusion of the *Reich* litigation, defendants and the DOL attempted to reach an agreement on the amount of defendants' backpay liability and, arguably, defendants' future compliance with the *Reich* injunction. When settlement discussions failed, the Secretary, in April 1998, filed an enforcement action concerning defendants' backpay liability. *See Herman v. IBP, Inc*., No. 98-2163-JWL (D. Kan. Apr. 10, 1998). In July 1999, the parties stipulated to the dismissal of the enforcement action with prejudice, based in part on their agreement that defendants could satisfy their backpay obligations under *Reich* (and, arguably, satisfy their future obligations under the *Reich* injunction) by compensating knife-wielding employees an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear worn by those employees.

Plaintiffs in this case are all current or former production employees at defendants' Finney County facility who wear (or wore) standard protective clothing and gear (consisting of a frock or uniform, hair net, hard hat, cotton gloves and earplugs). In addition, certain plaintiffs are (or were) knife-wielding employees required to wear standard protective gear as well as

4

specialized protective clothing and gear, including some combination of a mesh or Kevlar glove, mesh or Kevlar sleeves, rubber gloves, plastic arm guards and a mesh apron.  Defendants do not compensate any employees for time spent donning and doffing standard protective clothing and gear.  Defendants compensate knife-wielding employees for an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear worn by those employees.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does

not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    Claims for Compensation for Time Spent Donning and Doffing of Standard Protective Clothing and Gear

In their complaint, plaintiffs seek compensation for time spent donning and doffing standard protective clothing and gear worn by all production employees. Defendants move for summary judgment on the grounds that those claims are barred by *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), in which the Tenth Circuit held that the donning and doffing of standard protective clothing and gear is not "work" within the meaning of the FLSA and therefore not

compensable. Plaintiffs, in turn, contend that the issues pertinent to their donning and doffing claims are controlled not by *Reich* but by the United States Supreme Court decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), which, according to plaintiffs, has significantly undermined the *Reich* decision. As will be explained, the court rejects defendants' argument that plaintiffs' claims are barred by *Reich*. Summary judgment, then, is denied as to these claims.

The FLSA "typically requires employers to pay their employees for all time spent working on their behalf." *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (citing *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir.1999) (citing 29 U.S.C. §§ 206, 207)). Congress has never defined the term "work," however, and the "courts are thus left to determine on a case-by-case basis whether an employee's activities are compensable under the FLSA." *Id.* (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct. 514, 518-19 (2005)). Early Supreme Court decisions broadly defined both "work" and "workweek." *Alvarez*, 126 S. Ct. at 519. In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), the Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Two years later, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946), the Court defined "workweek" for purposes of the FLSA to "include all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."

In 1947, one year after the Supreme Court's decision in *Anderson*, Congress passed the Portal-to-Portal Act, 29 U.S.C. § 254, which "amended the FLSA to shield employers from

7

'judicial interpretations of the FLSA [that] had superseded "long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities."'" *Smith*, 462 F.3d at 1286 (quoting *Alvarez*, 126 S. Ct. at 519). The Portal-to-Portal Act which, like the original FLSA, omits any definition of "work," *Alvarez*, 126 S. Ct. at 519, provides that:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . . –
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Smith*, 462 F.3d at 1286 (quoting 29 U.S.C. § 254(a)). Employers "are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Id*. Other than these express exceptions, the Portal-to-Portal Act "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *Alvarez*, 126 S. Ct. at 520. Pursuant to the "continuous workday rule," the term "workday" is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." *Id.* at 521.

8

Several years after the enactment of the Portal-to-Portal Act, the Supreme Court found that Congress passed the Act "still intending for an employee's activities to fall 'within the protection of the [Fair Labor Standards] Act if they are an integral part of and are essential to the principal activities of the employees.'" *Smith*, 462 F.3d at 1287 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956)). The Supreme Court "therefore held 'that activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed.'" *Id.* (quoting *Steiner*, 350 U.S. at 256). The Supreme Court "recently clarified this rule in *Alvarez*, explaining 'that any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act,' and is thus compensable under the FLSA." *Id.* (quoting *Alvarez*, 126 S. Ct. at 525).

Turning back to the claims made by plaintiffs in this case, then, *Alvarez* dictates that to the extent that standard protective clothing and gear are "integral and indispensable" to a principal activity or activities performed by production employees, the donning and doffing of those items are principal activities and are thus compensable under the FLSA. *See Alvarez*, 126 S. Ct. at 525. Moreover, during a continuous workday, any donning and doffing that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is covered by the FLSA. *See id.* Under *Alvarez*, then, the key factual issues underlying plaintiffs' claims are whether standard protective clothing and gear are "integral and indispensable" to the work performed by production employees and what compensable activities

9

define the outer limits of the workday.

Defendants,  however, urge that the Supreme Court's decision in *Alvarez* is largely irrelevant to plaintiffs' claims because the Tenth Circuit, in *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), held that the donning and doffing of standard protective clothing and gear "is not work within the meaning of the FLSA."  According to defendants, the *Reich* decision remains controlling precedent as the Supreme Court in *Alvarez* did not address the issue of whether donning and doffing basic items constitutes "work" within the meaning of the FLSA. In *Reich*, the trial court had held that the donning and doffing of specialized protective clothing and gear worn by knife-wielding employees was compensable because the wearing of those items was "an integral and indispensable part" of the work of those employees.  *See Reich*, 38 F.3d at 1125.  By contrast, the trial court held that the basic protective clothing and gear worn by all production employees was not compensable because the wearing of those items was not an integral and indispensable part of the production workers' jobs, but were standard items required throughout many industries.  *See id.*  On appeal, the Circuit agreed with the trial court's conclusions regarding compensability, but did so for "slightly different reasons," expressly rejecting the trial court's conclusion that the wearing of basic protective clothing and gear was not integral and indispensable to the work performed by production workers:

> [T]he fact that such equipment is well-suited to many work environments does not make it any less integral or indispensable to these particular workers than the more specialized gear.   In fact, the same reasons supporting the finding of indispensability and integrality for the unique equipment (*i.e.*, company, OSHA, and Department of Agriculture regulations requiring such items and the health, safety, and cost benefits to the company of the employees wearing the items) apply with equal force to the "standard" equipment.

10

*Id.* Ultimately, the Circuit held that a "better explanation for the non-compensability of the donning and doffing of the latter items is that it is not work within the meaning of the FLSA." *Id.* In so concluding, the Circuit relied on the definition of "work" set forth by the Supreme Court in *Tennessee Coal* and determined that the donning and doffing of standard safety equipment required little or no concentration and little or no physical or mental exertion. *Id.* at 1125-26. By way of footnote, the Circuit also acknowledged that "[i]t could also be said that the time spent putting on and taking off these items is *de minimis* as a matter of law, although it is more properly considered not work at all." *Id.* at 1126 n.1.

The court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich*, would approach its analysis of the pertinent issues differently in light of *Alvarez*, regardless of whether the Circuit ultimately reached the same conclusions concerning compensability. Significantly, the Circuit did not analyze the issues through the lens of the continuous workday rule as clarified by the Supreme Court in *Alvarez*. In light of *Alvarez*, it would seem that the Circuit, if revisiting *Reich* today, would focus not on whether the donning and doffing constituted "work" within the meaning of *Tennessee Coal*, but on whether standard protective clothing and gear are "integral and indispensable" to the work performed by production employees. Indeed, the Circuit in *Reich*, although in dicta, certainly stated that standard clothing and gear are integral and indispensable to the work performed by production employees, suggesting that the Circuit might reach a different conclusion on compensability if analyzed in the context of *Alvarez*. Moreover, to the extent the Circuit determined that such clothing and gear was not integral and indispensable, it would nonetheless need to determine

11

whether the donning and doffing occurred during the continuous workday; that is, whether the donning and doffing occurred after the beginning of the employee's first principal activity and before the end of the employee's last principal activity.

In support of their contention that *Alvarez* has not called *Reich* into doubt, defendants urge that the Tenth Circuit itself, in *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006), a decision issued after *Alvarez,* "confirmed the continuing vitality" of *Reich*'s conclusion that the donning and doffing of standard protective clothing and gear is not "work" and is thus not compensable. The court disagrees. In fact, *Smith* supports the court's conclusion that the Circuit would analyze *Reich* differently (and, more specifically, through the lens of the continuous workday rule and a particular focus on the "integral and indispensable" nature of the activity) if faced with those issues today.

At issue in *Smith* was whether the plaintiffs were entitled to compensation for time spent traveling to and from the well sites where the plaintiffs actually performed their work. *Id.* at 1276-77. Notably, the Circuit acknowledged that if the plaintiffs' first principal activity took place before traveling to the well site and their last principal activity took place after returning from the well site, then *Alvarez* required that the plaintiffs' travel time be included within their workday. *Id.* at 1289. According to the plaintiffs, their workday began prior to traveling to the well site because they were required to load their personal safety equipment (including much of the same type of equipment at issue in *Reich* such as hard hats, gloves, boots and coverall clothing) into their driller's vehicle prior to traveling to the well site. The Circuit, however, rejected this argument:

12

> This argument is foreclosed by our holding in *Reich v. IBP, Inc*., 38 F.3d 1123, 1126 & n.1 (10th Cir. 1994), where we explained that when an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all."  Moreover, "[r]equiring employees to show up at their work stations with such standard equipment [as a hard hat, safety glasses, earplugs, and safety shoes] is no different from having a baseball player show up in uniform, . . . or a judge with a robe.  It is simply a prerequisite for the job, and is purely preliminary in nature.  Consequently, the plaintiffs' travel to and from the well sites was not integral and indispensable to their principal activities merely because they were required to carry their personal safety equipment along with them.

*Id*. (quoting *Reich*, 38 F.3d at 1125, 1126 n.1).  Contrary to defendants' argument, then, the

Circuit was not endorsing its conclusion that the donning and doffing of standard clothing and

gear was not work under *Tennessee Coal* and therefore not compensable; it was  rejecting an

argument that the loading of such equipment constituted a "principal activity" sufficient to start

the workday for purposes of the continuous workday rule.  Significantly, then, the Circuit's

ultimate holding in *Smith*–that travel time was not compensable–was based on its conclusions

that the plaintiffs' travel time was not integral and indispensable to the plaintiffs' principal

activities and that the plaintiffs' travel time did not otherwise fall within the continuous workday.

*See id.* at 1289-90.  This analysis, a markedly different one than the *Reich* analysis, is in accord

with *Alvarez* and further suggests that the Circuit, if revisiting *Reich*, would approach that case

differently.

     For the foregoing reasons, this court does not believe that *Reich* mandates the dismissal

of the plaintiffs' claims concerning the donning and doffing of standard protective clothing and

gear.  Summary judgment on these claims, then, is denied.[3]


**IV.     Claims for Compensation for Time in Excess of Four Minutes Spent Donning and Doffing of Specialized Protective Clothing and Gear**

Plaintiffs also seek compensation for time spent in excess of four minutes donning and doffing specialized protective clothing and gear worn by knife-wielding employees.  Defendants move for summary judgment on the grounds that such claims are barred by a negotiated settlement between defendants and the Department of Labor pursuant to which the parties agreed that compensating knife-wielding employees for an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear is a reasonable method of complying with the permanent injunction ultimately issued by the district court in *Reich*.  As will be explained, defendants have not shown as a matter of law that the *Reich* injunction permits them, on a prospective basis, to pay knife-wielding employees for the reasonable time spent donning and doffing specialized protective clothing and gear as opposed to the actual time spent performing such activities.  Moreover, even assuming that the *Reich* injunction does permit

---

[3]The *Reich* decision addressed only pre-shift and post-shift donning and doffing of protective clothing and gear and did not address pre- and post-meal-period donning and doffing.  Defendants, then, move for summary judgment on plaintiffs' pre- and post-meal-period donning and doffing claims not on the grounds that *Reich* bars these claims but on the grounds that the rationale set forth in *Reich* (that such activity is simply not "work") applies with equal force regardless of whether the donning and doffing occurs before or after a shift or whether it occurs before or after a meal period.  As explained in the text, the court concludes that Alvarez has undermined *Reich*'s rationale such that the court is not bound by *Reich*; thus, the court declines to extend *Reich*'s rationale to plaintiffs' pre- and post-meal-period donning and doffing claims.  Summary judgment on these claims, then, is denied as well.

defendants to pay knife-wielding employees for the reasonable time spent donning and doffing, genuine issues of material fact exist concerning whether the DOL has agreed that the four-minute pay policy is sufficient to secure defendants' future compliance with the *Reich* injunction. Summary judgment on these claims, then, is denied.

The court first examines the injunction issued by the trial court in *Reich*. To be sure, the express terms of the injunction itself do not limit defendants' obligations to payment for the "reasonable time" spent donning and doffing as opposed to the actual time spent on these activities. Indeed, the language of the injunction suggests that, at least on a prospective basis, defendants will be required to pay knife-wielding employees for the actual time spent donning and doffing specialized clothing and gear. In that regard, paragraph 3 of the injunction states:

> It is further ordered that, within ten (10) days of the date of this Order, Defendant shall implement recordkeeping practices sufficient to record the time spent by each employee in performing pre-shift and post-shift activities found to be compensable under the Act.

Other statements made by the trial court in *Reich* further suggest that the court intended defendants to compensate knife-wielding employees for the reasonable time spent donning and doffing only until such time as defendants began recording the actual time spent by employees in performing these activities. While the *Reich* court ultimately utilized a "reasonable time" method for purposes of calculating the backpay award owed to employees because defendants had failed to maintain time records, *see Reich v. IBP, Inc*., 1996 WL 137817, at *2-3 (D. Kan. Mar. 21, 1996), it did not absolve defendants, on a prospective basis, from recording and compensating employees for actual time spent donning and doffing specialized clothing and

gear.  In fact, in granting the DOL's request for a permanent injunction against future violations, the trial court in *Reich* stated that defendants "will be required to record and compensate for time spent in compensable activities under its present working conditions."  *Id*. at *8.  In sum, defendants have not shown as a matter of law that the *Reich* injunction permits them, on a prospective basis, to pay knife-wielding employees for the reasonable time spent donning and doffing specialized protective clothing and gear as opposed to the actual time spent performing such activities.

Moreover, even assuming that the *Reich* injunction does permit defendants on a prospective basis to pay knife-wielding employees for the reasonable time spent donning and doffing, genuine issues of material fact exist concerning whether the DOL has agreed that the four-minute pay policy is sufficient to secure defendants' future compliance with the *Reich* injunction.  Specifically, portions of the parties' correspondence leading to the stipulated dismissal of the *Herman* litigation suggest that the DOL, at the most, would permit defendants to continue its four-minute pay policy on a temporary basis.  In an April 30, 1999 letter to defendants, the DOL states that "with regard to future compliance, the Department expects [defendants] to comply with the District Court's orders . . . which require [defendants] to record and pay for the time spent by each employee performing the identified compensable activities."  One could reasonably infer from this language that the DOL expected defendants, on a prospective basis, to compensate knife-wielding employees for actual time spent donning and doffing specialized protective clothing and gear.  In a July 16, 1999 letter to defendants, however, the DOL states that defendants may continue its four-minute pay policy "until such

16

time as the Department announces its position with respect to recordkeeping in the industry."

While this language suggests that Department's agreement that defendants, on a temporary

basis, could continue the four-minute pay policy, even the DOL itself has rejected defendants'

contention that the language indicates the DOL's endorsement of the four-minute pay policy as

sufficient to satisfy defendants' obligations under the injunction.  In that regard, in its March

2000 surreply concerning defendants' motion to dissolve the permanent injunction, the DOL

states:

> [T]he language of [the July 16, 1999] letter clearly states that the Secretary is only
> agreeing to permit [defendants] to use its current recordkeeping methodology until
> such time as the Department makes its decision on the meatpacking industry's
> request for an accommodation with regard to the recordkeeping requirements of
> the FLSA.  The letter does not state that the Secretary agrees [defendants'] current
> recordkeeping is in compliance.

In sum, defendants have not met their burden of showing the absence of genuine factual issues

concerning whether the DOL has agreed that defendants' continued use of the four-minute pay

policy is sufficient to secure compliance with the *Reich* injunction.  Summary judgment, then,

is denied on plaintiffs' claims for compensation for time in excess of four minutes spent donning

and doffing specialized protective clothing and gear.


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for

partial summary judgment (doc. 363) is denied.


**IT IS SO ORDERED.**

17

Dated this 16th day of February, 2007, at Kansas City, Kansas.


                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge