## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Adelina Garcia, Antonio Garcia**
**and Jeronimo Vargas-Vera,**

    **Plaintiffs,**

**v.**              **Case No. 06-2198-JWL**

**Tyson Foods, Inc. and**
**Tyson Fresh Meats, Inc.,**

    **Defendants.**

## MEMORANDUM & ORDER

Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendants alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., violations of the Kansas Wage Payment Act, K.S.A. § 44-313 et seq., and claims for quantum meruit and breach of contract. Plaintiffs, all current or former employees at defendants' beef processing facilities in Holcomb, Kansas ("Holcomb facility" or "Finney County facility") and/or Emporia, Kansas ("Emporia facility"), allege that defendants failed to compensate them for time spent performing compensable activities such as donning and doffing required protective clothing and gear; cleaning equipment; walking to and from the changing area, work areas and break areas; waiting for the production line to operate; and performing production work during unpaid meal periods.

This matter is presently before the court on plaintiffs' motion for class certification and conditional collective action certification (doc. 716). After considering the parties' written submissions as well as the oral arguments presented by the parties at the January 26, 2009

motion hearing, the court is now prepared to resolve plaintiffs' motion and, as set forth in more detail below, the court grants the motion.

## I.    Background

Tyson operates numerous beef processing facilities throughout the United States, including facilities in Holcomb, Kansas and Emporia, Kansas. The Holcomb facility employs approximately 2500 hourly production workers and, until recently, the Emporia facility employed approximately 2000 hourly production workers.[1] The vast majority of these hourly production workers are required to wear protective clothing and gear, though not all employees wear the same protective clothing and gear. Indeed, numerous combinations of required clothing and gear exist depending on the employee's job position. In addition, some hourly production workers elect to wear or utilize certain "optional" clothing and gear depending on the employee's job position. A large number of hourly production employees at these facilities use knives in performing their job functions. Knife-wielding employees are required to sanitize their knives and related equipment and gear prior to beginning production work. They are required to rinse their knives and related equipment and gear at the end of the day.

The vast majority of hourly production workers at these facilities are paid on a "gang time" basis; that is, they are paid for only that time when the production line is moving.

---

[1]In February 2008, Tyson ceased slaughter operations at the facility such that the facility now employs approximately 800 hourly production workers.

Typically, gang time is seven hours and fifty-six minutes, although production time sometimes varies.  On some occasions, supervisors may exercise their discretion to pay hourly production workers for time beyond gang time.  In addition, Tyson pays knife-wielding employees and employees who work in knife-wielding departments an additional 4 minutes of time per shift to compensate these employees for time spent donning and doffing clothing and gear.[2]  The parties refer to these extra minutes as "K Code" or "K time."[3]  As a general rule, however, Tyson does not pay its employees for time spent performing activities outside the movement of the production line, including actual time spent donning and doffing protective clothing and gear; rinsing and sanitizing knives and equipment; and walking to and from the production line. Indeed, Tyson does not record the actual time its hourly production workers spend donning and doffing clothing and gear; rinsing and sanitizing equipment; or walking to and from the production line.

Plaintiffs in this case allege that Tyson, by failing to compensate its hourly production workers for all time worked, has denied wages and overtime pay to those employees.

## II.    Class Definitions

[2]In January 2007, Tyson altered its policy somewhat such that knife-wielding employees now receive anywhere from 4 to 9 additional minutes of pay per shift depending on the particular employee's job code.

[3]"K" refers to "knife" and "K Code" refers to those jobs within Tyson's facilities that have been designated as knife-wielding positions or positions within knife-wielding departments.  Thus, if a particular employee's job position is designated with a "K" in Tyson's job coding system, that employee would receive the additional "K Code" pay.

3

Plaintiffs initially moved for conditional certification of their FLSA claims as a collective

action on behalf of the following class:

> All current and former hourly employees of Defendants who
> worked at the Holcomb or Emporia facilities in the last three years
> and who were paid on a "Gang Time" basis and/or paid for their
> donning and doffing activities on an "average time" basis.

At oral argument, plaintiffs modified the class definition to include the phrase "plus applicable

tolling" after the phrase "in the last three years." Tyson did not object to the definition proffered

in plaintiffs' motion and did not object to the modified definition proffered at oral argument.

During oral argument, the court and the parties discussed (in response to Tyson's argument that

plaintiffs' state law claims were inherently incompatible with and otherwise preempted by

plaintiffs' FLSA claims) whether the class definition could be further modified to avoid any

potential overlap with plaintiffs' state law claims.

As clarified by plaintiffs' counsel at oral argument in response to Tyson's concerns, the

relief sought by plaintiffs under state law in no way overlaps with the relief sought by plaintiffs

under the FLSA. According to plaintiffs, plaintiffs seek relief under the FLSA only for

uncompensated time beyond 40 hours in a particular workweek. In other words, plaintiffs'

FLSA claims seek redress only for overtime violations. For example, if "gang time" for one

particular week was 40 hours, but employees spent 2 additional hours that week on donning,

doffing, washing and walking activities for which Tyson did not compensate them (other than

on an average time basis), then plaintiffs, according to their theory of recovery, worked 42 hours

that week and would seek relief under the FLSA for the two hours of overtime (minus whatever

4

average time they received) for which they were not compensated.  The class definition with

respect to FLSA claims, then, must be limited accordingly.  In analyzing plaintiffs' motion for

conditional certification of the FLSA claims, then, the court considers whether to conditionally

certify a collective action on behalf of the following class:

> All current and former hourly employees of Defendants who worked at the Holcomb or Emporia facilities in the last three years plus applicable tolling and who worked more than 40 hours in one or more workweeks (including time spent performing off-the-clock activities, including but not limited to donning, doffing, washing and walking) and who were paid on a "Gang Time" basis and/or paid for their donning and doffing activities on an "average time" basis during one or more of those workweeks.

With respect to their state law claims, plaintiffs propose certification as a class action on behalf

of the following class:

> All current and former hourly employees of Defendants who worked at the Holcomb or Emporia facilities from May 15, 2001 to the present, who were paid on a "Gang Time" basis and/or paid for their donning and doffing activities on an "average time" basis.

Tyson did not object to this definition.  One modification of the definition, however, is required.

Plaintiffs' proposed class definition extends back 5 years from the filing of plaintiffs' complaint.

This temporal scope is based on plaintiffs' counsel's belief (a belief that counsel candidly

admitted at oral argument was uncertain) that plaintiffs' quantum meruit claims enjoyed a five-

year limitations period.  As the court suggested at oral argument, however, the statute of

limitations period for plaintiffs' quantum meruit claims is, like plaintiffs' KWPA claims, three

years. *Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 630 (10th Cir. 2008)

5

(citing K.S.A. § 60-512; *Lightcap v. Mobil Oil Corp*., 221 Kan. 448, 464 (1977)).  The court, then, will modify the class definition to reflect the appropriate temporal scope.

The court also considers whether any potential modification of the definition is appropriate to ensure that plaintiffs' state law claims do not overlap with plaintiffs' FLSA claims.  To begin, plaintiffs have stipulated that they will seek relief under state law only for uncompensated time outside the confines of the FLSA's overtime provisions.  For example, if "gang time" for one particular week was 37 hours, but employees spent 2 additional hours that week on donning, doffing, cleaning and walking activities for which Tyson did not compensate them (other than on an average time basis), then, according to plaintiffs' theory, plaintiffs worked 39 hours that week and would seek relief under state law for the two hours of "straight" time (minus whatever average time they received) for which they were not compensated.  As discussed at oral argument, however, plaintiffs will seek relief under state law for hours worked beyond 40 in a work week in those instances when the FLSA does not apply (e..g., plaintiffs' FLSA claims are time-barred for that particular workweek).  Thus, the court cannot simply limit the class to employees who worked up to 40 hours in a workweek because that definition would not capture those situations in which the FLSA does not apply but the KWPA might be available to fill the gap.  To alleviate any concerns about preemption, plaintiffs further agreed that, in those instances in which plaintiffs do seek relief under state law for hours worked over 40 in a workweek, plaintiffs would seek relief only for "straight" time pay under the KWPA and not time-and-a-half pay. Thus, plaintiffs' stipulation concerning further limitations on their state law

6

claims, together with the express limitation in the FLSA class definition, will operate to ensure that plaintiffs' state law claims do not overlap with their FLSA claims.  In analyzing plaintiffs' motion for certification of their state law claims, then, the court considers whether to certify a class action on behalf of the following class:

> All current and former hourly employees of Defendants who worked at the Holcomb or Emporia facilities from May 15, 2003 to the present and who performed off-the-clock activities during one or more workweeks, including but not limited to donning, doffing, washing and walking and who were paid on a "Gang Time" basis and/or paid for their donning and doffing activities on an "average time" basis during one or more of those workweeks.

Bearing these class definitions in mind, the court turns to analyze whether certification is appropriate.

### III.    Conditional Certification of Collective Action under 29 U.S.C. § 216(b)

Plaintiffs seek to conditionally certify their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).  Section 216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), provides for an opt-in class action where the complaining employees are "similarly situated."  The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of § 216(b).  *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated."  *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).  That is, the district court determines whether a

7

collective action should be certified for purposes of sending notice of the action to potential class members.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).  For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678).  The standard for certification at the notice stage, then, is a lenient one.  *See id.* at 1103; *see also Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995) (certification decision at the notice stage is usually based only on the pleadings and any affidavits which have been filed and, thus, the standard is fairly lenient and typically results in conditional certification of a representative class).  At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly situated" using a stricter standard.  *Thiessen*, 267 F.3d at 1102-03.  During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural considerations.  *Id*. at 1103.

In their motion for conditional certification of their FLSA claims as a collective action, plaintiffs highlight the lenient standard for certification applicable at the "notice" stage and assert that they are similarly situated to each other and to potential opt-in plaintiffs in that the vast majority of hourly production workers were paid on a "gang time" basis and/or were paid

for their donning and doffing activities on a "average time" basis. Stated another way, plaintiffs assert that Tyson failed to compensate the potential members of the collective action for all time spent performing compensable activities. As a threshold argument, Tyson contends that this case is well beyond the "notice stage" for purposes of certification in light of the "significant" discovery that has occurred and urges the court to apply the more rigorous standard for certification applicable at the "second stage" described by the Tenth Circuit in *Thiessen*. According to Tyson, plaintiffs cannot establish that they are "similarly situated" under the second stage analysis because of the disparate factual circumstances surrounding the compensation and job requirements of each individual plaintiff. Specifically, Tyson contends that the factual evidence varies widely with respect to the particular clothing donned and doffed by each plaintiff, the specific equipment used by each plaintiff and the washing and sanitizing activities performed by each plaintiff (resulting in a wide divergence in the amount of time spent by each individual plaintiff related to these activities). Tyson also contends that the factual evidence varies widely with respect to the compensation paid to each potential plaintiff in light of individual supervisors exercising their discretion to pay some employees beyond "gang time" pay.[4]

---

[4]Tyson further suggests that plaintiffs are not similarly situated because numerous "individualized defenses" exist. However, the majority of the "defenses" identified by Tyson–including whether plaintiffs' off-the-clock activities constitute "work" within the meaning of the FLSA; whether those activities are de minimus; and whether those activities are integral and indispensable to the employee's principal production work–actually support the conclusion that plaintiffs are similarly situated and are clearly suited to collective treatment.

The court rejects Tyson's argument that the "similarly situated" determination should be made utilizing the stricter standard applicable at the "second stage" described by the Circuit in *Thiessen*. Notably, the *Thiessen* court described the second stage analysis as occurring "[a]t the conclusion of discovery." 267 F.3d at 1102. Of course, discovery has not concluded in this case. Indeed, no scheduling order concerning merits discovery has been entered and no trial date has been set. In similar circumstances, courts have declined to bypass the initial stage determination. *See Lopez v. Tyson Foods*, 2008 WL 3485289, at *9 (D. Neb. Aug. 7, 2008) (rejecting Tyson's argument that plaintiffs should be held to higher standard for certification in light of significant discovery conducted; discovery was not merits-based or intended to be completed at this stage and case was not yet set for trial); *see also Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) (applying lenient standard because the "case certainly has not progressed to the conclusion of discovery"). This case, then, is at the "notice stage" for purposes of determining whether plaintiffs are similarly situated.

The court concludes that conditional certification of this action is appropriate for purposes of sending notice to potential class members because plaintiffs have come forward with substantial allegations that the putative class members were "together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102. Indeed, the record contains testimony from Tyson's Rule 30(b)(6) designees establishing that the vast majority of hourly production workers at the Tyson facilities in Holcomb and Emporia are paid on a "gang time" basis; that is, they are paid for the time the production line is moving (with individual modifications made on

an as-needed basis to reflect, by way of example, an employee's late arrival to the line) and, as a result, are not paid for time spent performing activities outside the movement of the production line.  Tyson's corporate designees further testified that Tyson pays an additional 4 minutes of time per shift to knife-wielding employees and employees who work in knife-wielding departments for time spent on donning and doffing activities.  Tyson's corporate designees, however, testified that these additional minutes represent only an "average" amount of time spent on such activities and that Tyson does not record (or compensate for) the time that employees actually spend performing these activities.[5]

Plaintiffs' evidence, then, is more than sufficient to support conditional certification on the theory that all putative class members were denied compensation for time spent performing work activities.  While the court does not discount entirely the differences that may exist among employees in terms of each employee's donning, doffing and washing activities and the compensation individual employees may have received in light of supervisory discretion, those differences are more properly analyzed at the close of discovery and, at this stage, "do not diminish [the] predominant relevant similarity" asserted by plaintiffs–Tyson's practice of requiring employees to perform uncompensated work activities.  *Id*. at *10 (granting conditional

---

[5]While Tyson's corporate designees could not definitively state whether K Code pay is intended to include time spent walking to and from the changing area, work areas and break areas, Tyson's counsel stated on the record in the 30(b)(6) deposition of Mr. Kimbro that the company's position, at least prior to January 2007, was that K Code pay did not include walking time.  Certain evidence submitted by Tyson indicates that K Code effective January 2007 is intended to compensate for walking time.

certification and rejecting identical arguments).

Tyson contends that conditional certification is nonetheless inappropriate because plaintiffs have not shown they were all victims of a single "illegal" policy or plan, highlighting that nothing in the FLSA prohibits the "gang time" method of compensation and that no court has ever concluded that the "gang time" method of compensation is unlawful. This argument, too, is rejected. Plaintiffs do not assert that the "gang time" method of pay is unlawful per se. Plaintiffs allege that the "gang time" method of pay, as applied to them, fails to capture all compensable time and that Tyson's failure to compensate them for all compensable activities is unlawful. Nothing more is required at this stage. *See Lopez*, 2008 WL 3485289, at *10 (granting conditional certification despite defendant's contention that "gang time" system did not violate FLSA).

## IV.    Certification of Class Action under Rule 23

Plaintiffs seek to certify their Kansas Wage Payment Act claims and quantum meruit claims as a class action under (b)(3) of Federal Rule of Civil Procedure 23. Despite the differences in the nature of proof required for each of plaintiffs' state claims (the KWPA simply requires an employer to pay an employee "all wages due" while a claim for quantum meruit requires, among other things, that a plaintiff confer a benefit on the defendant), the court addresses these claims in tandem as plaintiffs' theory of liability with respect to their quantum meruit claims mirrors that of their KWPA claims–that is, that donning, doffing, walking and

12

related activities constitute compensable work and that any "work" performed by employees necessarily confers a benefit on the employer.   Similarly, plaintiffs' theory of damages with respect to their quantum meruit claims is based on the same measure of damages applicable to their KWPA claims.  When the court inquired at oral argument how counsel for plaintiffs would quantify the value of the benefit conferred by plaintiffs on Tyson, counsel responded that the value would be measured by plaintiffs' hourly rate of pay.   Consistent with this approach, plaintiffs have identified the same common questions of law and fact applicable to their KWPA claims as applicable to their quantum meruit claims.

A.      *Standard for Class Certification*

Class certification under Rule 23 is proper only if the trial court is satisfied, after a "rigorous analysis," that the prerequisites of Rule 23 have been met.  *Shook v. El Paso County* (*Shook I*), 386 F.3d 963, 968 (10th Cir. 2004) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  For purposes of this case, those prerequisites include Rule 23(a)'s threshold requirements of numerosity, commonality, typicality and adequacy of representation, as well as Rule 23(b)(3)'s requirements of predominance and superiority–that is, common questions must predominate over individual issues and class resolution must be superior to other methods of adjudication.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-15 (1997).

The Tenth Circuit has held that a party seeking to certify a class must show "under a strict burden of proof" that the requirements of Rule 23 have been met.  *Reed v. Bowen*, 849 F.2d

1307,1300 (10th Cir. 1988).  While the Tenth Circuit has stated that a district court "must generally accept the substantive, non-conclusory allegations of the complaint as true" in conducting its "rigorous analysis" under Rule 23, *see Vallario v. Vandehey*, ___ F.3d ___, 2009 WL 251938, at *5 (10th Cir. Feb. 4, 2009), this admonition is not inconsistent with a district court's "searching inquiry" into whether the requirements of Rule 23 have been met, *see id.*, and a district court may still "consider the legal and factual issues presented by plaintiff's complaints." *See Shook I*, 386 F.3d at 968 (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); *accord In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 307 (3rd Cir. 2008) (the decision to certify a class calls for findings by the court based on a preponderance of the evidence, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met).

Moreover, while the Tenth Circuit has cautioned that a district court "may not evaluate the *strength* of a cause of action at the class certification stage," the Circuit has recognized that a decision on class certification is not always immune from consideration of issues that overlap with the merits of the cause of action.  *Shook v. Board of County Commr's of County of El Paso (Shook II)*, 543 F.3d 597, 612 (10th Cir. 2008) (emphasis in original); *accord Shook I,* 386 F.3d at 974 (recognizing that reasons might exist "why the 'merits may become intertwined with proper consideration of other issues germane to whether the case should be certified as a class action' that guide the court's class certification decision.") (citing *Adamson v. Bowen*, 855 F.2d 668, 677 n.12 (10th Cir. 1988)); *accord Vallario*, ___ F.3d at ___, 2009 WL 251938, at *6-7

14

("District courts ensure Rule 23's provisions are satisfied by conducting a 'rigorous analysis' addressing the rule's requirements 'through findings,' regardless of whether these findings necessarily 'overlap with issues on the merits.'") (citations omitted).

B.      *Rule 23(a) Prerequisites*

Rule 23(a)(1) allows certification of a class only if the proposed class is so numerous that joinder of all class members would be impracticable.  To satisfy this numerosity requirement, plaintiffs "must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."  *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). Plaintiffs' evidence establishes that Tyson employs approximately 4500 hourly production workers at its Holcomb and Emporia facilities and that the vast majority of these employees were paid on a "gang time" basis and Tyson does not dispute that plaintiffs' proposed class meets the numerosity requirement.  The court finds that plaintiffs have satisfied this prerequisite with respect to their KWPA claims and their quantum meruit claims.

Rule 23(a)(2) requires the court to find that "there is at least one question of law or fact common to the class."  *Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999).  The commonality requirement is far less demanding than Rule 23(b)(3)'s predominance requirement, *Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).  Plaintiffs' evidence demonstrates several questions of law and fact that are common to the class, including whether Tyson's "gang time" plus "K code" method

15

of compensation violates the KWPA and principles of quantum meruit by failing to capture all compensable time; whether donning and doffing of protective gear constitutes an integral and indispensable activity; and whether donning and doffing of protective gear is sufficient to commence the continuous workday.

Tyson asserts that plaintiffs do not meet the commonality requirement because of the "wide factual variation among Tyson employees in their particular activities." Tyson highlights the various combinations of required and optional clothing, equipment, and washing and sanitizing activities performed by each plaintiff, resulting in a wide divergence in the amount of time spent by each plaintiff. Defendant also contends that some plaintiffs were paid for such activities based on individual supervisor discretion such that there will be individual questions about whether each plaintiff was fully compensated. While these individual questions may exist, they do not undermine the overarching common question in this lawsuit–whether Tyson must pay class members for time spent donning, doffing, walking and the like. Thus, even assuming that Tyson paid some class members, on isolated occasions,[6] for time spent donning and doffing based on the discretion of a particular supervisor, the question remains whether Tyson is required to do so. In short, the court finds that the commonality requirement of Rule 23(a) is satisfied.

Rule 23(a)(3) requires the named plaintiffs to show that the claims or defenses of the representative parties are typical of those of the class members they seek to represent. *Rector*

---

[6]There is no evidence in the record that any class members were paid for actual time spent donning and doffing (that is, that they were paid beyond "K time") on a regular basis.

16

*v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003).   It is well established that "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982) (noting it is well established that the claims of all the class need not be identical to those of the named plaintiffs).   Plaintiffs contend that the named plaintiffs' claims are typical of the class claims because all plaintiffs were subject to the same "gang time" and "K code" policies.   Tyson's objection to typicality is the same as stated for commonality–that individual issues abound.   Because all class members share the same legal theory–that Tyson's compensation system fails to capture all compensable time–the court concludes that the typicality requirement is satisfied.

Rule 23(a)(4) requires that the named plaintiffs must fairly and adequately protect the interests of class members.   To satisfy this prerequisite, the plaintiffs must show that their interests are aligned with those of the persons they seek to represent and that they will vigorously prosecute the case through qualified counsel.   *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).   The inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent."   *Amchem*, 521 U.S. at 625.   Tyson does not dispute that plaintiffs' counsel is qualified to vigorously prosecute this case.   Tyson, however, does dispute whether the named plaintiffs have common interests with class members.

Tyson's primary argument concerning Rule 23(a)(4) actually stems from a separate issue raised by Tyson in its papers and largely resolved at oral argument.  In its papers, Tyson asserted a threshold objection to certification of plaintiffs' state law claims on the grounds that the state law claims are  duplicative of the FLSA claims (in that they seek the same relief) such that the state law claims must be dismissed as both inherently incompatible with the FLSA claim (one being an opt-out procedure, one being an opt-in procedure) and because the FLSA would preempt the state law claims.  In their reply brief and at oral argument, plaintiffs explained that while their state law claims are based on the same facts as their FLSA claims, the relief sought under the state claims in no way overlaps with the relief sought under the FLSA.  After this discussion, Tyson acknowledged that any potential conflicts between the FLSA and state law claims could be resolved by the court in connection with properly defined classes for both federal and state claims and by plaintiffs' counsel's stipulation to limit the relief sought under the KWPA.[7]  The discussion, however, also caused Tyson's counsel to question whether the named representatives, each of whom has opted in under the FLSA, could adequately represent the interests of those class members who are brought into the Rule 23 action but do not opt-in under the FLSA because they do not seek overtime.  The court discerns no conflict of interest and is convinced that the named plaintiffs will adequately represent the interests of any class

---

[7]As explained above in connection with the class definitions, plaintiffs agreed at oral argument that they will only seek relief under the KWPA for uncompensated time beyond 40 hours in a work week if the FLSA was inapplicable to those work weeks and that even then plaintiffs would seek relief only for "straight" time pay under the KWPA and not time-and-a-half pay.

18

members who do not opt-in to the FLSA collective action.  The named plaintiffs have each asserted KWPA and quantum meruit claims in addition to their FLSA claims.  And because those claims are mutually exclusive under plaintiffs' theory of the case, there is no risk that the named plaintiffs would pursue their FLSA claims to the detriment of their state law claims.

Tyson also suggests, in a footnote, that the named plaintiffs do not have common interests with class members because they do not represent each job position at issue or each department concerned and some of the named plaintiffs testified that they did not know what clothes other employees in other positions or departments wore and did not know what duties other employees in other positions or department performed.   It is undisputed, however, that all potential class members–regardless of position or department–were paid pursuant to the same compensation system and that all potential class members performed off-the-clock activities including donning, doffing, cleaning and walking.  For these reasons, any differences in the type or extent of clothing that was donned or doffed by various class members or in the exact nature of the work performed by various class members simply do not constitute "conflicts of interest" between the named plaintiffs and class members.  *See Bouaphakeo v. Tyson Foods, Inc*., 564 F. Supp. 2d 870, 905-06 (N.D. Iowa 2008) ("The possibilities for conflicts of interest between class representatives and class members are obviously minimal when all plaintiffs . . . perform similar work and receive compensation under a similar pay system.").

C.     *Rule 23(b)(3) Requirements*

19

To certify a class under Rule 23(b)(3), the court must find that common questions predominate over questions affecting only individual members; and that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

1.     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods.*, 521 U.S. at 623-24. The predominance requirement, then, requires more than a common claim; issues "common to the class must predominate over individual issues." *In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 311 (3rd Cir. 2008); *accord Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question. *Blades*, 400 F.3d at 566; *Hydrogen Peroxide*, 552 F.3d at 311 ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."). If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question. *Blades*, 400 F.3d at 566.

To establish their KWPA claims, plaintiffs must show that Tyson has failed to pay them "all wages due." K.S.A. § 44-314(a). Plaintiffs contend that donning, doffing, washing, walking and related activities are compensable activities such that Tyson was required to pay them wages for that work and failed to do so. Tyson asserts that individual issues will certainly predominate, referencing again the particular clothing donned and doffed by each plaintiff; the specific equipment used by each plaintiff; the washing and sanitizing activities performed by each plaintiff; and the compensation paid to each plaintiff in light of individual supervisors exercising their discretion to pay some employees beyond "gang time" pay. The court does not agree that these individual issues will predominate. Although plaintiffs donned and doffed various combinations of clothing and gear and some plaintiffs washed and sanitized equipment while others did not, all plaintiffs were paid under Tyson's gang time/K Code compensation policy and all plaintiffs allege that this compensation policy did not capture all compensable time. Thus, all plaintiffs-regardless of what they wore or washed–will be required to show that they perform compensable activities and that Tyson's compensation system fails to compensate plaintiffs for those activities. Plaintiffs rely on common evidence to establish those facts. To the extent Tyson claims that individual issues exist concerning the compensation paid to each potential plaintiff in light of individual supervisors exercising their discretion to pay some employees beyond "gang time pay, there is no evidence in the record that supervisors exercised their discretion to plaintiffs' benefit on a consistent basis; indeed, Tyson conceded at oral argument that such discretion may have been exercised only sporadically. Thus, any individual issues

21

concerning compensation received cannot be said to predominate and can be handled appropriately in the context of the class action.  The court, then, finds that the predominance requirement is satisfied with respect to plaintiffs' KWPA claims.

To establish their claims for quantum meruit, plaintiffs must prove three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  *Midwest Grain Prods., Inc. v. Envirofuels Marketing, Inc.*, 1998 WL 63077, at *5 (10th Cir. Feb. 17, 1998) (applying Kansas law and citing *J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512 (1988)).  In its brief, Tyson contends that plaintiffs' quantum meruit claims cannot be certified because plaintiffs have come forward with no evidence whatsoever that plaintiffs in this case conferred a benefit on Tyson and, in any event, any such evidence would necessarily be individualized in nature such that individual issues would predominate.

At oral argument, plaintiffs clarified that their quantum meruit claims are based on the same theory of liability as their KWPA claims–that is, that donning, doffing, washing, walking and other off-the-clock activities performed by plaintiffs constitute compensable work and that any "work" performed by employees necessarily confers a benefit on the employer.  According to plaintiffs, then, they will not need to show, on an individual basis, that each plaintiff conferred a benefit on Tyson.  Rather, plaintiffs contend that they can prove the element of "conferred

benefit" through evidence that is common to the class by simply showing that all plaintiffs performed such activities (and the record confirms that they did) and that the activities benefitted Tyson.

During oral argument, both Tyson and the court expressed doubt about whether plaintiffs' off-the-clock activities actually conferred a benefit on Tyson and the court is not convinced that plaintiffs' quantum meruit claims, as articulated by plaintiffs, even state a claim for relief that is plausible on its face. Nonetheless, the court is mindful that plaintiffs' burden at this stage is not to prove the element of conferred benefit but to show that the element of conferred benefit "is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Hydrogen Peroxide*, 552 F.3d at 311-12; *Shook v. Board of County Commr's of County of El Paso (Shook II)*, 543 F.3d 597, 612 (10th Cir. 2008) (a district court "may not evaluate the *strength* of a cause of action at the class certification stage"). Plaintiffs' theory underlying their quantum meruit claims is essentially that the performance of donning, doffing, washing and related activities confers a benefit on Tyson because plaintiffs, having performed those activities, are ready and able to begin work on the production line. Under this theory of recovery, there is no need for individual class members to present evidence that varies from member to member; the same evidence will certainly suffice for each member. Thus, plaintiffs have shown that the element of conferred benefit is capable of proof at trial through evidence that is common to the class.

23

2.      Superiority

The requirement that a class action be the superior method of resolving the claims insures that there is no other available method of handling the litigation which has greater practical advantages.  *See* Advisory Committee Notes to the 1966 Amendment to Fed. R. Civ. P. 23. Tyson contends that a class action is not the superior method of adjudication because of the individualized nature of proof required concerning, by way of example, the particular clothing worn by and equipment utilized by each plaintiff.  However, individualized inquiries concerning the particular clothing worn by each plaintiff, the equipment maintained by each plaintiff, and even the amount of compensation each plaintiff may have already received for certain activities by virtue of supervisor discretion are simply issues of damages if the finder of fact determines that Tyson is required to compensate its employees for time spent donning and doffing and has failed to do so.  That overarching question–whether Tyson must pay class members for time spent donning, doffing, washing, walking and the like–is best resolved through a class action, as the alternative is potentially thousands of individual lawsuits concerning the same core issues.

## V.      Appointment of Counsel

An order certifying a class must also appoint class counsel that will adequately represent the interests of the class.  Fed. R. Civ. P. 23(c)(1)(B), (g)(1).  The court must consider the work counsel has done in identifying or investigating potential claims in the actions, counsels' experience in handling class actions and other complex litigation and claims of the type asserted

in the present action, counsels' knowledge of the applicable law, and the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

Plaintiffs are presently represented by two law firms, the Stueve Siegel Hanson LLP law firm, located in Kansas City, Missouri and the Outten & Golden LLP law firm, based in New York, New York.  Plaintiffs seek the appointment of both firms as joint class counsel.  The court is personally familiar with the Stueve Siegel Hanson LLP law firm and, at the suggestion of plaintiffs' counsel and without objection from Tyson, has also reviewed the firm's website which functions as a firm resume.  The court finds that the firm of Stueve Siegel Hanson LLP fully satisfies the criteria set forth in Rule 23(g)(1)(C) and will adequately represent the interests of the class as counsel.  While the court is not familiar with the Outten & Golden LLP law firm, the court has also reviewed the website of that firm and finds that it also satisfies the Rule 23(g)(1) criteria and will adequately represent the interests of the class.  These firms, then, are appointed as joint class counsel for this action.

## VI.    Notice

For purposes of sending notice to potential class members, plaintiffs ask the court to direct Tyson to provide to plaintiffs within 11 days of the date of this order the names, addresses, phone numbers, employee identification numbers and social security numbers for potential class members.  Plaintiffs also ask the court to require the parties to submit a joint proposed notice within 14 days of the date of this order.  Tyson does not object to providing any of the

25

information requested,[8] does not object to the submission of a joint proposed order and does not object to plaintiffs' proposed deadlines.  Tyson, then, shall provide the requested information to plaintiffs within 11 days of the date of this order and the parties are directed to meet and confer in an attempt to reach agreement on the form and substance of the proposed notice to potential class members.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for class certification and conditional collective action certification (doc. 716) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** Tyson shall provide the information requested by plaintiffs' counsel for the purpose of sending notice to potential class members within 11 days of the date of this order; the parties shall meet and confer concerning the form and substance of a proposed notice; and the parties are directed to submit a joint proposed notice within 14 days of the date of this order.

---

[8]Although Tyson did not object to providing the social security numbers of potential class members to plaintiffs, the court, during oral argument, independently inquired into plaintiffs' counsel's need for such sensitive information at this juncture (as opposed to seeking such information only for those employees whose notices are returned as undeliverable) and plaintiffs' counsel persuaded the court that social security numbers are a critical tool in locating potential class members.  Plaintiffs' counsel also assured the court that they would stipulate to the confidentiality of such information and would return the information to Tyson upon completion of the notice process.

**IT IS SO ORDERED.**

Dated this 12th day of February, 2009, at Kansas City, Kansas.

 s/ John W. Lungstrum _____
John W. Lungstrum
United States District Judge