<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF KANSAS</u>

| | |
|---|---|
| ADELINA GARCIA, ANTONIO GARCIA, and JERONIMO VARGAS-VERA, individually, and on behalf of a class of others similarly situated<br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC., and<br>TYSON FRESH MEATS, INC.,<br>Defendants. | Case No.  06-2198-JWL/DJW<br><br>**REDACTED FOR**<br>**PUBLIC FILING** |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF**
**PARTIAL SUMMARY JUDGMENT**

<u>MOTION AND STATEMENT OF THE MATTER BEFORE THE COURT</u>

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Plaintiffs move the Court for summary judgment in Plaintiffs' favor and against Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (together "Tyson") on the following issues:

1.      Plaintiffs' donning and doffing activities are "integral and indispensable" and therefore trigger the beginning and end of the compensable work day;

2.      Plaintiffs' are entitled to summary judgment in their favor on their pre-2007 walking time claims;

3.      Time that Plaintiffs have spent performing donning and doffing activities during unpaid lunch breaks is compensable as a matter of law;

4.      Plaintiffs' daily 20 minute rest break, which has been unpaid since April 2010, is compensable as a matter of law because it is not a bona fide meal period; and

5.      Defendants' affirmative defense that Plaintiffs' uncompensated time was *de minimis* fails as a matter of law.

## **TABLE OF CONTENTS**

Motion and Statement of the Matter Before the Court      i

Table of Contents      ii

Table of Authorities      iv

Introduction      vi

Statement of Facts      viii

     A.   The Parties      viii

     B.   Tyson Requires Workers to Don/Doff Sanitary
and Protective Equipment      ix

     C.   Tyson Does Not Pay for Actual Donning/Doffing and Walking Time      xii

     D.   Tyson Exchanged Paid Donning and Doffing for Unpaid Rest Breaks      xvi

     E.   Tyson Can Record Workers' Actual Time, But Does Not Do So      xviii

     F.   Additional Undisputed Facts      xix

Questions Presented      1

Argument      1

     I.   Legal Standard for Summary Judgment      1

     II.   The Clothing and Equipment Tyson Requires Plaintiffs to Wear is
"Integral and Indispensable"      2

         1.   *The Clothing and Gear is Required to be Worn*      4

         2.   *The Clothing and Gear is Necessary for Workers to
Perform Their Jobs*      5

         3.   *The Clothing and Gear is Worn Primarily for Tyson's Benefit*      6

     III.   The Continuous Workday Analysis Applies to Plaintiffs' State Law Claims      7

     IV.   Plaintiffs are Entitled to Summary Judgment on Their Pre-2007
Walking Time Claims      9

     V.   Donning, Doffing, and Walking During Unpaid Breaks is Compensable      10

     VI.   Plaintiffs' Post April 2010 Rest Breaks are Compensable      11

VII.    Plaintiffs' Unpaid Time is Not *De Minimis*                                      14

    1.   *The Work is Regular*                                                         14

    2.   *The Aggregate Amount of Compensable Time*                      15

    3.   *The Practical Administrative Difficulty of Recording the Additional Time*   16

Conclusion                                                                                       17

Index of Exhibits (All exhibits are REDACTED and separately filed under seal)

## __TABLE OF AUTHORITIES__

Statutes and Regulations

| | |
|---|---|
| 29 U.S.C. § 203(g) | 7 |
| 29 C.F.R. § 785.18 | 12 |
| 29 C.F.R. § 785.19 | 11 |
| 29 C.F.R. § 785. 47 | 14 |
| K.S.A. § 44-313 | 7 |
| K.S.A. § 44-314 | 7 |
| K.A.R. 49-20-1 | 9 |
| K.A.R. 49-30-3 | 9, 11, 13 |

Cases

| | |
|---|---|
| *Chavez v. IBP, Inc.*, 2005 WL 6304840 (E.D. Wash. May 16, 2005) | 10 |
| *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007) | 4, 14, 15 |
| *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671 (10th Cir. 2002) | 2 |
| *Elkins v. Showcase, Inc.*, 704 P.2d 977 (Kan. 1985) | 8 |
| *Fox v. Tyson Foods, Inc.*, 2002 WL 32987224 (N.D. Ala. Feb. 4, 2002) | 4 |
| *Glen L. Martin Neb. Co. v. Culkin*, 197 F.2d 981 (8th Cir. 1952) | 14 |
| *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) | 2, 7, 10 |
| *Jackson v. Derby Oil Co.*, 139 P.2d 146 (Kan. 1943) | 8 |
| *Jordan v. IBP, Inc.*, 542 F.Supp.2d 790 (M.D. Tenn. 2008) | 4 |
| *Lifewise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004) | 1 |
| *McDonald v. Kellogg Co.*, -- F.Supp.2d --, 2010 WL 3724649 (D. Kan. Sept. 16, 2010) | 3, 4, 6 |
| *Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956) | 12, 13 |
| *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994) | 4 |

*Reich v. Monfort, Inc.*, 144 F.3d 1329 (10th Cir. 1998)                                    14, 15

*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848 (10th Cir. 2003)                           1

## INTRODUCTION

Plaintiffs are meat-packing workers at Tyson's (formerly IBP's) beef slaughter and processing facilities in Finney County and Emporia, Kansas.  The material facts governing liability are undisputed: in order to ensure a wholesome product, comply with sanitation and safety laws and avoid costs associated with injured workers, Tyson requires Plaintiffs to don sanitary and protective clothing and equipment (often referred to as "PPE") before they may begin their jobs on the production line.  Plaintiffs must also doff their PPE after their shift.  Both donning and doffing take place in Tyson's locker rooms, which are some distance from Plaintiffs' workstations on the production floor, so Plaintiffs must walk through the facilities after donning prior to the start of their shift, and before doffing at the conclusion of their shift.  Donning and doffing also occur during unpaid breaks because workers are not permitted to wear all their PPE to the bathroom or outside the production area.

No later than 1994, Tyson (by its predecessor in interest, IBP, Inc.) knew that donning and doffing PPE is "integral and indispensable" to the work done on the production line.  No later than 1996, Tyson knew it was required to keep records of actual time worked by its workers when Judge Earl E. O'Connor entered a permanent injunction specifically ordering Tyson to "implement recordkeeping practices sufficient to record the time spent by each employee in performing the pre-shift and post-shift activities found to be compensable."  But Tyson has neither recorded nor paid Plaintiffs for all the time they have engaged in compensable donning, doffing, and related activities before and after their shift or during unpaid breaks.  Tyson has also ignored a 2001 opinion letter from the U.S. Department of Labor that instructed Tyson to record the actual time workers spend on such activities.  Instead, Tyson implemented a compensation scheme called "K-code" under which some workers received just four minutes of compensation

per day for all donning and doffing activities, without regard to the actual time they spent on those activities.

Finally in April of 2010, as a multitude of lawsuits by the Department of Labor and private parties intensified pressure on Tyson's unlawful pay practices, and based on Tyson's own determination that time paid for donning and doffing must increase, Tyson increased the amount of K-code pay to 20 minutes per day.[1]  Yet Tyson continues to defy the law by failing to keep accurate time records and refusing to pay back-wages that are due for those same activities performed by Plaintiffs prior to April 2010.  And just as crucially, Tyson's policy of paying 20 minutes per day of K-code time for donning doffing and walking activities coincides with its April 2010 decision to stop paying workers for their daily rest break.  Thus, the net effect of Tyson's new policy is merely to shift the character of the unpaid time, not to correct Tyson's unlawful behavior.

As discussed in more detail below, the undisputed facts are that:

- Tyson does not keep actual records of the time class members spend performing donning and doffing activities;

- Tyson does not pay its workers for the actual time they spend performing pre and post-shift donning, doffing and walking activities;

- Tyson's pay practices do not comply with the continuous workday rule; and

- Tyson has not paid its class members for all of the time they <u>actually</u> spent performing donning and doffing activities throughout the continuous workday.

Under these circumstances, partial summary judgment in favor of Plaintiffs is appropriate.

---

[1] Plaintiffs contend the actual time spent on donning- and doffing-related activities exceeds 20 minutes per day, as shown by the time study conducted in 2010 by Dr. Robert G. Radwin, who concludes that the mean daily actual time for such activities is 29.33 minutes at Finney County and 25.76 minutes at Emporia.

## STATEMENT OF FACTS

A.      **The Parties**

        1.      Tyson Fresh Meats, Inc.—a wholly owned subsidiary of Tyson Foods, Inc.
(together "Tyson")—is the world's largest supplier of premium beef and pork, as well as allied
products, such as tanned hides used to make leather.  Answer to Am. Compl. ¶ 1 (Doc. 697);
Pretrial Order ("PTO") ¶ 4.a.1 (Doc. 873).

        2.      Tyson operates beef processing facilities in Finney County and Emporia,
Kansas.  The Finney County plant has also slaughtered cattle throughout the applicable class
period, and the Emporia plant slaughtered cattle until February 13, 2008.  PTO ¶ 4.a.3 (Doc.
873).

        3.      Plaintiffs are Tyson's current and former hourly "production" employees
at the Finney County and Emporia facilities during the applicable class period.  Plaintiffs include
(i) a state law Rule 23 class consisting of over 11,000 production employees, and (ii) an FLSA
collective action class of approximately 1,993 production employees who filed timely consent-
to-join forms pursuant to § 216(b) of the Fair Labor Standards Act.  PTO ¶¶ 4.a.9, 6.b.ii.2 (Doc.
873).

        4.      The "production" areas of the Finney County plant include, among others,
slaughter, processing, and coolers.  PTO ¶ 4.a.6 (Doc. 873).  The "production" areas of the
Emporia plant currently include, among others, processing and ground beef, and included
slaughter from the beginning of the class period until February 2008.   PTO Stipulation ¶ 4.a.7
(Doc. 873).

        5.      ████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

6.   ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████

7.   ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

8.   ████████████████████████████████████████████████

█████████████████████████████████████████████████████████

**B.    Tyson Requires Workers to Don/Doff Sanitary and Protective Equipment**

9.   ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████

10. ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

11. ██████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

12. ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████

13. ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

14. ████████████████████████████████████████

15. ████████████████████████████████████████

16. ████████████████████████████████████████

17. ████████████████████████████████████████

18. ████████████████████████████████████████

19. ████████████████████████████████████

20. ████████████████████████████████████

21. ████████████████████████████████████

**C.    Tyson Does Not Pay for Actual Donning/Doffing and Walking Time**

22. ████████████████████████████████████

23. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

24. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

25. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

26. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

27. ██████████████████████████████

████████████████████████

28. ██████████████████████████████

████████████████████████████████

█████████████

29. ██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

30. ██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

31. ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

32. ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

33.     On June 4, 2010, Tyson entered a Consent Judgment in *Solis v. Tyson Foods, Inc.*, Case No. 02-CV-01174, a case involving Tyson's chicken facilities in the United States District Court for the Northern District of Alabama.  In that Consent Judgment, Tyson agreed "Each hourly paid processing employee who works on the production line during a production shift will be paid for all hours worked from the start of his or her first principal activity of the work day until the last principal activity of his or her work day, including any time spent walking and waiting after the first principal activity and before the last principal activity has been performed, with the exception of any time taken for any bona fide meal period…. This

---

[2] As explained herein, Tyson's April 2010 increase in "K code" pay has been offset by eliminating pay for workers' rest breaks.

period of time is referred to… as the 'continuous workday.'" Solis Consent Judgment, p. 2 ¶ A.1 (Ex. R).

34.     The June 4, 2010 Consent Judgment in *Solis v. Tyson Foods, Inc.* also states: "Defendant shall record and pay for all time until the employees' last work activity is complete prior to any unpaid break.  Defendant shall also record and pay for all time from the start of the first work activity after any unpaid break.  Work activities include the obtaining (excluding walking and/or waiting to obtain), disposal, donning and doffing of protective and sanitary items, and washing and sanitizing by employees of themselves and their protective and sanitary items."  Consent Judgment p. 2 ¶ A.1.b (Ex. R)

35.     ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████  Prior to April 2010, donning and doffing during the unpaid meal-break was not paid.  PTO ¶¶ 4.a.20-21, 4.a.49-50 (Doc. 873).

**D.     Tyson Exchanged Paid Donning and Doffing for Unpaid Rest Breaks**

36.     ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████

37.     ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████

38. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████

39. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

40. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

**E.      Tyson Can Record Workers' Actual Time, But Does Not Do So**

41. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

42. ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

43. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

44.      The *Solis* Consent Judgment provides that Tyson "shall not… fail to make, keep, and preserve adequate and accurate employment records of the wages paid to and hours worked by employees covered by this consent judgment from each employee's first principal activity to that employee's last principal activity."  Solis Consent Judgment, pp. 5-6, ¶ B (Ex. Q).

45. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

46. ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

**F.     Additional Undisputed Facts**

47.     Tyson is an employer subject to the FLSA.  PTO ¶ 6.b.ii.1 (Doc. 873).

48.     Tyson is an employer subject to the Kansas Wage Payment Act.  PTO ¶ 6.d.ii.1. (Doc. 873).

49.     Tyson has been engaged in interstate commerce or in the production of goods for interstate commerce throughout the relevant time period.  PTO ¶ 4.a.2. (Doc.873).

50.     ███████████████████████████████

████████████████████████████████████████

███████████████████████

51.     ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

**QUESTIONS PRESENTED**

1. Are Plaintiffs' donning and doffing activities "integral and indispensable"?

2. Are Plaintiffs' entitled to summary judgment in their favor on their pre-2007 walking time claims?

3. Are donning and doffing activities during unpaid lunch breaks compensable as a matter of law?

4. Is the unpaid 20 minute rest break, which has been unpaid since April 2010, compensable as a matter of law because it is not a bona fide meal period?

5. Does Defendants' *de minimis* defense fail as a matter of law?

**ARGUMENT**

**I.    Legal Standard for Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004) (citations omitted).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson,* 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* (citing *Celotex Corp. v.*

1

*Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex,* 477 U.S. at 325).  If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Id.* (citing Fed.R.Civ.P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

Not only is partial summary judgment appropriate in this case, but the Court's guidance is necessary in order to properly prepare for trial.  For example, the parties' must know which activities are integral and indispensable as a matter of law in order to know when the compensable "continuous workday" begins for purposes of time measurements and damages analyses.  Similarly, rulings on the compensability of meal and rest periods will impact the parties' time measurements and damages analyses.

## II.     The Clothing and Equipment Tyson Requires Plaintiffs to Wear is "Integral and Indispensable."

In *IBP, Inc. v. Alvarez,* a unanimous Supreme Court held that "[a]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity,'" and is therefore compensable.  546 U.S. 21, 37 (2005).  The Court further held that time spent during a continuous workday, including any activity that occurs after the beginning of the employee's first principal activity, is covered by the FLSA.  *Id.  Alvarez,* therefore, dictates that the critical

issue in donning, doffing and walking time cases like this one is identifying the point in time at which employees first (and last) engage in an "integral and indispensable" activity.  This bright-line test articulated in *Alvarez* means courts need not engage in complicated breakdowns of the amount of time workers devote to any individual task among various pre- and post-shift tasks. Instead, once the first and last "integral and indispensable" activities are identified, the beginning and end of the continuous workday can be determined and *all* of an employee's compensable time during the continuous workday can be measured and compensated.  It is undisputed that Tyson does not pay its workers under the continuous workday.

Numerous federal courts after *Alvarez* have agreed that the activities at issue here are integral and indispensable.  Indeed, this Court recently found that similar donning and doffing activities in a bakery facility constitute integral and indispensable activities which define the continuous workday.  *McDonald v. Kellogg Co.,* ---F.Supp.2d ---, 2010 WL 3724649, at *17 (D. Kan. September 16, 2010).  In *McDonald*, workers were required to wear a uniform consisting of shirts, pants, shoes, hairnets, ear plugs and safety glasses.  *Id.*  They were permitted to change at home or at the facility, but most changed at the facility where the defendant cleaned the uniforms and returned them to employee lockers.  *Id.*  After changing their uniforms, the employees would proceed to the production area – clocking in and donning ear plugs, hair nets, etc. on their way to the production area.  *Id.* at *2.  The workers were paid on "gang time."  *Id.*  Analyzing the legal landscape on this issue, this Court found that the donning and doffing was indeed integral and indispensable.  *Id.* at *17.  In so holding, the Court found that the donning and doffing activities were (i) required, (ii) primarily benefitted the employer, and (iii) necessary.  *Id.* at *17-18.

Similarly, the Third Circuit recently made the same finding that these donning and doffing activities in a Tyson chicken processing plant—including smocks, hair nets, beard nets, ear plugs, safety glasses, aprons, sleeves, etc.—constitute "'work' as a matter of law."  *De*

*Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007), *cert. denied*, 128 S.Ct. 2902 (2008); *see also Jordan v. IBP, Inc.,* 542 F.Supp.2d 790, 809 (M.D. Tenn. 2008) (finding the donning and doffing of the workers' required frocks in a Tyson pork plant was integral and indispensable and delimited the beginning of the continuous workday); *Fox v. Tyson Foods, Inc.*, 2002 WL 32987224 at *10 (N.D. Ala. Feb. 4, 2002) ("donning and doffing of sanitary and safety equipment is 'work' within the meaning of the FLSA because it is controlled by and required by Tyson, and because it primarily benefits Tyson"), *accord Reich v. IBP, Inc.*, 38 F.3d 1123, 1124-25 (10th Cir. 1994) (finding numerous items "integral and indispensable": including mesh apron, plastic belly guard, mesh sleeves, plastic arm guards, wrist wraps, mesh gloves, rubber gloves, 'polar sleeves,' rubber boots, chain belt, weight belt, a scabbard, and shin guards, hard hats, earplugs, safety footwear and safety eyewear).

In addition to the wealth of case law indicating Tyson's required donning and doffing activities are integral and indispensable, Plaintiffs also satisfy the three-part test that courts routinely use in determining whether an activity is integral and indispensable.  In *McDonald*, this Court observed that courts often look to the following three factors in making an "integral and indispensable" decision: (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer.  *McDonald*, 2010 WL 3724649, at *15.  Each of those factors weighs in favor of a finding that the donning and doffing activities here are integral and indispensable:

1.    *The Clothing and Gear Is Required To Be Worn.*

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

2.      *The Clothing and Gear is Necessary for Workers to Perform Their Jobs.*

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  As a result, the principal activity of working on the production line cannot occur without the required clothing and protective gear.  That is the definition of

5

necessary.  *See McDonald,* 2010 WL 3724649 at *18 (finding bakery uniforms and protective gear necessary).

>    3.    *The Clothing and Gear is Worn Primarily for Tyson's Benefit.*

The gear at issue is primarily for the benefit of the employer.  The bottom line is that Tyson is the primary beneficiary of its clothing and gear requirements because, without them, Tyson could not operate, it could not sell to consumers, and it would be less profitable – if at all. As this Court noted in *McDonald*, "the uniform and accessories requirements primarily benefit defendant by ensuring that defendant is able to produce and sell uncontaminated food products." *McDonald*, 2010 WL 3724649, at *17.  Tyson, too, requires Plaintiffs to don and doff PPE so that Tyson may produce and sell uncontaminated food products, and therefore the donning and doffing is compensable under the FLSA as a matter of law.

In sum, Plaintiffs request that this Court rule as a matter of law that donning and doffing sanitary clothing and protective gear is integral and indispensable and therefore defines the bounds of the continuous workday.  Upon such a ruling, the jury may be given the appropriate instructions for determining the time such activities occur and to what extent they, and the continuous workday, are not paid for.

III.     **The Continuous Workday Analysis Applies to Plaintiffs' State Law Claims.**

The same standard applies—and the same result is required—for Plaintiffs' claim under Kansas labor law.[3]  Plaintiffs claim that they should be awarded back wages pursuant to the Kansas Wage Payment Act's ("KWPA's") instruction that employers must pay for "all wages due."  K.S.A. § 44-314 (a).  The plain language of the KWPA makes clear that its reach is just as broad, if not broader, than the FLSA.  Indeed, the Kansas legislature adopted the FLSA's broad standard of compensability for the KWPA by defining an "Employee" as one who is "allowed or permitted to work."  K.S.A. § 44-313(b).  This is the same standard for compensability under FLSA, which defines "employ" to mean "to suffer or permit to work."  *Alvarez*, 546 U.S. at 25 n.1 (quoting 29 U.S.C. § 203(g) and calling it "[t]he most pertinent definition" of "work").  The KWPA also broadly defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis," K.S.A. § 44-313(c), and emphatically requires that "[e]very employer *shall* pay *all wages due*," K.S.A. § 44-314(a) (emphasis added).  Thus, the KWPA facially requires Tyson to pay for all work it "allows or permits," a standard easily met for donning and doffing PPE, which Tyson *requires*.

Legislative history to the KWPA shows that off-the-clock work was one of the harms the Act was specifically aimed at remedying.  The March 7, 1973 Minutes of the House Committee on Labor and Industry include a statement by Mr. T. McCune of the Kansas Labor Department, who begins by explaining that the legislation is "intended to protect a class of people who are

---

[3] Plaintiffs' state-law claim under the Kansas Wage Payment Act applies to all Plaintiffs, but is limited to damages for which Plaintiffs do not have an overlapping remedy under the FLSA, such as unpaid wages in weeks that do not meet the FLSA's 40-hour threshold for "overtime" and all time for Plaintiffs who neither affirmatively opted in to assert a claim under the FLSA nor opted out of the Rule 23 class.

least able to protect themselves." (Mr. McCune's statement is referenced in and attached to the March 7, 1973 Minutes of the House Committee on Labor and Industry, attached hereto as Ex. V) Mr. McCune explained, "Probably the most basic precept of employer-employee relations is that employees be paid their earned wages, in full, in money, and without delay." *Id.* at p. 2. Among the pernicious wrongs to be corrected, Mr. McCune observed that "IN SOME CASES [WORKERS] ARE REQUIRED TO CONTINUE AFTER CLOSING TIME, AT <u>NO</u> PAY!" *Id.* at p. 3 (emphasis in original). Thus, off-the-clock work is a specific harm the KWPA aims to remedy.

While the Kansas Supreme Court has specifically ruled that the KWPA may be used for the recovery of back wages,[4] it appears from the paucity of cases that it has not addressed the specific compensability of donning and doffing activities. But there is no reason, legal or otherwise, that a Kansas court would apply a different standard, especially when the KWPA's statutory language "allowed or permitted" mirrors the FLSA's "suffer or permit" standard. Indeed, the Kansas Supreme Court has itself broadly construed the FLSA's terms. *See Jackson v. Derby Oil Co.*, 139 P.2d 146, 151 (Kan. 1943) (construing the FLSA's "suffer or permit" standard broadly to include any activity performed "with the knowledge of the employer"). Thus, there is no reason to believe it would construe the KWPA more narrowly. Given its previous broad construction of the FLSA, the Kansas Supreme Court would likely construe the KWPA to apply broadly to, at a minimum, the same activities required by the employer that are found compensable under the FLSA.

Finally, the Kansas Department of Labor has defined "hours worked" to include "any period of time" when the employer "or anyone having management responsibilities" "has made

---

[4] *See Elkins v. Showcase, Inc.,* 704 P.2d 977, 720 (Kan. 1985) (affirming judgment in favor of employee for back wages).

any actual[,] inferred or implied requirement that work be performed." K.A.R. 49-30-3(a)(4).[5] And the Kansas Department of Labor website answers the question "Does an employer have to pay for all hours worked or services rendered?" by responding, "Yes, if the employer has authorized you to work or accepts the benefit of your work." *Available at* http://www.dol.ks.gov/ES/faq_wages.html (last visited October 25, 2010). Here, Plaintiffs' uncompensated work is not only authorized; it is expressly mandated, and is therefore compensable under Kansas law.

In sum, Plaintiffs seek a ruling that the determination of the meaning of work and its compensability should be the same under both the KWPA and the FLSA on the facts of this case.

## IV.  Plaintiffs are Entitled to Summary Judgment On Their Pre-2007 Walking Time Claims.

Plaintiffs also seek summary judgment with regard to their walking time claim.  ███

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████  Although Plaintiffs assert that Tyson's current method of payment for walking time is inadequate, there is no dispute that prior to January 2007, Tyson did not even attempt to pay for all walking time within the continuous workday. As discussed above, Plaintiffs are required to don and doff PPE that, in turn, sets the outer limits of the continuous workday. As a result, all walking time that occurs within the contours of the continuous workday is compensable as a matter of law. *Alvarez*, 546

---

[5] The Kansas Department of Labor, in its implementing regulations of the KWPA, looks to interpretations of the FLSA by the United States Secretary of Labor in defining "allowed or permitted to work" in the context of the distinction between employees and independent contractors. K.A.R. 49-20-1(e). It follows that Kansas courts, too, would look to interpretations of federal labor laws that have language similar to Kansas law.

U.S. at 37.  Plaintiffs are entitled to summary judgment for unpaid walking time prior to January 2007.

## V.     Donning, Doffing, and Walking During Unpaid Breaks is Compensable.

Prior to April 2010, Plaintiffs received an unpaid daily meal break that was ostensibly 30 minutes in duration. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

Plaintiffs leave the production floor for their meal, necessitating that they walk to the cafeteria, locker room, outside the facility, etc..  Thus, at least prior to April 2010, Plaintiffs did not really have a 30 minute break once they completed all of their donning and doffing activities.  After deducting the amount of time used for donning, doffing, and walking, Plaintiffs did not receive a full 30 minutes that are truly free to enjoy their meal.

Plaintiffs do not seek judgment that the *entire* meal period is compensable.  Rather, Plaintiffs seek summary judgment only that the time they spend performing donning, doffing, and walking during the meal period is compensable.  Tyson was instructed over five years ago by the U.S. District Court for the Eastern District of Washington, construing applicable regulations and related case law, that "meal break donning and doffing is compensable work." *Chavez v. IBP, Inc. and Tyson Foods, Inc.*, 2005 WL 6304840 at *13 (E.D. Wash. May 16, 2005).  Nevertheless, Tyson has persisted in its unlawful policy for years, and still does not record and pay for workers' *actual* donning and doffing activities during the meal period.

The time spent during the unpaid 30 minute break donning, doffing, and walking is compensable because it falls within the continuous workday.  That is, the break does not really begin until the employee has completed doffing, and the break ends prematurely when the

10

worker must begin re-donning.  Additionally, these lunchtime donning and doffing activities are compensable for the same reason such activities are compensable at the start and end of the workday—they are integral and indispensable activities mandated by Tyson during the continuous workday.

The DOL regulation on meal breaks provides that meal time is not "worktime" *only* if the worker is "completely relieved from duty for the purposes of eating regular meals."  29 C.F.R. § 785.19(a).  The regulation clarifies that a worker "is not relieved if he is required to perform *any* duties."  *Id.* (emphasis added).  Kansas state law conforms to the federal standard.  The Kansas Department of Labor regulation specifies that mealtime is uncompensable only if it is at least 30 minutes, during which time "no services are required to be performed."  K.A.R. 49-30-3(b)(2).  Because workers' mealtime doffing, donning, and walking is done to comply with Tyson's requirements which are intended to satisfy USDA regulations and ensure a wholesome product, such time is compensable under Kansas law.

Finally, it is notable that ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ In sum, Plaintiffs seek a ruling that meal period donning, doffing and walking is compensable.

## VI.   Plaintiffs' Post April 2010 Rest Breaks are Compensable.

Prior to April 2010, Plaintiffs received one unpaid 30 minute meal period and one *paid* 15 minute rest period.  ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ In

11

making these changes, Tyson replaced the 15 minute paid break with a 20 minute unpaid break. Plaintiffs seek partial summary judgment that the post-April 2010 20 minute rest break is compensable because it is not a *bona fide* meal period.  This policy of not paying for the daily rest break is unlawful because it violates the "continuous workday" rule.  The Department of Labor unambiguously requires that "[r]est periods… running from 5 minutes to about 20 minutes" "must be counted as hours worked."  29 C.F.R. § 785.18.  Over 50 years ago, the Tenth Circuit observed that this regulation had been enforced since its origin in 1940, and held that rest breaks are compensable.  *Mitchell v. Greinetz*, 235 F.2d 621, 624-25 (10th Cir. 1956).  *Mitchell* involved factory workers who were not compensated for mandatory 15 minute rest periods twice per day.  Affirming the application of the DOL rest break regulation, the *Mitchell* court observed, "When Congress in 1949 amended the Fair Labor Standards Act it provided in Section 16(c)… that all past orders, regulations and interpretations of the Administrator [now the DOL] should remain in force and effect except only insofar as they were inconsistent with such amendments." *Id.* at 625.  The *Mitchell* court further observed that the U.S. Supreme Court had been persuaded by the then-existing regulations.  *Id.*  The DOL's position that rest breaks were compensable predated the 1949 amendment to the FLSA, and the *Mitchell* court gave "great weight" to the agency interpretation and held that it was "the correct interpretation of the Act as it relates to the question of short break periods."  *Id.*

The DOL's requirement that rest breaks be paid, now enforced for 70 years, is a bright-line test that conforms to the "continuous workday" rule.  The regulation makes clear not only that rest breaks must be compensated, but also that their compensable time "may not be offset against other working time."  29 C.F.R. § 785.18.  Tyson's break time policy, purporting to offset break time with compensable donning- and doffing-related activities, directly contravenes

12

the regulation and the continuous workday rule.  And the undisputed facts leave no doubt that the break is a "rest" break, <u>not</u> a *bona fide* meal period.

Tyson has *stipulated* that the break is a "rest break" that is distinct from the "meal break." SOF ¶ 39.  ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████  Moreover, the additional 5 minutes appended to the rest break for donning, doffing, and walking are not a gratuity that converts the 20 minute break into a 25 minute break, because those compensated minutes are for integral and indispensable work activities.

Although Plaintiffs' rest breaks are compensable regardless of whether they are mandatory or merely permitted, it is notable that the rest break is mandatory.  █████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████  Like in *Mitchell*, Plaintiffs "must not work during the rest period and are permitted to use the time for any non-work activity they might choose."  235 F.2d at 623.  And like in *Mitchell*, the rest breaks are compensable under the FLSA.  Kansas law, too, is clear that Plaintiffs' rest breaks must be paid.  Kansas Department of Labor regulation provides that in order to be <u>un</u>compensated, a break must be "thirty (30) minutes or more… such as: (A) Lunch periods of thirty (30) minutes or more."  K.A.R. § 49-30-3(b)(2).  The undisputed facts show that Plaintiffs' rest break—comprised of 20 unpaid minutes plus 5 paid minutes for donning and doffing and walking—is not a *bona fide* meal period of 30 minutes or more, and is therefore compensable as a matter of law.

**VII.     Plaintiffs' Unpaid Time is Not *De Minimis*.**

On the undisputed facts, Tyson cannot meet its burden to prove its affirmative defense that Plaintiffs' uncompensated time is *de minimis*.  The *de minimis* defense requires Tyson to prove it satisfies three factors: (1) the regularity of the additional work; (2) the aggregate amount of compensable time; and (3) the practical administrative difficulty of recording the additional time.  *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998).   In making a *de minimis* determination, the Court examines all three factors.  *Monfort,* 144 F.3d at 1334 (finding in favor of the employer on the first factor but, nonetheless, affirming the trial court's finding that donning and doffing time in a meat packing plant was not *de minimis* because the second and third factors weighed in favor of the employees).  Tyson's *de minimis* defense fails all three of these factors.

     *1.     The Work is Regular*

Tyson's defense fails because the uncompensated donning, doffing, walking and cleaning time happens with absolute regularity, every single day, every single shift, like clockwork.  The *de minimis* defense "applies only where… the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to count as hours worked any part, *however small*, of the employee's fixed or regular working time *or* practically ascertainable period of time he is *regularly* required to spend on duties assigned to him."  29 C.F.R. § 785.47 (emphasis added) (citing *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981, 987 (8th Cir. 1952)).  In contrast, Plaintiffs' donning and doffing here is not occasional or sporadic; it is a daily requirement mandated by Tyson under penalty of termination, and it is always performed outside the shift.  Tyson cannot evade its duty to pay for routine work, *however small*.

2.      *The Aggregate Amount of Compensable Time*

The aggregate amount of uncompensated time is substantial.  Tyson's recent policy change— ██████████████████████████████████████████████

███████████████—reflects that Tyson underpaid by at least 16 minutes per day when it previously paid 4 minutes of "K code" time to some workers.  Moreover, even Tyson's own time study for this litigation indicates █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ This far exceeds the "K code" time Tyson paid to class members prior to April 2010.  Although Tyson's study does not apply the "continuous workday" principle,[7] even it shows the amount of alleged underpayment is significant.

As a matter of law, this fails to be *de minimis*.  Crucially, it is the *aggregate* time (total unpaid time claimed in the case), not the individual time of each activity or each shift (e.g., 15 seconds to don a hairnet) that must be measured.  *De Asencio*, 500 F.3d at 374; *Monfort*, 144 F.3d at 1334.[8]  Indeed, the Tenth Circuit in *Monfort* looked at the aggregate uncompensated donning and doffing "over the period of two to three years" as well as "the total number of

---

[6] Plaintiffs' expert's time study, which applied a continuous workday methodology, results in larger amounts of donning- and doffing-related time.

[7] Dr. Adams used an "elemental analysis" that ignores the actual time worked from the start of the first principal activity, and thus does not conform to the "continuous workday." Plaintiffs' time-study expert, Dr. Robert Radwin, conducted a study designed to conform to the continuous workday rule, and concluded that average donning and doffing and walking time at Emporia is 25.76 minutes, and at Finney County is 27.54 minutes in processing and 32.26 minutes in slaughter.  Ex. X at pp. 3, 10.

[8] And though it is not the daily unpaid time that must be measured, even on a daily basis, the unpaid time is not *de minimis* as a matter of law.

workers" in affirming the district court's rejection of a *de minimis* defense involving about 10 minutes daily at a meat packing plant.  144 F.3d at 1334.  More recently, the court in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 954 (W.D. Wis. 2008), granted plaintiffs summary judgment against the *de minimis* defense where uncompensated donning and doffing time was as little as 4.1 minutes.  Here, Plaintiffs seek damages for approximately 20 minutes per shift per worker for a period of approximately 7 years, and even Tyson's revised "K code" time and time-study reflect unpaid time exceeding 10 minutes per day.  Plaintiffs' expert has calculated damages well into the millions of dollars that includes literally millions of eligible shifts and hundreds of thousands of uncompensated hours.  This is not *de minimis*.

      *3.*     *The Practical Administrative Difficulty of Recording the Additional Time*

Finally, the undisputed facts show that the time is not administratively difficult to record. Tyson's own in-house supervising industrial engineer for its beef facilities, Monty Hahn, admitted that ███████████████████████████████████████████████████ ██████████████████████████████████████ Tellingly, Tyson has consented to recording workers' actual time in the *Solis* Consent Judgment – demonstrating that it can be done.  SOF ¶ 44.  And Tyson requires Plaintiffs to ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████ Tyson fails to record and pay for Plaintiffs' actual time not because it is difficult, but because it does not want to.  Indeed, this Court's 1996 injunction specifically required IBP to record accurate and actual time of its workers' compensable activities.  *Reich v. IBP, Inc.*, dated July 30, 1996 (D. Kan. Case No. 88-2171) (attached as Ex. Y).

Finally, Tyson's *de minimis* defense simply does not apply because the policy considerations underlying the defense are not present here.  The *de minimis* defense is meant to apply when:

> the period of time spent on an activity is so "insubstantial and insignificant" that it ought not be included in the work week. A few seconds or minutes of work beyond the scheduled working hours ... may be disregarded. Split-second absurdities are not justified....

*Monfort*, 144 F.3d at 1333 (citing *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680 (1946) (internal quotations omitted)).

## CONCLUSION

On the undisputed facts, Plaintiffs are entitled to partial judgment as a matter of law.  A ruling on the issues raised in this brief will properly narrow the disputed facts to be resolved by the jury and help the parties to properly prepare for trial.  Plaintiffs respectfully request that this Court GRANT their Motion for Partial Summary Judgment.

Dated:   October 29, 2010            Respectfully Submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ George A. Hanson
George A. Hanson       KS Bar #16805
hanson@stuevesiegel.com
Eric L. Dirks              D. Kan. Bar #77996
dirks@stuevesiegel.com
Lee R. Anderson       KS Bar #22755
anderson@stuevesiegel.com
460 Nichols Rd., Ste. 200
Kansas City, Missouri 64112
PH:     816-714-7100
FAX:  816-714-7101

OUTTEN & GOLDEN LLP
Adam T. Klein (admitted pro hac vice)
Email:  ATK@outtengolden.com
Justin M. Swartz (admited pro hac vice)
Email:  JSM@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
PH:      212-245-1000
FAX:   212-977-4005

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2010, I electronically filed the foregoing with the clerk of court using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

/s/ George A. Hanson
An Attorney for Plaintiffs

18