THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADELINA GARCIA, et al., individually, and on   )
behalf of a class of others similarly situated   )
                 Plaintiffs,   )
   )
       v.   )   Case No. 06-CV-2198-JWL-DJW
TYSON FOODS, INC., and   )
TYSON FRESH MEATS, INC.,   )
   )
            Defendants.   )
   )

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' STATE
LAW CLAIMS AND PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' FLSA
CLAIMS WITH MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT</u>**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' STATE LAW CLAIMS AND
PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' FLSA CLAIMS**

Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (hereinafter collectively "Tyson" or "Defendants"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, respectfully move this Court for summary judgment dismissing Plaintiffs' claims under the Kansas Wage Payment Act, K.S.A.§§ 44-312, *et seq*. and for quantum meruit under Kansas law in their entirety.

Defendants also respectfully move for partial summary judgment dismissing Plaintiffs' claims, brought pursuant to the Fair Labor Standards Act, for compensation for activities they perform during the meal period, for compensation for the unpaid portion of their 25-minute break, and to lengthen the limitations period for the federal collective action plaintiffs to three years instead of two years based on Defendants' alleged willful violations of the law. The arguments and authority in support of this Motion are set forth more fully in Defendants' Memorandum in Support and Index of Evidence filed concurrently herewith.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION ....................................................................................................1

II.    STATEMENT OF MATERIAL FACTS .................................................................2

      A.    History Of Litigation And Payment For Additional Minutes .................................2

      B.    Meal Period And Break Activities ........................................................6

      C.    No Agreement Regarding Payment For Donning And Doffing Activities ..........10

III.   ARGUMENT AND AUTHORITY .........................................................................11

      A.    Summary Judgment Standard ..............................................................11

      B.    Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs'
           Claims Under The Kansas Wage Payment Act .....................................................12

      C.    Plaintiffs' Claim For Quantum Meruit Is Insufficient As A Matter
           Of Law ..........................................................................................14

           1.    Plaintiffs Cannot Prove The Element Of A Conferred Benefit ................15

           2.    In The Circumstances Of This Case, The Statutory Provisions
                 Which Form The Basis For Plaintiffs' Other Claims Define The
                 Relationship Of The Parties Concerning Compensation; Therefore
                 No Equitable Claim For Quantum Meruit Is Available ...........................17

      D.    Any Activities Performed As Part of Plaintiffs' Meal Period Are Not
           Compensable Under The FLSA .........................................................19

           1.    Plaintiffs' Meal Period Qualifies As A Bona Fide Meal Period
                 Such That Any Activities Performed During The Meal Period
                 Are Non-Compensable ...................................................................19

            2.    Alternatively, Any Time Spent Performing Activities During
                 The Meal Period Is Non-Compensable Because Such Time Is
                 *De Minimis* ...................................................................................23

      E.    Plaintiffs' Claim For Compensation For The Unpaid Portion Of The
           25-Minute Break Fails As A Matter Of Law ......................................................24

           1.    The 25-Minute Break Does Not Qualify As A Compensable Rest
                 Break Under The FLSA ..................................................................24

        2.      The 25-Minute Break Is Also Non-Compensable As Off-Duty Time ......27

        3.      The 25-Minute Break Is Also Non-Compensable Under Kansas Law .....28

    F.    Defendants' Acted In Good Faith And Without Willfulness In The Manner In Which They Implemented Their "K Code" Payment System .........................29

        1.      Because Defendants Acted In Good Faith In Implementing Their K Code Payment System, Plaintiffs' Request For Liquidated Damages Must Be Denied As A Matter Of Law ......................................................29

        2.      Any Violation Of The FLSA By Defendants Was Not Willful And As Such, Plaintiffs Are Limited To A Two Year Statute Of Limitations Period ................................................................................................32

        3.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Claim Of A Willful Violation Of The KWPA ...........................................34

IV.   CONCLUSION ....................................................................................................36

## TABLE OF AUTHORITIES

**CASES**                                                                                                          **Page(s)**

*Abbe v. City of San Diego*, No. 05cv1629 DMS (JMA), 2007 WL 4146696
    (S.D. Cal. Nov. 9, 2007) ...................................................................................24

*Ackley v. Dep't of Corr. of State of Kan.*, 844 F. Supp. 680 (D. Kan. 1994) ..............................30

*Alvarez v. IBP, inc.*, 339 F.3d 894 (9th Cir. 2003) .......................................................24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................12

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...........................................23

*Avery v. City of Taladega*, 24 F.3d 1337 (11th Cir. 1994) ...............................................21

*Baum v. Great W. Cities, Inc.*, 703 F.2d 1197 (10th Cir. 1983) .....................................33

*Beckman v. Kan. Dept. of Human Resources*, 43 P.3d 891 ( Kan. App. 2002) ...........................34

*Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457 (10th Cir. 1997) .......................................12

*Blain v. Gen. Elec. Co.*, 371 F. Supp. 857 (W.D. Kan. 1971) .........................................27

*Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181 (E.D.N.Y. 2004) ..................19

*Brooks v. Village of Ridgefield Park,* 185 F.3d 130 (3d. Cir. 1999) .....................................29, 30

*Bull v. United States,* 68 Fed. Cl. 212 (2005) ...........................................................29

*Burton v. Kan. Dept. of Labor*, 211 P.3d 188, 2009 WL 2144088 (Kan. App. July 17,
    2009) ...................................................................................35

*Burnison v. Memorial Hosp., Inc.*, 820 F. Supp. 549 (D. Kan. 1993) .........................................20

*Chao v. Tyson*, 568 F. Supp. 2d 1300 (N.D. Ala. 2008) ...............................................31

*City of Philadelphia v. Lead Indus. Ass'n, Inc.,* 994 F.2d 112 (3d Cir. 1993) ...........................13

*Clougher v. Home Depot U.S.A., Inc.,* 696 F. Supp. 2d 285 (E.D.N.Y. 2010) .............................19

*Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390 (10th Cir. 1997) ...................................18

*Cross v. Ark. Forestry Comm'n.,* 938 F.2d 912 (8th Cir. 1991) ...................................31

*Dep't. of Labor v. City of Sapulpa,* 30 F.2d 1285 (10th Cir. 1994) ...................................29

Page(s)

*F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493 (6th Cir. 1952) ...........................22

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968) ................................12

*Floyd v. IRS,* 151 F.3d 1295 (10th Cir. 1998) ............................................................17

*Fowler v. Incor*, 279 Fed. Appx. 590 (10th Cir. 2008) .....................................29, 32, 33

*Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp 1270 (D. Kan. 1996) .......18

*Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320 (10th Cir. 2008) .....................................30

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305
    (5th Cir. 2002) ...................................................................................................13

*Guerrero v. JP Morgan Chase & Co.*, Civil Action No. 6:09CV388, 2010 WL
    457144 (E.D. Tex. Feb. 5, 2010) ......................................................................18

*Hill v. United States*, 751 F.2d 810 (6th Cir. 1984) ....................................................20

*Holder v. Kan. Steel Built, Inc*, 582 P.2d 406 (Kan. 1978) .........................................34

*Hope's Architectural Prods., Inc. v. Lundy's Const., Inc.*, 781 F. Supp. 711 (D. Kan.
    1991) ..................................................................................................................15

*Ice Corp. v. Hamilton Sundstrand, Inc.*, 444 F. Supp 2d 1165 (D. Kan 2006) ...........19

*Jenkins v. Harrison Poultry*, Inc., Civil Action No. 2:07-cv-0058-WCO, 2008 U.S. Dist.
    LEXIS 110597 (N.D. Ga. July 29, 2008) ..........................................................24

*Kassa v. Kerry*, 487 F. Supp. 2d 1063 (D. Minn. 2007) ............................................24

*Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992) .................................20, 21

*Loomis v. L.A. Knebler Constr. Co.*, No. 65,958, 1992 Kan. App. Lexis 52
    (Kan. Ct. App. Feb. 14, 1992) ...........................................................................17

*Marti v. Grey Eagle Distribs.*, 937 F. Supp. 845 (E.D. Mo. 1996) ........................21, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................12

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988) ........................................32, 34

*Mendex v. The Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005) ...................................21

Page(s)

*Midwest Grain Prods. Inc. v. Envirofuels Mktg. Inc.*, 948 F. Supp 976 (D. Kan 1996) .........15, 18

*Montabon v. City & County of Denver*, 136 Fed. Appx. 147 (10th Cir. 2005) ...........................11

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) .......................................................17

*Myracle v. Gen Elec. Co.*, No. 92-6716, 1994 U.S. App. LEXIS 23307 (6th Cir. Aug. 23, 1994) ..........................................................................................................................26

*Pabst v. Oklahoma Gas & Elec. Co.,* 228 F.3d 1128 (10th Cir. 2000) ............................30, 31, 33

*Reich v. IBP*, Inc., 38 F.3d 1123 (10th Cir. 1994) ......................................................................24

*Reich v. Monfort, Inc.,* 144 F.3d 1329 (10th Cir. 1998) ..............................................................32

*Renfro v. City of Emporia, Kan.,* 948 F.2d 1529 (10th Cir. 1991) ..............................................29

*Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767 (N.D. Ga. 1996) ..................................................27

*Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1227 (D. Kan. 2005) ..........................13

*Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998) ........................................................22

*Sandifer v. U.S. Steel Corp.,* No. 2:07-CV-443 RM, 2009 WL 3430222 (N.D. Ind. Oct. 15, 2009) ......................................................................................................................24

*Saunders v. John Morrell Co.,* No. C88-4143, 1991 WL 529542 (N.D. Iowa Dec. 24, 1991) ...................................................................................................................33

*Sepulveda v. Allen Family Foods, Inc*. 591 F.3d 209 (4th Cir. 2009) .............................21, 22, 23

*Simms v. Okla. Ex. rel., Dept. of Mental Health & Substance Abuse Svcs.*, 165 F.3d 1321 (10th Cir. 1999) .......................................................................................11, 12

*Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274 (10th Cir. 2006) ..........................................32

*Specht v. Jensen*, 863 F.2d 700 (10th Cir. 1988) .......................................................................13

*State ex rel Nilsen v. Johnston*, 377 P.2d 331 (Ore. 1962) ........................................................34

*Switzer v. Coan,* 261 F.3d 985 (10th Cir. 2001) ........................................................................17

**Page(s)**

*Tum v. Barber Foods, Inc.,* No. 00-371-P-C, 2002 WL 89399 (D. Me. Jan. 23, 2002)
(Mag.'s Report & Recommendation), *aff'd on other grounds,* 360 F.3d 274
(1st Cir. 2004), *rev'd on other grounds sub nom. IBP, inc. v. Alvarez,* 546 U.S.
21 (2005) ...................................................................................................33

*United States v. Central Livestock Corp.,* 616 F. Supp. 629 (D. Kan. 1985) ..............................17

*United States v. Madden,* 95 F.3d 38 (10th Cir. 1996) ...................................................17

*Weatherby v. Burlington N. & Santa Fe Rwy Co.,* 209 F. Supp. 2d 1155 (D. Kan. 2002) .....16, 17

*White v. Tip-Top Poultry, Inc.,* Civil Action No. 4:07-cv-0101-HLM, 2008 U.S. Dist.
LEXIS 110598 (N.D. Ga. Oct. 7, 2008) ....................................................24

*White v. York Intern. Corp.* 45 F.3d 357 (10th Cir. 1995) ..............................................12

*Weinzirl v. The Wells Group, Inc.,* 677 P.2d 1004 (Kan. 1984) .......................................34, 35

*Winfield Assocs., Inc. v. Stonecipher,* 429 F.2d 1087 (10th Cir. 1970) .............................17

*Zachary v. Rescare Okla., Inc.,* 471 F. Supp. 2d 1183 (N.D. Okla. 2006) ........................30

*Zegers v. Countrywide Mortg. Ventures, LLC,* No. 6:07-cv-1893-Orl-22DAB, 2008
WL 728482 (M.D. Fla. March 17, 2008) ...................................................30

**STATUTES**

29 U.S.C. § 255(a) .............................................................................................32

29 U.S.C. § 260 .............................................................................................29, 30

29 C.F.R. § 785.16(a) ......................................................................................27

29 C.F.R. § 785.18 ......................................................................................25, 26

29 C.F.R. § 785.18-19 ...................................................................................25

K.S.A. § 44-313(c) .........................................................................................12

K.S.A. § 44-315(b) .........................................................................................34

**Page(s)**

**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................................11

Fed. R. Civ. P. 56(e) ...................................................................................................12


**TREATISES**

27A Am. Jur. 2d Equity § 21 (July 2010) ...................................................................19

Restatement (Second) of Contracts § 370 comment a (1977) ......................................15


**OPINION LETTERS**

DOL Opinion Letter, dated December 3, 1996 ............................................................25

DOL Opinion Letter, dated September 25, 2000 ....................................................26, 27

DOL Opinion Letter, dated November 22, 2004 .......................................................27


**MISCELLANEOUS**

Pattern Instructions Kansas (4th) 124.17 ...................................................................15

## I.      <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 56 and D. Kan. 56.1, Defendants, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (hereinafter collectively "Tyson" or "Defendants"), respectfully move for partial summary judgment on Plaintiffs' Supplemental Complaint.  Plaintiffs have no legal or factual basis for their claims under the Kansas Wage Payment Act or the common law theory of quantum meruit; thus, Defendants are entitled to judgment on these claims in their entirety. Further, Defendants are entitled to judgment as a matter of law on Plaintiffs' claims under the FLSA for compensation for the unpaid portions of the meal periods because Plaintiffs receive the predominant benefit of the meal periods or, alternatively, the compensable activities at issue during the meal period are either currently paid or *de minimis* under the FLSA.  Likewise, Defendants are entitled to partial summary judgment on Plaintiffs' claims for the unpaid portion of the 25-minute rest break, as the break is not a compensable rest break or off-duty time under the FLSA, and the undisputed facts show that the donning and doffing activities during this break are fully compensated.  Finally, there is no genuine dispute that Defendants acted in good faith and did not knowingly or recklessly violate the law, especially given earlier rulings in this case by this Court and the Tenth Circuit, as well as the numerous cases ruling for employers on the "standard" items, which are the only items remaining in issue.  Accordingly, Defendants are entitled to judgment as a matter of law on the issues of liquidated damages and the applicable limitations period for FLSA claims.

II.   **STATEMENT OF MATERIAL FACTS**

For purposes of this Motion only, the following are the undisputed material facts:

A.   **History Of Litigation And Payment For Additional Minutes**

1.   In 1988, the United States Department of Labor filed a civil complaint in the United States District Court for the District of Kansas seeking back pay for employees at IBP, inc.'s ("IBP") non-union facilities for the time spent on the types of pre- and post-shift activities at issue in this litigation.  Declaration of Kenneth D. Kimbro dated Sept. 28, 2006 ("Kimbro Decl.") ¶ 10, attached as Exh. 1.  The non-union facilities in Finney County (also known as Holcomb), Kansas, and Emporia, Kansas were part of that litigation from its inception.  *Id*. at Ex. 2.

2.   The district court in *Reich v. IBP, inc.* ruled that IBP should pay for the reasonable time spent by knife-wielding employees donning, doffing and cleaning the specialized PPE (hereafter "unique") that they wore, as well as time at the wash stations post-shift.  Kimbro Decl. ¶ 12.  The Tenth Circuit affirmed the liability ruling on slightly different grounds.  *Id*. ¶ 13.

3.   The district court entered an injunction in *Reich v. IBP, inc.* requiring IBP to pay employees for the pre- and post-shift activities found to be compensable.  Kimbro Decl. ¶¶ 15-16.  Subsequently, IBP and the Department of Labor entered negotiations as to the number of minutes per day that should be paid for these activities.  *Id*. at ¶ 17.

4.   After IBP performed a series of time studies, it determined that four minutes per day was sufficient to compensate for the activities found to be compensable.  Kimbro Decl. ¶ 18.  The Department of Labor verified this number through its own time study, which it shared with IBP.  Kimbro Dec. ¶ 20; Kimbro Supp. Dec. dated Jan. 22, 2007 ¶ 3, attaching DOL's study as Ex. 1 thereto, attached as Exh. 2.  The Department of Labor confirmed its finding of four

minutes in writing to the company by letter dated April 30, 1999, and effectively confirmed the same through its language in the joint stipulation of dismissal of the enforcement action *Herman v. IBP, inc*. Kimbro Decl. at ¶¶ 20-21. In an earlier opinion, this Court characterized the outcome as follows: "In July 1999, the parties stipulated to the dismissal of the enforcement action with prejudice, based in part on their agreement that defendants could satisfy their backpay obligations under *Reich* (and, arguably, satisfy their future obligations under the *Reich* injunction) by compensating knife-wielding employees an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear worn by those employees." Mem. & Order dated Feb. 16, 2007 (Dkt. 599) at 4.

5.     On April 13, 1998, IBP began paying most employees at its non-union facilities (including its the Finney County and Emporia facilities), including all knife users as well as other employees in any department that contained a knife-user, an additional four minutes per day for the activities held to be compensable in *Reich*. Kimbro Decl. ¶¶ 18-19.

6.     Since the events described in the preceding paragraphs, the Department of Labor has not initiated any further investigation or litigation against IBP (now Tyson) concerning how the company compensates hourly production employees in its beef- and pork-processing facilities, or communicated directly with the company in any way suggesting that these facilities are not in compliance with the Fair Labor Standards Act with respect to how hourly production employees are paid. Second Supp. Kimbro Decl. ¶ 2, attached as Exh. 3.

7.     Since Tyson Foods, Inc., acquired IBP in 2001, the merged company has been continuously represented by its Legal Department and outside counsel on this issue and has received advice from them regarding the compensability of these activities. Second Supp. Kimbro Decl. ¶ 4.

8.      Since *Reich v. IBP, inc.*, there has been a substantial amount of litigation over this issue in various industries, including food processing, with mixed results.  Second Supp. Kimbro Decl. ¶ 5.  No court has held that the *Reich* injunction no longer applies to the company's non-union beef- and pork-processing facilities, and no court has said that the Tenth Circuit has definitively changed its interpretation of the law that led to the *Reich* injunction.  *Id*.  In one case, *De Asencio v. Tyson Foods, Inc*., the company obtained a complete defense verdict on the issue of the compensability of donning, doffing, and cleaning sanitary outer garments and non-unique protective items similar to those at issue in this case (although the verdict was reversed on one ground on appeal and remanded for further proceedings on the company's other defenses).  *Id*. at ¶ 6.

9.      From the beginning of the class period until January 21, 2007 at the Emporia facility, and until January 28, 2007 at the Finney County facility, IBP and then later Defendants, paid  four minutes per day of "K code" time to all employees in a department where knives were used by a least one employee in the department.  *See* Stipulations section 4.a.49 of Pretrial Order, Dkt No. 873.   IBP, and later Defendants, intended these four minutes to compensate the employees for certain donning, doffing, washing, walking, waiting, and related activities that knife-wielding employees performed before and after the shift (all of the activities found compensable in *Reich*).  *See* Stipulations section 4.a.20 of Pretrial Order.

10.      In 2006, Defendants performed a time-study to determine the number of minutes for walking pre-shift from the locker room to the departments, and post-shift from the wash basin back to the locker room.  Second Supp. Kimbro Dec. ¶ 9.  In late January 2007, Defendants added these calculations of the pre- and post-shift walking time at the facilities to the amount of time employees in various job positions were determined in the 1998 time studies to spend

performing the various pre- and post-shift activities previously found to be compensable. Second Supp. Kimbro Decl. ¶¶ 9-10; Stipulations section 4.a.49 of Pretrial Order.  Beginning on January 21, 2007 and continuing through April 12, 2010, this resulted in hourly production employees in knife-wielding positions at the Emporia facility receiving additional paid time ranging from four to nine minutes per shift depending on their position.  *See* Stipulations section 4.a.49 of Pretrial Order.  Beginning on January 28, 2007 and continuing through April 11, 2010, this resulted in hourly production employees in knife-wielding positions at the Finney County facility receiving additional paid time ranging from four to seven minutes per shift depending on their position.  *See* Stipulations section 4.a.49 of Pretrial Order.  Defendants intended these new K code minutes to compensate hourly production employees for pre- and post-shift walking time in addition to the certain donning, doffing, washing, walking, waiting, and related activities that were previously compensated pre- and post-shift.  *See* Stipulations section 4.a.21 of Pretrial Order.

11.     Defendants have relied in good faith on the facts described in the preceding paragraphs as the basis for their payment of the additional time, outside of production time, known as "K code" minutes, and for not paying for additional time, as the means for complying with the law.  Kimbro Decl. ¶ 25; Second Supp. Kimbro Dec. ¶¶ 11, 13.

12.     Since on or about April 12, 2010, hourly production employees have been paid 20 to 24 minutes each shift for certain activities they perform outside of production time. Declaration of Lonny Jepsen dated October 29, 2010 ("Jepsen Decl.") ¶ 3, attached as Exh. 4; Declaration of Roger Brownrigg dated October 28, 2010 ("Brownrigg Decl.") ¶ 3, attached as Exh. 5; Stipulations section 4.a.50 of Pretrial Order.  This 20 minutes or more of paid time provides all hourly production employees five minutes of paid time for certain activities

performed during the rest break, five minutes of paid time for certain activities performed during the meal break, and the remainder for certain pre- and post-shift activities.  Second Supp. Kimbro Decl. ¶ 12; Stipulations section 4.a.50 of Pretrial Order.  The number of minutes is based, in part, on the original 1998 time study performed by IBP, and the walking time study performed by Defendants in 2006.  Second Supp. Kimbro Decl. ¶ 13.

**B.      Meal Period And Break Activities**

13.      As part of the changes described in the prior paragraph, the break schedule at the Emporia and Finney County facilities changed to incorporate the five minutes of paid time during each break for hourly employees' donning and doffing activities.  Prior to April 12, 2010, hourly production employees received one 15-minute paid break and one 30-minute unpaid meal period during each shift.  Deposition of Renee Cannon, attached hereto as Exh. 6, at 40:19-24; Deposition of Adelina Garcia, attached hereto as Exh. 7, at 48:5-18; Deposition of Robert Krumme, attached hereto as Exh. 8, at 34: 21-23; Deposition of Connie Jo Masethin, at 51:9-15; 59:3-5, attached hereto as Exh. 9, at 50:18-23; Deposition of Dorinda Snyder, attached hereto as Exh. 10, at 44:9-11; Deposition of Jeronimo Vargas Vera, attached hereto as Exh. 11, at 47:10-20.  When the schedule changed on April 12, 2010, the 15-minute break was lengthened to 25 minutes, with 20 minutes of the break being unpaid time and five minutes being paid time.  The 30-minute break also was lengthened to 35 minutes, with 30 minutes of the break being unpaid time and five minutes being paid time.  Jepsen Decl. ¶ 4; Brownrigg Decl. ¶ 4.  Employees are provided the two breaks at approximately the same time everyday and know they do not have to return to their work station until a predetermined number of minutes after each employee commences his or her break.  *Id*.

14.      During the two breaks, no cattle are placed on the production line, and Plaintiffs who work on the line are free to leave the production area when they finish working on the last

piece of product that passes their workstation.  Deposition of Renee Cannon, attached hereto as Exh. 6, at 45:5-9; Deposition of Adelina Garcia, attached hereto as Exh. 7, at 49:11-15; 50:18-19; Deposition of Robert Krumme, attached hereto as Exh. 8, at 35:17-24; Deposition of Connie Jo Masethin, attached hereto as Exh. 9, at 51:9-15; 59:6-8; Deposition of Dorinda Snyder, attached hereto as Exh. 10, at 44:15-45:24; Deposition of Jeronimo Vargas Vera, attached hereto as Exh. 11, at 50:25-51:5.

15.     Plaintiffs have testified that during the meal period, they do not have to remove all of their sanitary and protective items.  Deposition of Adelina Garcia, attached hereto as Exh. 7, at 97:1-16, 100:4-8 (did not remove hardhat, hairnet and personal bandana); Deposition of Robert Krumme, attached hereto as Exh. 8, at 54:24-55:3, 57:14-16 (doffed and donned frock and gloves, but did not remove hardhat); Deposition of Jeronimo Vargas Vera, attached hereto as Exh. 11, at 99:16-100:1; 100:112-18; 101:12-102:13 (did not remove white uniforms, hardhat, hairnet, and boots).

16.     Plaintiffs are not required to rinse or wash any of their clothing or equipment during the meal period.  Deposition of Renee Cannon, attached hereto as Exh. 6, at 62:9-22; Deposition of Adelina Garcia, attached hereto as Exh. 7, at 114:9-25; Deposition of Robert Krumme, attached hereto as Exh. 8, at 59:15-60:4; Deposition of Connie Jo Masethin, attached hereto as Exh. 9, at 108:6-17; Deposition of Dorinda Snyder, attached hereto as Exh. 10, at 73:6-15; Deposition of Jeronimo Vargas Vera, attached hereto as Exh. 11, at 109:7-9; 109:21-110:1.

17.     Some Plaintiffs testified to spending less than five minutes on donning and doffing activities at the 30-minute meal period.  Deposition of Renee Cannon, attached hereto as Exh. 6, at 61:2-63:4 (doffing and donning during meal period took approximately 1 minute); Deposition of Adelina Garcia, attached hereto as Exh. 7, at 99:15-100:3; 105:18-106:9; 83:12-

7

13; 85:8-13, 107:4-7 (doffing and donning during meal period took approximately 2 minutes and 25 seconds); Deposition of Robert Krumme, attached hereto as Exh. 8, at 55:7-9, 20-22 (doffing and donning during meal period took approximately 1 minute); Deposition of Connie Jo Masethin, attached hereto as Exh. 9, at 136:17-22; 137:6-21 (doffing during meal period took approximately 3 minutes).

18.     Plaintiffs have testified that the remainder of the meal period (*i.e.*, other than the donning and doffing activities performed by Plaintiffs) could be spent however they choose to spend this time.  Deposition of Renee Cannon, attached hereto as Exh. 6, at 63:5-65:8 (no restrictions or limitations what Plaintiff could do; employees could leave the property,  go to the cafeteria, go outside, read the newspaper, read a book, go outside to the smoking area to smoke, go to the locker room, and use the restroom); Deposition of Adelina Garcia, attached hereto as Exh. 7, at 109:4-111:25; 113:1-15 (employees could leave the premises of the plant, go outside of the building, go outside to smoke, go to their cars, go to the locker room, use the restroom and go to the cafeteria; testified that break time during the meal period is to eat and rest for a while); Deposition of Robert Krumme, attached hereto as Exh. 8, at 55:19-56:1 (employees may leave the plant premises during the meal period); Deposition of Connie Jo Masethin, attached hereto as Exh. 9, at 60:21-23; 60:5-11; 60:19-21; 61:18-24; 62:18-63:1 (during meal period could go to the locker room, use the restroom, go to the cafeteria, go outside, go outside to smoke, or leave the plant premises), 63:4-5 ("On the [then] 30-minute break, they said that was your time, you could do what you wanted."); Deposition of Dorinda Snyder, attached hereto as Exh. 10, at 73:21-24, 74:2-3; 74:17-21 (employees could go to the locker room, read books, go outside, and leave the plant premises); Deposition of Jeronimo Vargas Vera, attached hereto as Exh. 11, at 106:19-107:25 (employees could leave the plant premises, go outside to smoke, use the telephone, go

outside, go to their cars, and read); *see also* Exh. 9, Deposition of Connie Jo Masethin at 54:15-23 (during the first break could go to the locker rooms or go to the cafeteria).

19.     Plaintiffs' expert, Robert Radwin, performed a time study based on the videotaping in May 2010 of employees selected by Radwin's own team at the Finney County and Emporia plants.  *See generally* Expert Report of Robert Radwin at 3-5 ("Radwin Report"), attached hereto as Exh. 12.  Of those employees videotaped during the 35-minute meal period, two employees at Finney County and one employee at Emporia spent less than five minutes on donning and doffing activities.  *See* Break Durations Observed at the Tyson Finney County Beef Processing Plant, Radwin Report at 9, Table 4 (Gildordo Barragan and Patrick Smith); Break Durations Observed at the Emporia Beef Processing Plaint, *id.* at 11, Table 7 (Carlos Sandoval).

20.     Radwin admits that his timing of donning and doffing activities at the 35-minute meal period included activities such as socializing and waiting in the cafeteria line if they occurred before the last item doffed at the beginning of the meal period or after the first item donned at the end.  Radwin Depo. at 217:3-218:8; 222:17-223:3, attached hereto as Exh. 13.

21.     Radwin did not study donning and doffing activities occurring during the 25-minute first break.  *See* Radwin Report at p.3 n.1.

22.     In October 2010, supervisors at the Finney County and Emporia plants timed select hourly production employees from the moment they hung their last clothing item on a hook at the beginning of the 25-minute break until the same employee removed the first item from the hook at the end of the break.  *See* Decls. of Tom Arndt, Jim Bohrer, Steve Burton, Doug Crockett, Lynn McAllister, Fredell Moore, Robert Wallace, Albert Arevalo, Elias Banderas, Gerardo Canales, Concepcion Cano, Pedro Chanocua, Keith Conley, Scott Cordes, Somphone Detvonesa, George Garcia, Jose Godinez, Olivia Gonzalez, Dennis Jones, Emilio Lopez, Rafael

Murillo, Juan Quijada, Martin Ramirez, Patsy Soto, Salvador Valencia, and Abraham Villegas, attached hereto collectively as Exh. 14.  In other words, they timed employees to determine how much time they had to themselves after subtracting doffing and re-donning during the first break. Supervisors at Emporia timed 28 employees, including many who are trimmers wearing knife-safety protective items, where at least 20 minutes elapsed from last touch of hook to first touch of hook.  *See* Decls. of Tom Arndt, Jim Bohrer, Steve Burton, Doug Crockett, Lynn McAllister, Fredell Moore, Robert Wallace.   Supervisors at Finney County timed 59 employees, also including knife users, where at least 20 minutes elapsed from last touch to first touch.  See Decls. of Albert Arevalo, Elias Banderas, Gerardo Canales, Concepcion Cano, Pedro Chanocua, Keith Conley, Scott Cordes, Somphone Detvonesa, George Garcia, Jose Godinez, Olivia Gonzalez, Dennis Jones, Emilio Lopez, Rafael Murillo, Juan Quijada, Martin Ramirez, Patsy Soto, Salvador Valencia, and Abraham Villegas.

### C.    No Agreement Regarding Payment For Donning And Doffing Activities

23.    No one at Tyson ever told lead Plaintiff Adelina Garcia that she would be paid for pre- or post-shift activities and she has never seen any documents other than her pay stubs that relate to payment for such activities, including clothes changing and equipment washing.  Exh. 7, Adelina Garcia Depo. at 144.

24.    Plaintiff Masenthin never received any documents describing how she was paid and she never saw anything in writing regarding pay for donning, doffing or cleaning items at the end of a shift.  Exh. 9, Masenthin Depo. at 33, 132.

25.    Plaintiff Masenthin was never told that she would be paid starting when she clocked in each morning.  *Id.* at 119.

26.    Plaintiff Krumme did not receive any documents from Tyson explaining how his time is recorded or how he is paid.  Exh. 8, Krumme Depo. at 38.

27.     Plaintiff Cannon has never seen anything in writing from Tyson indicating that she would be paid for changing clothes, walking to the job site, etc. and no one in Tyson management ever told her that she would be paid more for such time.  Exh. 6, Cannon Depo. at 84-85.

28.     Plaintiff Snyder never saw any documents explaining the start or stop time for being paid or discussing how employees are paid for donning or doffing their gear at the beginning or end of the shift.  Exh. 10, Snyder Depo. at 37, 89.

29.     Plaintiff Antonio Garcia was not told anything by Tyson about how he would be paid, except that he needed to be present to be paid and that he would be paid weekly, and that normally it was forty hours weekly.  No one from Tyson management ever told Plaintiff Antonio Garcia that he would be paid more for pre-or post-shift activities.  Antonio Garcia Depo. at 160, 163, attached as Exh. 15.

30.     Plaintiffs have withdrawn their claim that they had a contract to be paid for donning and doffing.  *See* Plaintiffs' Theories of Recovery, section 6.a.2 of Pretrial Order.

## III.   ARGUMENT AND AUTHORITY

### A.   Summary Judgment Standard

A party seeking summary judgment may prevail on a pure question of law.  *See Montabon v. City & County of Denver*, 136 Fed. Appx. 147, 148 (10th Cir. 2005).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  While the evidence should be viewed in the light most favorable to the non-moving party, *see Simms v. Okla. Ex. rel., Dept. of Mental Health & Substance Abuse Svcs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), "[w]here the record taken as a whole could not lead a rational trier of fact to

11

find for the non-moving party, there is no 'genuine issue for trial' and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The non-moving party may not rest upon "mere allegation[s] or denials" of its pleadings when opposing a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see* Fed. R. Civ. P. 56(e).  Instead, the non-moving party must present "significant probative evidence" in support of its complaint to defeat the motion for summary judgment. *White v. York Intern. Corp.* 45 F.3d 357, 360 (10th Cir. 1995); *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

## B.   Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Claims Under The Kansas Wage Payment Act

Plaintiffs fail to state a claim under the Kansas Wage Payment Act, K.S.A. §§ 44-312 *et seq.*, which permits an employee to seek legal redress for the failure to pay "wages due."  While the KWPA defines "wages" as compensation for "labor or services rendered," it is silent as to what that latter term means. *See id.* § 44-313(c).  Here, Plaintiffs have failed to allege a state law basis conferring a right for the compensation they seek to collect under the KWPA.  There is no state statute or case law defining "wages" as including the pre- and post-shift and meal and break activities at issue in this case or otherwise permitting Plaintiffs to expand their right to compensation beyond the productive job duties they were hired to perform absent agreement to do so.[1]  Likewise, Plaintiffs lack any contractual predicate for a KWPA claim.  Plaintiffs have withdrawn their breach of contract claim in the Amended Complaint (*see* Pretrial Order at section 6.a.2), and Plaintiffs have conceded that Defendants never agreed to pay them for the

---

[1] There is no claim in this case that Defendants failed to pay the "K code" minutes that they assigned to particular job codes.  In any event, as noted above, the "K code" minutes were created in response to litigation under the FLSA, *not* under Kansas law.

activities at issue.  *See* SMF ¶¶ 26-33.  *See also Robinson v. Food Service of Belton, Inc*., 415 F.

Supp. 2d 1227, 1230-31 (D. Kan. 2005) (Lungstrum, J.) (where no inherent right to specific

wage rate, agreement of parties necessary to create an obligation for wages).  As Kansas law

provides no basis for encompassing the activities at issue within the meaning of "wages due,"

under *Erie* principles the Court should not create a new state right or allow the decision whether

to find a right to compensation under the KWPA be invested in a jury.  *See Specht v. Jensen,* 863

F.2d 700, 702 (10th Cir. 1988) (declining to *create* an action under state law); *see also City of*

*Philadelphia v. Lead Indus. Ass'n, Inc.,* 994 F.2d 112, 123 (3d Cir. 1993) (recognizing

that although "federal court may act as a judicial pioneer when interpreting the United States

Constitution and federal law ... federal courts may not engage in judicial activism. Federalism

concerns require that courts permit state courts to decide whether and to what extent they will

expand state common law."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313

F.3d 305, 318 (5th Cir. 2002) ("Federal courts in *Erie* cases do not 'create or modify' state law.")

(internal citations omitted).  To do so would potentially broaden the concept of "wages due"

under Kansas law to cover all sorts of non-productive activities occurring before and after shifts

and at breaks and meal periods.  Such expansion is not jurisprudentially appropriate absent a

clear articulation of a basis for doing so by the state legislature or state courts.

  Nor should Plaintiffs be permitted to bootstrap a KWPA claim to their FLSA claim by

arguing that the FLSA (or case law interpreting the FLSA) entitles them to recover wages under

a state collection statute.  As an initial matter, the majority of Plaintiffs chose not to opt into the

FLSA claims in this case but rather bring claims solely under state law.  Even if Plaintiffs were

to prevail on their FLSA claims, that judgment would apply only to members of the opt-in

federal class and would not apply to those class members solely bringing state law claims.  Thus,

at the very least, those Plaintiffs only in the Rule 23 class cannot use the FLSA as a predicate for a KWPA claim.   Even as to those Plaintiffs bringing FLSA claims, however, there is no precedent in Kansas law for using the FLSA to define "wages due" for purposes of the KWPA and, as explained above, the court should not create one.

Indeed, Plaintiffs have already represented to the Court at the class certification stage that they are *not* seeking to use the KWPA to recover any overtime wages recoverable under the FLSA, and the court relied on this representation in certifying the Rule 23 class.  *See* Mem. and Order certifying class (Dkt. 741) at 4-5.  Plaintiffs' election to divorce the KWPA claim from their FLSA claim was a strategic decision to avoid the possibility of pre-emption.  *See id.* at 4 (Plaintiffs' clarification regarding the separation of claims made "in response to Tyson's concerns" about preemption and claim of incompatibility); Pls' reply in support of class and collective action certification (Dkt. 737) at 22-23.  Plaintiffs went so far as to argue that the KWPA and FLSA claims "do not even overlap."  *Id.* at 24.  Having asserted that their KWPA claim is not based on the FLSA, Plaintiffs cannot now argue that a theory of recovery under the FLSA serves as the basis for their KWPA claim.

## C.    Plaintiffs' Claim For Quantum Meruit Is Insufficient As A Matter Of Law

Plaintiffs seek recovery in quantum meruit.  Plaintiffs' theory is that each employee provided services (allegedly donning, doffing, and walking) that conferred a benefit on Defendants  for which he or she was not compensated.  *See* Theories of Recovery section 6(a)(4) of Pretrial Order; Memorandum and Order dated Feb. 12, 2009 (Dkt. 741) at 21-22.  Plaintiffs contend that the measure of the value for those services is the hourly rate of pay received from Defendants.  *See id.* at 13.

Quantum meruit is an equitable claim. The elements of the claim are:  (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by

the defendant; and, (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Midwest Grain Prods., Inc. v. Envirofuels Mktg., Inc.*, 948 F. Supp. 976 (D. Kan. 1996).[2]   As explained below, Plaintiffs' quantum meruit claim fails as a matter of Kansas law, and the same *Erie* doctrine principles discussed *supra* at III(B) foreclose the court from creating a cause of action for quantum meruit that does not exist under Kansas law.

   1.   <u>Plaintiffs Cannot Prove The Element Of A Conferred Benefit</u>

   At the class certification stage, this Court questioned the validity of Plaintiffs' quantum meruit claim, noting "the court is not convinced that plaintiffs' quantum meruit claims, as articulated by plaintiffs, even state a claim for relief that is plausible on its face." *See* Mem. & Order dated Feb. 12, 2009 (Dkt. 741) at 23.  Nothing has changed.  Plaintiffs still fail to establish any benefit conferred on Defendants to sustain such a claim.

   Quantum meruit requires that a benefit be conferred upon the defendant by the plaintiff. *Midwest Grain Prods.,* 948 F. Supp. 976; *Hope's Architectural Prods., Inc. v. Lundy's Const., Inc.*, 781 F. Supp. 711, 717 (D. Kan. 1991) (Recovery allowed under quantum meruit theory "when a benefit ha[s] been received by a party and it would be inequitable to allow the party to retain it.").  "[A] party's expenditures in preparation for performance that do not confer a benefit on the other party do not give rise to a restitution interest."[3]  Restatement (Second) of Contracts § 370 comment a (1977); *Hope's Architectural*, 781 F. Supp. at 717 (denying quantum meruit

---

   [2]   The Pattern Instructions for Kansas, applicable in state court proceedings, include as an element that the plaintiff has a "reasonable expectation of being compensated."  Pattern Instructions Kansas (4th) 124.17.

   [3]   In Kansas, quantum meruit and restitution are recognized as equivalent theories.  *See Hope's Architectural Prods., Inc. v. Lundy's Const., Inc.*, 781 F. Supp. 711, 717 (D. Kan. 1991) ("Instead of labeling it quantum meruit, courts today speak in terms of restitution.").

claim, finding that plaintiff's visits to job site to prepare for installation of windows conferred no benefit on defendant).

Here, the activities for which Plaintiffs claim recovery in quantum meruit – donning, doffing, washing, and related activities – are nothing more than preparation for performance of the employees' job duties and simply do not confer a benefit that warrants equity to provide compensation. Taken to its illogical conclusion, if an employee did not travel from home to work, the employee would not be in a position to perform productive work and therefore, under Plaintiffs' theory, this travel time confers a compensable "benefit" upon the employer. Yet, no one could seriously argue that every employee in Kansas should have a claim in quantum meruit for commuting time. *Cf. Weatherby v. Burlington N. & Santa Fe Rwy. Co.*, 209 F. Supp. 2d 1155, 1166 (D. Kan. 2002) (employee who moved from one location to another not entitled to relocation benefits on a theory of quantum meruit because any arguable benefit to employer was "de minimis as a matter of law").

If anything, these activities confer a benefit on each plaintiff, not on Defendants, by putting the employee in a position from which he or she will be able to perform the activities for which they are paid (or, with respect to break time, by taking time to eat or relax). If, for example, an employee does not "don" required safety gear, the employee will not be allowed to work. Thus, this activity benefits the employee, not the employer.

At the very least any purported "benefit" to Defendants from these activities must, in equity, be canceled out by a similar benefit to Plaintiffs, resulting in no recovery. In other words, even if Plaintiffs' claim of benefit (because without these activities, employees would not be present to do the work) is credited, the benefit to Plaintiffs (because without these activities it would not be possible for them to work and be paid) must counter-balance any purported benefit

to Defendants.  Thus, as a matter of equity, there can be no recovery.  *See Weatherby,* 209 F. Supp. 2d at 1166 (determining that "on a net basis," any arguable benefit to Defendant was de minimis as a matter of law, and as such "does not implicate the court's equitable powers.").  *See also, Loomis v. L.A. Knebler Constr. Co.*, No. 65,958, 1992 Kan. App. Lexis 52, *10 (Kan. Ct. App. Feb. 14, 1992) (unpublished) (the remedy in unjust enrichment is the "net" benefit to defendant, taking into account the benefits to plaintiff as well).

      2.    <u>In The Circumstances Of This Case, The Statutory Provisions  Which Form The Basis For Plaintiffs' Other Claims Define The Relationship Of The Parties Concerning Compensation; Therefore No Equitable Claim For Quantum Meruit Is Available</u>

Another flaw in Plaintiffs' quantum meruit claim is that, on its face, there is nothing here that equity needs to redress.  It is well recognized that equitable remedies are unavailable if there are adequate remedies at law.  *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992) ("It is a 'basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.' ") (internal citations and quotation marks omitted); *Switzer v. Coan,* 261 F.3d 985, 991 (10th Cir. 2001) (recognizing that "this court ... has repeatedly applied the general rule that equitable relief is available only in the absence of adequate remedies at law.") (citing *Floyd v. IRS,* 151 F.3d 1295, 1300 (10th Cir. 1998)); *United States v. Madden,* 95 F.3d 38, 39 (10th Cir. 1996); *Winfield Assocs., Inc. v. Stonecipher,* 429 F.2d 1087, 1090-91 (10th Cir. 1970); *see also United States v. Central Livestock Corp.,* 616 F. Supp. 629, 632 (D. Kan. 1985) (recognizing that "equity will not act when there is an adequate remedy at law") (internal citations omitted).  Here, the Plaintiffs seek, in quantum meruit, to be paid for precisely the same activities that form the basis of their statutory claims.  *See* Memorandum and Order dated Feb. 12, 2009 (Dkt. 741) at 12-13, 22-23.  Because of this, whatever outcome is reached on the

17

statutory claims will negate any quantum meruit claim and there is, by definition, an adequate remedy at law.   Indeed, Defendants have found no cases, decided by the federal courts, recognizing a quantum meruit theory of recovery for "donning and doffing" activities.

If Plaintiffs prevail on either of their statutory claims, they will be compensated for the subject activities.[4]   They will then, obviously, not be able to establish the element of providing a benefit for which they were not compensated and their quantum meruit claim will fail as a matter of law.   *Cf. Midwest Grain Prods.,* 948 F. Supp at 980 (where contract price for product had been paid, seller had been fully compensated and thus there was no claim for further compensation available under theory of quantum meruit).

Similarly, if Plaintiffs do not prevail on their statutory claims, the quantum meruit action also must fail.   The statutes at issue address the compensation that an employer must pay an employee for services rendered.   If it is determined that compensation is not required by one or both statutes for some or all of these activities, then the fact that Defendants did not pay such compensation cannot, by definition, be inequitable.   *Cf. id* (where seller received contractual price for product, buyer was not unjustly enriched); *see also Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1274-1275 (D. Kan. 1996).[5]

---

[4]   In making this argument, Defendants do not concede that the KWPA applies in this case, but rather make this argument in the alternative should the Court conclude that Plaintiffs' KWPA claims should proceed.

[5]   Plaintiffs have carefully stated that they do not seek quantum meruit relief for any week in which the employee worked more than 40 hours.   *See* Theories of Recovery section 6.a.3 of Pretrial Order.   This is clearly an effort to avoid FLSA pre-emption.   *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (state common law claim pre-empted where FLSA provided adequate remedy); *Guerrero v. JP Morgan Chase & Co.*, Civil Action No. 6:09CV388, 2010 WL 457144 (E.D. Tex. Feb. 5, 2010) (dismissing quantum meruit claim based on alleged violation of FLSA as pre-empted).   However, Plaintiffs' statutory claims still cover the waterfront leaving no room for quantum meruit.

Moreover, the statutes at issue define the parties' relationship with respect to required compensation and serve, for these purposes, the same function as an express contract. *Ice Corp. v. Hamilton Sundstrand, Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006) (discussing inapplicability of quantum meruit when express contract exists). The statutory scheme, as with an express contract, "regulates the relations of the parties with respect to the disputed issue." *Id.* Thus, there simply can be no equitable claim for recovery beyond what may or may not be required pursuant to the statutory claims. *See Clougher v. Home Depot U.S.A., Inc.,* 696 F.Supp.2d 285, 295 (E.D.N.Y. 2010) (dismissing "claims for *quantum meruit* and unjust enrichment as duplicative of statutory claim" because plaintiff's "New York Labor Law claim provide[d] an adequate legal remedy for the conduct alleged") (internal citations omitted); *Bongat v. Fairview Nursing Care Center, Inc.,* 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) (holding that plaintiffs had no claims based upon unjust enrichment and quantum meruit because their statutory remedy under the FLSA, as well as any viable breach of contract claim, provided an adequate remedy at law); *see also* 27A Am. Jur. 2d Equity § 21 (July 2010) ("the absence of an adequate remedy at law is a pre-condition to any type of equitable relief" and an "adequate legal remedy may of course be provided by statute").

For these reasons, Plaintiffs' claim of quantum meruit must fail as a matter of law and Defendants are entitled to summary judgment.

### D. <u>Any Activities Performed As Part Of Plaintiffs' Meal Period Are Not Compensable Under The FLSA</u>

#### 1. <u>Plaintiffs' Meal Period Qualifies As A Bona Fide Meal Period Such That Any Activities Performed During the Meal Period Are Non-Compensable</u>

Plaintiffs' claims under the FLSA seek compensation for donning, doffing, washing and other activities that take place during their meal period, which previously lasted 30 minutes and now lasts 35 minutes with five minutes of that being paid. However, because the meal period is a

19

bona fide meal period, they are not entitled to compensation for any part of that time.  The Tenth Circuit has joined the majority of the courts of appeals in adopting the "predominantly-for-the-employer's-benefit standard" in determining whether a meal period is bona fide under the FLSA. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1157-58 (10th Cir. 1992) (holding appropriate standard for evaluating whether meal periods are compensable is whether the employee's time is spent predominantly for the benefit of the employer); *see also Burnison v. Memorial Hosp., Inc.*, 820 F. Supp. 549, 555 (D. Kan. 1993) (same).  As the court in *Burnison* recognized, "the proper standard for determining compensability of a meal period is whether the [employee] is … primarily … engaged in work-related duties during meal periods," thus, an employee's meal period is bona fide and considered non-compensable when the employee's time is not spent predominantly for the benefit of the employer.  *Id*. at 556 (internal citation and quotations omitted).

The applicable analysis for Plaintiffs' claims for meal period activities was demonstrated in *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984).  In *Hill*, the plaintiff was a postal employee who had to carry with him and safeguard during his lunch various items used to perform his job.  *Id*. at 811.  The Sixth Circuit held that none of these responsibilities were "substantial duties" that rendered the lunch period predominantly for the employer's benefit.  *Id*. at 814-15.  The postal employee further argued that regulations requiring him to act courteously, accept mail from customers, and provide customers postal information and forms meant that he had to respond to any customer inquiries he received while on his lunch break.  *Id*. at 811-12. The court also rejected this argument, noting that he was not *required* to accept mail from customers during the meal period and that any interruption of his lunch by a customer seeking information was infrequent.  *Id*. at 815.

In comparison, several Plaintiffs here concede that they spend only minimal time during the meal period on donning and doffing activities and agree that they only have to remove some, but not all, of the items they wear over their street clothing or white uniforms before going to lunch.  SMF at ¶¶ 15, 17.  Even Plaintiffs' expert measured employees whose total donning and doffing activities took less than five minutes at the meal period.  SMF at ¶ 19.  Plaintiffs also admit that they are not required to wash at the meal period.  SMF at ¶ 16.  Nor are they required to perform any work-related duties during their meal period time.  SMF at ¶ 14.  Such minimal activities are not any more imposing than the activities complained of in *Hill*.  Further, Plaintiffs testify that they are free to engage in a wide variety of activities during the meal period for their own personal benefit.  SMF at ¶ 18.  Specifically, employees may eat, socialize, read, smoke, talk on the telephone and even travel outside of the facility for food and other errands.  SMF at ¶ 18.  *See Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994) (while the employer undoubtedly benefited from requiring patrol officers to leave their radios on and stay within the jurisdiction during meal periods, the time was provided predominantly for the benefit of the officers and found non-compensable); *Mendex v. The Radec Corp.*, 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("the relevant question is whether the break itself is predominantly spent on activities for the employer's benefit not on whether the employee did anything at all for the employer's benefit."); *Marti v. Grey Eagle Distribs.*, 937 F. Supp. 845, 852 (E.D. Mo. 1996) (holding plaintiffs' breaks noncompensable where employees were free "to enjoy a variety of recreation and amusements during breaks.").

The Fourth Circuit similarly found that activities, such as donning and doffing, were not compensable when performed during a bona fide meal period.  The plaintiffs in *Sepulveda v. Allen Family Foods, Inc*. 591 F.3d 209 (4th Cir. 2009) sought compensation for activities

performed during the meal period similar to the ones at issue in this case:

> Each day, the employees receive a thirty-minute lunch break, during which no chickens are placed on the production line.  Employees are free to leave the production area when the last chicken passes their stations but are expected to be back when the first new chicken arrives.  During the lunch break, they typically take off their gloves and aprons, wash up, and then walk to the cafeteria.  Upon returning to the production area, they put these items back on and then sanitize them before resuming work. … Employees … do not receive compensation during the lunch break.

*Id*. at 213.  Like the Tenth Circuit, the Fourth Circuit has also adopted the predominant benefit test in determining whether meal periods are bona fide.  *Roy v. County of Lexington*, 141 F.3d 533, 544-45 (4th Cir. 1998).  Under the predominant benefit test, "[t]ime spent predominantly for the employer's benefit during a period, although designated as a lunch period or any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act."  *Id*. at 544 (quoting *F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 496 (6th Cir. 1952)).  The Fourth Circuit in *Sepulveda* applied the predominant benefit test to the plaintiffs' meal period claims and found that the opposite was also true:  "the time [the plaintiffs] spend during their lunch breaks donning and doffing a few items" was not compensable "because it is part of a bona fide meal period."  *Id*. at 216 n.4.  In other words, because the 30-minute meal period as a whole was predominantly for the benefit of the employees, the entire 30 minutes was non-compensable, despite the fact that the plaintiffs spent a few minutes during that 30-minute period performing donning and doffing activities.  Similarly, the few minutes Plaintiffs spend during their 30-minute unpaid meal periods donning, doffing, and washing is not compensable because such time is part of a bona fide meal period.

That the Fourth Circuit reached the right result in *Sepulveda* is supported by the plain language of 29 C.F.R. § 785.19, which excludes bona fide meal periods from the compensable "continuous workday."  Such exclusion would be meaningless if employers were required to pay

22

for any incursion of doffing and donning during the meal period, which would effectively create two or more "continuous workdays" during a single shift and eliminate the need to refer to exclusion of the meal period.  The better reading of the regulation is that so long as the meal period, considered in its entirety, predominantly benefits the employee, it is bona fide and thus non-compensable, regardless of the type of incursion at issue.  Accordingly, Defendants are entitled to summary judgment as a matter of law on Plaintiffs' claim for compensation based on activities they performed during the bona fide meal period.

> 2.   Alternatively, Any Time Spent Performing Activities During The Meal Period Is Non-Compensable Because Such Time Is *De Minimis*

The *Sepulveda* Court held, in the alternative, that the time spent donning and doffing by the plaintiffs during their lunch breaks was not compensable because it was *de minimis. Sepulveda,* 591 F.3d at 216 n.4 (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.")).  The same holding applies to Plaintiffs' claim for compensation for meal period activities in this case.

In *Mt. Clemens Pottery Co.*, the Supreme Court held that otherwise compensable activities (in that case, certain donning and doffing) are not included in calculating hours worked if the period of time spent on an activity is so "insubstantial and insignificant" that it ought not be included in the workweek.  *Mt. Clemens Pottery Co.*, 328 U.S. at 693.  "[A] few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded.  Split-second absurdities are not justified . . . .  It is only when an employee is required to give up a *substantial* measure of his time and effort that compensable working time is involved."  *Id.* at 692 (emphasis added).  Here, several Plaintiffs admit, and Plaintiffs' expert confirms, that donning and doffing activities at the meal period can take less than five minutes.  SMF at. ¶¶ 17, 19.  Numerous

courts, including the Tenth Circuit, have granted the employer summary judgment as a matter of law on the *de minimis* defense as to a number of the items at issue here. *See, e.g., Alvarez v. IBP, inc.*, 339 F.3d 894, 903-04  (9th Cir. 2003) (donning and doffing of all "non-unique protective gear" *de minimis*); *Reich v. IBP*, Inc., 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (same regarding hard hats, earplugs, safety footwear, safety eyewear); *White v. Tip-Top Poultry, Inc*., Civil Action No. 4:07-cv-0101-HLM, 2008 U.S. Dist. LEXIS 110598, at *35 (N.D. Ga. Oct. 7, 2008) (same regarding smock, hairnet, earplugs); *Jenkins v. Harrison Poultry*, Inc., Civil Action No. 2:07-cv-0058-WCO, 2008 U.S. Dist. LEXIS 110597, at *21 (N.D. Ga. July 29, 2008) (same regarding dust mask, safety glasses, earplugs, hairnet); *Abbe v. City of San Diego*, No. 05cv1629 DMS (JMA), 2007 WL 4146696, at *5 (S.D. Cal. Nov. 9, 2007) (same regarding all "safety gear"); s*ee also Sandifer v. U.S. Steel Corp.,* No. 2:07-CV-443 RM, 2009 WL 3430222, at *6 (N.D. Ind. Oct. 15, 2009) (even if hard hats, safety glasses, and ear plugs not excluded by FLSA § 3(o), they would be excluded as *de minimis*); *Kassa v. Kerry*, 487 F. Supp. 2d 1063, 1067 n.1 (D. Minn. 2007) (same as to hairnets and beard nets).

For all of these reasons, as in *Sepulveda,* the few minutes spent by employees donning and doffing during the meal period is not compensable because it is *de minimis*.  Accordingly, Defendant respectfully requests that the Court grant summary judgment in its favor on Plaintiffs' meal period claims.

### E.      Plaintiffs' Claim For Compensation For The Unpaid Portion Of The 25-Minute Break Fails As A Matter Of Law

#### 1.      The 25-Minute Break Does Not Qualify As A Compensable Rest Break Under The FLSA

In the Court's Memorandum and Order granting Plaintiffs' motion to supplement their amended complaint, the Court directed "Plaintiffs to include their supplemental claims in those sections of the revised Pretrial Order that address Plaintiffs' contentions, theories of recovery,

and damages." Dkt. No. 868 at 12.  In their factual contentions section in the Pretrial Order, Plaintiffs attempt to characterize the rest break as a 20-minute rest break for which they should receive compensation.  *See* Plaintiffs' Factual Contentions, section 5.a.8 of Pretrial Order. Plaintiffs are incorrect that the at-issue break is 20 minutes, and in any event they are incorrect that a 20-minute rest break must be compensated under the FLSA.

Although Plaintiffs refer to the break as a "20-minute rest break," there is no genuine dispute that it is actually a 25-minute break, of which five minutes are paid.  *See* SMF at ¶ 13. Further, in support of their allegations, Plaintiffs only cite part of the relevant DOL regulation stating that "'rest periods … must be counted as hours worked,'" misleadingly suggesting that under the FLSA all rest breaks must be compensated.  *See* Theories of Recovery section 6.c.ii.3.ii of Pretrial Order (quoting 29 C.F.R. § 785.18-19).  Plaintiffs quote part of 29 C.F.R. § 785.18 regarding the compensability of rest breaks but omit the remainder, which specifies that compensable rest breaks are "[r]est periods of short duration, running from 5 minutes to about 20 minutes."  29 C.F.R. § 785.18.  Because the at-issue break is 25 minutes long, it is well more than the approximately 20 minutes that is a general benchmark for paid breaks.

Further, the DOL has stated that the fact that part of a break is compensated does not transmute the remaining minutes of the break into compensable time, *even if* the remaining unpaid time is less than 20 minutes.  *See* DOL Opinion Letter dated Dec. 3, 1996, attached as Exh. 16 (paying employees for the first 15 minutes of meal period does not have effect of converting remaining 15 minutes into compensable break period pursuant to regulations).  This forecloses Plaintiffs' attempt to fit the 25-minute break into the definition of a compensable "short" "rest period."  In any event, there is no genuine dispute that employees can and do spend less than five minutes on donning and doffing activities during the 25-minute break.  Supervisors

at the Finney County and Emporia plants measured 59 and 28 hourly production employees respectively for whom at least 20 minutes passed from the time they placed their last clothing item on a hook before going to break until they took the first item off the hook at the end of break. SMF at ¶ 22. These employees included trimmers and other employees who wear more than the minimal required clothing items, including safety items to prevent knife injuries, demonstrating that the five paid minutes is sufficient time to account for any required donning and doffing activities at the 25-minute break.[6] SMF at ¶ 22. In contrast, Plaintiffs' expert did not measure donning and doffing activities at the 25-minute break, although the new break schedule was in effect when he conducted his time study. *See* Radwin Report at 3 n.1. Thus, the *only* timed evidence regarding donning and doffing activities at the 25-minute break demonstrates that such activities are fully compensated by the paid five-minute portion of the break.

Even assuming, *arguendo*, that the break could be viewed as a 20-minute unpaid break, Plaintiffs' allegations still would fail to state a claim under the FLSA. As previously stated, the DOL regulation regarding rest breaks merely states that rest breaks of up to "about" 20 minutes are compensable. 29 C.F.R. § 785.18. Both the DOL's own interpretation of its regulations and applicable case law establish that a break does not need to last more than 20 minutes to be non-compensable. *See Myracle v. Gen Electric Co.*, No. 92-6716, 1994 U.S. App. LEXIS 23307, at *26 (6th Cir. Aug. 23, 1994) (20-minute meal period is non-compensable); *see also* DOL

---

[6]   Defendants do not concede that measuring from last touch of hook to first touch is the appropriate measurement for donning and doffing activities, as it may include activities such as walking, socializing, and placing items on/ taking them off the hook that Defendants contend are not compensable under the FLSA and because employees may elect to doff and don items that they are not required to take off at the meal period. Thus, Defendants' measurements likely are overly inclusive, although for purposes of this motion they demonstrate that both required and optional donning and doffing activities are easily performed in less than five minutes at the 25-minute break.

Opinion Letter dated Nov. 22, 2004, attached as Exh. 17 (same); DOL Opinion Letter dated Sept. 25, 2000, attached as Exh. 18 (15-minute meal period adequate under the circumstances).

    2.  <u>The 25-Minute Break Is Also Non-Compensable As Off-Duty Time</u>

    Alternatively, the 25-minute break is non-compensable because it is "off duty" time. Under the DOL regulations, "off duty" time is defined as "periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes …."  29 C.F.R. § 785.16(a).  Federal courts consider an employee "completely relieved" from duty under section 785.16 where the employee receives the predominant benefit of the time period.  *See, e.g., Marti v. Grey Eagle Distribs.*, 937 F. Supp. 845, 852 (E.D. Mo. 1996) (30-minute breaks satisfied § 785.16 where no restrictions placed on plaintiffs, other than remaining on the premises, prevented them from "indulging in leisure activities" such a reading, watching television, playing cards, or eating); *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 776 (N.D. Ga. 1996) (time spent on layovers was non-compensable under § 785.16 as a matter of law where, despite some restrictions, flight attendant was free to use the time for her own purposes).  For an employee to have enough time "to enable him to use the time effectively for his own purposes," the employee must be told in advance (1) that he may leave the job, and (2) that he will not have to commence work until a definitely specified hour has arrived.  29 C.F.R. §  785.16(a).  Whether the time is sufficient to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances. *Id.*  Such time can be excluded from compensable time even if it is less than 30 minutes.  *See Blain v. Gen. Elec. Co.*, 371 F. Supp. 857, 860 (W.D. Kan. 1971) (citing "completely relieved" language of 29 C.F.R. § 785.16 and finding 18 minutes during a break that employees are relieved from duty non-compensable).

Here, the requirements for "off duty" time have been met, where employees are provided the 25-minute break at approximately the same time every day and know they do not have to return to their work station until a predetermined number of minutes after each employee commences his or her break.  SMF at ¶ 13.  For all of the foregoing reasons, Defendants are entitled to judgment as a matter of law on Plaintiffs' claim that the 25-minute break is compensable in its entirety.

3.      The 25-Minute Break Is Also Non-Compensable Under Kansas Law

Unlike federal law, Kansas law does not have a statutory rest break or off-duty requirement.  Thus, Plaintiffs cannot recover for the full 25-minute break under state law, and those Plaintiffs who are members of only the Rule 23 class have no basis for claiming that the break is compensable in its entirety.  Nor can Plaintiffs claim that donning and doffing activities exceeding five minutes during the 25-minute break are compensable under state law.  Plaintiffs' basis for this proposition is the "continuous workday" doctrine recognized under the FLSA.  No reported Kansas decision has recognized that doctrine under state law, nor does Kansas statutory law articulate a similar doctrine.  Because there is no predicate basis in Kansas law for treating the activities at issue as compensable during the rest break, Plaintiffs cannot recover under the KWPA or equitable considerations of quantum meruit, and to conclude otherwise would be tantamount to judicial legislation creating new rights under Kansas law.  If the state legislature wanted to enact a law requiring that breaks be provided, or that breaks of less than a specified time must be compensated, it would have done so.  This Court should resist Plaintiffs' invitation to create such a right.  *See supra* at III(B) (discussion of *Erie*).

**F.      Defendants Acted In Good Faith And Without Willfulness In The Manner In Which They Implemented Their "K Code" Payment System**

      1.      **Because Defendants Acted In Good Faith In Implementing Their K Code Payment System, Plaintiffs' Request For Liquidated Damages Must Be Denied As A Matter Of Law**

Plaintiffs seek liquidated damages under 29 U.S.C. § 260 for their claimed FLSA violations.  Even if it is determined that Defendants violated the FLSA, a point which Defendants vehemently dispute, there is no genuine dispute that any violation was in good faith, based upon a reasonable belief that their actions did not violate the law.

29 U.S.C. § 260 provides that:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act…the court may … award no liquidated damages…

Section 260 has both subjective and objective components.  Tyson must establish that it acted with good faith and reasonableness.  *See Fowler v. Incor*, 279 Fed. Appx. 590, 599-600 (10th Cir. 2008) (unpublished).  "The 'good faith' requirement is a subjective standard where the employer must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'" *Id.* (citing *Dep't. of Labor v. City of Sapulpa,* 30 F.2d 1285, 1289 (10th Cir. 1994)) (internal quotation omitted); *see also Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1540 (10th Cir. 1991).  Under this standard, even where an employer's decisions about the FLSA are incorrect, liquidated damages are not proper if the employer made a good faith attempt to comply with the FLSA.  *See Fowler* at *3 (finding that "proof that the law is uncertain, ambiguous or complex may provide reasonable grounds for an employer's belief that he is conformity with the Act, even though his belief is erroneous") (citing *Bull v. United States,* 68 Fed. Cl. 212, 229 (2005)).

"To satisfy the objective standard, the employer must act as a reasonably prudent person would have acted under the same circumstances."  *Id.* (citing *Brooks v. Village of Ridgefield*

*Park,* 185 F.3d 130, 137 (3d. Cir. 1999)).   The Tenth Circuit has found persuasive a party's reliance on Department of Labor administrative opinions and written guidance in determining that a party's actions were "reasonable" for purposes of § 260.  *See Ackley v. Dep't of Corr. of State of Kan.,* 844 F. Supp. 680, 688 (D. Kan. 1994); *see also Zachary v. Rescare Oklahoma, Inc.,* 471 F. Supp. 2d 1183, 1193 (N.D. Okla. 2006) (concluding that Defendant's reliance on a DOL opinion letter, and an internal analysis of a similar lawsuit was "an honest intention to ascertain and follow the dictates of the Act," thus meeting their burden of establishing the good-faith defense); *Zegers v. Countrywide Mortg. Ventures, LLC,* No. 6:07-cv-1893-Orl-22DAB, 2008 WL 728482, at *1 (M.D. Fla. March 17, 2008).

Here, there is no genuine dispute that Tyson acted subjectively and objectively in good faith.  Tyson has justifiably relied on the injunction that was entered in *Reich v. IBP, inc.,* requiring IBP to pay employees only for certain pre- and post-shift activities.  Second Supp. Kimbro Decl. ¶¶ 10-11.  In this Court's earlier summary judgment ruling (Dkt. 599), the Court speculated only that the Tenth Circuit "*might* reach a different conclusion on compensability if analyzed [again] in the context of *Alvarez.*"  Dkt. 599 at 11 (emphasis added).  Similarly, when this case went up on interlocutory appeal, the Tenth Circuit observed that, while there is a "plausible argument" that *Alvarez* undermined *Reich v. IBP,* it is an open question.  *See Garcia v. Tyson Foods, Inc.,* 534 F.3d 1320, 1330 (10th Cir. 2008).  Thus, as a matter of law, Tyson has had "reasonable grounds for believing that [its actions were] not a violation of the Fair Labor Standards Act."  *See* 29 U.S.C. § 260.

Further, in assessing a party's good faith, courts have taken into consideration an unclear state of the law in a particularly complex area, in determining whether a party has met the reasonableness standard.  *See, e.g., Pabst v. Oklahoma Gas & Electric Co.,* 228 F.3d 1128, 1136

(10th Cir. 2000); *see also Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 918 (8th Cir. 1991) (finding that "uncertainty in the application of the FLSA may be considered in determining whether to impose liquidated damages."); *accord Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1322-23 (N.D. Ala. 2008) ("Defendant may present a § 260 defense even if it based its pay practices on a mistaken interpretation of Department of Labor regulations.").

Here, since the injunction was entered in *Reich v. IBP, inc.*, and even since this Court's earlier summary judgment ruling, there has been a substantial amount of litigation over the issues presented in this case in various industries, including food processing, with mixed results. Second Supp. Kimbro Decl. ¶ 5.  In one of those cases, *De Asencio v. Tyson Foods, Inc.*, Defendant Tyson Foods obtained a complete defense verdict on the issue of the compensability of donning, doffing, and cleaning sanitary outer garments and non-unique protective items similar to those at issue in this case (although the verdict was reversed on one ground on appeal and remanded for further proceedings on the company's Portal Act and *de minimis* defenses).  *Id.* at ¶ 6.  In denying a recent DOL motion for summary judgment against Tyson on its Section 260 defense in a case involving one of its poultry facilities, the district court recognized that: "[G]iven the vast amount of litigation similar to this action which has either recently been or is currently pending in district and circuit courts nationwide, and which offers varying conclusions under different legal theories, it is reasonable to conclude that the compensability of the [donning and doffing] activities presently at issue remains unsettled."  *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1322 (N.D. Ala. 2008).

Thus, because Tyson has relied in good faith on these facts, its compliance with the *Reich* injunction, and the unsettled state of the law, much of which has been favorable to employers,

Tyson is entitled to summary judgment on Plaintiffs' claim for liquidated damages as a matter of law.

> 2.   Any Violation Of The FLSA By Defendants Was Not Willful And As Such, Plaintiffs Are Limited To A Two Year Statute Of Limitations Period

Plaintiffs claim that Defendants' alleged violations of the FLSA were "willful," and seek to lengthen the limitations period for the federal plaintiffs to three years instead of two years. Plaintiffs' claim, however, fails as a matter of law.

29 U.S.C. § 255(a), states:

> Any action … to enforce a cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended…(a)…may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a *willful violation* may be commenced within three years after the cause of action accrued….

(Emphasis added.)  Under 29 U.S.C. § 255(a), the test for "willfulness" is whether the employer knew it was violating the statute or acted in "reckless disregard" of whether its conduct violated the statute.  *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988) ("the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional'; no willful violation unless the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA]"); *Pabst,* 228 F.3d at 1137 (same); *Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1283 (10th Cir. 2006) (same); *Reich v. Monfort, Inc.,* 144 F.3d 1329, 1334 (10th Cir. 1998) (same).

The Tenth Circuit has recognized on multiple occasions that, although cases involving knowledge, motive, and/or intent typically are not well suited to summary disposition, this does not mean that summary judgment is never proper.  *See Fowler v. Incor*, 279 Fed. Appx. 590, 599-600 (10th Cir. 2008) (unpublished) (granting summary judgment on the issue of

"willfulness" based on defendant's reliance on the advice of industry consultants and state officials in implementing its policies, and applying a two-year statute of limitations) (citing *Baum v. Great W. Cities, Inc.,* 703 F.2d 1197, 1210-11 (10th Cir. 1983)).

Even in the donning and doffing context, at least one court has granted the *employer* summary judgment on the willfulness issue, "given the closeness of the substantive questions raised by the plaintiffs under the FLSA and the lack of dispositive authority" on the compensability of the same types of lightweight and standard items at issue here. *See Tum v. Barber Foods, Inc.*, No. 00-371-P-C, 2002 WL 89399, at *6 (D. Me. Jan. 23, 2002) (Mag.'s Report and Recommendation), *aff'd on other grounds*, 360 F.3d 274 (1st Cir. 2004), *rev'd on other grounds sub nom. IBP, inc. v. Alvarez*, 546 U.S. 21 (2005); *see also Saunders v. John Morrell Co.,* No. C88-4143, 1991 WL 529542, at *7 (N.D. Iowa Dec. 24, 1991) (in denying plaintiffs' motion for summary judgment regarding compensability of washing by meat-processing employees, the court stated that "there are and were solid, logical arguments supporting both sides of this controversy. … [T]he court is alerting the parties that it is now of the opinion that there was no willful violation by Morrell which would extend the possible back pay period.").

Here, as discussed above, there exists absolutely *no evidence* demonstrating knowledge of an actual violation or recklessness on the part of Tyson. *See Pabst,* 228 F.3d at 1137 (finding that "the same facts that support the district court's conclusion that [defendant's] failure to compensate plaintiffs for all of their on-call time was reasonable and in good faith support the district court's conclusion that [defendant's] violation of the FLSA was not willful"). Quite to the contrary. Tyson reached agreement with the DOL on a reasonable number of minutes to compensate employees and to put the Company in compliance with the *Reich* injunction.

33

Second Supp. Kimbro Decl. ¶ 10.  Since the time of the *Herman* enforcement action, there has been no further challenge by the DOL to the Company's practices at issue and no court has held that the *Reich* injunction no longer applies.  Second Supp. Kimbro Decl. at ¶ 2.  When these facts are combined with the unsettled state of the law described above, it becomes evident that Defendants did not willfully violate the FLSA as a matter of law.  Accordingly, a two year limitations period should be applied in this case.

3.     <u>Defendants Are Entitled To Summary Judgment On Plaintiffs' Claim Of A Willful Violation Of The KWPA</u>

The Defendants' right to summary judgment on "willfulness" applies with even greater force to Plaintiffs' claim of a willful violation of the KWPA.  K.S.A. 44-315(b) authorizes a penalty where an employer "willfully fails to pay an employee wages…"   As defined by the Kansas Supreme Court, willfulness in this context means an act "indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another."  *Holder v. Kan. Steel Built, Inc*, 582 P.2d 406, 411 (Kan. 1978); *Beckman v. Kan. Dept. of Human Resources*, 43 P.3d 891, 896 ( Kan. App. 2002).  This requires a showing of more than the fact that the act was voluntary, deliberate and intentional, the FLSA willfulness standard as noted above.

In *Weinzirl v. The Wells Group, Inc.*, 677 P.2d 1004 (Kan. 1984), the Kansas Supreme Court addressed the definition of willfulness under the KWPA.  In *Weinzirl*, the administrative agency had awarded the plaintiff a penalty under the KWPA, but the state district court had reversed that penalty award and that decision was appealed.   The Supreme Court noted that the Oregon Supreme Court had defined willful to mean that the subject conduct was done intentionally, and that the actor knew what he was doing, intended to do it and was a free agent. *Weinzirl* at 1022 (citing *State ex rel Nilsen v. Johnston*, 377 P.2d 331 (Ore. 1962). This is essentially the same as the definition in *McLaughlin v. Richland Shoe Co*, cited above. The

34

*Weinzirl* Court noted that under that Oregon definition of willful, the conduct at issue in the case before it would result in liability for the KWPA statutory penalty.  However, the Supreme Court goes on to state, under the definition announced in Holder this was not enough because there was no "design, purpose or intent to willfully wrong or injure" the plaintiff.  Therefore the Supreme Court affirmed the lower court's reversal of the administrative agency.  *Weinzirl* at 1022-1023.

Similarly in *Burton v. Kansas Department of Labor*, 211 P.3d 188, 2009 WL 2144088 (Kan. App. July 17, 2009) (unpublished), the Kansas Court of Appeals affirmed a Kansas Department of Labor decision to deny a claim for the KWPA penalty.  In this case, the employer had failed to pay the employee any wages for four months due to a claimed lack of funds.  The defendant, a lawyer, clearly must have known or shown reckless disregard for the fact that the failure to pay any wages would violate the KWPA provision requiring wage payment at least once per month (and thus seems to have met the FLSA willfulness standard).  However, the denial of the penalty was upheld; the failure to pay was not due to a design, purpose or intent to cause injury but was because of the employer's financial difficulties.  *Id.* at *6-8. This is consistent with the result in *Weinzirl*, where the Court found that the execution of an employment contract which provided for wage deductions which were improper under Kansas law was not enough to support a finding of willfulness under the KWPA.  *Weinzirl*, 677 P. 2d at 1023.

Given the factual and legal background of the payment issues in this case, as discussed above, there can be no doubt that, as a matter of law, Defendants' actions were not due to a "design, purpose or intent to do wrong or cause an injury to another", and thus there is no right to recover a penalty under the KWPA.

IV.     **CONCLUSION**

Defendants respectfully request that the Court grant their motion for summary judgment on Plaintiffs' state law claims and for partial summary judgment on Plaintiffs' FLSA claims and enter an order dismissing such claims with prejudice and any other relief the Court deems just and proper.

                                        Respectfully submitted,


                                        */s/ Michael J. Mueller*
                                        Michael J. Mueller (admitted *pro hac vice*)
                                        E-mail: mmueller@hunton.com
                                        HUNTON & WILLIAMS LLP-DC
                                        1900 K Street, NW
                                        Washington, DC 20006
                                        (202) 419-2116
                                        (202) 778-7433 (facsimile)


                                        */s/ Robert W. McKinley*
                                        Robert W. McKinley (KS Bar # 13516)
                                        E-mail: rmckinley@lathropgage.com
                                        Brian N. Woolley (KS Bar # 70007)
                                        E-mail: bwoolley@lathropgage.com
                                        LATHROP & GAGE LLP
                                        2345 Grand Boulevard, Suite 2200
                                        Kansas City, MO  64108
                                        (816) 292-2000
                                        (816) 292-2001 (facsimile)


                                        Attorneys for Defendants,
                                        TYSON FOODS, INC.
                                        TYSON FRESH MEATS, INC.

October 29, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2010, I electronically filed the foregoing

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW

CLAIMS AND PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' FLSA CLAIMS

WITH MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT with the Clerk of

the Court using the CM/ECF system which sent notification of such filing to the following:


    Eric L. Dirks
    George A. Hanson
    STUEVE SIEGEL HANSON WOODY LLP
    330 West 47th Street, Suite 250
    Kansas City, MO  64112

    Adam T. Klein
    Justin M. Swartz
    OUTTEN & GOLDEN LLP
    3 Park Avenue, 29th Floor
    New York, NY  10016


                                */s/ Brian N. Woolley*
                                Brian N. Woolley
                                An Attorney for Defendants