# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ADELINA GARCIA, et al.,
Individually, and on Behalf of a Class
of Others Similarly situated,

                    Plaintiffs,                    Civil Action

v.                                            No. 06-2198-JWL-DJW

TYSON FOODS, INC., et al.,

                    Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Second Motion to Compel (ECF No. 865).

Oral argument was heard on the motion on November 30, 2010, at which time the Court took the

motion under advisement. Plaintiffs appeared at the November 30, 2010 motion hearing through

counsel Eric L. Dirks, George A. Hanson, and Lee R. Anderson. Defendants appeared through

counsel Emily Burkhardt Vicente and Brian N. Woolley.

After reviewing the briefs of the parties and hearing oral argument, the Court is now

prepared to rule. For the reasons set forth below, the Court denies the motion.

## I.       Nature of the Case and Plaintiffs' Motion

This is an action brought against Tyson Foods, Inc. and Tyson Fresh Meats, Inc.

("Defendants" or "Tyson") to recover unpaid wages under the Fair Labor Standards Act, 29 U.S.C.

§ 201, *et seq*. ("FLSA") and the Kansas Wage Payment Act, K.S.A. 44-312, *et seq*. Plaintiffs also

assert a Kansas common law claim for quantum meruit.

Plaintiffs are meat-packing workers at Defendants' Holcomb and Emporia, Kansas facilities.

They seek to recover unpaid wages for time spent during the continuous workday, including time

spent donning and doffing certain sanitary and protective clothing and equipment pre-shift, post-shift, and during unpaid breaks and for pre-shift post-donning and post-shift pre-doffing walking time.[1]  In addition, Plaintiffs seek to recover for the uncompensated portion of rest breaks.[2] The action has been certified as a collective action with respect to the FLSA claims and as a class action with respect to the state law claims.

Plaintiffs' Second Motion to Compel is filed as a single motion; however, because the motion seeks two different forms of relief and concerns two different methods of discovery, the Court will treat it as two motions.  Each motion will be discussed in detail below.

## II.    Motion to Compel Discovery of Electronically Stored Information

### A.    Introduction and Relief Requested

Defendants produced electronically stored information ("ESI") in June 2010 in response to Plaintiffs' Second Request for Production of Documents.  Defendants' production included e-mails that Defendants located through a search conducted of the e-mail repositories of 33 Tyson employees.  Plaintiffs contend that Defendants' ESI search was deficient in that Defendants failed to search for and produce e-mails of certain "key players to this litigation."[3]  Plaintiffs also contend that Defendants failed to preserve the e-mails of certain employees for whom Defendants did perform e-mail searches.  Thus, Plaintiffs ask the Court to compel Defendants to do two things. First, Plaintiffs ask the Court to compel Defendants to broaden their ESI search.  In their opening brief, Plaintiffs ask the Court to compel Defendants to "search the emails of the 28 individuals listed

---

[1] Pretrial Order (ECF No. 873) ¶ 2.

[2] *Id.*

[3] Pls.' Second Mot. to Compel (ECF No. 865).

on [Defendants'] hold notice whose emails were not searched and any other corporate-level HR management [employees] who may be in possession of responsive documents."[4]  In their reply, however, Plaintiffs have agreed to narrow their request to only 11 employees listed on Defendants' litigation hold notice whose e-mail repositories were not searched.  Plaintiffs identify those 11 employees as follows:

1. Dick Bond – Chief Executive Officer of Tyson Foods

2. Jim Lochner – President of Tyson Fresh Meats

3. Noel White – Vice President of Tyson Fresh Meats

4. Dan Brooks – Vice President of Tyson Fresh Meats

5. Dave Hixson – Vice President over the beef plants

6. Rex Hofer – Director of Human Resource Operations

7. Ken Kimbro – Senior Vice President of Human Resources

8. Rodney Nagel – Vice President of Human Resources

9. Bruce Pautsch – Assistant Vice President of Human Resource Operations

10. Vikky Christensen – Director of Human Resource Operations

11. Hector Gonzalez – Director of Employment Compliance/Compensation.[5]

Second, Plaintiffs ask the Court to compel Defendants to restore and search certain backup tapes.  More, specifically Plaintiffs ask the Court to compel Defendants to search their backup tapes for responsive documents "for the dates of May 30, 2006 (two weeks after this case was filed), May 30, 2007 (three weeks after the Court denied Tyson's summary judgment motion), and August 30,

---

[4]*Id*. at 4.

[5]Pls.' Reply in Support of Second Mot. to Compel (ECF No. 882) at 9.

2008 (one month after the Tenth Circuit dismissed Tyson's appeal in this case)."[6]  Plaintiffs do not explain the significance of these three specific dates; however, Plaintiffs do state that under Defendants' e-mail retention practices, e-mails which were deleted prior to January 2009 were neither retained nor archived by Defendants.

Defendants oppose Plaintiffs' motion for several reasons.  First, Defendants assert that the motion is untimely because it was filed more than a month after the August 27, 2010 deadline for filing any motion to compel relating to Plaintiffs' Second Request for Production of Documents. Second, Defendants assert that, irrespective of the August 27, 2010 deadline, Plaintiffs unreasonably delayed in bringing their motion.  Defendants argue that Plaintiffs have known since 2008 the names of the particular employees (or "custodians" as the parties refer to them) for whom Defendants intended to search e-mails, and Plaintiffs never once objected to that list of custodians nor did Plaintiffs request that any specific custodians be added to the list.  Furthermore, Defendants produced Defendants' litigation hold notice to Plaintiffs in 2007, and, thus, Plaintiffs have known the names of the individuals listed on that hold notice for several years.

Third, Defendants assert that Plaintiffs have no basis to claim that the e-mail search which was conducted of the 33 custodians was unreasonable or that it did not capture all relevant and responsive information.  Defendants argue that Plaintiffs' assertion that additional relevant and responsive e-mails might exist is purely speculative and does not justify the cost, burden, and delay that a new search of additional custodians would entail.  Finally, Defendants assert that Plaintiffs have failed to justify their request to restore and search three days of backup tapes.  According to

---

[6]Pls.' Second Mot. to Compel (ECF No. 865) at 5.

Defendants, such a restoration would be unduly burdensome and costly and cause delay of the trial because the backup tapes "are not in a reasonably accessible format."[7]

Plaintiffs counter that their motion is timely because the deadline for filing their motion should be deemed to run 30 days from September 24, 2010, which was the date Defendants provided them the declaration of their ESI vendor, rather than August 27, 2010. Furthermore, Plaintiffs assert that in their First Motion to Compel they expressly reserved the right to file at a later date a motion to compel relating to Defendants' ESI production. Plaintiffs also contend they did not unreasonably delay in seeking the relief requested in the instant motion because in conferring with Defendants over the course of the past few years about Defendants' ESI production, Plaintiffs "made it crystal clear to Tyson that they were seeking emails from Tyson's top HR decision makers."[8] Plaintiffs argue that Defendants made a decision to ignore Plaintiffs' concerns and "simply took a calculated risk in choosing not to search or produce emails from its decision makers."[9]

## B.    Background Facts

### 1.    *Timeline of important dates*

The following is a summary of the important dates and events relating to Defendants' search and production of ESI.

| | |
|---|---|
| **May 9, 2007** | Plaintiffs serve their Second Request for Production of Documents. |
| **July 20, 2007** | Defendants serve their written objections and responses to the Second Request for Production, but do not produce all documents that are responsive. |

---

[7]Defs.' Resp. in Opp'n to Pls.' Second Mot. to Compel (ECF No. 870) at 3.

[8]Pls.' Reply in Supp. of Second Mot. to Compel (ECF No. 882) at 1.

[9]*Id.*

**August 24, 2007**  Defendants produce to Plaintiffs a litigation hold notice dated May 30, 2006 and an amended litigation hold notice dated April 23, 2007.

**August 2007**  The parties begin conferring regarding Defendants' ESI.

**August 15, 2007**  Plaintiffs serve a Rule 30(b)(6) deposition notice re: Defendants' ESI. The parties agree to postpone the deposition.

**February 2008**  Defendants propose a stipulation re: ESI: Defendants would search and collect data from the hard drives of 27 specified custodians and then search that data using a search term list agreed upon by the parties. Plaintiffs agree to the proposed search terms but otherwise reject the stipulation.

**June 2009**  Defendants resubmit their proposed stipulation to Plaintiffs with the same 27 custodians identified.

**June - July 2009**  Plaintiffs again reject the proposed stipulation, but the parties continue to attempt to agree as to the scope of Defendants' ESI search.

**August 6, 2009**  The parties hold a conference call with Defendants' ESI vendor. Plaintiffs are allowed to ask questions re: Defendants' e-mail system. Plaintiffs agree to provide suggestions as to which employees' ESI should be searched and to revise Defendants' proposed stipulation based on information learned during the conference call.

**September 24, 2009**  Plaintiffs write Defendants and object to (1) Defendants searching only hard drives and not e-mail or file servers; and (2) Defendants searching only those custodians listed in the proposed stipulation. Plaintiffs ask Defendants to search "corporate HR department and personnel"; HR personnel and other management at the Emporia and Holcomb facilities; and other unspecified individuals whom Defendants believe possess responsive information.

**September 25, 2009**  Defendants reject Plaintiffs' proposal that they search for all HR personnel, asserting that such a search is overbroad. Defendants ask Plaintiffs to identify specific custodians they want included on the search list. Defendants agree to search the e-mail servers, share drives, and hard drives associated with the identified custodians.

**Fall 2009**  Defendants add 6 custodians to the list of 27 previously identified. Defendants begin searching and collecting ESI for those 33 identified custodians.

**December 23, 2009**  Defendants notify Plaintiffs that they have completed collecting ESI from hard drives, e-mail data, and server data.

| | |
|---|---|
| **January-June 2010** | Defendants process the data collected, apply the agreed-upon search terms, and determine what data to produce. |
| **May 5, 2010** | Joint Stipulation Regarding Electronically Stored Information is filed. The stipulation sets forth the agreed- upon search terms, but notes that the parties have been unable to agree on the custodians and locations to be searched for potentially relevant ESI. It also states that Plaintiffs are required to "promptly communicate" to Defendants any objections to Defendants' ESI efforts so that Defendants may consider the objections in proceeding with their collection, review, and processing of ESI. |
| **June 2010** | Defendants begin their ESI production. |
| **June 30, 2010** | Defendants finish their ESI production. |
| **July 2010** | Plaintiffs take Rule 30(b)(6) deposition re: ESI issues. |
| **August 27, 2010** | Court-ordered deadline for Plaintiffs to file any motion to compel relating to Defendants' responses to Plaintiffs' Second Request for Production. |
| **August 27, 2010** | Plaintiffs file their First Motion to Compel, asserting that Defendants might not have completed a sufficient ESI search and requesting that Defendants be compelled to produce a witness with sufficient knowledge to give testimony about certain ESI topics listed in Plaintiffs' Rule 30(b)(6) deposition notice. |
| **September 24, 2010** | Defendants provide Plaintiffs with the declaration of the Vice President for Defendants' ESI vendor, which provides details about Defendants' ESI search. |
| **September 30, 2010** | Plaintiffs e-mail Defendants and object to the scope of Defendants' ESI production, including the list of custodians whose e-mail repositories were searched. Plaintiffs complain that Defendants did not search ESI for "Kenneth Kimbro, other corporate HR managers or several of the individuals on Tyson's hold notice." |
| **Early October 2010** | Plaintiffs inform Defendants that they should have searched and collected ESI from the repositories of all of the employees on Defendants' litigation hold notice and all corporate human resources personnel. |
| **October 7, 2010** | Plaintiffs file the instant Second Motion to Compel. |
| **October 8, 2010** | Plaintiffs file "Notice of Mooted Issues," stating that the issues raised in Plaintiffs' First Motion to Compel are moot. The Court enters an Order finding the First Motion moot. |

**October 24, 2010**     Plaintiffs' claimed deadline for filing the instant motion (30 days from date of service of the declaration of the Vice President for Defendants' ESI vendor).

　　　　　　　　2.　　*Detailed summary of facts*

On May 9, 2007 Plaintiffs served their Second Request for Production of Documents ("Second Request for Production").[10]  The Second Request for Production sought a number of different documents, including "all communications (including but not limited to any correspondence, . . . email correspondence or recorded voicemail messages) to, from, between or among Tyson and Holcomb and/or Emporia facility hourly workers regarding or relating to the subject matter of this litigation."[11]  Plaintiffs also requested, *inter alia*, that Defendants produce "all records relating to Tyson's method(s) for calculating hours worked by hour employees . . . including but not limited to all policies, all procedures, and all communications to Plaintiffs, managers, or any other individual regarding Tyson's time-keeping procedures."[12]  In addition, Plaintiffs requested "all records regarding the recording of hours worked by hourly workers at the Holcomb and/or Emporia facilities," including "communications to managers about potential problems with the time systems, company or facility policies . . . or memoranda regarding timekeeping policies and practices, or any other communication or documents related thereto."[13]

Defendants served their objections and written responses to the Second Request for Production on July 20, 2007; however, they did not serve all responsive documents at that time.

---

[10]*See* Second Req. for Produc., attached as Ex. 8 to Defs.' Resp. in Opp'n to Pls. Second Mot. to Compel (ECF No. 870).

[11]*Id.*

[12]*Id.*

[13]*Id.*

Instead, the parties entered into several agreements and stipulations that allowed Defendants additional time to produce the documents requested, including ESI.

On August 24, 2007**,** Defendants produced to Plaintiffs a litigation hold notice dated May 30, 2006 and an amended litigation hold notice dated April 23, 2007.[14]

In August 2007, the parties began discussing the discovery of Defendants' ESI. On August 15, 2007, Plaintiffs served a Rule 30(b)(6) deposition notice seeking testimony relating to, *inter alia*, Defendants' ESI capabilities, retention and production. The record is not clear as to why that deposition did not take place as initially noticed; but apparently the parties agreed to postpone it while the parties engaged in an ongoing dialogue about ESI issues. As part of that dialogue, Defendants informed Plaintiffs in an August 2007 letter that it would be unduly burdensome for Defendants to search all of the places where they store electronic information throughout the company. Defendants therefore proposed to limit their ESI search to the hard drives of certain custodians at the corporate and plant levels who would likely have responsive documents and ESI.[15] Defendants also informed Plaintiffs that their backup tapes were inaccessible.[16]

In February 2008, Defendants sent Plaintiffs a proposed stipulation to govern the retrieval, search, and production of ESI. Pursuant to the proposed stipulation, Defendants would collect data from the hard drives of 27 specified custodians and then search that data using a search term list agreed upon by the parties. Defendants explain in their response to the Second Motion to Compel that they "selected the custodians, not by name, but by position held in the plant plus a few common

---

[14]Decl. of Emily Burkhardt Vicente, ¶ 3, attached as Ex. 1 to Defs.' Resp. in Opp'n to Pls.' Second Mot. to Compel (ECF No. 870) ("Vicente Decl.").

[15]*Id.*

[16]*Id.*

individuals at corporate headquarters that Defendants reasonably believed to have discoverable information."[17]  The proposed stipulation reiterated Defendants' position that the information maintained on their backup tapes was not reasonably accessible, and explained that the backup tapes are for disaster recovery purposes only.  On February 20, 2008, Plaintiffs' counsel responded that they were agreeable to Defendants' proposed search term list, but were "simply not in the position to stipulate in advance to what it will take for Tyson to fulfill its responsibilities regarding discovery."[18]

Throughout the remainder of 2008 and into 2009, counsel continued their efforts to reach an agreement about Defendants' ESI search and continued to discuss whether a Rule 30(b)(6) deposition on ESI issues was necessary.  When no agreement was forthcoming, in June 2009, Defendants re-sent their proposed stipulation to Plaintiffs, which contained the same list of custodians that were proposed in Defendants' earlier stipulation.  On July 15, 2009, Plaintiffs responded that they would not enter into a stipulation regarding the scope of Defendants' ESI search and production "without having a deeper knowledge of Tyson's searching capabilities."[19]  On July 24, 2009, Defendants wrote Plaintiffs, stating that they understood why Plaintiffs "would be interested in some information about Tyson's data systems," but  that they did not think a deposition on ESI matters was necessary.[20]  Defendants offered instead to provide an interrogatory answer that

_____

[17]Defs.' Resp. in Opp'n to Pls.' Second Mot. to Compel (ECF No. 870) at 4, n.1.

[18]February 20, 2008 Letter from Eric Dirks to Michael Williams, attached as Ex. B to Pls.' Reply in Supp. of Pls.' Second Mot. to Compel (ECF No. 882).

[19]July 15, 2009 E-mail from Eric Dirks to Michael Mueller, attached as Ex. A to Pls.' Reply in Supp. of Pls.' Second Mot. to Compel (ECF No. 882).

[20]July 24, 2009 E-mail from Michael Mueller to Eric Dirks, attached as Ex. A to Pls.' Reply in Supp. of Pls.' Second Mot. to Compel (ECF No. 882).

was served in a similar wage and hour lawsuit, which would likely address Plaintiffs' need for additional information. On July 27, 2009, Plaintiffs responded that they would not stipulate or agree to an ESI search "in a vacuum" and that they needed "some kind of understanding of what information exists and can be produced before we reach an agreement."[21] They further stated that once they reviewed the interrogatory answer from the other lawsuit, they would provide Defendants "a list of questions that we need answers to."[22] They indicated, however, that if the interrogatory answer was totally insufficient, they would move forward with the Rule 30(b)(6) ESI deposition.

Shortly thereafter, the parties agreed that Defendants would make their ESI vendor available to Plaintiffs for a telephone conference so that Plaintiffs could learn more about Defendants' information technology systems, search capabilities, and the location of Defendants' ESI, without the necessity of taking a Rule 30(b)(6) deposition. On August 6, 2009, the parties held a lengthy telephone conference with Defendants' ESI vendor, and during that conference, Plaintiffs were allowed to ask any questions they desired about Defendants' ESI.[23] Plaintiffs asked several questions about Defendants' e-mail system and the locations in which Defendants' employees saved e-mail correspondence. Plaintiffs, however, did not inquire about which Tyson employees were most likely to possess discoverable e-mails or other ESI. At the end of the conference, Defendants asked Plaintiffs if they needed any additional information in order to agree on a list of custodians from whom Defendants would collect ESI. Plaintiffs agreed to provide Defendants with suggestions

---

[21]July 27, 2009 E-mail from Eric Dirks to Michael Mueller, attached as Ex. A to Pls.' Reply in Supp. of Pls.' Second Mot. to Compel (ECF No. 882).

[22]*Id.*

[23]Vicente Decl., ¶ 9.

and also indicated that they planned to revise Defendants' proposed stipulation based on information they learned during the conference call.[24]

Nonetheless, Plaintiff did not provide a revised stipulation to Defendants. Instead, several weeks later, on September 24, 2009, Plaintiffs wrote Defendants to let them know that they would not agree to Defendants' proposed stipulation. Plaintiffs' letter stated as follows:

> [I]t is my understanding that we have not yet been able to come to an agreement. I'm not sure how Tyson has decided to proceed. As I mentioned on our last call, we cannot agree to Tyson's proposal of searching the hard drives of Tyson's selected individuals. Your vendors stated that there are email servers and file servers, but you stated that Tyson does not intend to search those data repositories—just hard drives. My concern is that such a search does not account for the vast majority of responsive emails and other electronic documents.
>
> The other big issue that we discussed was how to limit the scope of the search by relevant business line, geography, business function, etc. Without knowing more about the Tyson organization, it's hard for us to know how to do this. For example, your vendors were not in a position to identify the number of servers or computers at corporate HR. *Anyhow, we think the search would need to include (1) Tyson's corporate HR department and personnel, (2) Tyson's HR personnel and other management in the Emporia and Holcomb facilities, (3) other individuals whom Tyson understands are in possession of potentially responsive information (such as folks dealing with timekeeping, payroll, and protective gear requirements). The list you proposed does not include all of these categories.*
>
> I see three ways to proceed. First, Tyson can agree to search the relevant servers containing emails and documents of the groups listed above. Second, Tyson can perform its ESI search as it sees fit subject to further discovery and/or a future motion to compel if we determine the search was underinclusive. Third, as you suggested on our phone call, we could turn to the Court for guidance. I am comfortable with any of these approaches and think that Tyson is in the best position at this stage to decide how to proceed. We are open to any suggestions you may have, but need a resolution in the very near term.[25]

---

[24] *Id.*

[25] September 24, 2009 Letter from Eric Dirks to Michael Mueller and Emily Burkhardt, attached as Ex. C. to Pls.' Reply in Supp. of Second Mot. to Compel (ECF No. 882) (emphasis added).

Although Plaintiffs's letter stated that Defendants' search "would need to include corporate HR department and personnel" and "Tyson's HR personnel and other management in the Emporia and Holcomb facilities," Plaintiffs did not identify any *specific* individuals that they wanted included on the custodian list.

The following day, on September 25, 2009, the parties conferred by telephone, and Defendants indicated they were working on a custodian search list that would be agreeable to both sides but that Plaintiffs' request that Defendants search for information from all of Tyson's corporate Human Resources Department personnel was overbroad because it would include employees with no involvement with the "red meat side" of Tyson's business, let alone the wage and hour issues of this case.[26] Defendants agreed to search the e-mail servers, share drives, and hard drives associated with the custodians on the search list. Defendants specifically asked Plaintiffs to identify which particular individuals they believed should be included on Defendants' search list.[27] Again, Plaintiffs did not identify any particular individuals, claiming that they did not have sufficient information to do so.[28]

In the following months, the parties continued to communicate about the ESI search, and although they were able to agree to the search terms, they were still unable to agree as to the individuals to be included on the ESI search list. In the meantime, Defendants began searching for and collecting ESI for 33 identified custodians whom Defendants believed possessed documents responsive to the Second Request for Production. Although Defendants had originally proposed to

---

[26]Vicente Decl., ¶ 11.

[27]*Id.*

[28]*Id.*

search for ESI of 27 identified custodians, Defendants added the names of six employees to that list, after determining that those six employees probably possessed responsive information. [29]

The 33 custodians on the search list included a number of supervisors at Defendants' Holcomb and Emporia locations, as well as targeted individuals at the corporate offices who Defendants believed possessed discoverable information. Defendants collected all e-mail correspondence contained in Defendants' e-mail repository (the equivalent of Defendants' e-mail exchange server) for which any one of the 33 identified custodians was a sender or recipient or was copied on, regardless of whether the e-mail was contained in an identified custodian's e-mail mailbox.[30] Defendants also collected Word, PowerPoint, Excel, etc. documents saved on Defendants' share drives to which any of the identified custodians had access. Finally, Defendants collected forensic images of the computer hard drives from the computers used by each of the 33 identified custodians. In many instances, these hard drives contained both e-mail files and document files.[31]

In December 2009, Defendants completed their ESI collection efforts. On December 23, 2009 Defendants notified Plaintiffs that they had completed collecting their ESI and were in the process of reviewing the ESI for production. From January through June 2010, Defendants processed the ESI collected and applied the agreed-upon search terms, in order to determine what data needed to be produced.[32]

---

[29] *Id.*, ¶ 14.

[30] *Id.*

[31] *Id.*

[32] *Id.*, ¶¶ 15, 17.

On May 5, 2010, the parties filed a Joint Stipulation Regarding Electronically Stored Information (ECF No. 842) that stated: "[T]he parties have attempted to negotiate the manner in which electronically stored information will be searched and produced in this litigation. At this time, however, the parties have been unable to reach agreement on the relevant custodians and locations to be searched for potentially relevant ESI."[33] The Stipulation then proceeded to set forth the matters to which the parties had been able to agree, including the search terms Defendants were to use. It also stated as follows:

> Plaintiffs shall cooperate with Tyson in good faith and shall promptly communicate to counsel for Tyson any objection(s) Plaintiffs may have to the efforts undertaken by Tyson as soon as practicable so that Tyson may consider Plaintiffs' objections in proceeding with the collection, review and processing of ESI. In entering into this stipulation, Plaintiffs are relying on Tyson's experience in dealing with similar document productions and upon Tyson's representations about the best practices for search terms and searching.[34]

Defendants completed their ESI review by the end of June 2010, and they produced a hard drive of documents to Plaintiffs that contained the majority of Defendants' ESI production. Defendants later produced additional documents, including ESI collected from the hard drives of Ken Kimbro, Rex Hofer and Jim Lehmkuhl that were responsive to Plaintiffs' Second Request for Production.[35] As part of this process, Defendants collected 3,144 gigabytes of data, reviewed more than 8,000,000 pages of ESI documents, and ultimately produced more than 14,000 ESI documents.[36] Defendants also produced an organizational chart for its HR operations at about this

---

[33]Joint Stipulation Regarding Electronically Stored Information (ECF No. 842) at 1.

[34]*Id*. at 2.

[35]Vicente Decl., ¶ 14.

[36]*Id*., ¶ 17.

same time.[37] Defendants assert that the collection, processing, searching, and hosting of the ESI data cost Defendants nearly $500,000.00 in addition to the attorney's fees incurred when their attorneys reviewed the ESI for responsiveness and privilege.[38] Defendants point out that almost three-fourths of all of the documents produced by Defendants were e-mails.[39] Moreover, more than 400 e-mails produced by Defendants list one or more of the 11 individuals at issue as a sender or recipient or as copied on the e-mail.[40] At least 350 additional emails involving these 11 individuals are logged on Defendants' privilege logs.[41] In other words, Defendants have produced, or identified on their privilege logs, more than 750 responsive emails belonging to the 11 individuals at issue.

On July 14-16 and July 20, 2010, Plaintiffs took the Rule 30(b)(6) deposition of Defendants. A short time thereafter, on July 29, 2010, the parties filed a "Joint Stipulation and Motion Regarding Deadlines for Expert Report Disclosures and Plaintiffs' Motion to Compel" (ECF No. 844). In that pleading, the parties stated that they were continuing to negotiate discovery-related issues and that they had agreed the July 30, 2010 deadline for Plaintiffs to file any motions to compel regarding Plaintiffs' Second Request for Production should be extended to August 13, 2010 or until 21 days after Defendants served their privilege log.[42] The Court granted in part and denied in part the

---

[37]*Id.*, ¶ 18.

[38]*Id.*, ¶ 17.

[39]Defs.' Sur-Reply to Pls.' Second Mot. to Compel (ECF No. 913) at 3.

[40]*Id.*

[41]*Id.*

[42]Joint Stipulation and Mot. Regarding Deadlines for Expert Report Disclosures and Pls.' Mot. to Compel (ECF No. 844) at 2.

motion, and ruled that Plaintiffs were required to file "any motion to compel regarding Defendants' responses to Plaintiffs' Second Request for Production" by August 27, 2010.[43]

On August 27, 2010, Plaintiffs filed a motion to compel ("Plaintiffs' First Motion to Compel") (ECF No. 852), in which Plaintiffs "move[d] for an order . . . compelling Tyson to produce information responsive to Plaintiffs' Second Request for Production of Documents."[44] Plaintiffs asserted that Defendants had not produced a complete and usable set of payroll data and that some of the documents listed on Defendants' privilege log were in fact not privileged. In addition, Plaintiffs asserted that "Tyson may not have completed a sufficient search of its ESI."[45] With respect to the ESI issue, Plaintiffs sought an order compelling Defendants to produce a witness knowledgeable about (1) the e-mail systems used by Defendants' human resources personnel and personnel at the Holcomb and Emporia facilities; (2) Defendants' ESI retention policy; (3) Defendants' retention of, and search for, documents responsive to Plaintiffs' discovery requests; and (4) Defendants' back-up and disaster recovery media.[46] Plaintiffs argued that they were entitled, through the requested Rule 30(b)(6) deposition, "to discover what Tyson's capabilities are and whether its search for responsive documents was sufficient given those capabilities."[47] Plaintiffs stated in a footnote that "[i]f Tyson's search [for ESI] was not sufficient, Plaintiffs will move to compel the documents that would have been produced had an adequate search been performed."[48]

---

[43]August. 11, 2010 Order (ECF No. 846).

[44]Pls.' First Mot. to Compel (ECF No. 852) at 1.

[45]*Id*. at 6.

[46]*Id*.

[47]*Id.* at 7.

[48]*Id*. at 7 n.8.

Following the filing of this motion, the parties continued to confer about the Rule 30(b)(6) deposition, and Defendants' counsel answered a number of questions from Plaintiffs' counsel about the process Defendants followed and the ESI they had collected, reviewed, and produced. In addition, Defendants offered to provide Plaintiffs a declaration from their ESI vendor in lieu of producing another witness for a Rule 30(b)(6) deposition on ESI issues, assuming the parties could agree on the scope of the questions to be answered in the declaration.[49] Defendants also identified for Plaintiffs the 33 custodians for whom ESI had been searched and collected. Plaintiffs responded by stating that the custodian list was insufficient and complaining that Defendants should have conducted a "server-level search."[50]

On September 24, 2010, Defendants provided Plaintiffs with a declaration from the Vice President of their ESI vendor, which provided information about Defendants' ESI efforts and which answered Plaintiffs' questions about the ESI search and collection.[51] The declaration discussed Defendants' e-mail system, e-mail archival system and e-mail backups, in addition to the process of searching Defendants' backup tapes for e-mail and Defendants' collection of e-mails to produce in this lawsuit.[52] The declaration stated that ESI was collected from 33 custodians.[53]

The following week, however, Plaintiffs e-mailed Defendants and stated that the declaration and the search list containing the names of the custodians whose e-mail repositories were searched

---

[49]Vicente Decl., ¶ 22.

[50]*Id.*, ¶ 23.

[51]*See* Decl. of Hemanth Salem, attached to Sealed Exhibits in Supp. of Defs.' Sur-Reply to Pls.' Second Mot. to Compel (ECF No. 915) ("Salem Decl.").

[52]*See generally id.*

[53]*Id.*, ¶ 20.

"appear[] to provide sufficient information for us to know that we object to the scope of Tyson's production."[54]  The e-mail stated that "[f]or example, the custodian list did not include Kenneth Kimbro, other corporate HR managers or several of the individuals on Tyson's hold notice."[55]  Also, the e-mail stated:  "We learned from the declaration that only the custodians' emails would have been searched.  Our objection is with regard to the individuals selected to be custodians."[56]  Counsel conferred approximately one week later, and during that conference, Plaintiffs suggested for the first time that Defendants should have searched for and collected ESI from (1) all of the individuals listed on Defendants' litigation hold notice; and (2) all corporate human resources personnel.[57]  Plaintiffs then filed the instant Second Motion to Compel on October 7, 2010.

On October 8, 2010, Plaintiffs filed a "Notice of Mooted Issues," in which they stated that "[t]he parties believe they have resolved any outstanding issues [in Plaintiffs' First Motion to Compel] and the motion is moot."[58]  The Court therefore entered an Order (ECF No. 867) finding the First Motion to Compel moot.

### C.    Analysis

As noted above, Plaintiffs ask the Court to compel Defendants to search and produce e-mails for 11 employees who were listed on Defendants' litigation hold notice but whose emails were not searched.  These 11 employees include Tyson Foods' Chief Executive Officer, the President and

---

[54]September 30, 2010 E-mail from Eric Dirks to Marcia Ganz, attached as Ex. D to Pls.' Reply in Supp. of Second Mot. to Compel (ECF No. 882).

[55]*Id.*

[56]*Id.*

[57]Vicente Decl., ¶ 26.

[58]Pls.' Notice of Mooted Issues (ECF No. 866) at 1.

Vice Presidents of Tyson Fresh Meats, Tyson's Director of Human Resource Operations, and other human resources management level employees. Plaintiffs also request that the Court compel Defendants to search their backup tapes for the dates of May 30, 2006; May 30, 2007; and August 30, 2008, and produce any responsive documents located as a result of that search.

The Court denies these two requests for several reasons. First, the Court finds that Plaintiffs' motion is untimely. D. Kan. Rule 37.1(b) states that "[a]ny motion to compel discovery . . . must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause."[59] The Rule further states that if the motion is not filed within that 30-day period or the Court does not extend the filing deadline, "the objection to the default, response, answer, or objection is waived."[60] Plaintiffs contend that the declaration of Defendants' ESI vendor, which Defendants served on Plaintiffs on September 30, 2010, "serves as the 'service of the response or answer'" within the meaning of D. Kan. Rule 37.1(b) "because it is what provided Plaintiffs the information that forms the basis of Plaintiffs' motion to compel."[61] In other words, Plaintiffs contend that the 30 days should run from September 24, 2010 (the date the declaration was served), and because their motion was filed on October 7, 2010, their motion should be deemed timely.

The Court disagrees. D. Kan. Rule 37.1(b) refers to the "*response, answer or objection* that is the subject of the motion."[62] In other words, the 30 days runs from the date a party serves its response or objection to a request for production or interrogatory or serves or produces documents

---

[59]D. Kan. Rule 37.1(b).

[60]*Id.*

[61]Pls.' Reply (ECF No. 882) at 7.

[62]D. Kan. Rule 37.1(b) (emphasis added).

in response to request for production or interrogatory. In this particular instance, the "response" at issue is Defendants' production of ESI, and not the declaration of Defendants' ESI vendor. Defendants produced their ESI, at the latest, on June 30, 2010, and, thus, the 30 days ran on July 30, 2010. Because the Court granted Plaintiffs an extension until August 27, 2010 to file any motion to compel regarding Plaintiffs' Second Request for Production,[63] the motion to compel was due on August 27, 2010. Plaintiffs, however, did not file their motion until October 7, 2010, long past that August 27, 2010 deadline. Plaintiffs' motion is therefore untimely, and D. Kan. Rule 37.1(b) dictates that Plaintiffs' objections to Defendants' ESI production be deemed waived.

Plaintiffs next argue that even if their motion is deemed untimely because it was not filed by August 27, 2010, the good cause exception of D. Kan. Rule 37.1(b) should apply. Rule 37.1(b) does indeed contain an exception that allows the Court to extend the time for filing a motion to compel beyond the 30-day period "for good cause."[64] Plaintiffs assert that the "good cause" exception should apply here for two reasons. First, they assert it should apply because they noted in their First Motion to Compel (filed on August 27, 2010) that they might have a need in the future to file a motion to compel relating to Defendants' ESI production. As discussed above, Plaintiffs sought in that First Motion to Compel an order compelling Defendants to produce a witness knowledgeable about various ESI issues and argued that they were entitled to take a Rule 30(b)(6) deposition of Defendants "to discover what Tyson's capabilities are and whether its search for responsive documents was sufficient given those capabilities."[65] In their motion, Plaintiffs stated in a footnote that "[i]f Tyson's search [for ESI] was not sufficient, Plaintiffs will move to compel

---

[63]*See* August 11, 2010 Order (ECF No. 846).

[64]D. Kan. Rule 37.1(b).

[65]Pls.' First Mot. to Compel (ECF No. 852) at 7.

the documents that would have been produced had an adequate search been performed."[66] The Court does not find that this statement supports a finding of good cause to excuse Plaintiffs' late filing of their Second Motion to Compel. A party cannot simply unilaterally extend a court-ordered deadline by "reserving the right," or stating an intention, to file a motion beyond the deadline.

Plaintiffs also argue that good cause exists to justify their belated filing "because the issue [raised in the Second Motion to Compel] simply was not yet ripe until Plaintiffs received the September 24, 2010 declaration which addressed the questions Plaintiffs had been asking" about Defendants' ESI search and collection efforts.[67] Plaintiffs argue that the declaration "confirmed [for Plaintiffs] deficiencies in Tyson's search and production."[68] More specifically, Plaintiffs argue that the September 24, 2010 declaration "was Plaintiffs' first opportunity to confirm that Tyson indeed had not performed a search for emails of all appropriate custodians and that e-mails that were deleted from a user's email system were not archived until 2009."[69] Plaintiffs argue that the September 24, 2010 declaration "was also the first time Plaintiffs learned that Tyson was claiming all emails from a server-wide search were not reasonably accessible because of undue time and cost."[70]

In other words, Plaintiffs argue that the Court should extend the filing deadline because the September 24, 2010 declaration revealed three pieces of new information: (1) Defendants did not search for e-mails of the appropriate custodians; (2) Defendants were claiming that all e-mails from

---

[66]*Id.* at 7, n.8.

[67]Pls.' Reply in Support of Second Mot. to Compel (ECF No. 882) at 7.

[68]*Id.* at 2.

[69]*Id.* at 6.

[70]*Id.* at 6-7.

a server-wide search were not reasonably accessible based on undue time and cost concerns; and (3) Defendants did not start archiving deleted e-mails until 2009.

The Court is not persuaded by Plaintiffs' argument. With respect to the first piece of information, the record shows that Plaintiffs knew the identities of the employees, i.e., custodians, whose e-mail repositories would be searched long before Plaintiffs ever received the September 24, 2010 declaration. Plaintiffs knew as early as February 2008, when Defendants submitted their proposed stipulation to Plaintiffs, that Defendants intended to search the hard drives of 27 specified custodians. Also, in June 2009, Defendants resubmitted their proposed stipulation to Plaintiffs with the same 27 custodians identified. In addition, as the above factual discussion makes clear, the parties communicated on numerous occasions about the various employees who were on the custodian list. Furthermore, Plaintiffs had known of Defendants' litigation hold notice since 2007 and therefore knew the names of the employees listed on that hold notice. In short, Plaintiffs knew for several years about the individuals on Defendants' litigation hold list and they knew that the 11 employees at issue were on that hold list. They also knew long before they received the declaration in September 2010 that Defendants were not planning to, and in fact did not, search the e-mail repositories for those 11 employees. Finally, and most importantly, the declaration itself states nothing about the identity of the employees whose e-mail repositories were searched other than to state that ESI was collected from 33 custodians.[71] The Court therefore finds that Plaintiffs have failed to demonstrate that they gained any *new information* from the declaration about the custodian list that would provide good cause for extending their deadline to file the instant motion.

The Court will now turn to the second piece of allegedly new information gained from the declaration, i.e., that "Tyson was claiming all emails from a server-wide search were not reasonably

---

[71]*See* Salem Decl., ¶ 20.

accessible because of undue time and cost."[72]  The record shows that Plaintiffs knew as early as February 2008 that Defendants would not be performing a server-wide search.  In a February 20, 2008 letter to Defendants' counsel, Plaintiffs' counsel stated:  "On a related note, Tyson has previously articulated its position that it will not conduct server-level searches."[73]  Thus, the only new information that Plaintiffs purportedly gained from the September 24, 2010 declaration on this issue is that Defendants' claim that all emails from a server-wide search were not reasonably accessible was based on  undue time and cost concerns.  The Court fails to see, and Plaintiffs make no attempt to explain, how this new information is grounds for extending Plaintiffs' deadline to file the instant motion.  In any event, the September 24, 2010 declaration was not the first time Plaintiffs learned of this information.  The record reveals that in August 2007, Defendants sent a letter to Plaintiffs informing Plaintiffs that it would be unduly burdensome for Defendants to search all of the places they store ESI throughout the company and that Defendants therefore proposed to limit their ESI search to the hard drives of select employees at the corporate and plant levels.[74]

Finally, with respect to the third piece of information, i.e., that deleted e-mails were not archived until 2009, Plaintiffs do not make any attempt to explain how this alleged "new" fact is grounds for extending Plaintiffs' deadline.  As the party relying on the good cause exception, Plaintiffs have the burden to show exactly what new information they gained from the declaration should justify their belated filing of the motion.  Plaintiffs' failure to do so renders the good cause exception inapplicable.

---

[72]*Id*. at 6-7.

[73]February 20, 2008 Letter from Eric Dirks to Michael Williams, attached as Ex. B to Pls.' Reply in Supp. of Pls.' Second Mot. to Compel (ECF No. 882).

[74]Vicente Decl., ¶ 3.

In light of the above, the Court does not find that Plaintiffs' belated filing of the Second Motion to Compel should be excused for "good cause." The Court therefore holds that the motion is untimely and should be denied as such.

While this result might seem harsh, the Court finds it to be fair under the circumstances. Plaintiffs waited almost one year after Defendants collected their ESI and several months after Defendants finished their document review to assert for the first time in the instant motion that Defendants should have searched for e-mails from all of the employees listed on their litigation hold notice. Plaintiffs were in possession of the litigation hold notice since 2007, and could have asked Defendants to search the e-mails of these employees, including the particular 11 employees at issue, three years ago. Plaintiffs had months, if not years, to work with Defendants, to make objections to Defendants' proposed search, and to propose specific names to be added to Defendants' search list.[75] Moreover, Plaintiffs could have sought resolution from the Court at an earlier date, or at the very least, filed a motion for extension of time to file their motion to compel.

In addition, Plaintiffs present no evidence that a search of e-mail repositories of the 11 employees at issue is likely to reveal any additional responsive e-mails. Defendants point out that they have already produced, or identified on a privilege log, more than 750 responsive e-mails that belong to the 11 employees at issue. Furthermore, the Court notes that Plaintiffs never requested in their Second Request for Production that Defendants produce the e-mails of these specific

---

[75]This District's "Guidelines for Discovery of Electronically Stored Information (ESI)" [http://www.ksd.uscourts.gov/guidelines/discoveryofelectronicallystoredinformation.pdf] direct the attorneys to "attempt to agree on the scope of e-mail discovery and e-mail search protocol." In addition, the May 5, 2010 Joint Stipulation Regarding Electronically Stored Information filed in this case expressly states that "Plaintiffs shall cooperate with Tyson in good faith and shall promptly communicate to counsel for Tyson any objection(s) Plaintiffs may have to the efforts undertaken by Tyson as soon as practicable so that Tyson may consider Plaintiffs' objections in proceeding with the collection, review and processing of ESI." ECF No. 842 at 2.

employees. In this context, then, Plaintiffs must present something more than mere speculation that responsive e-mails *might* exist in order for this Court to compel the searches and productions requested.

In light of the above, the Court denies Plaintiffs' Second Motion to Compel to the extent it applies to Defendants' ESI searches and production.

## III. Motion to Compel Entry Upon Land for Inspection

The remaining issue in Plaintiffs' Second Motion to Compel pertains to Plaintiffs' September 7, 2010 Fourth Request for Entry Upon Land ("Fourth Request for Entry"). In the Fourth Request for Entry, Plaintiffs requested that their counsel be permitted, at a mutually agreeable time:

> [T]o enter Defendants' facilities at Emporia, KS and Finney County, KS for purpose of observation of hourly workers engaged in production work, donning and doffing clothes and equipment, and walking to and from production stations in production areas, in rest and meal break areas, in locker rooms, and in hallways.[76]

Defendants objected to the Fourth Request for Entry, asserting that it was overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information "to the extent it seeks observation of hourly production employees who are not part of the certified classes at issue in this litigation and to the extent that it seeks observation of activities that are not at issue in this litigation, including but not limited to production work."[77] Defendants further objected to the Fourth Request for Entry as duplicative and unduly burdensome, because Plaintiffs previously made the same request in their Second Request for Entry Upon Land for Inspection ("Second Request for Entry"), and, pursuant to that request, Defendants granted Plaintiffs' counsel

---

[76]Pls.' Fourth Set of Reqs. for Produc. of Docs. and Things and for Entry upon Land for Inspection, attached as Ex. A. to Pls.' Second Mot. to Compel (ECF No. 865).

[77]Defs.' Objections and Resps. to Pls. Fourth Set of Reqs. for Produc. of Docs. and Things and for Entry upon Land for Inspection, attached as Ex. B to Pls.' Second Mot. to Compel (ECF No. 865).

access to the Emporia and Finney County facilities in January 2010.[78]  Defendants also granted Plaintiffs' counsel access to the Finney County facility on May 19-21, 2010 and the Emporia facility on May 25-26, 2010.[79]

Plaintiffs now move to compel a one or two hour tour of the facilities by their lead trial lawyer, George Hanson, to observe the activities at issue in the lawsuit.  Plaintiffs assert that it is important that Mr. Hanson, who was not present for the previous tours, be given this opportunity so that he can accurately describe the facility layouts and operations to the jurors.

Federal Rule of Civil Procedure 26(b)(2)(C) sets forth certain instances where, either on motion of a party or the court's own motion, "the court *must* limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule."[80]   The court is required to limit the discovery "if it determines that (i) the discovery sought is unreasonably cumulative or duplicative . . . ; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."[81]

Here, Plaintiffs' Fourth Request for Entry is duplicative of their Second Request for Entry. Furthermore, Defendants fully responded to, and complied, with that Second Request for Entry by allowing Plaintiffs' counsel two opportunities—for a total of seven days—to tour these very same facilities.  Plaintiffs' only basis for requesting these additional tours is that their lead trial counsel was not present for the previous tours.  Plaintiffs do not explain why their lead counsel did not

---

[78]*Id.*

[79]*Id.*

[80]Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

[81]Fed. R. Civ. P. 26(b)(2)(C)(i) & (ii).

participate in any of the previous tours and they present no valid reason for requiring Defendants to provide for a *third* tour.

In short, the Court finds that Plaintiffs have had ample opportunity to obtain the information sought in their Fourth Request for Entry and that the requested tours are unreasonably duplicative. Accordingly, the Court must deny Plaintiffs' request to tour the facilities.

**IT IS THEREFORE ORDERED** that Plaintiffs' Second Motion to Compel (ECF No. 865) is denied.

**IT IS FURTHER ORDERED** that each party shall bear his/her/its own expenses incurred in connection with the motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 21st day of December 2010.

s/David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties