## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Adelina Garcia et al.,**

        **Plaintiffs,**

**v.**                                    **Case No. 06-2198-JWL**

**Tyson Foods, Inc. and**
**Tyson Fresh Meats, Inc.,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiffs, current and former hourly production employees at two of defendants' beef processing facilities, seek to recover unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and the Kansas Wage Payment Act, K.S.A. § 44-313 et seq. Plaintiffs also assert a Kansas common law claim for quantum meruit. Specifically, plaintiffs seek to recover unpaid wages for all time spent during the continuous workday, including time spent performing activities such as pre-shift donning and post-shift doffing of required protective clothing and gear; donning and doffing at meal periods; and pre-shift and post-shift walking time. Plaintiffs also seek to recover wages for the unpaid portion of rest breaks. This action has been certified as a collective action with respect to the FLSA claims and as a class action with respect to the state law claims.

This case is now before the court on the parties' motions for summary judgment. The parties have cross-moved for summary judgment on the compensability of the unpaid rest break and the compensability of donning and doffing at the meal period. In addition, plaintiffs seek

a ruling that their donning and doffing activities, as a matter of law, are integral and indispensable to their work such that those activities mark the beginning and end of the continuous workday and that those activities, as a matter of law, are not de minimis. Tyson, in turn, seeks a ruling that it, as a matter of law, acted in good faith and without willfulness with respect to its pay practices (thereby precluding liquidated damages and preserving the two-year statute of limitations under the FLSA) and moves for summary judgment on plaintiffs' KWPA and quantum meruit claims in their entirety. As will be explained, the motions are denied in all respects except that the court grants summary judgment in favor of Tyson on plaintiffs' quantum meruit claims.

## I.   Pertinent Facts and Procedural History

Tyson Fresh Meats, Inc. is a wholly owned subsidiary of Tyson Foods, Inc. (collectively, "Tyson") and is the world's largest supplier of premium beef and pork, as well as allied products, such as tanned hides used to make leather. Tyson operates beef processing facilities in Finney County and Emporia, Kansas. In addition to processing beef, the Finney County facility conducts slaughter operations and, until February 2008, the Emporia facility conducted slaughter operations. Tyson employs approximately 2500 hourly workers at the Finney County facility and, until February 2008, it employed approximately 2000 hourly workers at the Emporia facility. It now employs approximately 800 hourly workers at the Emporia facility. Plaintiffs are Tyson's current and former hourly "production" employees at the Finney County and/or Emporia facilities during the applicable class period and they work or worked in one or more

2

"production jobs" in the slaughter and/or processing areas of these facilities.

Tyson's hourly workers cannot enter the production area unless they are wearing certain personal protective clothing and gear.  All production workers, regardless of department or job code, are required to wear a hard hat, a hairnet, a beardnet (if necessary) and earplugs. Production employees in slaughter operations also wear a white uniform in lieu of street clothes (referred to by the parties as "whites") and production employees in processing operations wear a white "frock" over their street clothes.  Employees who utilize knives in connection with their specific positions are required to wear additional "unique" or "specialized" clothing and gear. In addition, certain employees, depending on the particular job, are required to wear steel-toe boots, safety glasses, cotton or rubber gloves, and rubber aprons.  Some workers, based on their personal preferences, choose to wear or utilize certain clothing and gear not otherwise required for their positions.

Production workers at both facilities are paid primarily based on "gang time" or "line time"–that is, they are paid for the time that product is moving on the line.  Gang time is approximately 8 hours per shift.[1]  The production line "stops" twice during each shift, once for a meal period and once for a "rest" period of shorter duration.[2]  The line does not actually cease moving during these breaks, but no product is placed on the line during these breaks such that

---

[1]Although workers swipe an identification card each day as they enter and leave the facility, those "swipes" are used to track attendance rather than record working time.

[2]Until April 2010, the meal period was 30 minutes of unpaid time and the rest period was 15 minutes of paid time.

a production worker is free to leave the production area when he or she is finished working on the last piece of product that passes through his or her workstation.

Gang time, then, does not capture any time spent on activities outside the movement of the line, such as donning and doffing clothing and equipment.  To compensate hourly production workers for some of the time they spend on such activities, Tyson pays additional minutes of time (known as "K code" time) beyond gang time pay.  "K code" time is not the actual time hourly production workers spend performing such activities and Tyson does not record the actual time workers spend performing such activities.  Moreover, not all hourly production employees have always been eligible for "K code" time and the specific amount of "K code" time provided to eligible employees has changed over the years.

Tyson's practice of paying "K code" time stems from litigation initiated by the Department of Labor against Tyson's predecessor, Iowa Beef Processors, Inc. (IBP).  In 1988, the Secretary of Labor brought an action against IBP at all of its non-union facilities nationwide (including the Finney County facility) alleging that pre- and post-shift time spent donning and doffing protective clothing and gear was compensable under the FLSA. *See Reich v. IBP, Inc.*, 820 F. Supp. 1315 (D. Kan. 1993). The *Reich* trial was bifurcated.  During the first phase, the trial court determined only the compensability issue and concluded that the donning and doffing of unique or specialized protective clothing and gear worn by knife-wielding employees was compensable. *See id.* at 1326-27.[3]  The second phase of the *Reich* trial concerned the amount of

_____

[3]The trial court also concluded that the donning and doffing of standard protective clothing and gear worn by all production employees was not compensable.  The Tenth

IBP's backpay liability and whether the court should permanently enjoin IBP from future violations. *See Reich v. IBP, Inc.*, 1996 WL 137817, at *1 (D. Kan. Mar. 21, 1996). For purposes of calculating backpay, the trial court utilized the "reasonable time" that knife-wielding employees spent donning and doffing specialized protective clothing and gear rather than the actual time employees spent performing these activities. The court also permanently enjoined IBP from future violations of the FLSA and, more specifically, ordered IBP to "implement recordkeeping practices sufficient to record the time spent by each employee in performing the pre-shift and post-shift activities found to be compensable under the Act." On appeal, the Tenth Circuit affirmed the trial court's issuance of the permanent injunction and affirmed the trial court's estimate concerning the reasonable time required for donning and doffing required protective clothing and gear. *See Metzler v. IBP, Inc.*, 127 F.3d 959 (10th Cir. 1997).

At the conclusion of the *Reich* litigation, IBP and the DOL attempted to reach an agreement on the amount of IBP's backpay liability and, arguably, IBP's future compliance with the *Reich* injunction. When settlement discussions failed, the Secretary, in April 1998, filed an enforcement action concerning IBP's backpay liability. *See Herman v. IBP, Inc.*, No. 98-2163-JWL (D.Kan. Apr. 10, 1998). At that time, IBP, based on a series of time studies it had conducted, began paying 4 minutes of "K code" time not only to knife-wielding employees but

---

Circuit affirmed the court on this issue. *See Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994). In this case, plaintiffs seek compensation for, among other things, the donning and doffing of standard protective clothing and gear. Early in this litigation, the court concluded that the Supreme Court's decision in *Alvarez* had modified the legal landscape on these issues sufficiently such that plaintiffs' claims were not barred by *Reich*.

also to those employees in a department where knives were used by at least one employee in the department. Because the payment of this "K code" time was effectuated by shutting down the line 4 minutes early each shift without reducing the amount of gang time, nearly all hourly production workers received the 4 minutes of "K code" time. In July 1999, the parties stipulated to the dismissal of the enforcement action with prejudice, based in part on their agreement that defendants could satisfy their backpay obligations under *Reich* (and, arguably, satisfy their future obligations under the *Reich* injunction) by compensating knife-wielding employees an additional four minutes per shift for time spent donning and doffing specialized protective clothing and gear worn by those employees.

After the Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), in which the court held that walking time is compensable if it follows or precedes a principal working activity, Tyson conducted a time study to determine the number of minutes required for certain pre- and post-shift walking time within the two facilities. After that time study, Tyson changed its pay practices. Beginning in January 2007, Tyson went back to paying additional minutes only to those employees in knife-wielding positions. These minutes ranged from 4 to 7 minutes at Finney County and 4 to 9 minutes in Emporia depending on the employee's specific job position and the requisite walking associated with that position. Employees who were not in knife-wielding positions were paid zero "K code" minutes beginning in January 2007.

In April 2010, Tyson again modified its pay practices and began paying all hourly production workers between 20 and 24 minutes per shift of "K code" time, which was effectuated by adding 16 minutes of "K code" time to any employee in a job that previously

earned 4 minutes of "K code" time and adding 15 minutes of "K code" time to any job that previously received 5 to 9 minutes of "K code time." Five minutes of this "K Code" time is associated with donning and doffing activities at the rest break, which Tyson simultaneously modified by extending the duration of the period but changing the period (or most of the period) to unpaid time. The production line now stops for 25 minutes rather than 15 minutes. Tyson compensates its employees for 5 minutes of that time for donning and doffing activities (reflected in the new "K code" pay) and the remaining 20 minutes is unpaid time. Similarly, five minutes of the new "K code" time is associated with donning and doffing activities at the meal period, which Tyson extended to 35 minutes. The remaining 30 minutes of the meal period is unpaid time and Tyson continues to deduct automatically 30 minutes from employees' shift time to reflect the meal period. The remainder of the new "K code" time is associated with pre- and post-shift activities.

In this lawsuit, plaintiffs assert claims for damages for time spent during the continuous workday for which Tyson does not already compensate its employees, including the "actual time" spent donning and doffing protective clothing and equipment (before and after each shift as well as at the beginning and end of the meal period) and all pre- and post-shift walking time. Plaintiffs also seek to recover wages for the unpaid portion of rest breaks.

Additional facts will be related, as necessary, in connection with the court's analysis of the parties' motions.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[4]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of

---

[4]The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.   FLSA Claims

In the pretrial order, plaintiffs assert claims for damages for time spent during the continuous workday for which Tyson does not already compensate its employees, including the "actual time" spent donning and doffing protective clothing and equipment (before and after each shift as well as at the beginning and end of the meal period) and all pre- and post-shift walking time.  Plaintiffs also seek to recover wages for the unpaid portion of rest breaks. Plaintiffs, then, contend that plaintiffs' donning and doffing activities, as a matter of law, are "integral and indispensable" such that those activities trigger the continuous workday rule and that plaintiffs' donning and doffing activities, as a matter of law, are not de minimis.  The parties cross-move for summary judgment on the compensability of donning and doffing at the meal period as well as the compensability of the unpaid portion of the rest break.    Finally, Tyson

seeks a ruling that it acted in good faith and without willfulness with respect to its pay practices, thereby precluding liquidated damages and preserving the two-year statute of limitations under the FLSA.  As will be explained, material factual disputes exist with respect to each of these issues.  The parties' motions for summary judgment are denied.

A.      *Integral and Indispensable*

In their motion for summary judgment, plaintiffs seek a ruling by this court that plaintiffs' pre-shift donning and post-shift doffing activities, as a matter of law, are "integral and indispensable" to the work performed by plaintiffs such that those activities trigger the continuous workday rule and are compensable (subject to a determination of whether such time is de minimis).[5]  Tyson has not cross-moved for summary judgment on this issue, but contends

---

[5]As a threshold matter, Tyson contends that the court need not reach the "integral and indispensable" issue because the donning and doffing of standard items and sanitary outergarments does not constitute "work" within the meaning of the FLSA.  As Tyson acknowledges, the court has already rejected its contention that the concept of whether an activity constitutes "work" under *Tennessee Coal* (including the idea that "work" requires physical or mental exertion) survives as a separate analysis after *Alvarez.  See Garcia v. Tyson Foods, Inc*., 474 F. Supp. 2d 1240 (D. Kan. 2007).  Although Tyson asks the court to revisit that decision, Tyson has not persuaded the court that reconsideration is appropriate.

Significantly, in the post-*Alvarez* cases cited by Tyson that adhere to a separate "work" analysis, the factors utilized by those courts in assessing whether an activity constitutes "work" are the same as those relevant to whether an activity is integral and indispensable in that both require consideration of whether the activity is required by the employer and primarily benefits the employer.  *See Jordan v. IBP, Inc*., 542 F. Supp. 2d 790, 808 (M.D. Tenn. 2008) ("work" analysis "essentially the same" as "integral and indispensable" analysis); *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224-25 (9th Cir. 2010) ("work" is activity that is required by employer and pursued necessarily and primarily for the benefit of the employer").  These post-*Alvarez* cases, then, do not consider "exertion" for

that fact issues preclude summary judgment in favor of plaintiffs.  As will be explained, the court

concludes that genuine issues of fact exist as to whether plaintiffs' donning and doffing activities

are "integral and indispensable" to their work.  Summary judgment on this issue, then, is denied.

The FLSA "typically requires employers to pay their employees for all time spent

working on their behalf."  *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006)

(citing *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir.

1999) (citing 29 U.S.C. §§ 206, 207)).  Congress has never defined the term "work," however,

and the "courts are thus left to determine on a case-by-case basis whether an employee's

activities are compensable under the FLSA."  *Id*. (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126

S. Ct. 514, 518-19 (2005)).  Early Supreme Court decisions broadly defined both "work" and

"workweek." *Alvarez*, 126 S. Ct. at 519.  In *Tennessee Coal, Iron & R. Co. v. Muscoda Local

No. 123*, 321 U.S. 590, 598 (1944), the Court defined "work" as "physical or mental exertion

(whether burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business."  Two years later, in *Anderson v. Mt.

Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946), the Court defined "workweek"for purposes

of the FLSA to "include all time during which an employee is necessarily required to be on the

employer's premises, on duty or at a prescribed workplace."

In 1947, one year after the Supreme Court's decision in *Anderson*, Congress passed the

---

purposes of analyzing whether an activity constitutes "work."  The court, then, discerns no
different result in this case even if it were to clear the first hurdle identified by Tyson–a
hurdle that, post-*Alvarez*, mirrors the "integral and indispensable" analysis.

Portal-to-Portal Act, 29 U.S.C. § 254, which "amended the FLSA to shield employers from 'judicial interpretations of the FLSA [that] had superseded "long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities."'" *Smith*, 462 F.3d at 1286 (quoting *Alvarez*, 126 S. Ct. at 519). The Portal-to-Portal Act which, like the original FLSA, omits any definition of "work," *Alvarez*, 126 S. Ct. at 519, provides that:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . . –
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Smith*, 462 F.3d at 1286 (quoting 29 U.S.C. § 254(a)). Employers "are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Id*. Other than these express exceptions, the Portal-to-Portal Act "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *Alvarez*, 126 S. Ct. at 520. Pursuant to the "continuous workday rule," the term "workday" is defined as "the period between the commencement and completion on the same

workday of an employee's principal activity or activities." *Id.* at 521.

Several years after the enactment of the Portal-to-Portal Act, the Supreme Court found that Congress passed the Act "still intending for an employee's activities to fall 'within the protection of the [Fair Labor Standards] Act if they are an integral part of and are essential to the principal activities of the employees.'" *Smith*, 462 F.3d at 1287 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956)). The Supreme Court "therefore held 'that activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed.'" *Id.* (quoting *Steiner*, 350 U.S. at 256). The Supreme Court "recently clarified this rule in *Alvarez*, explaining 'that any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act,' and is thus compensable under the FLSA." *Id.* (quoting *Alvarez*, 126 S. Ct. at 525).

Turning back to the claims made by plaintiffs in this case, then, plaintiffs contend that, as a matter of law, their pre-shift donning and post-shift doffing activities are integral and indispensable to the work they perform for defendant, rendering those activities "principal activities" sufficient to commence and complete the continuous workday. *See Alvarez*, 126 S. Ct. at 525. As highlighted by plaintiffs in their motion, this court has recently addressed this issue in the context of a bakery facility. *See McDonald v. Kellogg Co.*, ___ F. Supp. 2d ___, 2010 WL 3724649 (D. Kan. Sept. 16, 2010), *vacated in part*, *McDonald v. Kellogg Co.*, 2010 WL 4386899 (D. Kan. Oct. 29, 2010). In *McDonald*, this court rejected the narrow

13

interpretation of "integral and indispensable" espoused by the Second Circuit in *Gorman v. Consol. Edison Corp*., 488 F.3d 586 (2d Cir. 2007), and explained its belief that the Tenth Circuit would adopt a broader interpretation of that standard as articulated by the majority of Circuits to have addressed the issue.  Specifically, this court adopted a three-part test set forth in *Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010); *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340 (11th Cir. 2007); and *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901 (9th Cir. 2004) to analyze whether the plaintiffs' donning and doffing activities in *McDonald* were integral and indispensable:  whether the activity is required by the employer; whether the activity is necessary for the employee to perform his or her duties; and whether the activity primarily benefits the employer. [6]

Both parties agree that the court's use of this three-part test is appropriate in the context of this case.  The parties disagree as to whether the application of that test in this case permits this court to decide, as a matter of law, that plaintiffs' donning and doffing activities are integral and indispensable.  Plaintiffs, of course, urge that the court can and should decide as a matter of law (as it did at least initially in *McDonald*) that plaintiffs' donning and doffing activities are integral and indispensable to their work.  To be sure, the court believes that in an appropriate case, that issue may be decided as a matter of law.  In *McDonald*, for example, it was undisputed

--------

[6]Applying that test, this court in *McDonald* initially concluded that the plaintiffs' donning and doffing activities, as a matter of law, were integral and indispensable.  On the defendant's motion for reconsideration, the court vacated that portion of its order as premature in light of the fact that the parties had agreed to limit their initial summary judgment briefs to the application of section 203(o).

14

that all hourly production employees were required to wear company-issued uniforms as well as hair nets, beard guards, ear plugs and safety glasses.  More significantly, the court concluded that the donning and doffing activities were primarily for the benefit of the employer because the only evidence in the record of any benefit to the employees was the "minor" benefit of clean street clothes and even that evidence was not overwhelming.  In that context, then, the court was comfortable deciding on the record that the plaintiffs' donning and doffing activities were integral and indispensable to their work.  Other courts have similarly concluded as a matter of law that donning and doffing activities are integral and indispensable under appropriate undisputed facts.  See *Hoyt . v Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1140-41 (W.D. Wis. 2008); *Jordan v. IBP, Inc*., 542 F. Supp. 2d 790, 807 (M.D. Tenn. 2008); *Spoerle v. Kraft Foods Global, Inc*., 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007).

In this case, however, the court cannot conclude as a matter of law that plaintiffs' donning and doffing activities are integral and indispensable to their work.  Although it is undisputed that all hourly production employees are required to wear certain clothing and accessories, Tyson has come forward with evidence from which a jury could conclude that those required items benefit the employees as much as Tyson.[7]  To be sure, the required items benefit Tyson in significant ways–including enabling Tyson to comply with government regulations and permitting Tyson

---

[7]Moreover, at least with respect to optional items, plaintiffs have not marshaled the evidence in such a way for the court to make any determination as to whether most employees choose to wear such items and whether those "optional" items are, in reality, "required" and "necessary" in light of the environment inside the plant.  Moreover, the parties do not attempt to analyze whether "optional" items benefit Tyson in any respect.

to sell uncontaminated product. But the fact that Tyson derives some benefits from plaintiffs'
donning and doffing–even significant ones–does not necessarily mean that Tyson is the primary
beneficiary of those activities. *See Chao v. Tyson Foods, Inc.,* 568 F. Supp. 2d 1300, 1315 (N.D.
Ala. 2008) (denying motions for summary judgment on integral and indispensable issue where
disputed facts existed over who primarily benefitted from use of protective clothing and gear).
Tyson's evidence supports the conclusion that employees benefit from the required items in
significant ways, too–including prevention of injury and protection from cold and wet conditions
inside the plant. Indeed, some plaintiffs testified that wearing protective outergarments and
safety equipment (both required and optional) benefitted them by keeping them safe, dry and
warm in the plant. Moreover, as articulated by the district court in *Chao*:

> Any benefit that Defendant derived from the cleanliness of its plant–including its
> employees' protective outer gear–is counterbalanced by the benefit to its
> employees by ensuring their outerwear is cleansed of raw chicken product, thus
> reducing the risk of illness to employees and cross-contamination from
> employees' outerwear to other objects or persons outside the plant, including
> employees' homes. Therefore, while Defendant does receive a benefit from these
> activities, a question of material fact remains as to whether the benefit it receives
> is so significant that it is Defendant, and not Defendant's employees, who receives
> the primary benefit thereof.

*Id*. at 1315.

For the foregoing reasons, the court cannot conclude as a matter of law that plaintiffs'
donning and doffing activities are integral and indispensable to their work for purposes of
commencing and concluding the continuous workday. Plaintiffs' motion for summary judgment
on this issue is denied.

16

B.    *Walking Time Claims*

Based on their assertion that pre-shift donning and post-shift doffing are sufficient to commence and conclude the continuous workday, plaintiffs also move for summary judgment on their claims for compensation associated with pre-shift and post-shift walking time (*i.e.*, time spent walking from the locker room to the production floor after donning and time spent walking from the production floor to the locker room prior to doffing) on the grounds that such time necessarily falls within the continuous workday and is compensable.  Because the court has not determined that plaintiffs' pre-shift donning and post-shift doffing mark the beginning and end of the continuous workday, plaintiffs' motion for summary judgment on their pre-shift and post-shift walking time claims must be denied.

C.    *Tyson's De Minimis Defense*

The parties agree that the time spent by plaintiffs on donning and doffing activities, even if otherwise compensable, is not included in calculating hours worked in a week if the amount of time spent on those activities "is so 'insubstantial and insignificant' that it ought not to be included in the work week."  *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 693 (1946)).  As the Circuit explained in *Reich*, "a few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded.  Split-second absurdities are not justified. . . . .  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  *Id*. (quoting *Mount Clemens*, 328 U.S. at 692).   According to

17

plaintiffs, Tyson should be precluded at trial from presenting a de minimis defense because the undisputed facts demonstrate that plaintiffs' uncompensated time is not de minimis.

Looking to the Ninth Circuit's decision in *Lindlow v. United States*, 738 F.2d 1057 (9th Cir. 1984), the Tenth Circuit in *Reich v. Monfort, Inc*. explained that, in evaluating a de minimis defense, the first step is to determine "the amount of daily time spent on the additional work." *Id*. & n.1   (quoting *Lindlow*, 738 F.2d at 1062).  Once the amount of daily time is determined, the court looks to three factors to determine whether that time is de minimis:  "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Id*. at 1333-34 & n.1 (quoting *Lindow*, 738 F.2d at 1062-63).[8]

Here, significant factual disputes exist concerning the critical threshold issue of how much time is spent performing additional work.  To begin, the parties hotly dispute what activities should even be considered in calculating the amount of daily time spent by employees on additional "work" and the range of various activities that might enter into this calculation is broad–from donning and doffing only "unique" clothing and gear utilized by knife-wielding employees to all donning, doffing and walking activities for all employees at any time

---

[8]According to plaintiffs, Tyson must prove that each of these three factors weighs in its favor to prevail on the de minimis defense.  While the court does not decide the issue at this juncture, at least one court has rejected this approach and has emphasized that the factors are considered together in assessing the de minimis standard "as a whole." *See Chao*, 568 F. Supp. 2d at 1321 (denying plaintiff's motion for summary judgment on de minimis defense even though activities were undisputedly performed on a regular basis; must consider de minimis standard "as a whole").

throughout the day.  The fact that the court has denied plaintiffs' motion on the integral and indispensable issue further reflects that the amount of daily time spent on additional "work" is simply not an issue that can readily be ascertained at summary judgment in the particular context of this case.  And even to the extent the parties (or, more accurately, their experts) assume that certain activities are otherwise compensable, factual disputes exist concerning the length of time those activities take.  *See Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1318-19 & n.19 (N.D. Ala. 2008) (denying plaintiff's motion for summary judgment on de minimis defense where experts battled over length of time it took to perform activities at issue); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 810-11 (M.D. Tenn. 2008) (court concluded as a matter of law that donning and doffing activities were integral and indispensable but nonetheless denied plaintiffs' motion for summary judgment on de minimis defense because "the process of parsing out how much time plaintiffs engage in compensable activities is fundamentally factual.").  The calculation of how long it takes to perform the activities at issue is further complicated by the fact that the length of time varies greatly from employee to employee, depending on the particular combination of items that a given employee dons and doffs (and then arguably subtracting time for optional items) and other factors such as whether a given employee performs these activities while socializing, which often results in a lengthier time measurement.[9]

---

[9]The parties' time-study experts have each utilized different methodologies for measuring how much time employees spend performing additional tasks.  Tyson has moved to exclude the testimony of plaintiffs' time-study expert in its entirety under Rule 702.  Plaintiffs, on the other hand, seek to exclude only that portion of Tyson's expert's testimony that "attacks" the methodology utilized by plaintiffs' expert.  Thus, for purposes of analyzing plaintiffs' motion for summary judgment on Tyson's de minimis defense, the court need not

For the foregoing reasons, the court will not preclude Tyson from presenting a de minimis defense against plaintiffs' claims at this juncture.

D.      *Meal Periods*

Plaintiffs seek a ruling that they are entitled to compensation for the actual time they spend donning and doffing during the unpaid meal break.  Tyson, on the other hand, asserts that there is no genuine factual dispute that its employees spend the meal period as a whole predominantly for their own benefit such that any time spent donning and doffing at the meal period is noncompensable under the Tenth Circuit's interpretation of the pertinent implementing regulation.

The Department of Labor has promulgated a regulation relating to meal periods.  That regulation states as follows:

> *Bona fide meal periods.*  Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a). The Tenth Circuit, consistent with the majority of Circuits, has held that

---

resolve the pending expert motions because plaintiffs have not challenged under Rule 702 the proffered testimony of Tyson's time-study expert–testimony that sufficiently demonstrates the existence of factual issues on Tyson's de minimis defense.

an employee is "completely relieved from duty" during a meal period, for purposes of the regulation, when the "employee's time is not spent predominantly for the benefit of the employer." *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1157 (10th Cir. 1992).[10]  In *Lamon*, the Circuit considered the appropriateness of a jury instruction in the context of the claims of police officers who alleged, among other things, that they should be paid for their 30-minute meal periods.  *Id*. at 1148.  The evidence at trial demonstrated that the officers were subject to call and required to monitor a portable radio during their meal periods.  *Id*. at 1149. The officers were also required, during meal periods, to respond to citizen inquiries or requests, to respond to crimes committed in their presence and to act in a responsible and professional manner.  *Id*.  They were prohibited from conducting personal errands during their meal period. *Id*.

The district court instructed the jury to apply a "completely relieved from duty" standard in evaluating the plaintiffs' meal time claims.  *Id*. at 1156.  The jury returned a verdict for the plaintiffs on their meal time claims.  *Id*. at 1149.  On appeal, the Tenth Circuit held that the instruction "deprived the jury of an ample understanding of the issues and standards of the case" and remanded for a new trial on the issue.  *Id*. at 1158.  In doing so, the Circuit expressly

---

[10]Although *Lamon* itself concerned the compensability of meal periods under 29 C.F.R. § 553.223(b), concerning law enforcement personnel working shifts of fewer than 24 hours, the Circuit suggested in *Lamon* that the "predominant benefit" standard would also apply to meal periods under 29 C.F.R. § 785.19, *see Lamon*, 972 F.2d at 1158 n.18, and later expressly stated that it perceived no distinction between the two sections.  *See Beasley v. Hillcrest Med. Center*, 78 Fed. Appx. 67, 69-70 (10th Cir. 2003) (rejecting argument that *Lamon* analysis does not apply in context of 29 C.F.R. § 785.19).

rejected the "misapprehension" that "the performance of *any* official duty, no matter how insignificant, during meal periods rendered the time compensable." *Id*. As explained by the Circuit:

> If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under the FLSA. Conversely, a police office is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.

*Id*. at 1157-58.

In *Beasley v. Hillcrest Medical Center*, 78 Fed. Appx. 67 (10th Cir. 2003), the Circuit addressed the compensability of meal periods under 29 C.F.R. § 785.19 in the context of a group of nurses and technicians who sought compensation for their meal periods on the grounds that their lunch periods were often interrupted by work-related tasks. *Id.* at 68-69. Focusing on whether the "degree of interruption caused [the plaintiffs] to spend their meal periods primarily for Hillcrest's benefit," *id*. at 69, the Circuit emphasized that whether such time is spent "predominately for the benefit of the employer" is "highly individualized and fact-based." *Id*. at 70 (quoting *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000)). The plaintiffs' evidence reflected that their meal periods were frequently interrupted with things like phone calls, conversations with doctors, the administration of pain medication, new admissions and communicating with patients' families. *Id*. at 70-71. The Circuit held that the plaintiffs raised a triable issue whether they spent their meal periods predominantly for the benefit of Hillcrest. *Id*. at 71.

22

Turning back to the parties' arguments, the court rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be compensated even though the remainder of the meal period is unpaid.  The Circuit in *Lamon* made clear that the entire meal period may be noncompensable even when an employee is required to do some amount of work during that meal period.  The *Lamon* court simply leaves no room for plaintiffs' argument that the court should simply "carve out" that portion of the meal period in which compensable work is performed and require an employer to compensate an employee for that portion.  Thus, if plaintiffs' donning and doffing activities do not prevent plaintiffs from "comfortably and adequately" passing the meal period, then the entirety of the meal period is properly noncompensable.

That being said, the court cannot determine as a matter of law whether plaintiffs' time during the meal period is or is not spent predominately for the benefit of Tyson.  To begin, neither party has sufficiently marshaled the evidence concerning what items are required to be donned and doffed at the meal period–the parties simply agree that only "some" items are required to be donned and doffed.  Moreover, while it appears that some employees don and doff clothing and equipment for their own comfort during meal periods, the parties do not engage in any analysis of whether optional donning and doffing at the meal period necessarily benefits only the employee or whether such activities might nonetheless benefit Tyson.  Further complicating the analysis is that Tyson's donning and doffing requirements are stricter for employees using the restroom during meal periods.  While Tyson urges that employees are not required to use the restroom during meal periods and may use the restroom during paid

production time, the record is devoid of evidence reflecting the feasibility of this policy.  And even assuming that the record was clear with respect to these issues, factual issues nonetheless remain concerning how much time employees spend donning and doffing at the meal period, as evidenced in the reports of the parties' time study experts.[11]

For the foregoing reasons, the court denies the parties' cross-motions for summary judgment on plaintiffs' meal period claims.  *See Johnson v. Koch Foods, Inc.*, 670 F. Supp. 2d 657, 672 (E.D. Tenn. 2009) (finding material issues of fact regarding whether donning and doffing during meal period predominately benefits employer in light of dispute over how much time those activities take); *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1358-59 (M.D. Ala. 2009) (disputed issue of fact regarding compensability of meal period in context of donning and doffing); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 814-15 (M.D. Tenn. 2008) (factual issues exist on meal period claims in light of dispute over how much time donning and doffing takes during the meal period).[12]

_____

[11]In the alternative, Tyson moves for summary judgment on plaintiffs' meal period claims on the grounds that any donning and doffing activities at the meal period are de minimis.  As noted, factual issues exist with respect to what items are required to be donned and doffed at the meal period and whether and to what extent employees don and doff additional items for their comfort or for restroom use.  Factual issues exist with respect to whether these items should be included in the calculation of time spent donning and doffing at the meal period.  For these reasons, even assuming the court were to strike plaintiffs' time-study expert as requested by Tyson, the court would nonetheless deny Tyson's motion for summary judgment on this issue because there can be no determination of the amount of time donning and doffing takes at the meal period until these issues are resolved.

[12]The parties' cited cases in support of their respective motions are either distinguishable or not persuasive.  *See Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 n.4 (4th Cir. 2009) (concluding by way of footnote that donning and doffing "a few

E.     *Rest Periods*

In April 2010, Tyson replaced the 15-minute paid rest break it had provided to its hourly production workers with a longer unpaid rest break.  Plaintiffs assert that Tyson, pursuant to the Department of Labor's implementing regulations, must compensate its employees for this rest break.  Tyson contends that it is not required to compensate its employees for this break.  The parties have cross-moved for summary judgment.  As will be explained, genuine issues of material fact exist concerning the compensability of the rest break.

The Department of Labor's implementing regulations require that "rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. . . .  They must be counted as hours worked."  29 C.F.R. 785.18.  Plaintiffs contend that the rest break provided by Tyson is undisputedly 20 minutes in duration such that the break must be compensated under the pertinent regulation.  Tyson, on the other hand, contends that the rest break is, in fact, 25 minutes in duration such that the break falls outside the realm of presumptively compensable breaks.  The record reflects that the production line ceases each shift for 25 minutes–20 minutes of that time is uncompensated and 5 minutes of that time is compensated for donning and doffing

---

items" at the meal period is noncompensable because time spent was part of a bona fide meal period and, alternatively, de minimis); *Perez v. Mountaire Farms, Inc*., 610 F. Supp. 2d 499, 520-21 (D. Md. 2009) (finding meal-time donning and doffing compensable after bench trial); *Chao v. Tyson Foods, Inc*., 568 F. Supp. 2d 1300, 1309-10 (N.D. Ala. 2008) (entering summary judgment in favor of Tyson on meal-period donning and doffing claim under "higher" Eleventh Circuit standard requiring showing that employees retained "significant affirmative responsibilities" during meal period); *Chavez v. IBP, Inc*., 2005 WL 6304840, at *28 (E.D. Wash. May 16, 2005) (finding meal-time donning and doffing compensable after bench trial utilizing "completely relieved" standard).

activities at the rest break.  There is evidence in the record supporting plaintiffs' characterization of the rest break as a 20-minute break with 5 minutes of paid time appended to the rest break. There is also evidence in the record supporting Tyson's characterization of the rest break as a 25-minute rest break.

Regardless of whether the rest break is construed as a 20-minute break or as a 25-minute break, factual issues exist as to whether that break is compensable.  To begin, the regulation does not state that 20-minute rest breaks are necessarily compensable.  The regulation states that rest breaks up to "about" 20 minutes are compensable.  The agency's use of the term "about" indicates to the court that the test is a flexible one.  This conclusion is reinforced by the Tenth Circuit's decision in *Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956)–one of two cases cited by the Department of Labor in support of its regulation.  In *Mitchell*, the employer refused to pay its employees for two 15-minute breaks per shift.  The plaintiffs filed a claim under the FLSA and, after a bench trial, the court ruled that the breaks were not compensable and entered judgment for the employer.  On appeal, the Circuit reversed the district court and concluded that the rest periods were compensable on the undisputed facts.

In so holding, the Circuit explained that, in assessing the compensability of a rest period, "[s]ome of the factors to consider are whether idle time is spent predominantly for the employer's or employee's benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. The cases also make it clear that the answers to these questions must be gleaned from all the facts and circumstances of each case."  Analyzing the facts before

it, the Tenth Circuit concluded that the rest periods were compensable because the periods benefitted the employer as much or more than they benefitted the employees and the duration of the rest periods were such that the periods could not effectively be used for purposes not connected with the plaintiffs' employment.  In that regard, it was undisputed that the employees stayed on the production floor during their breaks–despite the fact that, in theory, they were free to leave the work area–because they worked on the third floor of a building with no elevator and simply did not have enough time to do as they pleased.

Unlike the factual record in *Mitchell*, plaintiffs' evidence does not reflect that Tyson's hourly production workers are unable to use their breaks for purposes not associated with their employment.  Thus, even if the court were to assume that the break is 20 minutes in length, the court cannot conclude as a matter of law that the break is compensable, particularly when the regulation relied upon by plaintiff does not state that 20-minute breaks are necessarily compensable.  But neither can the court enter summary judgment for Tyson even if it were to assume that the rest break is 25 minutes in length.  Just as the regulation does not state that 20-minute rest breaks must be compensated, neither does it state that 25-minute rest breaks are noncompensable.  Again, the factual record is simply not sufficiently developed to determine how effectively employees are able to use this time for their own purposes.  The parties' motions for summary judgment on plaintiffs' rest break claims under the FLSA are denied.[13]

---

[13]In the alternative, Tyson contends that the rest break is noncompensable as "off duty" time under 29 C.F.R. 785.16(a), which relates to "waiting time" and states that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."

F.      *Liquidated Damages and the Statute of Limitations*

Ordinarily, an employer who violates the FLSA is liable for both unpaid wages and an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  To avoid such damages, the employer must show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.  Good faith is a "subjective test that requires 'the employer have an honest intention to ascertain and follow the dictates of [the FLSA].'" *Fowler v. Incor*, 279 Fed. Appx. 590, 599-600 (10th Cir. 2008) (quoting *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994)).   Reasonableness "imposes an objective standard by which to judge the employer's behavior."  *Id.* at 600 (quotation omitted). Only in those instances where the court finds that the employer meets this burden, it may, "in its sound discretion," deny liquidated damages. *Id.* (quoting *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000)).

A two-year statute of limitations applies to an action for unpaid wages under the FLSA, except where an employer acts willfully, which extends the limitations period to three years. 29 U.S.C. § 255(a). The employee bears the burden of proving that the employer acted willfully. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  For purposes of the statute of limitations, "willful" means "the employer either knew or showed reckless disregard for the

---

Even assuming that the regulation can apply to rest breaks, whether the regulation applies in this particular case is undoubtedly a factual issue.

28

matter of whether its conduct was prohibited by [the FLSA]." Id. at 133.

Tyson seeks a ruling from the court that, as a matter of law, Tyson acted in good faith and without willfulness with respect to the alleged FLSA violations at issue in this case.[14] Tyson relies on the same evidence to support its argument that it acted in good faith as it does to support its argument that it acted without willfulness. According to Tyson, it reasonably relied on the *Reich* litigation and the *Reich* injunction in determining to pay only knife-wielding employees for time spent donning and doffing specialized items and it reasonably relied on its negotiated settlement with the DOL in paying those employees 4 minutes of "K code" time for such activities. With respect to time spent by employees donning and doffing standard protective clothing and gear, Tyson asserts that it has, for many years, relied on the finding of the *Reich* court that such activities were not compensable and that, to the extent that decision has been undermined, the compensability of donning and doffing standard protective clothing and gear is an unsettled issue as reflected in the divergent conclusions reached by courts and juries across the country on these issues.

In response, plaintiffs assert that summary judgment is inappropriate on the issues of good faith and willfulness because Tyson has "failed to obey" the *Reich* injunction "requiring it to pay workers for their actual time" spent donning and doffing; has failed to obey the *Reich* injunction requiring Tyson to record the actual time each employee spends donning and doffing; and "ignored" the DOL's position that the 4-minute policy was insufficient to comply with the *Reich*

---

[14]Tyson does not move for summary judgment on these issues with respect to plaintiffs' rest break claim.

injunction. Plaintiffs' arguments, then, focus exclusively on Tyson's obligations stemming from the *Reich* litigation–obligations, of course, that are limited to the donning and doffing of specialized gear utilized by knife-wielding employees. Neither the *Reich* litigation nor the *Reich* injunction obligated Tyson to take any action whatsoever with respect to the donning and doffing of standard protective clothing because the district court concluded–and the Tenth Circuit agreed–that such activities were not compensable. Plaintiffs' brief, then, is conspicuously silent with respect to whether Tyson acted in good faith and without willfulness on the issue of the compensability of donning and doffing of standard protective clothing and gear.

If plaintiffs had asserted distinct claims for unpaid wages for time spent donning and doffing standard protective clothing and gear, then the court would have comfortably granted summary judgment in favor of Tyson on the issues of good faith and willfulness with respect to those claims. The evidence reflects that Tyson relied on the *Reich* court's conclusion that the donning and doffing of standard protective clothing and equipment was not compensable and that, in more recent years, the issue has spawned widely divergent results from numerous courts–none of which expressly overruled *Reich*. While the Supreme Court's opinion in *Alvarez*, as construed by this court, has changed the pertinent analysis, *Alvarez* itself certainly does not require that employers compensate for donning and doffing activities. Rather, *Alvarez* requires an analysis of whether such activities are "integral and indispensable" to the employees' work–an analysis that, as indicated by the court here, cannot be resolved short of a jury trial. In essence, there is nothing in the record that suggests that Tyson–short of throwing in the towel and simply paying employees for donning and doffing standard protective clothing and gear

upon the filing of plaintiffs' lawsuit–should have handled its pay practices differently with respect to time spent donning and doffing standard protective clothing and gear.

Nonetheless, plaintiffs do not assert distinct claims for damages for time spent donning and doffing standard protective clothing and gear.  Rather, plaintiffs assert claims for damages for all time spent during the continuous workday for which Tyson does not already compensate its employees–claims which necessarily include those activities that the *Reich* court deemed compensable.  And the court concludes that material factual issues exist with respect to whether Tyson acted in good faith and without willfulness in implementing its pay practices concerning the activities found compensable in *Reich* and in its asserted compliance with the *Reich* injunction.  To be sure, there has been no determination yet as to whether *Reich* obligated Tyson, as plaintiffs insist, to begin recording and compensating the "actual time" that knife-wielding employees spend donning and doffing specialized clothing and equipment or whether *Reich* obligated Tyson to begin recording and compensating for the "reasonable" time that such employees spend performing those activities.  But either way, Tyson has not shown as a matter of law that it made a good faith attempt to ascertain the contours of the *Reich* injunction and to comply with that injunction.  Nor has Tyson demonstrated that plaintiffs will not be able to prove at trial that Tyson acted with reckless disregard in its asserted compliance with the *Reich* injunction.

At this juncture, then, the court is unable to isolate, for purposes of precluding liquidated damages and preserving the two-year statute of limitations, some portion of plaintiffs' continuous workday claims that might represent time spent donning and doffing standard

31

protective clothing and gear.  Stated another way, the court cannot envision, without knowing

how plaintiffs' claims and Tyson's defenses will ultimately be submitted to and resolved by the

jury, how a partial ruling in favor of Tyson on good faith and willfulness would work in terms

of calculating damages.  It may be, for example, that Tyson's showing of good faith with respect

to certain pay practices mitigates an award of liquidated damages that the court might otherwise

impose if it finds that Tyson did not act in good faith with respect to other pay practices.  But

these issues have not been addressed by the parties and, in light of all the circumstances, the

court believes that the appropriate course is to resolve these issues at trial.


IV.    **Kansas Wage Payment Act Claims**

As stated by plaintiffs in the pretrial order, all plaintiffs assert claims under the Kansas

Wage Payment Act (KWPA) to recover non-overtime wages owed but not paid by Tyson.[15]

Tyson moves for summary judgment on plaintiffs' KWPA claims on the grounds that the

---

[15]In a footnote in their motion for summary judgment, plaintiffs suggest that those
plaintiffs who have not opted in to the FLSA class are seeking under the KWPA damages for
"all time," including overtime.  See Pl. Br. at 7 n.3 (doc. 900).  To the extent the court is
accurately stating plaintiffs' intention, that approach is prohibited by Kansas law.

Employers like Tyson who are covered by the FLSA are expressly exempted from
Kansas' overtime statute.  *See* K.S.A. § 44-1202(d) (Kansas Minimum Wage Maximum
Hour Law) (KMWMHL).  Thus, permitting plaintiffs to recover overtime wages from Tyson
under the KWPA is incompatible with the exemption provision of the KMWMHL and would
undermine the integrity of Kansas' wage and hour statutory scheme as a whole.  *See
Dillworth v. Case Farms Processing, Inc*., 2009 WL 2766991, at *3 (N.D. Ohio Aug. 27,
2009) (where FLSA employers are exempt under state overtime statute, employees could not
pursue overtime wages under wage payment statute).

KWPA's requirement that an employer pay "wages" for "labor or services rendered" simply does not extend to the donning, doffing and walking activities at issue here.  Plaintiffs, on the other hand, rely on the statute's legislative history to argue that the continuous workday analysis under the FLSA also applies to plaintiffs' claims under the KWPA such that any activity that is compensable under the FLSA would also be compensable under the KWPA.  Both parties have undertaken an analysis of the KWPA that is far more difficult than necessary.  As will be explained, the court concludes that, in the context of this case, the FLSA is what confers on Tyson's employees the right to a certain amount of wages such that if a particular activity or time period must be compensated under the FLSA (and its implementing regulations) and Tyson does not compensate its employees for that activity or time, then its employees are entitled to recover those "wages due" under the KWPA.

The KWPA gives employees the right to receive their "wages due" and concerns when and how those wages are paid.  *See* K.S.A. § 44-314.  In those instances when an employer willfully fails to pay an employee his or her wages, the KWPA provides that the employer is liable for both the wages due and a penalty in an amount up to 100% of the unpaid wages.  *See* § 44-315(b).  The KWPA, then, does not provide plaintiffs with any substantive rights, but simply provides a mechanism for plaintiffs to recover wages due.  In such circumstances, plaintiffs must establish independently that they are entitled to the wages that they seek.  While a plaintiff in general need not rely on the FLSA to establish the specific amount of "wages due" under the KWPA (in a different factual setting, a plaintiff might look to a written employment contract, for example), the FLSA is the legal basis for plaintiffs' KWPA claims in this case.

33

Thus, to the extent it is determined at trial that Tyson is required under the FLSA to compensate its employees for certain activities or time periods for which Tyson has not been compensating employees, then the KWPA class in this case may recover those amounts under the KWPA. *See Bouaphakeo v. Tyson Foods, Inc*., 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) (FLSA may be used to establish an employee's right to a certain amount of wages under state wage payment act and an employer's violation of the state statute for not paying all wages due); *accord Pennington v. G.H. Hermann Funeral Homes, Inc*., 2010 WL 3326815, at *7 (S.D. Ind. Aug. 23, 2010) (plaintiffs looked to FLSA violations to establish violation of state wage payment statute providing penalty if employer fails to make payment of wages).[16]

## V.     Quantum Meruit

As an alternative to their KWPA claims, plaintiffs seek to recover non-overtime wages

---

[16]Tyson also moves for summary judgment on plaintiffs' claim that Tyson's conduct was "willful" for purposes of the KWPA–a standard that Tyson asserts is much stricter than the FLSA standard.  The motion is denied.  For purposes of the KWPA, a "willful" act is one indicating "a design, purpose, or intent on the part of a person to do wrong or to cause injury to another."  *Holder v. Kansas Steel Built, Inc*., 224 Kan. 406, 411 (1978).  According to the Kansas Supreme Court, whether an employer willfully failed to pay wages is typically a question of fact.  *Id*. (evidence supported jury's finding of willfulness where the employer's actions in making unusual deductions were unilateral, never discussed with the employee and executed in a manner intended to forestall future litigation).  Even assuming that this standard is more stringent than the standard for willfulness under the FLSA, the court believes that this issue should be resolved at trial, for largely the same reasons as explained in connection with Tyson's willfulness argument under the FLSA.  *See Beckman v. Kansas Dep't of Human Resources*, 30 Kan. App. 2d 606, 614 (2002) (evidence supported fact finder's conclusion that violation was willful where employer's decision to withhold wages bore no relationship to a sincere belief by the employer that the wages were rightfully withheld).

under a theory of quantum meruit.  Tyson moves for summary judgment on plaintiffs' quantum

meruit claims on the grounds that equitable remedies are not available if there is an adequate

remedy at law, *see Nelson v. Nelson*, 288 Kan. 570, 597 (2009), and plaintiffs have statutory

remedies available to them for the alleged wage and hour violations underlying their quantum

meruit claims.  Plaintiffs agree that an adequate legal remedy defeats an equitable claim but

contend that this alternative claim is permissible at this juncture because Tyson has challenged

the viability of plaintiffs' KWPA claims.  The court, however, has rejected Tyson's construction

of the KWPA.  In the absence of any other argument from plaintiffs,[17] the court grants summary

judgment in favor of Tyson on plaintiffs' quantum meruit claims.  *Clougher v. Home Depot*

*U.S.A., Inc.*, 696 F. Supp. 2d 285, 295 (E.D.N.Y. 2010) (dismissing quantum meruit claims as

duplicative of state statutory claim in wage and hour context); *Perry v. Upper Deck Co.*, 2007

WL 1449797, at *3 (S.D. Cal. May 11, 2007) (granting summary judgment on unjust enrichment

claim where remedies available under California Labor Code); *Bongat v. Fairview Nursing Care*

*Center, Inc.*, 341 F. Supp. 2d 181, 188-89 (E.D.N.Y. 2004) (dismissing quantum meruit and

unjust enrichment claims in favor of statutory overtime-wage law claims).

---

[17]To the extent plaintiffs suggest that a statutory remedy is only adequate if plaintiffs
prevail at trial, that argument is rejected.  The pertinent inquiry is whether an adequate
remedy is available, not whether that remedy is ultimately obtained.  *See Jennings v.*
*Zavaras*, 2010 WL 3885420, at *1 (D. Colo. Sept. 29, 2010) (fact that remedy not successful
does not mean that remedy was not adequate); *Fernandes v. Havkin*, ___ F. Supp. 2d ___,
2010 WL 3155805, at *10 (D. Mass. Aug. 10, 2010) (disposition of statutory claims
irrelevant; mere availablility is a bar to a claim of unjust enrichment); *Zuckerman v. United*
*of Omaha Life Ins. Co.*, 2010 WL 2927694, at *6 (N.D. Ill. July 21, 2010) (whether statutory
claim ultimately succeeds is irrelevant; inquiry is whether plaintiff can state a claim under the
statute).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for partial summary judgment (docs. 880 & 900) is **denied** and defendants' motion for summary judgment on plaintiffs' state law claims and for partial summary judgment on plaintiffs' FLSA claims (doc. 881) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated this 31st day of January, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

36