## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADELINA GARCIA, ANTONIO GARCIA, and
JERONIMO VARGAS-VERA, individually, and
on behalf of a class of others similarly situated
Plaintiffs,

v.                                                    Case No.  06-2198-JWL/DJW

TYSON FOODS, INC., and
TYSON FRESH MEATS, INC.,
Defendants.

### PLAINTIFFS' MOTIONS *IN LIMINE* AND MEMORANDUM IN SUPPORT

Plaintiffs bring their motions *in limine* in this omnibus motion and memorandum.

**MEMORANDUM IN SUPPORT**

**I.      Statement of the Matter Before the Court**

This is a class and collective action seeking recovery of unpaid work time under federal and Kansas-state law at Tyson's beef processing facilities in Finney County and Emporia, Kansas.  Trial involving the Finney County plant is scheduled to begin March 1, 2011.  At issue is whether Tyson has paid Plaintiffs for all of the time they spend working during the continuous workday.

**II.     Facts**

Particular facts are discussed in the Argument below.

**III.    Questions Presented**

Should Plaintiffs' Motions *in Limine* be Granted?

**IV.     Argument**

Plaintiffs move *in limine* to exclude evidence that is irrelevant and prejudicial to the fact questions to be decided by the jury.  In order to prevail on their liability theory, plaintiffs must prove that the protective and sanitary clothing and equipment at issues is "integral and

indispensable," i.e., that (1) required by Tyson, (2) necessary to the job, and (3) primarily for Tyson's benefit.  Doc. 952, Order on Summary Judgment, at p. 14 (citing *Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010); *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340 (11th Cir. 2007); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004)).  There is no dispute that class members in fact don and doff the clothing and equipment, or that donning and doffing and related walking and washing time occurs outside the paid production-line schedule. Under the "continuous workday" rule, all time after the employee commences performing the first integral and indispensable activity on a particular workday and before he or she ceases performing the last integral and indispensable activity on that workday is compensable, with only certain enumerated exceptions.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28-29 (2005) (quoting 29 C.F.R. § 790.6).  Tyson's sole affirmative defense to liability is that the unpaid time is *de minimis*, for which Tyson must prove: (1) the regularity with which the unpaid work is performed, (2) the aggregate size of the claim, and (3) the practical difficulty of recording the additional time.  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998); 29 C.F.R. § 785.47.

Relevant evidence is that which bears on a fact that "is of consequence to the determination of the action."  FRE 401.  Irrelevant evidence is inadmissible.  FRE 402.  Even relevant evidence should be excluded where its probative value is outweighed by its prejudicial effect, or if its admission would confuse the issues, waste time, or be cumulative.  FRE 403.  As demonstrated by its conduct, its deposition designations, and its arguments in this litigation, Tyson may attempt to introduce evidence and arguments that are irrelevant and prejudicial to the questions the jury will be asked to decide.  Because this trial already is expected to be long, it is particularly important that confusing, unnecessary and prejudicial evidence be excluded in order to avoid confusion and minimize the time jurors are required to serve.

### a.   Evidence Pertaining to Work Benefits is Not at Issue.

This case is about whether Tyson has paid Plaintiffs for their time spent performing off-line tasks during the compensable continuous workday.  The law provides that workers are to be paid for "any activity that is 'integral and indispensable' to" their principal job duties, as well as any time during the "continuous workday" as demarcated by the first and last integral and indispensable activities.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).  This case is *not* about whether Plaintiffs receive a fair hourly rate of pay, whether their health benefits are good, or whether workers enjoy working for Tyson.  Evidence that Tyson pays its workers "generously" or that workers "like to work for Tyson" is irrelevant and prejudicial.  Similarly, any evidence or suggestion that Tyson's workers are fortunate to have a job should be excluded.  These topics are irrelevant and only serve to improperly prejudice the jury.  Actual wage rates will be evidence solely for purpose of calculating damages; but any reference to Plaintiffs' pay being above minimum wage should be prohibited.

### b.   Evidence Regarding Witnesses' Citizenship and Immigration Status.

The parties have conferred, and Tyson has agreed that it will not introduce evidence of Plaintiffs' or class members' citizenship or immigration status.

### c.   Evidence that Tyson may Lay People Off or Would Be Unprofitable if it Loses the Trial or if it Must Comply with the Law.

Tyson should be prohibited from making any references to the possibility that it would have to lay workers off or that that the company would be unprofitable if Plaintiffs are victorious.  The jury should not be put in a position of choosing to follow the Court's instructions on the law, or defying the law to preserve a company's hypothetical future profitability.  Whether the donning and doffing at issue is compensable does not depend upon whether Tyson is profitable, or whether it would reduce wages or employ fewer people if it loses this trial.  Such

evidence would, in any event, be purely speculative.  Evidence or arguments that complying with the law is unprofitable are irrelevant and unduly prejudicial, and should be excluded under FRE 402 and 403.

### d.  Evidence Intended to Undermine the Court's Class Certification Ruling.

The Court has certified this case as both a representative action under §216(b) of the FLSA, and a class action under Rule 23.  (Doc. 741 at pp. 7-24.)  The Court found that the "overarching question—whether Tyson must pay class members for time spent donning, doffing, washing, walking and the like—is best resolved through a class action."  (Doc. 741 at p. 24.) The compensability of those activities is precisely the question the jury is being asked to decide.

Tyson intends to undermine the Court's certification order – and the Court's finding that the class is "similarly situated" – by telling the jury that Plaintiffs' evidence may not represent the non-testifying members of the class – that the testifying Plaintiffs are not similar enough to the class.  Backdoor attempts to defeat class certification are inappropriate.  The Court has already determined that the workers at issue are similarly situated and the named Plaintiffs are adequately representative of the class, and Tyson has waived its opportunity to seek decertification (Doc. 840, setting October 15, 2010 as decertification motion deadline).  As a result, Tyson should not be permitted to reargue class and collective action certification (which is inherently a legal decision) to the jury and insinuate that the class members are not similarly situated or that the representative witnesses are not adequate.

### e.  Evidence Referencing Time Studies Not Produced in Discovery.

Plaintiffs sought discovery of any time studies performed by or for Tyson.  (Ex. A Defendants' Objections and Responses to Plaintiffs' Second Request for Production, at p. 12 Request No. 22.)  Although Tyson produced information regarding some of its own internal time

studies conducted by Monty Hahn and its expert time study performed for this litigation, Tyson failed to produce other time studies, and evidence of them should be excluded at trial.

### 1.      Supervisor studies

After the close of discovery, Tyson supervisors conducted a time study during workers' daily rest period.   Tyson has produced no information about this time study except for declarations by the supervisors that were submitted by Tyson with its summary judgment briefing.  (*See* declarations attached as exhibit 14 to Doc. 881, Tyson's Motion for Summary Judgment)  Because discovery was long closed, Plaintiffs did not have the opportunity to test the declarations or the declarants, and, as a result, the informal time study—and any other undisclosed time study—should be precluded.  However informal this post-discovery time study may be, it or similar undisclosed studies should be excluded from evidence because time studies are of central importance to this case, Plaintiffs asked in discovery on several occasions for information about time studies (*See, e.g.*, Ex. A at p. 12 Request No. 22.), and it is grossly prejudicial for Tyson to adduce evidence of a previously-undisclosed study.

Both sides hired experts to conduct time studies of the plants in this case; extensive discovery has been taken involving Tyson's pre-litigation time study conducted by Monty Hahn; both sides have challenged the admissibility of testimony from their respective experts; and Plaintiffs have vigorously sought disclosure of the existence of all time studies Tyson has conducted.   For Tyson to direct its supervisors to conduct a time study after the close of discovery is grossly unfair to Plaintiffs.

Additionally, this belated, informal time study is facially flawed because it fails to even suggest that the study complied with the legal standard for what time is compensable, or the methodology employed by either side's proffered time study experts.  Moreover, Tyson's Rule 26 disclosures did not suggest that supervisors would be offered to testify about the time required

to don or doff any equipment at any time of day.  This is not merely part of the routine operations in the facility, for which Tyson identified supervisor witnesses in its Rule 26 disclosures; this is a specific, non-routine time study orchestrated by Tyson after discovery closed.  This and any other undisclosed time studies should be barred under Fed. R. Civ. P. 37(a) because they were undisclosed, should be barred under evidence FRE 403 as more prejudicial than probative in view of the comparative role of expert time studies, and should be barred under FRE 402 because they fail to comply with relevant legal standards for compensability of work time.

### 2.    Fernandez Study

Dr. Jeffrey Fernandez purportedly conducted an investigation in 1998 at Tyson's *Emporia* facility—not the *Finney County* facility that Tyson avers is different from Emporia—to evaluate Tyson's estimate of the time required to don, doff, and wash a *portion* of workers' protective equipment.  But Tyson has failed to even produce Dr. Fernandez's report that he prepared pursuant to that 1998 investigation; instead, Tyson attached to a prior motion only a portion of Dr. Fernandez's report, *omitting the underlying data, detailed analysis, and videos of workers' activities.*  (*See* Doc. 558-2, Fernandez report omitting appendices, attached to Tyson's reply in support of motion for summary judgment.)  Because Plaintiffs have not received any of his underlying data, Dr. Fernandez should not be permitted to testify at trial and his report should be excluded.  Nor did Tyson disclose Dr. Fernandez as a potential witness in its initial disclosures, supplemental disclosures, or expert disclosures.  It was not until after the close of discovery that Plaintiffs learned Tyson intended to call Dr. Fernandez or discuss his report at trial.  When Tyson belatedly disclosed Dr. Fernandez as a potential witness after the close of discovery, Plaintiffs asked Tyson whether it would object to a deposition of Dr. Fernandez, and Tyson expressly opposed the deposition.

Dr. Fernandez's testimony and his report should be excluded for another crucial reason: Dr. Fernandez's "study" is unduly prejudicial because Tyson has not disclosed him as an expert in this case, but his time study may be misperceived by the jury as an "expert" time study because of his academic credentials and his purported scientific methodology. Tyson may not circumvent the expert-disclosure rules.

**f.   Evidence that Tyson Received or Complied with Legal Advice.**

The parties have conferred, and Tyson has agreed that it will not introduce evidence that its pay policy was implemented pursuant to the advice of its attorneys and is not relying on the "advice of counsel" defense.

**g.   Testimony by Tyson Witnesses Hagen and Fernandez.**

Tyson's witness list includes Sheila Hagen, a former in-house attorney for Tyson, and Dr. Jeffrey Fernandez, a purported time-study contractor, as witnesses at trial. Their testimony should be excluded for several reasons. First, Tyson identified them as witnesses only after the close of discovery. Tyson did not disclose either Ms. Hagen or Dr. Fernandez as potential witnesses in Tyson's Rule 26 disclosures. Rule 26(a) begins with the requirement that "a party must, without awaiting a discovery request, provide… (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a). "If a party fails to… identify a witness as required by Rule 26(a)… the party is not allowed to use that… witness to supply evidence… at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). *See also* Pre-trial Order at 35 ("seldom should anything be included in the final Rule 26(a)(3)(A) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto").

Because Tyson failed to disclose these witnesses, and because the failure is neither substantially justified nor harmless, the witnesses may not testify.  After Tyson belatedly disclosed these witnesses, Plaintiffs asked to depose the witnesses to eliminate the prejudice that would result from Tyson's untimely listing of these witnesses after the close of discovery.  Tyson refused, stating it opposed Plaintiffs' effort to depose the belatedly disclosed witnesses.

Ms. Hagen's testimony is expected to involve the DOL's litigation against IBP in *Reich v. IBP, Inc.*, D. Kan. Case No. 88-2171-EEO.  That prior litigation has been the subject of extensive litigation in this case: at the outset of this case, Tyson filed a motion for summary judgment on the basis of that prior DOL litigation.  (Doc. 363.)  Tyson lost that motion (Doc. 599, Order denying summary judgment), and moved for reconsideration (Doc. 674), which it also lost (Doc. 695).  Tyson then sought interlocutory appeal of the denial of summary judgment (*see* Doc. 699), which the Tenth Circuit dismissed (Doc. 713, copy of 10th Cir. Judgment and Opinion).  Upon Tyson's initial filing of that motion for summary judgment, Plaintiffs took discovery limited to that issue, and at no time did Tyson suggest that Ms. Hagen was a potential witness.  Indeed, in the nearly five years that this case has been litigated, Tyson did not identify Ms. Hagen as a potential witness until *after* the close of discovery.  Given the extensive discovery conducted in this case regarding the *Reich* litigation, Tyson's failure to timely disclose Ms. Hagen is neither substantially justified nor harmless.

Tyson's failure to disclose Dr. Fernandez is likewise neither substantially justified nor harmless.  As discussed above regarding time studies Tyson has failed to produce, Dr. Fernandez purportedly conducted an investigation in 1998 at Tyson's *Emporia* facility—not the *Finney County* facility that Tyson avers is different from Emporia—to evaluate Tyson's estimate of the time required to don, doff, and wash a *portion* of workers' protective equipment.  Tyson's failure

to disclose Dr. Fernandez in its Rule 26 disclosures or even produce Dr. Fernandez's report that he prepared pursuant to that 1998 investigation results in extreme prejudice to Plaintiffs.

Ms. Hagen and Dr. Fernandez should be prohibited from testifying, particularly in view of Tyson's objection to Plaintiffs' attempt to cure any prejudice through a timely deposition.

### h.   Evidence of Bankruptcies, Divorces, Lawsuits, Crimes, Arrests, etc..

Tyson has agreed it will not introduce evidence of any financial difficulties, foreclosures, bankruptcies, crimes, or civil or domestic relations actions involving Plaintiffs or other class members other than crimes that fall under FRE 609.

With regard to any crimes that Tyson may want to use, evidence concerning arrests or prosecutions not resulting in conviction fails to meet the threshold set forth in FRE 609. Additionally, evidence of convictions contravenes the bar against character evidence under FRE 404.   And although evidence of felony convictions is sometimes admissible to attack the credibility of a witness, FRE 609(a) provides that such evidence is subject to the prejudicial/probative balance of FRE 403.   Here, it is difficult to imagine how the probative value of any evidence of a crime could conceivably outweigh its prejudice in a case like this. Plaintiffs do not expect that their testimony will be controversial (*e.g.*, I was required to wear certain protective equipment, I was scheduled during the first shift, and it took me a certain amount of time to perform my donning and doffing activities).   Outside of a conviction for perjury or the like pursuant to FRE 609(a)(2), other crimes should not be a topic of cross examination.

### i.   Evidence of Donning and Doffing Pay Practices at Other Companies.

The parties have conferred, and Tyson has agreed it will not introduce evidence of practices and policies at other companies.

**j.   Evidence of Employee Discipline Unrelated to Donning/Doffing or Tardiness.**

Plaintiffs move to exclude all evidence concerning Plaintiffs' or other class members' disciplinary records at Tyson, except as it may relate to discipline for failure to comply with requirements to wear sanitary and protective clothing and equipment, and related to when employees must report to work stations fully dressed.   Plaintiffs' and class members' work conduct is not at issue in this case.   Thus, any reference to, or evidence concerning, Plaintiffs' or other class members' disciplinary records with the exceptions noted above lack any relevance and is inadmissible at trial under FRE 402.

Such evidence is also prohibited by the bar against character evidence under FRE 404. This rule reflects the judgment of the Advisory Committee on FRE 404 as follows:

> Character evidence is of slight probative value and may be very prejudicial.   It tends to distract the trier of fact from the main question of what actually happened on that particular occasion.   It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

FRE 403 also requires the exclusion of Plaintiffs' or other class members' disciplinary records with the exceptions noted above due to the risk of unfair prejudice, confusion of the issues and waste of time, which substantially outweigh any probative value of the evidence.   As the Advisory Committee Note to FRE 403 states: "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."   Evidence of irrelevant discipline may unfairly prejudice the jury against the class and the merits of this case.   And if Defendant is allowed to introduce the evidence, Plaintiffs will have to rebut the evidence by explaining the circumstances surrounding the alleged incident, including calling related management witnesses to cross-examine them about the incident, which may unduly prolong the trial.   Such a result contravenes the policies underlying FRE 403, and, thus, such evidence of prior discipline should be excluded.

**k.  Evidence Concerning Plaintiffs' or Other Class Members' Failure to Complain About Non-Payment Is Irrelevant and Prejudicial.**

Defendants may seek to adduce evidence that Plaintiffs or other class members failed to complain to supervisors that they were not being paid for all of their hours worked.  Unlike certain claims requiring an employee to exhaust administrative or internal remedies before filing a lawsuit, an internal complaint to management is not a prerequisite to an FLSA claim. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("No exhaustion requirement or other procedural barriers are set up" under the FLSA).  Consequently such evidence should be excluded as irrelevant and prejudicial.  There are a multitude of collateral reasons why Plaintiffs of other class members might not have complained about the underpayment.  The workers are not lawyers, so they may not have known Tyson's policy is unlawful—indeed if they had asked their supervisors or Tyson's human resources personnel, class members would presumably have been told Tyson's position that donning and doffing is uncompensable.  Class members may not have understood what time they were paid for, and what time they were not paid for, given Tyson's changing K-code and break-time policies.  They may have been fearful of retaliation, or they may not have known how or to whom to complain. Whatever the reason, evidence concerning the lack of complaints is irrelevant under FRE 401 and should be excluded under FRE 402.

Additionally, evidence concerning Plaintiffs' or other class members' failure to complain is prejudicial and is likely to confuse the issues before a jury, as nearly 2,000 workers *have complained* by filing consent forms pursuant to the FLSA to join this suit, so any suggestion that workers concede Tyson's point of view is patently misleading.  A juror may attach undue significance to the lack of a complaint even though federal and state law do not require a worker to have complained at all.  Given the potential for prejudice and confusion and the lack of

relevance of this evidence, references to any lack of internal or external complaints by Plaintiffs or other class members should be excluded from trial under FRE 401-403.

### l.   Evidence that Plaintiffs Knew They Were Not Paid for Donning and Doffing.

Tyson may seek to adduce irrelevant evidence that class members knew they were not paid for all time spent donning and doffing, apparently to suggest that Tyson should not have to comply with the law if workers agreed to tolerate it.  But "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  *Barrentine, Inc.*, 450 U.S. at 740 (citing cases).  Thus any evidence or argument that workers knew from the day they were hired that Tyson did not pay for, or only paid for a portion of, the time required for donning and doffing related activities, is irrelevant and prejudicial under FRE 402-403, and should be excluded.

### m.  Evidence that Not All Class Members Filed FLSA Consent-to-Join Forms.

Defendants may attempt to introduce evidence or argument concerning the way in which the opt-in process proceeded in this case or, in particular, the response rate or number of opt-in respondents.  Such evidence or argument is irrelevant under FRE 401 and 402.  Moreover, the risk of prejudice, confusion, and waste of time as contemplated by FRE 403 would be great. Discussions of the opt-in process would require counsel and the Court to explain complicated legal procedures to jurors, including the complicated legal procedures for the intersection of a hybrid Rule 23 class and FLSA opt-in class.  The particular rate of response in this case could be related to a variety of factors, including the fact that workers are part of the Rule 23 class without need of filing an opt-in form.  Evidence and argument concerning the opt-in process and the rate of response in this case should be precluded from the trial under FRE 401, 402, and 403.

**n.  In-Court Demonstrations of Time Needed to Don or Doff.**

The Courtroom is not a slaughterhouse or a slaughterhouse locker room.  The courtroom is not a 1 million square foot facility.  Tyson's workers don and doff at the plant in crowded conditions, often in proximity to machines and conveyors.  In court demonstrations intended to simulate the time it may take workers to don or doff their gear would be irrelevant and highly prejudicial, and should be excluded under FRE 401, 402, and 403.   Indeed, as Tyson acknowledges by the procedures utilized in its own time study prepared by Dr. Adams for this litigation, evaluating the donning and doffing activities *in the workplace* is a minimum threshold for reliability of the time calculations at issue in this case.  Courtroom demonstrations aimed at simulating the donning and doffing process should be excluded.

**o.  Evidence of "Sunshine" Time as Offsetting Compensable Time.**

Plaintiffs seek to recover for their unpaid time that they worked.  Tyson's pay policies involving things *other* than hours worked are irrelevant and will confuse and prejudice the jury.  In Plaintiffs' calculations of the number of hours worked (both paid and unpaid), Plaintiffs are *not* tallying amounts in the payroll records that do not constitute hours actually worked, such as paid sick leave or vacation or jury duty.  Among the amounts Plaintiffs are *not* including in the calculation of hours worked is a benefit provided called "sunshine" time, which was compensation infrequently paid to some slaughter workers when the workers slaughtered the day's quota of cattle in less time than the full scheduled shift.  In other words, it was incentive compensation for workers' efficiency and speed.  Sunshine pay is a benefit much like vacation time or health benefits that is irrelevant to whether Tyson was paying for all donning and doffing hours worked.  Even on days when sunshine time was awarded, Plaintiffs were still not paid for all of their pre- and post-shift work time.

13

Tyson appears to be arguing that "sunshine time" constitutes an "offset" against unpaid donning and doffing time Plaintiffs seek to recover.  Such an "offset" is impermissible under the law.  Under the FLSA, only three types of compensation may be used as an offset, meaning they are creditable against overtime compensation: First is daily overtime, meaning time-and-a-half pay for working over a certain number of hours in the day even though the FLSA's threshold for overtime (40 hours per week) may not be met; second are premium amounts paid for work on days usually reserved for rest, such as weekends and holidays; and third are "premium rate" payments "for work outside of the hours established… by the [employment] contract or [collective bargaining] agreement."   29 U.S.C. § 207(h)(2) (cross-referencing 29 U.S.C. § 207(e)(5)-(7)).  Sunshine time is none of these.  It is not daily overtime; it is not a premium for weekends or holidays; it is not a premium rate "for work outside the hours established" by contract.  Thus sunshine time payments do not offset amounts owed here for unpaid work.

In calculating damages, Plaintiffs have properly excluded sunshine time.  Like other forms of pay that are irrelevant to the issues here—such as paid vacation or sick leave—sunshine time is irrelevant and evidence regarding it should be excluded under FRE 402 and 403 as irrelevant, confusing, and a waste of time.

**p.  Evidence that Workers are Paid for Time the Line Stops or Lacks Product.**

During class members' paid, scheduled shift on the production line, there are occasionally times when the line stops (or is moving but without product) due to mechanical or safety or sanitation problems.  Additionally, some workers occasionally need to use the restroom during their scheduled shift.  When these events occur during a worker's paid, scheduled shift, the worker remains on duty and is paid as legally required.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (holding that "continuous workday" demarcates compensable time); 29 C.F.R. § 785.15 ("[f]or example, a repair man is working while he waits for his employer to get the premises in

readiness… [t]he time is worktime even though the employee is allowed to leave… the job site during such periods"); 29 C.F.R. § 785.18 (rest periods "must be counted as hours worked" and "may not be offset against other working time").  There is no legitimate legal argument that such paid "down" time or off-line time is uncompensable or that it may offset unpaid donning and doffing time outside the scheduled shift.  This evidence and these arguments are irrelevant and only serve to prejudice the jury and distract them from the evidence relevant to the disputed material facts, and should be excluded under FRE 402 and 403.

**q. Evidence Relating to Other Lawsuits and Opinions More Suitable for the Willfulness / Good Faith Phase of Trial.**

The parties left the hearing on Thursday, February 10, with a tentative agreement that the fact question of "willfulness" be bifurcated from the fact issues of liability and damages, and that willfulness would be tried to the Court (along with liquidated damages) during a separate phase of the trial.  But all parties acknowledged there were still details that needed to be worked out. After a series of written and verbal communications, it is presently unclear whether the parties have an agreement to bifurcate and try the issue to the Bench.  Tyson has taken the position that it will only agree to bifurcation if it has a right to "tell its story" to a jury – a story that apparently will include the details of the decade long battle with the Department of Labor in the *Reich* litigation, as well as Tyson's purported "good faith" reliance on a purported "negotiated settlement" with the DOL.  Plaintiffs understand that Tyson wishes to tell its as-yet-unspecified story, but Plaintiffs do not agree that the story may include irrelevant and prejudicial evidence. Because Plaintiffs believe that the jury in this case will be required to make an independent determination of (i) what activities are integral and indispensable, and (ii) whether those

activities are *de minimis*, Plaintiffs have reserved their right to object to certain evidence related to the *Reich* litigation.[1]

Evidence relating to the prior court decisions in *Reich* and its history under various case names, as well as the varying positions of the DOL over time, go solely to Tyson's state of mind and are entirely irrelevant to the threshold issues of the strict liability questions of "integral and indispensable" and *de minimis*.[2] *See, e.g., May v. Arkansas Forestry Commission,* 993 F.2d 632, 637 (8th Cir. 1993) (affirming trial court's exclusion of exculpatory letter from the Department of Labor because, among other things, "state of mind is irrelevant to the FLSA violations").  In addition, such evidence has the potential to suggest to a jury that disputes over liability and damages have already been decided in prior litigation, or at the very least improperly influence a jury by suggesting which side has prevailed in the past.  Even a cursory glance at the briefing on Defendants' early summary judgment motion on the impact of *Reich* and the so-called "settlement" with the DOL demonstrates that vetting these issues in front of a jury would be needlessly time consuming, cumbersome and confusing.  *See* Plaintiffs' Opposition to Defendants Motion for Partial Summary Judgment (Doc. 557) and Opposition to Defendants'

---

[1]     Defendants are currently drafting what Plaintiffs understand will be a several paragraph proposed stipulation that summarizes the prior *Reich* litigation that the Court would read to the jury during the liability and damages phase of the trial (assuming willfulness is bifurcated).  If the parties are able to come to agreement on such a stipulation, Plaintiffs believe this issue will be moot.

[2]     A finding on the integral and indispensable question requires and answer to the following question: whether the donning and doffing at issue is: (1) required; (2) necessary for the job; and (3) is primarily for the benefit of the employer.  The litigation history has nothing to do with these findings.

     Similarly, the *de minimis* question requires a finding regarding: (1) the regularity with which the unpaid work is performed, (2) the aggregate size of the claim, and (3) the practical difficulty of recording the additional time.  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998).

Motion for Summary Judgment (Doc. 901, at 17-26) for an overview of the *Reich* issues and the so-called "negotiated settlement" (*see also* Doc.681, Plaintiffs' brief responding to Tyson's motion to reconsider).   While Plaintiffs agree that Tyson should be permitted to use such evidence during a willfulness / good faith phase of trial if it wants to, the evidence is irrelevant, unduly prejudicial, confusing, and inappropriate with regard to the jury's liability and damages determinations.

It may be that Defendants and Plaintiffs will still be able to come to an agreement on bifurcation and a joint stipulation of facts that provides a jury with the historical context of the *Reich* litigation, while not resulting in any undue prejudice.  Absent such an agreement, however, Plaintiffs will move to exclude evidence of the *Reich* litigation that is either irrelevant or unduly prejudicial to the jury's consideration of liability and damages.

### CONCLUSION

Plaintiffs respectfully request that their motion *in limine* be granted.


**GARCIA & ANTOSH LLP**
Peter J. Antosh    KS Bar #21334
pja22@yahoo.com
1401 Central Ave.
Dodge City, KS 67801
PH:   620-225-7400
FAX:  620-225-4339

**OUTTEN & GOLDEN LLP**
Adam T. Klein (admitted pro hac vice)
ATK@outtengolden.com
Justin M. Swartz (admited pro hac vice)
JSM@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
PH:   212-245-1000
FAX:  212-977-4005

Respectfully Submitted,
**STUEVE SIEGEL HANSON LLP**

/s/ George A. Hanson
George A. Hanson      KS Bar #16805
hanson@stuevesiegel.com
Eric L. Dirks           D. Kan. Bar #77996
dirks@stuevesiegel.com
Lee R. Anderson      KS Bar #22755
anderson@stuevesiegel.com
460 Nichols Rd., Ste. 200
Kansas City, Missouri 64112
PH:   816-714-7100
FAX:  816-714-7101
**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2011, I electronically filed the foregoing with the clerk of court using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

/s/ George A. Hanson
An Attorney for Plaintiffs