IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ADELINA GARCIA, et al., individually, | ) | |
| and on behalf of a class of others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:06-CV-2198-JWL-DJW |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC. | ) | |
| TYSON FRESH MEATS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. hereby submit the following

proposed jury instructions.

## TABLE OF CONTENTS

Preliminary Instructions
1.     Opening Instructions
2.     Evidence/Limitations
3.     Bench Conferences and Recesses
4.     Note Taking
5.     Conduct of the Jury
6.     Outline of the Trial

Final Instructions
1.     Consideration and Application of Instructions
2.     Judge's Opinion
3.     Burden of Proof
4.     Credibility of Witnesses
5.     Impeachment
6.     Stipulated Facts
7.     Evaluation of Deposition Evidence
8.     Use of Interrogatories
9.     Expert Witness
10.    Consideration of Corporate Parties
11.    Burden for FLSA Collective Action; Representative Evidence
12.    Burden for Kansas-Law Rule 23 Class Action
13.    Basic Elements of Fair Labor Standards Act - Overtime

14.     Basic Elements of Kansas Wage Payment Act Claim − Non-Overtime
14A.    Basic Elements of Kansas Wage Payment Act Claim − Non-Overtime (Alternative)
15.     Definition of Work
16.     Preliminary vs. Principal Activity
17.     Items That Can Be Worn To/From Home
18.     Continuous Workday
19.     Touching Items Cannot Start or End Workday
20.     Walking Time
21.     *De Minimis* Defense
22.     Compensability of Meal Breaks
23.     Compensability of Rest Breaks
24.     Payment for Production and Use of Gang Time Not at Issue
25.     Additional Paid Minutes
26.     Changes to the Workday
27.     Time Clocks Not Required
28.     Damages
29.     Damages:  FLSA Willfulness
30.     Willfulness Under the KWPA Claim
31.     Duty to Deliberate

PRELIMINARY INSTRUCTION NO. 1

Opening Instructions


We are about to begin the trial of the case you heard about during jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

This is a civil case brought by the three lead Plaintiffs -- Adelina Garcia, Antonio Garcia, and Jeronimo Vargas-Vera -- against Defendants, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. Tyson Fresh Meats is a subsidiary of the company Tyson Foods.  For purposes of this trial, you will not need to make a distinction between the two Defendants.  I will treat them as one party - referring to them together as either "Tyson" or "Defendants."

The positions of the parties can be summarized as follows:

Plaintiffs assert claims under the Fair Labor Standards Act on behalf of themselves and other current and former hourly production employees at Tyson's beef-processing facility in Finney County, Kansas.  Plaintiffs also are making a claim under Kansas law on behalf of themselves and other current and former hourly production employees who have worked at the Finney County facility since May 15, 2003.

Employees at Tyson's Finney County plant put on and take off clothing and other items before and after their work shift and breaks.  Some of these items are unique to the meat-processing industry, such as mesh-metal aprons and gloves, while others are not, such as frocks, hairnets, hard hats and earplugs.  Plaintiffs allege that Tyson should pay employees for putting on and taking off these items.  On the other hand, Tyson alleges that it already pays for the time employees spend putting on and taking off the unique items such as mesh-metal aprons and gloves because it was required by this Court in an earlier lawsuit to pay *only* for those items. Tyson contends that it should *not* have to pay to put on, take off the other items, which include sanitary garments such a butcher's smock or hairnet, as well as standard safety equipment worn in many industries, such as earplugs and hard hats.

In this case, you will be asked to decide whether Tyson has appropriately compensated employees for the putting on, taking off, washing of certain items and walking to their

3

workstations and back.  There is no issue in this case about whether the employees were paid for their time on the production line or processing meat.

It will be your duty to decide from the evidence whether Plaintiffs are entitled to a verdict against Defendants.

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence.

From time to time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  You should not be unfair or partial against a lawyer or the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.


Authority

O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* §§ 101.01, 101.03 (5th ed. 2001).

PRELIMINARY INSTRUCTION NO. 2

Evidence / Limitations

You should consider and weigh everything admitted into evidence.  This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits.  You must disregard any testimony or exhibit which I did not admit into evidence.

At times during the trial the Court passes upon objections to the admission of certain things into evidence.  Questions relating to the admissibility of evidence are solely questions of law for the Court and you must not concern yourselves with the reason for its ruling.  In your consideration of the case you must draw no inferences from these rulings and you must consider only the evidence which is admitted by the Court.

Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence.  If any statements are made that are not supported by evidence, they should be disregarded.

Whenever any evidence has been admitted to for one purpose, you should not consider it for any other purpose.

Authority

Pattern Instructions Kansas (4th) 102.02; Pattern Instructions Kansas (4th) 102.03; Pattern Instructions Kansas (4th) 102.04; Pattern Instructions Kansas (4th) 102.40.

PRELIMINARY INSTRUCTION NO. 3

Bench Conferences and Recesses


From time to time it may be necessary for me to talk to the lawyers out of your hearing. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and avoid confusion and error. Do not consider my granting or denying a request for a conference as an indication of my opinion of the case or of what your verdict should be.

I do not wish to cause you any delay, but these conferences are necessary. I apologize for any inconvenience and I will do what I can to limit the number and length of these conferences.

During recess you will please not confer about this case with any other person nor allow any other person to discuss the case with you. You will please not express any opinion about the case or form any fixed opinion until the case is finally submitted to you.


Authority

O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 102.02 (5th ed. 2001); Pattern Instructions Kansas (4th) 101.30.

PRELIMINARY INSTRUCTION NO. 4

Note Taking

Members of the jury, you will be permitted to take notes during the trial.  Whether you do so is entirely up to you.  However, do not allow the taking of notes to distract you from listening attentively to the testimony of witnesses.

You may use your notes to refresh your memory as you deliberate.  However, your deliberations must be based upon the collective memory and recollection of the entire jury as to the evidence admitted.  Notes should be used only as an aid to this function and not as a substitute.

You must not remove any of your notes from the courthouse.  At the beginning of a recess give your packet of notes to the bailiff.  Your notes will be returned to you when court reconvenes.

At the conclusion of trial, all notes must be given to the bailiff for immediate destruction.

Authority

Pattern Instructions Kansas (4th) 101.11.

PRELIMINARY INSTRUCTION NO. 5

Conduct of the Jury

There are a few general rules of conduct with which all members of the jury panel should be familiar:

(a)    Keep an open and attentive mind throughout the trial.  Do not make up your mind or attempt to reach a decision until the conclusion of the entire case and its submission to you for deliberation.  Before that time do not discuss the case among yourselves.  At no time discuss the case with anyone else or permit others to discuss it in your presence.  As an additional precaution, do not converse with the attorneys, parties, or witnesses during the trial.  Should anyone attempt to discuss the case with you, report the incident to the bailiff.

(b)    To keep an open mind, do not listen to or read news accounts of the trial proceedings.  Often such accounts are based on incomplete information and give a distorted view of the case.

(c)    If you experience a personal problem, or are in doubt about your rights or duties, inform the bailiff.


Authority

Pattern Instructions Kansas (4th) 101.10.

PRELIMINARY INSTRUCTION NO. 6

Outline of the Trial

The case will proceed as follows:

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, Plaintiffs will present evidence in support of Plaintiffs' claims and Defendants' lawyers may cross-examine the witnesses.  At the conclusion of the Plaintiffs' case, the Defendants' may introduce evidence and the Plaintiffs' lawyer may cross-examine the witnesses.  The Defendants are not required to introduce any evidence or to call any witnesses.  If the Defendants introduce evidence, the Plaintiffs may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

Authority

O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 101.02 (5th ed. 2001).

FINAL INSTRUCTION NO. 1

Consideration and Application of Instructions


Members of the Jury:  It is your duty as jurors to follow the law as I shall state it to you. You should construe each instruction in light of an in harmony with the other instructions, and you should apply the instructions as a whole to the evidence.


<u>Authority</u>

Pattern Instructions Kansas (4th) 102.01.

FINAL INSTRUCTION NO. 2

Judge's Opinion

Neither in these instructions nor in any ruling, action, or remark that I have made during the course of this trial have I intended to suggest how I would resolve any of the issues of this case.

Authority

Pattern Instructions Kansas (4th) 102.07.

FINAL INSTRUCTION NO. 3

Burden of Proof

Burden of proof means burden of persuasion.  A party who has the burden of proof must persuade you that their claim is more probably true than not true.  In determining whether the party has met their burden you will consider all the evidence, whether produced by the Plaintiffs or Defendants.

Plaintiffs have the burden in a civil action, such as this, to prove every essential element of Plaintiffs' claims by a preponderance of the evidence.  If Plaintiffs should fail to establish any essential element of Plaintiffs' claims by a preponderance of the evidence, you should find for the Defendants as to that claim.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Authority

Pattern Instructions Kansas (4th) 102.10; O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 104.01 (5th ed. 2001).

12

FINAL INSTRUCTION NO. 4

Credibility of Witnesses


It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified.

If you find that any witness has testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters, and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves.   You should not reject any testimony without cause.


Authority

Pattern Instructions Kansas (4th) 102.20; Pattern Instructions Kansas (4th) 102.23.

FINAL INSTRUCTION NO. 5

Impeachment

In deciding the weight and credit to be given to the testimony of a witness, you may consider, in connection with all the other evidence, all evidence that affects the credibility of the witness, including:

- Evidence of prior conduct of the witness;
- Evidence that on some former occasion the witness either made a statement, acted in a manner or testified inconsistent with testimony of the witness in this case; or
- Evidence that the reputation of the witness for honesty and/or veracity is bad.

You may consider this evidence only as it affects the credibility of the witness and may not consider it for other purposes.

Authority

Pattern Instructions Kansas (4th) 102.30.

FINAL INSTRUCTION NO. 6

Stipulated Facts


The parties have agreed to certain facts that have been stated to you. You should, therefore, treat those facts as having been proved.


<u>Authority</u>

Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 2.03 (1999); Manual of Model Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 2.4 (1997); O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 101.48 (5th ed. 2001).

FINAL INSTRUCTION NO. 7

Evaluation of Deposition Evidence


During this trial, evidence was presented to you by the reading of a deposition.  This was the testimony of an absent witnesses taken under oath.

This testimony is to be weighted by the same standards as other testimony.


Authority

Pattern Instructions Kansas (4th) 102.21.

FINAL INSTRUCTION NO. 8

Use of Interrogatories


Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side.   These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.


<u>Authority</u>

O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 102.24 (5th ed. 2001).

FINAL INSTRUCTION NO. 9

Expert Witness

Certain testimony has been given in this case by experts; that is, by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general.  The law permits such persons to give their opinions regarding such matters. The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances, and its weight and value are questions for you.

Authority

Pattern Instructions Kansas (4th) 102.50.

FINAL INSTRUCTION NO. 10

Consideration of Corporate Parties


In this case, Plaintiffs are individuals and Defendants, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. are corporations.  The corporate defendants in this case are entitled to the same fair and unprejudiced treatment as an individual under like circumstances.

You must weigh and consider this case without favoritism for or prejudice against any party.  Sympathy should not enter into your deliberations.


Authority

Pattern Instructions Kansas (4th) 102.06; Pattern Instructions Kansas (4th) 102.05.

FINAL INSTRUCTION NO. 11

Burden for FLSA Collective Action; Representative Evidence (Defendant)


Some of the Plaintiffs have asserted a claim under the federal overtime law known as the Fair Labor Standards Act.  This Court has allowed them to pursue that claim  collectively rather than individually.   That means that the Court has allowed other employees at Tyson's beef-processing plant in Finney County, Kansas to file a form with the Court stating their desire to pursue their federal claim along with the three named Plaintiffs.   These other employees are entitled to prevail on their Fair Labor Standards Act claim only if they establish that they are all similarly situated to the named Plaintiffs and each other.

To show that all of the employees that the named Plaintiffs seek to represent in this lawsuit are similarly situated, Plaintiffs have the burden to establish by a preponderance of the evidence, that *all* of the employees asserting federal claims in this lawsuit were affected by a common  decision, policy, or plan that was unlawful under the Fair Labor Standards Act.  It is not enough that only some of the employees joined in this suit were affected by the decision, policy, or plan.

Both parties have presented various types of evidence:  live or deposition testimony of hourly employees, supervisors, expert witnesses, and others; video clips; and documents.  Not all affected employees need testify for Plaintiffs to prove that they were similarly affected by a common decision, policy, or plan that violated the Fair Labor Standards Act.  Rather, if some employees testify about the activities they allegedly performed or the amount of unpaid overtime they allegedly worked, other non-testifying employees who performed substantially similar activities are deemed to have shown the same thing by inference.  This is called "representative testimony."

There is no bright-line as to the percentage of employees that must testify for their testimony to be representative.  Rather, the weight to be accorded the evidence is a function not of its quantity, but of its quality.  In evaluating the testimony, you may consider whether the witnesses who testified worked in similar positions and similar departments as the non-testifying employees; whether they wore similar sanitary and protective items; whether the testifying employees performed donning and doffing activities similarly to non-testifying employees;

20

whether the witnesses who testified had the opportunity or ability to observe non-testifying employees; and whether there was evidence presented that either was consistent with or was inconsistent with the testimony of the testifying witnesses.

Although the claims can be proven with "representative testimony," this does not lessen the Plaintiffs' burden of proof.  Each and every Plaintiff in an FLSA collective action bears the burden of proving, by a preponderance of the evidence, that he or she performed overtime work for which he or she was not properly compensated, whether it is accomplished through representative testimony or personal testimony.  That is, the Plaintiffs must present common evidence that supports class-wide liability and does not vary from individual to individual.  If you find that proof of Plaintiffs' claims against Tyson does not necessarily prove the claims of all the other hourly employees, then Plaintiffs have not met their burden for those employees.

Authority

29 U.S.C. § 216(b) (FLSA collective action may be maintained by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated"); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983) (plaintiffs' evidence was sufficient since at least one employee from each category testified or was deposed); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996) (finding plaintiffs could not proceed as a class where they failed to identify an unlawful company-wide practice or policy)*; O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 603 (6th Cir. 2009) ("FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he or she was not properly compensated"); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 621 (8th Cir. 1991) (in actions where the evidence demonstrates that employees are subject to differing work situations that make pattern evidence unpersuasive, each plaintiff must meet his burden individually); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (to maintain a collective action under the FLSA "plaintiffs must demonstrate that the are 'similarly situated'"); *Grochowski v. Phoenix Construction,* 318 F.3d 80 (2d Cir. 2003) (affirming judgment as a matter of law dismissing the claims of five non-testifying plaintiffs for whom the testifying plaintiff provided no reliable evidence; noting that speculation of testifying plaintiffs is not a proper basis for finding hours worked by non-testifying employees); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001);

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471-73 (11th Cir. 1982); *In re Food Lion*, 861 F. Supp. 1263, 1272-74 (E.D.N.C. 1994); *Reich v. Southern Md. Hosp., Inc.*, 43 F.3d 949, 951-52 (4th Cir. 1995); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116, (4th Cir. 1985) (plaintiffs can present representative evidence to support an award of back pay to non-testifying employees); *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988) (same); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793-94 (1st Cir. 1991); *Beliz v. W. H. McLeod & Sons Packing Co.*, 765 F. 2d 1317, 1331 (5th Cir. 1985) ("Testimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not."); *Takacs v. Hahn Auto. Corp.,* 1999 U.S. Dist. LEXIS 22146 (S.D. Ohio Jan. 25, 1999) (permitting plaintiffs to attempt to rely upon representative testimony, but emphasizing that it is their gamble); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 570-88 (E.D. La. 2008) (decertifying FLSA collective action after trial because evidence showed that employees were not similarly situated); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W. D. Ark. 2007) (certification under the FLSA "typically requires a showing that the plaintiffs and potential class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion."); *Chao v. Pac. Stucco, Inc.*, 2006 WL 2432862, at *3 (D. Nev. Aug. 21, 2006) ("A determination of whether the representative testimony adequately represents the class depends on the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony."); *Chao v. Westside Drywall, Inc.,* 2010 U.S. Dist. LEXIS 48093, at * 68 (D. Ore. May 13, 2010) ("Damage awards for unidentified employees are within the scope of the FLSA, so long a preponderance of the evidence established the existence, work done, and wages of these employees.").

FINAL INSTRUCTION NO. 12

Burden for Kansas-Law Rule 23 Class Action (Defendant)

In addition to the claims by some employees under the federal overtime law, *all* employees who worked in hourly production jobs from May 15, 2003 through February 12, 2009, are pursuing a claim under a state law known as the Kansas Wage Payment Act. This Court has conditionally ordered all such employees to be part of a class action unless they filed a notice with the Court to exclude themselves from the class. In other words, everyone in this lawsuit is being allowed to assert a claim under Kansas state law, whereas only *some* of the employees in this lawsuit have an additional claim under the federal Fair Labor Standards Act.

Although the elements of the Plaintiffs' Kansas claim are the same as those under the federal law,[*] the standard that the three named Plaintiffs must meet to bring their Kansas claim as a class action on behalf of all other current and former hourly employees at the Finney County plant is higher. To prove their Kansas claim, the three named plaintiffs must demonstrate the elements of their claims for each member of the class. That is, the Plaintiffs must present common evidence that supports class-wide liability and does not vary from individual to individual. If you find that proof of the three named Plaintiffs' claims against Tyson does not necessarily prove the claims of all the other current and former hourly employees in this case, then the named Plaintiffs have not met their burden for those employees.

---

[*] Throughout these instructions, other than in proposed Instruction No. 14A, Defendants propose language equating the KWPA with the FLSA to be consistent with this Court's summary judgment opinion. Defendants preserve their right to argue on appeal that the Court's KWPA analysis is erroneous.

Authority

*Elizabeth M. v. Montenez*, 458 F.3d 779, 786-87 (8th Cir. 2006) (discussing what Rule 23 class representative must eventually prove; "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."); *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."); *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191-93 (11th Cir. 2009) (time records showing gap time between punches and productive work not sufficient to establish common proof in Rule 23 class action where employee testimony varied regarding the non-work-related activities that took place during the gap periods and the various personal reasons that employees came in early and stayed late); *Blyden v. Mancusi*, 186 F.3d 252, 266-67 (2d Cir. 1999) (verdict sheet must require findings sufficient to support class-wide liability); *Cimino v. Raymark Indus.*, 151 F.3d 297, 312 (5th Cir. 1998) (class action device does not "alter the required elements which must be found to impose liability and fix damages (or the burden of proof thereon) or the identity of the substantive law."); *In re Welding Fume Products Liability Litig.*, 245 F.R.D. 279, 311 (N.D. Ohio 2007) (finder of fact must be able to "determine, on a class-wide basis, whether the defendant's conduct" was a violation toward every plaintiff).

     *See generally Vaughan v. Mortgage Source LLC*, No. CV 08-4737, 2010 WL 1528521, at *4 (E.D.N.Y. Apr. 14, 2010) ("Courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is considerably less stringent than the requirements for class certification under Rule 23."); *Wacker v. Personal Touch Home Care, Inc.*, No. 4:08CV93, 2008 WL 4838146, at *2-3 (E.D. Mo. Nov. 6, 2008) (accord); *Flavel v. Svedala Indus., Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) ("similarly situated requirement of Section 216(b) is considerably less stringent than" requirements of Rule 23).

FINAL INSTRUCTION NO. 13

Basic Elements of Fair Labor Standards Act - Overtime (Defendant)


As I mentioned a few moments ago, some of the employees in this lawsuit are asserting a claim under the Fair Labor Standards Act, the federal law that requires the payment of overtime compensation for hours over 40 in any workweek.


Plaintiffs claim that Tyson did not pay hourly production employees at its Finney County beef-processing facility overtime pay as required by law.  In order to prevail on this claim, Plaintiffs must prove each of the following facts by a preponderance of the evidence:

First, that Tyson is an employer subject to the FLSA;

Second, that the hourly employees at the Finney County facility were employed by Tyson during the time period involved;

Third, that the employees worked over 40 hours in a workweek when adding the time already paid to the time spent on the activities that are at issue in this case; and

Fourth, that Tyson failed to pay for compensable activities over 40 hours.


The parties have agreed to the first two facts — that the employees making claims under the FLSA were employed by Tyson during the relevant time period.


Authority

29 U.S.C. § 207.

FINAL INSTRUCTION NO. 14

Basic Elements Of Kansas Wage Payment Act Claim - Non-Overtime (Defendant)


As I mentioned a few moments ago, *all* of the employees in this lawsuit are asserting a claim under the state law known as the Kansas Wage Payment Act.  Plaintiffs claim that Tyson did not pay hourly production employees at its Finney County beef-processing facility for hours *under* 40 hours as required by state law.  In order to prevail on this claim, Plaintiffs must prove each of the following facts by a preponderance of the evidence:

First, that Tyson is an employer;

Second, that the hourly employees at the Finney County facility were employed by Tyson during the time period involved;

Third, that the employees worked less than 40 hours in a workweek when adding the time already paid to the time spent on the activities that are at issue in this case; and

Fourth, that Tyson failed to pay for compensable activities under 40 hours.


The parties have agreed to the first two facts — that the employees were employed by Tyson during the relevant time period.  In other words, the only difference between the federal claim and the state-law claim is that the federal claim applies to weeks in which employees worked *more* than 40 hours, and the Kansas claim applies to weeks in which employees worked *less* than 40 hours.  There is no claim for overtime under the Kansas law.


Authority

Court's January 31, 2011 Order on Cross-Motions For Summary Judgment.

26

FINAL INSTRUCTION NO. 14A

Basic Elements of the Kansas Wage Payment Act Claim - Non-Overtime

(Preferred Alternative) (Defendant)[†]

To recover on their claim under the Kansas Wage Payment Act, Plaintiffs must prove each of the following propositions by a preponderance of the evidence:

First, that the Plaintiffs performed labor or services allowed or permitted by Defendants;

Second, that compensation for that labor or services was due under the agreement or contract between the employer and employees;

Third, that Defendants failed to pay all compensation that was due under the agreement or contract, for the labor or services rendered.

Authority:

K.S.A. 44-314(a); K.A.R. 49-21-2(b)(6)("Determination of an alleged violation shall be based upon: (A) The lawful provisions of the employment agreement or contract between the employer and employee; (B) evidence of work performed; and (C) proof of payment for work performed under the agreement or contract.").

---

[†] Defendants propose this instruction in the alternative to Final Instruction No. 14, in order to preserve their right to argue on appeal that the Court's KWPA analysis is erroneous.

27

FINAL INSTRUCTION NO. 15

Definition of Work (Defendant)[‡]

Both federal law and state aw require Tyson to pay employees for all hours worked.  The first issue you will have to decide is whether Plaintiffs have proved that the putting on, taking off, and rinsing items is "work."   "Work" is any (1) physical or mental exertion, whether burdensome or not; (2) controlled or required by Tyson; and (3) pursued necessarily and primarily for the benefit of Tyson and its business.  Exertion is not required in circumstances where the employer requires the employee to report to the workplace at a certain time when the employees waits to be engaged.

Authority

*IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005); *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Smith v. Aztec Well Servicing Co.,* 462 F.3d 2174, 1290 (10th Cir. 2006); *Reich v. IBP, Inc.,* 38 F.3d 1123, 1126 (10th Cir. 1994).

---

[‡] Defendants acknowledge that this Court has rejected their argument regarding the threshold requirement that the activities in question must constitute "work."  (Memorandum Opinion and Order dated January 31, 2011 (Docket No. 952), at p. 10, n.5 (Lungstrum, J.).  Defendants, however, submit this proposed instruction in order to preserve this issue on appeal.

FINAL INSTRUCTION NO. 16

Preliminary vs. Principal Activity (Defendant)

There is an exception to the general rule that employers must pay for all work. Employers do not have to pay an employee for activities that are preliminary — that is, that occur before the employee performs his or her first principal activity of the day, or for activities that are postliminary — that is, that occur after the employee performs his or her last principal activity of the day.

Under normal circumstances, changing clothes and washing up are not compensable. In certain circumstances, however, activities that occur before or after a scheduled shift may be compensable provided they are both integral *and* indispensable to the production work for which the employee is employed to perform.

Thus, in order to be entitled to payment for activities before shift or after shift, the Plaintiffs must prove by a preponderance of the evidence that any activity that they claim is the first or last principal activity is integral and indispensable to the production work for which the employee is employed. Whether an activity is integral and indispensable depends on the existence of three factors: (1) whether the activity is required by Tyson, (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits Tyson. Plaintiffs must prove the existence of all three factors by a preponderance of the evidence.

To decide whether Tyson primarily benefits from an activity, it is not enough for Tyson to have received some benefit from the activity or that Tyson and the employee equally benefit. Rather, Tyson must receive the primary benefit of an employee's donning, doffing, and washing.

Authority

Memorandum Opinion and Order dated January 31, 2011 (Docket No. 952), at p. 14 (Lungstrum, J.); 29 U.S.C. § 254(a); 29 C.F.R. § 790.7; *IBP, Inc. v. Alvarez*, 546 U.S. 21, 23, 39 (2005) ("the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are integral and indispensable …."); *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286-

29

1287 (10th Cir. 2006); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994); *Franklin v. Kellogg Co.,* 619 F.3d 604 (6th Cir. 2010); *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1342-45 (11th Cir. 2007); *Barrentine v. Arkansas-Best Freight Sys., Inc*., 750 F.2d 47, 50-51 (8th Cir. 1984) (examples of noncompensable activities specifically enumerated in the Senate report on the Portal Act as being outside the workday include changing clothes, washing up and showering) (citing *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398 (5th Cir. 1976)); *Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901 (9th Cir. 2004); *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1363-66 (M.D. Ga. 2010); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1311-15 (N.D. Ala. 2008); *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 592-94 (2d Cir. 2007); *Pirant v. United States Postal Serv.*, 542 F.3d 202, 208-209 (7th Cir. 2008); *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 399-400 (5th Cir. 1976); *Musticchi v. City of Little Rock, Arkansas*, 734 F. Supp. 2d 621, 2010 WL 3327998 at **7-8 (W.D. Ark. Aug. 24, 2010) (following *Gorman*) (while cleaning equipment may be necessary or indispensable to the job, employees could successfully do their jobs without cleaning, and thus these activities were not integral); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562-63 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir. 2002); *Pressley v. Sanderson Farms*, No. Civ. A H-00-420, 2001 WL 850017, at *2-3 (S.D. Tex. Apr. 23, 2001), *aff'd*, 33 Fed. Appx. 705 (5th Cir. 2002); *Reich v. Oscar Mayer Foods Corp.*, No. 4:93cv204, 1995 WL 1765643, at *2 (E.D. Tex. Mar. 2, 1995); *McComb v. C.A. Swanson & Sons*, 77 F. Supp. 716, 731-32 (D. Neb. 1948).

FINAL INSTRUCTION NO. 17

Items That Can Be Worn To/From Home (Defendant)


If you find that employees were given the option as a practical matter to change into or wash any required items at home, such changing or washing is not considered a principal activity, even if employees elected to change or wash at the plant.  Similarly, at the end of the shift, any changing or washing that could have taken place at home as a practical matter, even if employees elected not to do so, does not constitute a principal activity.

Authority

*See Reich v. IBP, inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994) (donning safety glasses, hard hat, and safety shoes not compensable work where, *inter alia*, such items can be worn from home); *Bamonte v. City of Mesa*, 598 F.3d 1217, 1227-29 (9th Cir. 2010) (donning and doffing protective items or uniforms at home renders the activity non-compensable); *Musticchi v. City of Little Rock, Arkansas*, 734 F. Supp. 2d 621, 2010 WL 3327998 at **3-5 (W.D. Ark. Aug. 24, 2010) (citing *Bamonte*); *Reed v. County of Orange*, No. SACV 05-01103-CJC(ANx), 716 F. Supp. 2d 876, 2010 WL 2342394, at *7 (C.D. Cal. June 10, 2010) (donning and doffing that can be done at home not integral and indispensable); *Constant v. Webre*, No. 07-3042, 2010 WL 2243641, at *3 (E.D. La. June 1, 2010) (same); *Albrecht v. Wackenhut Corp.*, No. 07-CV-6162, 2009 WL 3078880, at *8(W.D.N.Y. Sept. 24, 2009)("[A] rule which categorically defines donning and doffing time as noncompensable when an employee has an opportunity to change at home is consistent with the Department of Labor's 'longstanding' interpretation of the FLSA.") (citation omitted); *Abbe v. City of San Diego*, No. 05cv1629 DMS (JMA), 2007 WL 4146696, at *5 (S.D. Cal. Nov. 9, 2007) (citing U.S. Department of Labor's Wage Hour Advisory Mem. 2006-2 as the consistent position of DOL on this issue).

31

FINAL INSTRUCTION NO. 18

Continuous Workday (Defendant)

The continuous workday is the period between the commencement and the completion on the same workday of an employee's principal activity or activities.  Time spent by employees during bona fide meal periods is not part of the workday and is subject to a different test to determine whether this time must be paid, as I will explain to you later.

In general, an employer is required to compensate its employees for their time, beginning when the employee performs the first principal activity of the workday.  Pre- and post-shift activities that are integral and indispensable to the production work performed by employees are considered principal activities.  Time spent after the employee engages in the first principal activity and before the employee finishes his or her last principal activity is part of the continuous workday and is compensable under the federal Fair Labor Standards Act and under Kansas law, unless it is otherwise excluded from compensation, as I will explain to you later.

That being said, a *de minimis* activity, which I will explain to you in a moment, cannot start the continuous workday.  Thus, if you find that the donning, doffing, and washing activities at issue are *de minimis*, those activities cannot start or stop the continuous workday.

Moreover, while the law generally requires an employer to pay its employees for all activities that occur during the continuous work day, when the activities occur before or after their scheduled shift, only the time necessarily spent on such pre- and post-shift activities is compensable.  For example, time spent donning and doffing items that are optional or primarily benefit the employee, or socializing, should be excluded.

Authority

29 C.F.R. § 790.6(b) ("'Workday' as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities"); 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime."); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28, 37 (2005) (any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity;" an employer must generally compensate employees for the time between their first and last principal activity); *Anderson v. Mt. Clemens*

*Pottery*, 328 U.S. 680, 692 (1946) ("compensable working time [is] limited to the minimum time necessarily spent in walking at an ordinary rate along the most direct route ...."); *Reich v. IBP, Inc.*, 820 F. Supp. 1315, 1324 (D. Kan. 1993) (employees entitled to compensation for "reasonable time (rather than actual time) required"), *aff'd and remanded*, 38 F.3d 1123, 1127 (10th Cir. 1994) ("We believe reasonable time is an appropriate measure in this case"); *Alvarez v. IBP, Inc.*, No. CT-98-5005-RHW, 2001 WL 34897841, at *11 (E.D. Wash. Sept. 14, 2001) ("compensable time for each activity is on the basis of reasonable time, rather than the actual time required for each activity"), *aff'd*, 39 F.3d 894, 907, 914 (9th Cir. 2003) (same); *Amos v. United States*, 13 Cl. Ct. 442, 443, 448-50 (Cl. Ct. 1987) (compensable time at the start and end of the workday was limited to the amount of time reasonably required); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-28 (2005) (acknowledging that *Anderson* held that time necessarily spent walking is to be treated as part of the "workweek;" that the subsequent enactment of the Portal Act *narrowed* the coverage of the FLSA; and that except for the express exceptions for travel and preliminary and postliminary activities, the Portal Act does not purport to change the Court's previous description of the term "workweek"); 29 C.F.R. § 790.6 (except for the express exceptions for travel and preliminary and postliminary activities, the Portal Act did not change the existing computation of time within the workday); *Anderson v. Wackenhut Corp.*, No. 507 CV 137 DCBJMR, 2008 WL 4999160, at *6 (S.D. Miss. Nov. 18, 2008) (rejecting claim that Supreme Court's decision in *IBP, Inc. v. Alvarez* held that all time occurring after the first principal activity is compensable; *Bull v. United States*, 68 Fed. Cl. 212, 227 (Fed. Cl. 2005) (quoting *Amos* with approval); *Albanese v. Bergen County*, 991 F. Supp. 410, 423-24 (D.N.J. 1997) (citing *Amos*, 13 Cl. Ct. at 44) ("employees must show that the overtime hours they worked must be reasonable in order for those hours to be compensable"); *Hellmers v. Town of Vesta*l, 969 F. Supp. 837, 844 (N.D.N.Y. 1997) ("...the amount of overtime an employee claims to have spent must be reasonable ..."); *Singh v. City of New York*, 524 F.3d 361, 372 n.8 (2d Cir. 2008) ("a *de minimis* principal activity does not trigger the continuous workday rule"); *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 652-53 (2d Cir. 1995) (entire commute not compensable where interrupted by occasional *de minimis* work activities); DOL Wage & Hour Op. Ltr. dated Jan. 29, 1999 (travel time not made compensable where employee performed small amounts of work at home); *Musticchi v. City of Little Rock, Arkansas*, 734 F. Supp. 2d 621, 2010 WL

3327998 at **9, 11 (W.D. Ark. Aug. 24, 2010) ("when deciding whether an activity should be considered de minimis the court must look at the minimum time it takes to complete the task.) (quoting *Anderson v. Mt. Clemens Pottery* to analyze maintaining and assembling/disassembling safety and other gear); *Solis v. Tyson Foods, Inc.*, 02-CV-1174-VEH, Dkt. No. 510, p. 7, No. 9 (N.D. Ala. Oct. 14, 2010) (Final Jury Instructions).

FINAL INSTRUCTION NO. 19

Touching Items Cannot Start or End Workday (Defendant)


In addition, the continuous workday does not start when an employee first touches a compensable clothing item.  Rather, if you determine that a particular item of clothing is compensable, then you must measure the continuous workday from the point at which the employee actually begins to put that item on.  Similarly, the continuous workday does not end when the employee last touches a compensable clothing item, but rather if you determine that a particular item of clothing is compensable, then the workday ends when the employee has finished removing or releasing the item from the employee's body.

 Authority

29 C.F.R. § 790.6 ("continuous workday" regulation does not suggest that workday commences upon first touch of compensable gear or ends at last touch); *Helmert v. Butterball*, LLC, No. 4:08CV00342 JLH, 2010 WL 3397373, at * 5-6 (E.D. Ark. Aug. 25, 2010) (refusing to adopt "first touch/last touch" rule).

FINAL INSTRUCTION NO. 20

Walking Time (Defendant)

I also instruct you that an employee's walking to his or her department at the start of a shift, or return walking away from the department at the end of a shift, is never compensable by itself.  Such walking time at the beginning of the shift is compensable only if it is preceded by a principal activity or an activity that is integral and indispensable to a principal activity.  Similarly, walking time at the end of the shift is compensable only if it takes place before the last principal activity or an activity that is integral and indispensable to a principal activity.  I further note that the compensability of such walking time, under the circumstances I just described to you, was announced by the United States Supreme Court in a decision on November 8, 2005.

Authority

*IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).

FINAL INSTRUCTION NO. 21

*De Minimis* Defense (Defendant)

Tyson is required to pay for all compensable work unless it proves by a preponderance of the evidence that the amount of such work was what is referred to as "*de minimis*." This is a legal term meaning "minimal" or "trivial."

First, you must determine the amount of uncompensated daily time spent on additional work. In other words, you must determine the amount of time spent on compensable activities other than production work, and then subtract the portion of those activities that Tyson already has paid for.

Then, you must decide whether this remaining amount of time is "*de minimis.*"

To do so, you should consider the following factors:

1.      The practical administrative difficulty of recording the additional time;

2.      The size of the claim in the aggregate; and

3.      Whether the Plaintiffs performed the work on a regular basis.

This defense applies only where there are uncertain and indefinite periods of time involved that are of short duration and where the failure to count such time is due to considerations justified by industrial realities. There is no precise amount of time that may be denied compensation as *de minimis*. No rigid rule can be applied with mathematical certainty. Rather, common sense must be applied to the facts of this case.

In applying the factors I described, you may wish to consider the following questions:

1.      What is the reasonable, not the actual, amount of daily time spent by an employee on the activities?

2.      How much of that reasonable time was not already compensated by Tyson?

3.      Was it administratively feasible to precisely record that time for payroll purposes?

Not all of the factors need to be proven for you to find that the activities were *de minimis*. Rather, if considering all of the factors on balance results in a finding that the time spent on donning, doffing, and washing activities is *de minimis*, employees will not be compensated for these activities beyond what you find they may already have been paid. In considering whether the total amount of time for which compensation is sought is *de minimis*, you should consider

37

only the uncompensated time.

Authority

Memorandum Opinion and Order dated January 31, 2011 (Docket No. 952), at pp. 18 (Lungstrum, J.) ("in evaluating a de minimis defense, the first step is to determine 'the amount of daily time spent on the additional work;'" and "at least one court has …emphasized that the factors are considered together in assessing the de minimis standard 'as a whole.'"); 29 C.F.R. §785.47; 29 C.F.R. §785.48(a) ("Minor differences between the clock records and actual hours worked cannot ordinarily be avoided …."); *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 692 (1946) ("compensable working time was limited to the minimum time necessarily spent …."); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994); *Reich v. Monfort, Inc.,* 144 F.3d 1329, 1333-34 (10th Cir. 1998); *Sepulveda v. Allen Family foods, Inc.*, 591 F.3d 209 (4th Cir. 2009) (citing *Anderson,* 328 U.S. at 692) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded"); *Alvarez v. IBP, inc.,* 339 F.3d 894, 903-904 (9th Cir. 2003) (donning and doffing of all "non-unique protective gear" *de minimis*); *Lindow v. United States*, 738 F.2d 1057, 1062-64 (9th Cir. 1984); *Singh v. City of New York*, 524 F.3d 361, 370-72 (2d Cir. 2008); *Pressley v. Sanderson Farms*, No. Civ. A H-00-420, 2001 WL 850017, at *3 (S.D. Tex. Apr. 23, 2001), *aff'd*, 33 Fed. Appx. 705 (5th Cir. 2002); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 563-64 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir. 2002); *Musticchi v. City of Little Rock, Arkansas*, 734 F. Supp. 2d 621, 2010 WL 3327998 at **9-11 (W.D. Ark. Aug. 24, 2010) (*de minimis* defense considers "the minimum time it takes to complete the task") (quoting *Anderson v. Mt. Clemens Pottery*); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1317-21 (N.D. Ala. 2008); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1067 n.1 (D. Minn. 2007); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-904 (9th Cir. 2003), *aff'd on other grounds*, 126 S. Ct. 514, 525 (2005); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 518-20 (E.D. Tex. 2005); *McComb v. C.A. Swanson & Sons*, 77 F. Supp. 716, 724, 736 (D. Neb. 1948) (applying *de minimis* doctrine based on the "time reasonably" required for the pre- and post-shift clothes changing activities); *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (in determining application of the *de minimis* doctrine, the court considered the reasonable amount

38

of time spent by the plaintiffs in performing the activities in question); *Saunders v. John Morrell & Co.*, 1991 WL 529542, at *5 ("These factors are not mechanical or rigid, but are flexible …."); *Amos v. United States*, 28 Wage & Hour Cas. (BNA) 569, 575 (Ct. Cl. 1987) (plaintiffs entitled to payment only for the "amount of time reasonably required" to perform the activities in question); *McIntyre v. Joseph E. Seagram & Sons*, 72 F. Supp. 366, 372 (W.D. Ky. 1947) ("The evidence in this case conclusively shows that complainant, acting with reasonable dispatch, could, after punching in at the time clock, go to his locker, exchange a soiled for a clean uniform, change his clothing and report to his foreman ready for productive work in from 10 to 20 minutes.  Such time is within the *de minimis* rule.").

See generally *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, 1220 (10th Cir. 1998) ("The employee bears the burden of proving he performed work for which he was *not properly compensated*.") (citing *Anderson v. Mt. Clemens Pottery*, 328 U.S. at 687)); *Scott v. City of New York*, 592 F. Supp. 2d 386, 410 (S.D.N.Y. 2008) (in analyzing *de minimis* defense, parties must submit evidence of "the aggregate of time actually worked and *uncompensated*."); *Chao v. Tyson Foods*, 568 F. Supp. 2d at 1320 (denying summary judgment on *de minimis* defense because "it is possible that Defendant may demonstrate, at trial, that the amount of *uncompensated* time, per day, is *de minimis* under the industrial realities of this case."); *Bartholomew v. City of Burlington*, 5 F. Supp. 2d 1161, 1170 (D. Kan. 1998) (dismissing plaintiffs' pre-shift claims, in part, because "plaintiffs' *uncompensated* time spent preparing for work was de minimis") (emphasis added); *Reich v. IBP*, Civ A. No. 88-2171, 1996 WL 137817, at *6 (D. Kan. Mar. 21, 1996) (focusing on the "*uncompensated* work performed by IBP employees" in analyzing the *de minimis* doctrine. (All emphases added.)   Plaintiffs have  previously conceded that only the "unpaid time claimed in the case" should be considered.   *See* Pltfs' Mem. in Support of Summary Judgment dated Oct. 28, 2010 (Dkt. 880) at p. 15.

FINAL INSTRUCTION NO. 22

Compensability of Meal Break (Defendant)


Plaintiffs are suing for the portion of their meal period during which they take off and put back on certain of their clothing items, and walk to and from where they put their clothing items during the meal period.  Plaintiffs have the burden of proving, by a preponderance of evidence, that this time is compensable.

As I mentioned previously, bona fide meal periods are not part of the continuous workday.  The entire meal period may be noncompensable even when an employee is required to do some amount of work during that meal period  Thus, there is a special test to determine whether Tyson must pay for time spent during the meal period.  In considering this claim, you must ask yourself whether the time at the meal period, when considered as a whole, is predominantly spent for the benefit of Tyson or predominantly spent for the benefit of the employees.  If the time is predominantly for the benefit of Tyson, the employees are entitled to be paid for that time.  On the other hand, if during the meal period, an employee's time and attention are primarily occupied by a private pursuit, and they can comfortably and adequately pass the meal period then the employee is not entitled to compensation.

40

Authority

Memorandum Opinion and Order dated January 31, 2011 (Docket No. 952), at p. 23 (Lungstrum, J.) ("the court rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be compensated even though the remainder of the meal period is unpaid.  … Thus, if plaintiffs' donning and doffing activities do not prevent plaintiffs from 'comfortably and adequately' passing the meal period, then the entirety of the meal period is properly noncompensable."); 29 C.F.R. § 785.19(a) ("[b]ona fide meal periods are not worktime."); *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1157 (10th Cir. 1992) (rejecting the "misapprehension" that "the performance of *any* official duty, no matter how insignificant, during meal periods rendered the time compensable."); *Beasley v. Hillcrest Medical Center,* 78 Fed. Appx. 67 (10th Cir. 2003); *Pabst v. Oklahoma Gas & Elec. Co.,* 228 F.3d 1128, 1132 (10th Cir. 2000).

FINAL INSTRUCTION NO. 23

Compensability of Rest Break (Defendant)

This lawsuit also contains a claim about the unpaid portion of the employee's rest break starting on April 28, 2010.  Keep in mind that the law does not require employers to provide rest breaks, except to use the toilet when needed.

The Plaintiffs have the burden of proving by a preponderance of the evidence that the entire 25-minute break is compensable.

There is no bright-line test for how long a rest break must last to be compensable. Factors to consider in determining whether plaintiffs have proved that the break is compensable include:

1.  Whether the idle time during the break is spent predominantly for Tyson's benefit or predominantly for the employees' own benefit; and

2.  Whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time.

Authority

Memorandum Opinion and Order dated January 31, 2011 (Docket No. 952), at p. 26 (Lungstrum, J.) ("the regulation does not state that 20-minute rest breaks are necessarily compensable") (citing *Mitchell v. Greinetz,* 235 F.2d 621 (10th Cir. 1956); 29 C.F.R. § 785.18 (rest breaks of up to "about" 20 minutes are compensable); 29 C.F.R. 785.16(a); DOL Opinion Letter dated Dec. 3, 1996 (paying employees for part of a meal period does not have the effect of converting remaining 15 minutes into compensable break pursuant to DOL regulations interpreting FLSA); *see also* DOL Opinion Letter, dated Nov. 22, 2004 (finding 20-minute meal period non-compensable); *Blain v. Gen. Elec. Co.,* 371 F. Supp. 857, 860 (W.D. Kan. 1971) (citing "completely relieved" language of 29 C.F.R. § 785.16 and finding 18 minutes during a break that employees re relieved from duty non-compensable); *Myracle v. Gen. Electric Co.,* No. 92-6716, 1994 U.S. App. LEXIS 23307, at *26 (6th Cir. Aug. 23, 1994) (20-minute meal period is non-

compensable); *Marti v. Grey Eagle Distributors,* 937 F.Supp. 845, 852 (E.D. Mo. 1996) (30-minute breaks satisfied section 785.16 where no restrictions placed on plaintiffs, other than remaining on the premises, prevented them from "indulging in leisure activities" such as reading, watching television, playing cards, or eating); *Rich v. Delta Airlines,* 921 F. Supp. 767, 776 (N.D. Ga. 1996) (time spent on layovers was non-compensable under § 785.16 as a matter of law where, despite some restrictions, flight attendant was free to use the time for her own purposes).

FINAL INSTRUCTION NO. 24

Payment for Production Work and Use of Gang Time Not at Issue (Defendant)

The Plaintiffs in this case do not claim that they have not been paid for the time that they performed production work at the Finney County facility.  Rather, this case involves non-production related activities that occur before and after shift and at the meal and break period. During this trial, you have heard about a system of paying employees for production work called "gang time."  Basing hourly pay in whole or in part on gang time is not, by itself, illegal, and the legality of gang time is not at issue in this case.

Authority

*See Blum v. Schuyler Packing Co*., 377 F. Supp. 1026, 1028 (D. Neb. 1974), vacated and remanded on other grounds, 508 F.2d 881 (8th Cir. 1974) (gang time or "line time" method of compensation not illegal per se).

FINAL INSTRUCTION NO. 25

Additional Paid Minutes (Defendant)

Throughout this trial, you have heard testimony about the activities that employees engage in before their shift starts, before and after their breaks and meal periods, and after their shift ends. You have also heard testimony about Tyson paying employees additional minutes beyond gang time that they could use for their donning, doffing, washing, and walking activities. It is now up for you to decide whether these additional minutes sufficiently compensated employees for activities that you find are compensable. Even if you find that some or all of the activities at issue in this case are compensable, Tyson is not liable to any employee who already has been paid additional minutes beyond gang time that are sufficient to cover the amount of time that you determine it reasonably took employees to perform those activities.

Keep in mind that the law does not punish an employer for paying more than the law requires. If you find that Tyson had a custom or practice of paying certain employees additional minutes for donning, doffing, washing and walking activities, you may not use this fact as the basis for finding that Tyson should pay all employees for those activities. In addition, if Tyson has had a custom or practice of paying only a certain number of additional minutes, you may not use this fact as the basis for finding that Tyson should compensate employees for more minutes than that.

Authority

*See* 29 U.S.C. §254(b); 29 C.F.R. § 785.9(a) ("Also, only the amount of time allowed by the contract or under the [employer's] custom or practice [of payment] is required to be counted [as compensable time under the Portal Act]. If, for example, the time allowed is 15 minutes but the activity takes 25 minutes, the time to be added to other working time would be limited to 15 minutes."); 29 C.F.R. § 790.7(a) ("And even where there is a contract, custom, or practice to pay for time spent in such a 'preliminary' or 'postliminary' activity, section 4(d) of the Portal Act does not make such time hours worked under the Fair Labor Standards Act, if it would not be so counted under the latter Act alone.").

45

FINAL INSTRUCTION NO. 26

Changes to the Workday (Defendant)

You have heard testimony regarding changes made by Tyson to the workday at the Finney County facility, as well as testimony about changes to the K code during the period at issue in this lawsuit.  You should not consider the fact that Tyson changed its workday or changed the number of K code minutes paid in determining whether Tyson is liable for the activities at issue in this case.

Authority

*See* FED. R. EVID. 407 (evidence of subsequent remedial measures that, if taken previously, would have made injury or harm less likely not admissible to prove culpable conduct); *see also Taylor v. St. Louis Southwestern Ry. Co.,* 746 F. Supp. 50 (D. Kan. 1990) (evidence of subsequent remedial measures taken by railroad after truck-train collision at railroad crossing was inadmissible to prove negligence or culpable conduct).

FINAL INSTRUCTION NO. 27

Time Clocks Not Required (Defendant)


During this trial, you heard testimony about time clocks located in the Finney County facility and how they are and might be used. The law does not require Tyson to use time clocks at its facilities. Even if an employer chooses to use time clocks, the law does not require the employer to pay employees from punch in until punch out. Employees who voluntarily come in before their regular starting time or remain after their closing time do not have to be paid for such periods so long as they are not engaged in work.


<u>Authority</u>

29 C.F.R. § 785.48(a); *see also Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 690 (1946) ("it is generally recognized that time clocks do not necessarily record the actual time worked by employees. Where the employee is required to be on the premises or on duty at a different time or where the payroll records or other facts indicate that work starts at an earlier or later period the time clock records are not controlling. Only when they accurately reflect the period worked can they be used as an appropriate measurement of the hours worked.").

FINAL INSTRUCTION NO. 28

Damages (Defendant)

If you find that Plaintiffs have proven their claims by a preponderance of the evidence, and that Tyson has failed to prove that the employees' activities were *de minimis*, then you must turn to the question of damages.

Plaintiffs have the burden of proving damages and will have carried their burden only if they prove that the employees have in fact performed work for which they were not paid and produce sufficient evidence to show the amount and extent of such work as a matter of just and reasonable inference.

The burden then shifts to Tyson to come forward with evidence of the precise amount of uncompensated work performed or with evidence to negate the reasonableness of the inference to be drawn from the Plaintiffs' evidence.  If Tyson fails to produce such evidence, you may then award damages to the employees even though those damages will only be approximate.

If you find that the activities in issue are compensable, any employee who already has received full compensation for all those activities is not entitled to recover any damages.  If you find that such compensation was not sufficient to cover *all* of the activities at issue, all uncompensated work should be taken into account in calculating damages.

Under federal law, an employee's "regular rate" during a particular week is the basis for calculating any overtime pay due for that week.  The "regular rate" for a week is determined by dividing the first 40 hours worked into the total wages paid for those 40 hours.  The overtime rate, then, would be one and one-half of that rate and would be owed for each hour in excess of 40 hours worked during the work week.

Under state law, the applicable pay due for hours under 40 would simply be the employee's hourly rate of pay.

Authority

*Anderson v. Mt. Clemens Pottery Co.*, 338 U.S. 680, 687 (1946); 29 U.S.C. §§ 207(a)(1), 207(e), 254(b); 29 C.F.R. §§ 778.110, 790.5(a), 790.7(a); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28, 37 (2005) (an employer must generally compensate employees for the time between their first and

48

last principal activity, but affirming lower courts' awards limiting the damages to the time reasonably spent on the donning and doffing-related activities).

FINAL INSTRUCTION NO. 29

Damages:  FLSA Willfulness (Defendant) [§]

If you award damages, you must decide whether or not Tyson acted "willfully."  If Tyson did not act willfully, the federal Plaintiffs are permitted to recover damages going back two years before they each filed their notices with this Court joining this lawsuit.  If Tyson did act willfully, the federal Plaintiffs are entitled to recover damages going back three years before they each filed their notices with this Court joining this lawsuit.

In order to prove "willfulness," Plaintiffs must establish that Tyson knew of the existence and effect of the FLSA and that Tyson knowingly or recklessly violated or disregarded its requirements.   "Willful" generally means the same thing as "voluntary," "deliberate," or "intentional."  If Tyson did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then its conduct was not willful.  This is true even if Tyson acted negligently.

Some of the factors that you might consider when determining whether Tyson "willfully" violated the FLSA are:

1.   Whether Tyson relied on actions, opinions, and communications from the U.S. Department of Labor;

2.   Whether the compensability of the activities at issue in this case was an unsettled or novel issue of law; and

3.   Whether Tyson took affirmative steps to comply with the law, including consulting with knowledgeable professionals and representatives from the U.S. Department of Labor.

Authority

29 U.S.C. § 255; *McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988) ("the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional'; no willful

---

[§] Defendants offer this instruction provisionally.  If the parties reach a stipulation regarding bifurcation of the willfulness issue, such that the issue will be tried to the bench, Defendants will withdraw this instruction.

violation unless employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA]"); *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000) ("the standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]'") (internal citations omitted); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1283 (10th Cir. 2006) (recognizing that the requirement for willfulness is that the defendant knew or showed reckless disregard for the fact that its conduct was prohibited by the FLSA); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998) (the standard for willful violations is whether the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]") (internal citations omitted); *Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076, 1084 (11th Cir. 1994); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702-03 (3d Cir. 1994); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) (upholding two year statute of limitations where employer had reviewed brochures and pamphlets and discussed FLSA requirements with agency; "even though an employer may act unreasonably,..., its actions do not necessarily constitute a willful violation"); *Cook v. U.S.*, 855 F.2d 848, 850 (Fed. Cir. 1988) (where employer accepted and followed DOL's advice, "any mistake in responding to the demands of the FLSA is not willful"); *Haworth v. Nevada*, Nos. 93-16972, 94-16561, 56 F.3d 71, at *2 (9th Cir. Apr. 6, 1995) (relying on negotiated agreement in upholding two-year statute of limitations); *Saxton v. Young*, 479 F. Supp. 2d 1243, 1254 (N.D. Ala. 2007) (no finding of willfulness where employer took "affirmative steps to comply with the FLSA's overtime requirements); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 370 F. Supp. 2d 386, 390 (E.D.N.C. 2005) (employer's actions not willful where employer had never been cited for FLSA violations based on the actions at issue); *Tum v. Barber Foods, Inc.*, No. 00-371-P-C, 2002 WL 89399, at *6 (D. Me. Jan. 23, 2002) ("Where, as here, 'legitimate disagreement' may exist with respect to application of the FLSA to a specific set of facts, a court should be reluctant to find a knowing violation of the FLSA."), *aff'd on other grounds*, 360 F.3d 274 (1st Cir. 2004), *aff'd*, 546 U.S. 21 (2005); *Garcia v. Allsup's Convenience Stores, Inc.*, 167 F. Supp. 2d 1308, 1316 (D.N.M. 2001) (employer's violation not willful where employer made "a bona fide effort to consult knowledgeable professionals on the application of the Act"); *Baker v. Stone County, MO*, 41 F. Supp. 2d 965, 1001 (W.D. Mo. 1999) (applying two year statute of

limitations where employer conferred with Wage and Hour Division to ensure FLSA compliance); *Berry v. Sonoma County*, 791 F. Supp. 1395, 1418 (N.D. Cal. 1992) (where employer's personnel analysts had attended FLSA seminars, reviewed the FLSA and relevant DOL rulings, and parties had raised and negotiated overtime pay as part of the collective bargaining process, two-year statute of limitations applied), *rev'd on other grounds*, 30 F.3d 1174; O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* §§ 175.35, 175.60, 175.61 (5th ed. 2001).

FINAL INSTRUCTION NO. 30

Willfulness under the KWPA Claim (Defendant)[**]

If you determine that Plaintiffs have satisfied their burden of proving the essential elements of their claim under the Kansas Wage Payment Act by a preponderance of the evidence, then you must also determine whether the Plaintiffs have satisfied their burden of proving that Tyson acted "willfully" in failing to pay all compensation that was due under an agreement or contract for the labor or services rendered.  For purposes of the claim under Kansas state law, "willful" means conduct that indicates a design, purpose, or intent on the part of Tyson to do wrong or to cause an injury to the Plaintiffs.

If Tyson's failure to pay the wages due is the result of an honest dispute over the amount of wages due, the conduct is not "willful."

If you determine that Tyson's conduct was "willful," the Court will decide what effect it has on any damages that you decide are owed.

Authority

K.S.A §44-315(b); *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 582 P.2d 244 (1978) ("Willful conduct" is defined as conduct "indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another."); *Burton v. Kansas Dept. of Labor*, 211 P.2d 188, 2009 WL 2144088 (Kan. App.)(2009); Coma Corp. v. Kansas Dept. of Labor, 154 P. 3d 1080, 283 Kan. 625 (2007)("Where an 'honest dispute' arises over the amount of wages due, a statutory penalty will not be assessed against the employer.") (citations omitted).

---

[**] Defendants offer this instruction provisionally.  If the parties reach a stipulation regarding bifurcation of the willfulness issue, such that the issue will be tried to the bench, Defendants will withdraw this instruction.

FINAL INSTRUCTION NO. 31

Duty to Deliberate


Your deliberations should be conducted in a business-like manner.  You should first select a presiding juror who should assure that your discussion moves sensibly and orderly with each of you given the opportunity to discuss the issues fully and fairly.

Your attitude and conduct at the outset of deliberations are matters of considerable importance.  It is rarely helpful for any of you, upon entering the jury room, to make an emphatic expression of your opinion on the case or to announce a determination to stand for a certain verdict.  The result of conduct of this nature might be that a juror because of personal pride would hesitate to recede from an announced position when shown that it is fallacious.

It is natural that differences of opinion will arise.  When they do, each of you should not only express your opinions but the reasons upon which you base them.

Although a juror should not hesitate to change his or her vote when his or her reason and judgment are changed, each juror should vote according your honest judgment, applying the law from the instructions to the facts as proved.  If each of you is fair and reasonable, you can almost always agree.

It is your duty as a juror to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment.


Authority

Pattern Instructions Kansas (4th) 101.09.

54

/s/ Michael J. Mueller
_____
Michael J. Mueller (admitted *pro hac vice*)
E-mail: mmueller@hunton.com
HUNTON & WILLIAMS LLP-DC
1900 K Street, NW
Washington, DC 20006
(202) 419-2116
(202) 778-7433 (facsimile)

/s/ Terence J. Thum
_____
Craig S. O'Dear (D. Kan. 70379)
Robert J. Hoffman (KS 16453)
Terence J. Thum (D. Kan. 70084)
BRYAN CAVE LLP
1200 Main Street, Suite 3500
Kansas City, Missouri 64105
Telephone: (816) 374-3200
FAX: (816) 374-3300
csodear@bryancave.com
rjhoffman@bryancave.com
tjthum@bryancave.com

Attorneys for Defendants
TYSON FOODS, INC.
TYSON FRESH MEATS, INC.

February 23, 2011

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on February 23, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Eric L. Dirks | Adam T. Klein |
| George A. Hanson | Linda a. Neilan |
| STUEVE SIEGEL HANSON WOODY LLP | Justin M. Swartz |
| 330 West 47th Street, Suite 250 | OUTEN & GOLDEN LLP |
| Kansas City, Missouri 64112 | 3 Park Avenue, 29th Floor |
| | New York, NY 10016 |

        s/ Terence J. Thum          
       Attorney for Defendants