<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF KANSAS</u>

| | |
|---|---|
| ADELINA GARCIA, ANTONIO GARCIA, and JERONIMO VARGAS-VERA, individually, and on behalf of a class of others similarly situated<br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC., and TYSON FRESH MEATS, INC.,<br>Defendants. | Case No.  06-2198-JWL/DJW |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***</u>

With certain exceptions denoted herein, the evidence Tyson seeks to exclude from trial is directly relevant to issues the jury must decide.  As explained herein, Tyson's motion *in limine* should be denied.

<u>**Matters Not in Dispute**</u>

Plaintiffs do not contest the following portions of Tyson's motion *in limine*:

1. Tyson's motion at p. 5, regarding evidence of the *dollar amount* of any verdict in other Tyson cases.  Plaintiffs do not intend to adduce evidence of the amount of Tyson's prior jury verdicts, unless for rebuttal or impeachment.

2. Tyson's motion at p. 11, regarding evidence of facilities owned by *other companies* unaffiliated with Tyson.  Plaintiffs do not intend to adduce such evidence, unless for rebuttal or impeachment.  Plaintiffs do not construe "other companies" to mean IBP, Inc., which Tyson acquired and which previously owned the plants at issue in this case, among others.

3. Tyson's motion at part V, pp. 12-13, regarding Tyson's financial condition and economic status.  Plaintiffs do not intend to adduce such evidence, unless for rebuttal or impeachment.  Plaintiffs do not consider evidence of Tyson's production volume

or number of employees as evidence of financial condition or economic status; such evidence is relevant to explain the nature of the facilities and the work performed, who the classmembers are, why this is a class action involving thousands of workers, and (if willfulness or good faith evidence is not wholly excluded) the relevance of similar unpaid wage cases against Tyson.  Plaintiffs also do not consider evidence regarding Tyson's cost-savings and incentives relating to its donning and doffing pay policies to be evidence of financial condition or economic status; such evidence is relevant to explain, for example, who benefits from such activities.

**Tyson's Motion at Parts I, II, and IV: Evidence Pertaining to Tyson's Other Lawsuits and Facilities.**

1. Evidence of Willfulness or Good Faith

The primary dispute raised by Tyson's motion *in limine* is whether Tyson will be allowed to open the door – then promptly slam it shut – on evidence related to whether Tyson's pay practices constitute a willful violation of the FLSA.  Tyson raises this issue in parts I, II, and IV of its motion *in limine*.

Despite the Parties' tentative agreement to bifurcate evidence of willfulness and good faith, Tyson asks the Court to allow it to introduce (in the liability phase of trial) the underlying litigation history that favors Tyson and then exclude the equally applicable litigation history that favors Plaintiffs.  Tyson has made it clear that it intends to introduce evidence of other private party and DOL investigations, lawsuits, and agreements involving Tyson's pay practices in multiple meatpacking facilities across the country.[1]  In short, Tyson seeks to prejudice the jury

---

[1]  For example, Tyson's motion, at p. 7, states, "The Court should not exclude evidence of or references to… (i) the litigation and resulting injunction in *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), (ii) the negotiated settlement in *Herman v. IBP, Inc.*, No. 98-2163-JWL (D. Kan. Apr. 10, 1998), and (iii) the Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005)."

with its own view of history—seeking to adduce evidence Tyson views as exculpatory—while barring Plaintiffs from adducing the rest of the story.

If the issue of willfulness and good faith is bifurcated, neither side's litigation history or compliance evidence should be permitted at the liability phase of trial.  In its motion, Tyson confirms its agreement to bifurcation of the willfulness and good faith determination for later trial to the Court.  (Doc. 988 at p. 9, stating agreement that willfulness and good faith will be tried to the Bench.)  Nonetheless, Tyson wants to introduce evidence of its purported good faith reliance on prior litigation and DOL positions.  But Tyson simultaneously seeks to exclude Plaintiffs' evidence on the same subject.

Plaintiffs proposed bifurcation in order to have a shorter, cleaner trial and because evidence of Tyson's prior litigation and "compliance efforts" will likely confuse and prejudice the jury in its liability determination.  It would take substantial time to fully explain to the jury the saga of Tyson's donning and doffing litigation and alleged conciliation with the Department of Labor.  But if Tyson is permitted to open the door to prior litigation evidence in the liability phase, then Plaintiffs must have the opportunity to rebut Tyson's evidence and contextualize what Tyson says.  It would be grossly prejudicial for the jury to hear only Tyson's evidence.  Accordingly, anticipating that willfulness is not ultimately tried to the Court or otherwise sequenced for presentation to the jury, and assuming that Tyson is permitted to present evidence of prior litigation and DOL negotiations, Plaintiffs oppose Tyson's motion to exclude the litigation history that is the subject of its motion *in limine*.

Tyson contests Plaintiffs' claim that Tyson acted willfully, and Tyson asserts as a defense that it acted in good faith in its failure to pay for all time related to donning and doffing.  Thus, the corporate state of mind regarding pay practices at Tyson Foods and Tyson Fresh Meats is squarely at issue for purposes of willfulness.  Plaintiffs should be permitted to rebut Tyson's

evidence of good faith (whenever that occurs).  For example, if the jury is permitted to learn

about the *Reich* litigation, the jury should be permitted to hear that the District of Kansas issued a

prospective injunction against IBP/Tyson in the same litigation which required the company to

keep records of the actual amount of time employees spend performing compensable activities.

Concern about IBP/Tyson's state of mind and good faith spurred the Tenth Circuit in *Metzler v.*

*IBP, Inc.* to affirm the injunction.   127 F.3d 959, 965 (10th Cir. 1997) (considering factors

including: "the employer's previous conduct, its current conduct, ***and the reliability of its***

***promises of future compliance***" in making the decision whether to enter a prospective

injunction) (emphasis added).  Despite the prospective injunction requiring Tyson to record time

actually spent by its employees, Tyson *still* does not record or pay for actual time spent on the

activities at issue here.  (Pretrial Order stipulations ¶¶ 18-19, Doc. 873 at p. 4.)  In a similar

FLSA suit against Tyson involving a beef and pork plant in Tennessee (a facility also subject to

the *Reich* injunction), the court cited Tyson's history of FLSA lawsuits and stated the following:

> This case represents yet another chapter in a long history of litigations that span
> multiple fora, all of which involve one or both of the defendants here [Tyson and
> IBP] and the question of whether their compensation practices violate the [FLSA].
> These defendants, individually or collectively, have now been litigating this same
> issue for decades, reflecting what can only be described as a deeply-entrenched
> resistance to changing their compensation practices to comply with the
> requirements of [the] FLSA.

*Jordan v. IBP, Inc. &Tyson Foods, Inc.*, 542 F.Supp.2d 790, 794 (M.D. Tenn. 2008).

Despite the *Jordan* court's observation (or more likely, because of it), Tyson argues its

history of litigation is irrelevant.  Tyson is wrong.  Prior or ongoing investigations and lawsuits

involving alleged FLSA violations, and prior assurances of future compliance, are directly

relevant to whether a defendant has acted willfully in violating the FLSA.  *Herman v. Palo*

*Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (affirming finding that violation is

willful where defendant had notice of FLSA requirements via earlier investigations, prior agreement to pay unpaid wages, and prior assurance of future compliance).

Tyson has been specifically instructed by the U.S. Supreme Court in *IBP, Inc. v. Alvarez,* 546 U.S. 21, 37 (2005) (a beef case in Pasco, WA), that post-donning and pre-doffing walking time is compensable.  And Tyson was instructed in *De Asencio v. Tyson Foods, Inc.,* 500 F.3d 361, 364, 373 (3d Cir. 2007) (a chicken case in New Holland, PA), that donning and doffing the smock, hairnet, beardnet, earplugs, safety glasses, plastic apron, plastic sleeves, cotton and rubber gloves, metal mesh gloves, and rubber boots are "work" "as a matter of law."  In *Jordan,* the court found as a matter of law that the "frocks" Tyson requires on the production floor primarily benefit Tyson and are integral and indispensable.  542 F.Supp.2d at 807.

Those cases all involve time that Tyson refuses to pay Plaintiffs for here.  And those cases involve other Tyson facilities, but they involve the same legal issues, much the same equipment and clothing, and the same corporate entity at issue here.  That *entity's* state of mind is directly at issue for purposes of willfulness; Tyson cannot exclude evidence relevant to its state of mind by pretending that its corporate knowledge is limited by facility.  Even a mere prior investigation is relevant to an employer's state of mind regarding FLSA violations.  *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (reversing district court's finding that defendant did not willfully violate FLSA, where prior investigations "sufficed to acquaint [the employer] with the general requirements and policy of the statute.")  If *any* of Tyson's prior litigation history is admitted—as Tyson demands it must be to "tell its story"—Plaintiffs must be permitted to present the *rest* of the story, including court and DOL findings, opinion letters, injunctions, judgments, orders, and any other evidence that tends to show or refute Tyson's assertion that it acted in good faith and without willfulness.  It is either all in or all out.

Tenth Circuit precedent shows evidence relevant to Tyson's state of mind is not limited to the facilities in this case.  In an FLSA lawsuit by the DOL against a meatpacking plant for failure to pay for donning and doffing time, the Tenth Circuit has relied on evidence involving "a sister plant" to affirm a finding of willfulness by the defendant at the plant that was the subject of the litigation.  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998) (affirming willfulness finding where evidence included that "the same issues were resolved at a sister plant… in July 1989.")  The Tenth Circuit in *Monfort* also considered evidence of prior DOL investigations in specific "divisions" of the defendant's plant, prior agreements to pay backwages for FLSA violations, and prior agreements to comply with the FLSA in the future. *Id.*  These are the same types of evidence Tyson seeks to exclude here.

Crucially, this case is against Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (Pretrial Order, Doc. 873 at p. 1 fn. 1, stating Tyson does not contest joint liability by the Defendants.)  Tyson pretends that there is some fictional defendant here constituting Tyson's Kansas red-meat facilities.  There is not.  There are two Defendants, and they operate meat-processing facilities around the county, including the facilities in Kansas.  Tyson attempts to distinguish its other meatpacking lawsuits on the basis of what color of meat is being cut.  But this is not a case against "Tyson red-meat in Kansas."  No such defendant exists.  This case is against Tyson Foods and Tyson Fresh Meats, and because those entities' mental states with regard to their conduct are directly at issue, their conduct with regard to FLSA compliance at *any* of their facilities is at issue.  The fact that Tyson is a large company with multiple plants, fighting multiple lawsuits does not provide immunity from a finding of willfulness or bad faith (if anything, its size and litigation history shows that it must have a state of mind).  Tyson cannot put on its "red meat hat" and take off its "chicken hat" (or perhaps more aptly, "hardhat and hairnet") to conceal from the jury what Tyson's corporate decision makers knew and when they

knew it.  Tyson's 30(b)(6) corporate representative testified that Tyson's pay practices are dictated from the highest levels of corporate management, not at the plant level.  The same top corporate management is responsible for chicken and beef facilities alike.  Citing no evidence, Tyson *argues* that its various plants have "different" policies and procedures, but whether Tyson's *argument* is correct or not is a fact issue for the jury to decide if any willfulness or good faith evidence is admitted.

    2.  <u>Tyson's Policies and Practices are Relevant to Other Facts the Jury Will Decide</u>

Even if Tyson's other plants were "different," that would not render evidence of policies and practices at those plants irrelevant or inadmissible.  Rather, those differences tend to prove Plaintiffs' point.  For example, for its *de minimis* defense, Tyson has the burden of proving that it is not administratively capable of recording the time Plaintiffs spend on donning- and doffing-related activities.  *Reich v. Monfort, Inc.*, 144 F.3d at 1333-34; 29 C.F.R. § 785.47.  Plaintiffs contend Tyson can and should do what it does to record time for its clerical workers and what thousands of employers have done for decades: pay employees based on time clocks they punch at the start and end of their day.  But Tyson contends in this case that it is not feasible to record the time Plaintiffs seek to be paid for.  However, in contravention of its position here, Tyson admitted in *Solis v. Tyson Foods, Inc.*, Case No. 02-CV-1174 (a chicken case) in the Northern District of Alabama that recording the time spent on donning- and doffing-related activities is feasible, because Tyson has *agreed* to record it.  Thus, the *Solis* case is directly relevant to rebut Tyson's *de minimis* defense that it cannot record the time at issue.

Tyson's motion does not specify any other evidence Tyson seeks to exclude regarding policies and practices at other Tyson facilities.  However, policies and practices at other plants are generally applicable to show Tyson's reasons for requiring the gear that Plaintiffs wear, and at minimum for impeachment purposes.  Tyson's policies regarding sanitation standards to

ensure the wholesomeness of its product are not plant specific, and evidence from any Tyson facility may support one or more of the elements Plaintiffs must prove with regard to the issue of whether activities are "integral and indispensable."  A hair net to keep hair out of the food is not for different purposes at different plants.  The same is true for safety standards: the evidence will show that Tyson requires workers to wear ear plugs to comply with OSHA standards; that policy justification does not vary from one facility to another.

3.   The *Solis* Consent Judgment is Not Subject to Rule 408

Tyson also seeks to exclude, under FRE 408, the Consent Judgment Tyson agreed to in *Solis v. Tyson Foods, Inc.*, Case No. 02-CV-1174 (N.D. Ala.) (attached hereto as Ex. 1).  But Rule 408 applies *only* where the evidence of a prior compromise is offered "to prove liability for, invalidity of, or amount of a claim that was disputed."  Rule 408 expressly *allows* evidence of compromise for purposes other than proving liability.  Rule 408(b) provides, "[t]his rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)."

Plaintiffs seek to admit ¶¶ A.1 and B of the *Solis* Consent Judgment for reasons allowed under Rule 408.  Regardless of whether willfulness and good faith evidence are segregated from the liability phase, the *Solis* Consent Judgment is directly relevant on liability to rebut Tyson's *de minimis* defense, under which Tyson must show that it is not administratively capable of recording the time at issue here.  Under the Consent Judgment, Tyson agrees to record workers' donning and doffing-related time, thereby admitting that recording such time is feasible. Tyson's *agreement* to record donning and doffing-related time in other plants is directly relevant to rebut its argument here that it cannot feasibly record that time in Finney County.  This does not fall within the ambit of Rule 408's exclusion of evidence of *liability*.  Further, it is Tyson's own defense that opens the door to this evidence.  Tyson's admission of the feasibility of recording such time is an admission of elementary fact, not an admission of liability.  As

opposed to admissions of liability, it is long-settled law that admissions of fact are admissible even if contained in settlement agreements or communications. *Hiram Ricker & Sons v. Students Int'l Meditation Soc'y*, 501 F.2d 550, 553 (1st Cir. 1974) (regarding exclusion of settlement communications, "there is a 'well-recognized exception regarding admissions of fact'"); *Megarry Bro's, Inc. v. U.S.*, 404 F.2d 479, 485 (8th Cir. 1968) ("admissions with respect to independent facts which are made during the course of compromise negotiations may be received in evidence").

Separately, if willfulness and good faith are not fully segregated from the liability phase, the Consent Judgment is also admissible as evidence of Tyson's knowledge of its duties to pay workers for all hours worked and to keep accurate employment records of the wages paid and hours worked by employees.   Paragraph A.1 of the consent decree affirms Tyson Foods' commitment to pay its plant workers for a "continuous workday," encompassing "all hours worked from the start of his or her first principal activity of the work day until the end of the last principal activity of his or her work day," including walking time – but only after losing a lawsuit.  Defendant's knowledge is relevant, *inter alia*, to rebut any inference of good faith by defendant that might rebut plaintiffs' claim for liquidated damages under 29 U.S.C. § 216(b). *See, e.g., Garcia v. Tyson Foods, Inc.*, No. 06-2198-JWL, 2011 WL 346078, *13 (D. Kan. Jan. 31, 2011).  Settlement communications are admissible to show knowledge of legal requirements. *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 724 (10th Cir. 1984) (affirming the introduction of a consent decree involving claims between the Commodity Futures Trading Commission and defendant, holding "[t]he admission of the consent decree, as limited [with a jury instruction], was particularly appropriate in this case for purposes of showing intent and knowledge"); *U.S. v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (art dealer's consent decree with FTC admissible in criminal prosecution as it "showed that Austin was on notice when he

subsequently sold other prints that those prints were forgeries," and that he "knew he could not sell those prints without reporting the sale to the FTC"); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (consent decree admissible to establish rink owner's intent to discriminate); *U.S. v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (SEC consent decree admitted as proof of knowledge).

An additional basis for admitting the *Solis* Consent Judgment arises if Tyson is permitted to introduce evidence of its so-called "negotiated settlement" with the DOL in *Reich*, in which event Tyson will have opened the door to such evidence and Plaintiffs are entitled to adduce contrary evidence showing the DOL's position in both *Reich* and *Solis*. *CCMS Publishing Co. v. Dooley-Maloof, Inc.*, 645 F.2d 33, 37 (10th Cir. 1981) (holding Rule 408 did not exclude evidence of settlement negotiation where party opposing evidence had opened the door).

Thus the *Solis* Consent Judgment is admissible to show the feasibility of recording the time at issue in this case, regardless of whether willfulness evidence is excluded at the liability phase, and the Consent Judgment is additionally admissible to show Tyson's knowledge at the willfulness phase. Tyson's motion to exclude the Consent Judgment should be denied.

**Tyson's Motion at Part III: Evidence Regarding DOL Positions on Issues in this Litigation**

Tyson seeks to exclude the Department of Labor's positions on issues in this litigation, even though Tyson has put DOL regulations on its own exhibit list. Plaintiffs agree that the material should not be heard by the jury in the liability phase *if* willfulness and good faith evidence is wholly excluded in the liability phase. But Tyson unabashedly insists that it be allowed to adduce evidence of DOL materials involving Secretaries of Labor Reich and Herman, in what Tyson calls a "negotiated settlement" with the DOL. (Doc. 988 at p. 7.) Tyson may not have it both ways: it may not prejudice the jury in the liability phase by telling the jury that the DOL has permitted Tyson's conduct (which the evidence shows the DOL has not done) while

excluding evidence that specifically contradicts Tyson's view.  This issue has been extensively litigated, and this Court has already rejected Tyson's view that there is any exculpatory or prospectively binding "negotiated settlement."  (Doc. 599 at p. 14-15, Order denying Tyson's motion for summary judgment on the basis of a purported "negotiated settlement" with the DOL; *see also Jordan v. IBP, Inc. and Tyson Foods Inc.*, 2004 WL 5621927 at *12-*15  (M.D. Tenn. Oct. 12, 2004) (rejecting Tyson's "negotiated settlement" argument.))   Tyson should not be permitted to introduce one DOL letter or opinion or regulation to the jury if Plaintiffs are barred from presenting competing evidence (which includes directly contradictory evidence).  Tyson's reflexively inconsistent position on evidence of willfulness further highlights the importance of excluding *all* of this information from the jury in the liability phase.  The willfulness and good faith evidence will undoubtedly be complex and potentially confusing to the jury, and is likely to be highly prejudicial to the liability phase.  That confusion and prejudice is only exacerbated if Tyson is permitted to introduce only one side of the story.

**Tyson's Motion at Part VI: Operational Reports**

Tyson moves to exclude some of its routinely kept business records that contain evidence directly relevant to issues the jury must decide.  In its motion, Tyson refers to these reports as "production performance" reports and identifies three exhibits as examples.  Plaintiffs' exhibits 154, 210, and 242 contain information directly relevant to Plaintiffs' allegations: the average hourly rate of pay, the number of hours paid for gang time, K-code time paid for donning and doffing activities, and sunshine time (which only Tyson asserts is relevant) on a daily, weekly, and monthly basis in Finney County.  The reports also contain important background information about the scope of the operations that will help the jury understand generally what the Finney County plant does, the size and scope of the class and the general nature of the work they perform, and a comparison of relevant summary statistics from one day to the next in a simple

format the jury will easily understand.  Plaintiffs have selected just a handful of such reports, rather than the hundreds of them produced in the litigation, as exemplars of their type to present the information to the jury without unnecessary duplication.

Additionally, the reports show that Tyson measures scores of operations to the hundredth of a minute or the tenth of a cent, even while Tyson contends it cannot feasibly measure workers' donning and doffing time within the general framework of the law.  The reports rebut Tyson's claims that it does not know how to measure workers' time, because Tyson in fact measures workers time with great exactitude when it wants to.  And the reports demonstrate the safety hazards of the workplace because they reflect the pace at which Plaintiffs wield their knives and saws, confirming the industrial necessity of the safety equipment that is required to perform this work.

**Tyson's Motion at Part VIII: Evidence of Discovery Disputes[2]**

Plaintiffs do not intend to use exhibits 28-30 and 165 unless Tyson opens the door to Plaintiffs' use of these exhibits.  But to the extent Tyson presents evidence regarding subjects about which Plaintiffs sought discovery but for which Tyson has failed to produce relevant documents, Plaintiffs may need to explain the fact that Tyson did not produce certain documents. Indeed, the Parties agreed that Exhibit 165 would be equally admissible at trial as a deposition would be.  In any event, the issue is premature because Plaintiffs do not currently intend to use these documents.[3]

---

[2]     Tyson's motion does not have a part VII.

[3]     Tyson notes that the Court did not compel production of certain documents, but the Court did not find the documents were irrelevant.  Tyson's failure to produce such documents may require an adverse inference instruction to the jury.  *Wardrip v. Hart*, 949 F.Supp. 801, 804 (D. Kan. 1996).  Tyson's cited cases are not to the contrary.  Indeed, *Proctor & Gamble Co. v. Haugen*, 2007 WL 701812 at *1 (D. Utah March 2, 2007) (referencing motion *in limine* No. 4) only conditionally grants the motion to exclude evidence of a discovery dispute, while allowing the proponent of the evidence to adduce testimony that the opponent's evidence was "cherry

**CONCLUSION**

Except regarding specified evidence Plaintiffs expressly state they will not introduce unless for rebuttal or impeachment, Plaintiffs respectfully request that Tyson's motion *in limine* be DENIED.

Respectfully Submitted,

**STUEVE SIEGEL HANSON LLP**

**GARCIA & ANTOSH LLP**
Peter J. Antosh    KS Bar #21334
pja22@yahoo.com
1401 Central Ave.
Dodge City, KS 67801
PH:    620-225-7400
FAX:  620-225-4339

**OUTTEN & GOLDEN LLP**
Adam T. Klein (admitted pro hac vice)
ATK@outtengolden.com
Justin M. Swartz (admited pro hac vice)
JSM@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
PH:    212-245-1000
FAX:  212-977-4005

/s/ George A. Hanson
George A. Hanson      KS Bar #16805
hanson@stuevesiegel.com
Eric L. Dirks            D. Kan. Bar #77996
dirks@stuevesiegel.com
Lee R. Anderson        KS Bar #22755
anderson@stuevesiegel.com
460 Nichols Rd., Ste. 200
Kansas City, Missouri 64112
PH:    816-714-7100
FAX:  816-714-7101
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2011, I electronically filed the foregoing with the clerk of court using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

/s/ George A. Hanson
An Attorney for Plaintiffs

---

picked" and also allowing the parties to seek reconsideration of the ruling by first proffering discovery dispute evidence out of the hearing of the jury.  Tyson's reliance on *Jinks-Umstead v. England* is even more misplaced, as that court excluded evidence of defendant's discovery abuses only after reopening discovery, throwing out the jury's first defense-verdict, and ordering a new trial all *because defendant had failed to produce documents*.  2005 WL 3312947 at *1 (D.D.C. Dec. 7, 2005).  For the new trial, the court excluded evidence of defendant's discovery failures only because those failure were *corrected* before the new trial.  *Id.* at *2.  And *Avocent Huntsville Corp. v. ClearCube Technology, Inc.*, 2006 WL 2109503 (N.D. Ala. July 28, 2006) does not discuss Rule 403 or the term "discovery dispute," so it is unclear why Tyson cites it.

13