**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ADELINA GARCIA, ANTONIO GARCIA, and JERONIMO VARGAS-VERA, individually, and on behalf of a class of others similarly situated<br>Plaintiffs,<br>v.<br><br>TYSON FOODS, INC., and<br>TYSON FRESH MEATS, INC.,<br>Defendants. | Case No.  06-2198-JTM |

**PLAINTIFFS' BRIEF REGARDING THE PROPER SCOPE OF COMPENSABLE TIME**

The measure of compensable time, and therefore damages, is the actual time during the continuous workday.  In *IBP, Inc. v. Alvarez*, the United States Supreme Court unanimously affirmed long-standing law that the "workday" is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  546 U.S. 21, 29 (2005) (quoting 29 C.F.R. § 790.6).  Those "principal activities" that begin and end the workday are defined to include "donning and doffing" if such activities are "an integral and indispensable part of the principal activities for which" workers are employed.  *Id*. at 30 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)).  "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'"  *Id.* at 37.  Applying the "continuous workday" rule, the Supreme Court held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is… covered by the FLSA."  *Id.* at 37.  *See also Garcia v. Tyson Food, Inc.*, 474 F.Supp.2d 1240, 1245 (D. Kan. 2007) (recognizing the applicability of the continuous workday rule to this case).  Thus, *all* time (including time spent on activities that may not inherently be compensable on their own) is compensable when it occurs within the continuous workday.

*Alvarez* also analyzed "waiting time," which goes even more directly to the question whether the proper scope of compensable time—and thus damages—in this case is the "continuous workday" or "reasonable time." In the case *Tum v. Barber Foods, Inc.*, decided as a companion case in the same opinion as *Alvarez*, the Supreme Court analyzed instructions requiring the jury to "consider *only* whether [the defendant] was required to compensate [plaintiff workers] for the time they spent *actually donning and doffing various gear*." 546 U.S. at 39 (emphasis added). "The jury then made factual finding with regard to the amount of time *reasonably required* for each category of employees to don and doff such items." *Id.* (emphasis added). Based on the instruction to consider "*only*" the time spent "actually donning and doffing," the jury concluded the time was *de minimis*. <u>The Supreme Court *reversed and remanded*</u>, holding, "the continuous workday rule means that time spent waiting to doff" is compensable. *Id.* at 39-40.[1] The Court distinguished waiting time *within* the continuous workday—which is compensable—from waiting time *outside* the continuous workday—which is non-compensable. *Id.* at 40. *Alvarez* and *Barber* thus instruct that all time within the continuous workday is compensable. *Alvarez* and *Barber* also specifically and strictly foreclose the argument Tyson advances in this Court, namely that the measure of Plaintiffs' damages is merely the "reasonable time" that Plaintiffs could or should have spent on integral and indispensable activities. The only correct measure of Plaintiffs' work time—and thus their damages—is the "continuous workday."

The "continuous workday" is not only black-letter law; it is also abundantly sensible. Millions of people have jobs that are paid by the hour, and, after punching into the time-clock, those workers may have numerous distractions, interruptions, and delays to their "productive"

---

[1] The specific waiting time at issue in *Barber Foods* fell near the end of the day, as workers waited to doff their gear. *Id.* The context and the Supreme Court's statements of law show that the compensability of waiting time is not limited to the end of the day.

work.  They use the restroom, pause to greet a co-worker, stop to blow their nose, or get a drink at the water-cooler.  This time is compensable and the employer may not legally "stop the clock" and refuse to pay for these "non-productive" activities as they occur during the continuous workday.  What Tyson wants to do is far more severe: Tyson seeks to stop the clock for the moments when time elapses between the worker's first integral and indispensable activity and the very next integral and indispensable activity that follows.  Tyson is no more allowed to exclude that elapsed time than it may exclude the moments that may pass between two pieces of chuck steak on the production line.  Nor should it be rewarded for failing to pay for all time within the continuous workday, by receiving a "reasonable time" discount in the courtroom.

Tyson admits that it "does not create or maintain records of the actual time workers spend performing pre- and post-shift activities."  (Pretrial Order, Doc. 873 at p. 4 stipulation ¶ 19.) Under these circumstances, it is well-established that: "[w]hen the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, *the plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of that work*."  *Metzler v. IBP, Inc.*, 127 F.3d 959, 965 (10th Cir. 1997) (emphasis added).  After Plaintiffs come forward with a reasonable inference of unpaid time "[t]he burden then shifts to the employer to come forward with evidence of the *precise amount of work performed* or with evidence to negative the reasonableness of the inference to be drawn from the employee[s'] evidence."  *Id.* at 966 (emphasis added).  As fully explained by the Supreme Court in *Alvarez* and *Barber Foods*, the "precise amount of work" is defined by the continuous workday.  While there is a "reasonableness" component to establishing the

3

compensable time for backpay, that "reasonableness" applies to Plaintiffs' estimate of damages of the actual time expended during the continuous workday.[2]

Tyson relies upon *Anderson v. Mt. Clemens Pottery Co.*, for the proposition that a minimum reasonable time is the appropriate measurement of damages in this case. But the *Mt. Clemens* language on this point is inapplicable because it was based upon the pre-Portal-to-Portal Act presumption that walking time which occurs *before* the first integral and indispensable activity is compensable. 328 U.S. 680, 690-92 (1946). *Mt. Clemens* ruled that all time an employee must be on the premises is compensable, including walking to workstations *before* any integral and indispensable activities. *Id.* It is in the context of paying for that time that falls *outside* of the continuous workday that the Supreme Court limited to the minimum time necessary spent in walking at an ordinary rate. *Id.* at 692. Shortly after *Mt. Clemens*, however, Congress enacted the Portal to Portal Act which expressly excluded *all* walking time that occurs prior to an integral and indispensable activity. The Portal Act, therefore, abrogated (and made irrelevant) the *Mt. Clemens* language regarding the measure of walking time which occurred *prior* to the start of the continuous workday and resolved the Court's concerns that time spent *prior* to the first integral and indispensable activity is not sufficiently measurable.[3]

Plaintiffs' time-study expert designed his study to comport with the continuous workday. Specifically, Dr. Radwin video-taped a random sample of workers at the beginning and end of

---

[2] Tyson cannot be heard to complain that Plaintiffs' estimate of the unpaid time is imprecise: "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]." *Id.* In view of Tyson's steadfast refusal to comply with this Court's decades-old injunction ordering it to record each worker's compensable time, the prohibition against Tyson's proffered argument that Plaintiffs' time estimates "lack exactness" should be vigorously enforced.

[3] *Mt. Clemens* remains good law on several other grounds including its holding that when an employer fails to keep time records, the plaintiffs need only come forward with a reasonable estimate of the amount of time they spend working. *Id.* at 687-88.

4

the workday, and over their meal period. Dr. Radwin then analyzed the videos to measure the time the workers actually spent after the beginning of their first donning activity and before the end of their last doffing activity. The criticism Tyson lodges against Dr. Radwin's study is that it includes time that elapses *between* integral and indispensable activities, such as the time that may elapse between, *e.g.*, donning the mesh apron and donning a frock or glove, or the time that may elapse after a worker dons gear then waits near the production floor before taking his or her place on the production line. Dr. Radwin's methodology conforms to the Supreme Court's holding in *Alvarez* and *Barber Foods* (and this Court's ruling in *Garcia*) that time after the first integral and indispensable activity—even non-productive time such as waiting time—is compensable as part of the continuous workday. Tyson's time studies focus on the minimum time that a worker *could* possibly spend on donning, doffing, cleaning, and walking activities in a vacuum and exclusive of the real world amount of time that it takes to navigate busy hallways and locker rooms and to dodge conveyors carrying cattle. Tyson's studies measure only individual "elements"—the time it takes to don each item in isolation—but that measurement, which takes place in a vacuum, fails to comply with the continuous workday rule or account for real world conditions.[4]

The measure of compensable time is defined by the "continuous workday" rule. The measure of damages is based on the workers' evidence supporting a reasonable inference of the unpaid time within the continuous workday. Adopting the argument Tyson advances, which excludes compensable time within the continuous workday is contrary to *Barber Foods*, in which the Supreme Court held that omitting waiting time *within* the continuous workday is error.

---

[4]   Dr. Radwin's study complies with the continuous workday, but conservatively excludes time that may be considered "personal." For example, Dr. Radwin excluded bathroom time that occurs within the continuous workday even though black letter law allows such time to be compensated. Dr. Radwin's study thus measures a *reasonable amount* of actual time.

| | |
|---|---|
| **GARCIA & ANTOSH LLP**<br>Peter J. Antosh    KS Bar #21334<br>pja22@yahoo.com<br>1401 Central Ave.<br>Dodge City, KS 67801<br>PH:     620-225-7400<br>FAX:   620-225-4339<br><br>**OUTTEN & GOLDEN LLP**<br>Adam T. Klein (admitted pro hac vice)<br>ATK@outtengolden.com<br>Justin M. Swartz (admited pro hac vice)<br>JSM@outtengolden.com<br>3 Park Avenue, 29th Floor<br>New York, New York 10016<br>PH:     212-245-1000<br>FAX:   212-977-4005 | Respectfully Submitted,<br>**STUEVE SIEGEL HANSON LLP**<br><br>/s/ George A. Hanson<br>George A. Hanson      KS Bar #16805<br>hanson@stuevesiegel.com<br>Eric L. Dirks          D. Kan. Bar #77996<br>dirks@stuevesiegel.com<br>Lee R. Anderson       KS Bar #22755<br>anderson@stuevesiegel.com<br>460 Nichols Rd., Ste. 200<br>Kansas City, Missouri 64112<br>PH:     816-714-7100<br>FAX:   816-714-7101<br>**ATTORNEYS FOR PLAINTIFFS** |

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2011, I electronically filed the foregoing with the clerk of court using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

/s/ George A. Hanson
An Attorney for Plaintiffs