IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ADELINA GARCIA, ET. AL.,

    Plaintiffs,


vs.                      Case No. 06-2198-JTM


TYSON FOODS, INC. ET. AL.,

    Defendants.


PLAINTIFFS' OBJECTIONS TO THE COURT'S
PRELIMINARY JURY INSTRUCTIONS


 Plaintiffs respectfully submit these objections to the Court's Preliminary Jury Instructions. The format of these objections is to use the Court's Preliminary Jury Instructions sent by the Court to the parties in WordPerfect format, and to "redline" the instructions to indicate Plaintiffs' proposed changes. In view of these instructions being only preliminary, Plaintiffs reserve the right to raise further or different objections to the Court's final instructions to the jury.

MEMBERS OF THE JURY:

In a moment, the parties will begin presenting evidence. These are instructions to give you a framework in which to consider the evidence and are not final instructions. I will give you final instructions when the parties have finished presenting all of the evidence. You may read along with me, or you may simply listen as I read these instructions. If you read along, stay with me. You should keep your copy of these instructions until I give you final instructions.

You must weigh and consider this case without sympathy and without bias for or against any party. You must not be influenced by anything not within the evidence, the instructions, or your own common sense, knowledge and experience.

You must consider and decide this case as an action between persons of equal standing in the community. Corporations are entitled to the same fair trial as an individual.

You must consider all the evidence, but you need not accept all evidence as true or accurate.

You will determine the weight and credit to be given the testimony of each witness. You may use common sense, common knowledge, and experience in weighing that testimony.

The number of witnesses who testify about a matter does not necessarily determine the weight of the evidence. The testimony of a fewer number of witnesses concerning any fact may be more credible than the testimony of more witnesses to the contrary.

You will determine the weight and credit to be given to each exhibit in similar fashion.

The parties may prove any fact through either direct or circumstantial evidence. Direct evidence is direct proof of a fact, such as eyewitness testimony. Circumstantial evidence is indirect

2

proof, in which proving a chain of facts allows you to conclude another fact.

To decide if a fact has been proved by circumstantial evidence, consider all the evidence in the light of reason, common sense, and experience.

Circumstantial evidence and direct evidence may have equal weight.

You may consider as evidence the testimony of witnesses and the exhibits admitted into evidence..

During this trial, you may hear evidence presented to you by deposition.  This is the testimony of an absent witness taken under oath.  You should weigh this testimony by the same standards as other testimony.

<u>During this trial you may also hear evidence presented to you by stipulation.  This means the parties have agreed to such facts and you must accept them as true.1</u>

You may draw reasonable inferences from the evidence which you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts established by the  evidence.

Lawyers' statements, objections, and arguments are not evidence.

Certain opinion testimony may be given in this case by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general.  You will decide what weight, if any, to give the opinion testimony.  If you decide the witness lacks sufficient education or experience to offer valid opinion testimony, or if you conclude the reasons given in support of the opinion are not sound or the opinion is outweighed by other evidence, you may disregard the opinion entirely.

If I instruct you that an item of evidence is being admitted for a limited purpose, you must

consider that item only for that purpose and for no other.

Any party may introduce into evidence written questions known as "interrogatories" together with answers signed and sworn to by another opposing party. A party is bound by its sworn answers. By introducing an opposing party's answers to interrogatories, the introducing party does not bind itself to those answers. Instead, the introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

A witness may be discredited or "impeached" by contradictory evidence, or by evidence that at some other time the witness has said or done something, or failed to say or do something, which is inconsistent with the witness's testimony at trial.

If you believe any witness has been so impeached, you may give the testimony of that witness such weight as you believe it deserves.

If a witness is shown to have deliberately testified falsely concerning any material matter, you have a right to distrust that witness's testimony. You may reject any part or all of that witness's testimony.

An act or omission is deliberate if done voluntarily and intentionally and not through mistake, accident, or other innocent reason.

During this case, you will hear testimony of witnesses who will be testifying in Spanish. The evidence you are to consider is only that provided through the official court interpreters. Although some of you may know the language used, it is important that all jurors consider the same evidence. So you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.

1. The parties have stipulated to numerous facts in this case.

The plaintiffs bear the initial2 burden of proof to show that Tyson has violated the Fair Labor Standards Act (FLSA). To do so, they must show by a preponderance of the evidence that Tyson violated the FLSA by failing to adequately compensate plaintiffs for time spent during the continuous workday, including3 donning and doffing certain gear, for time spent walking to the production line, or for the rest break.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force and produces in your mind a belief that what is sought to be proved is more likely true than not. To say it differently: If you put the evidence favorable to plaintiff and evidence favorable to defendant on opposite sides of the scales, plaintiffs' evidence must make the scales tip somewhat on their side.

---

2 Absent the clarification that Plaintiffs bear the "initial" burden, the jury may mistakenly believe the Plaintiffs bear the burden on Defendants' affirmative defense.

3 The additional language is intended to clarify.

5

As I have mentioned earlier, this case is proceeding as a class action and a collective action. This procedure allows a small number of representative individuals to file a lawsuit on behalf of themselves and others who have similar claims and are similarly situated.[4] You will determine whether plaintiffs have proven their claims, which I am about to explain to you. You must not reconsider my decision that plaintiffs have properly brought their claims as a collective and class action.

There is no requirement that a certain number or percentage of plaintiffs or other witnesses testify. Rather, when weighing the evidence to be accorded the evidence you must look at its quality not its quantity.

Some employees in this lawsuit are asserting a claim under the Fair Labor Standards Act (FLSA), which requires the payment of overtime compensation for hours over 40 in any workweek.

The basic elements of an Overtime claim under the Fair Labor Standards Act are:

(1) Tyson is an employer subject to the FLSA;

(2) The plaintiffs were employed by Tyson during the time period at issue;

(3) The plaintiffs worked over 40 hours in a workweek when adding the time already paid to the time spent on the activities at issue in this case; and

(4) Tyson failed to pay for compensable activities over 40 hours.

The parties have agreed the first two elements are met. You must accept that agreement, so you will only be deciding if plaintiff has proved the third and fourth elements by a preponderance of the evidence.

The positions of the parties can be summarized as follows:

---

[4] 29 U.S.C. § 216(b); Fed. R. Civ. P. 23.

Plaintiffs, assert claims for unpaid time during the continuous workday, beginning and ending with time5 spent donning and doffing protective clothing and equipment before and after each of their shifts, at their meal period, and at their rest break. Plaintiffs also seek to recover wages for the unpaid portion of rest breaks.

Additionally, plaintiffs assert a claim under the Kansas Wage Payment Act to recover non-overtime wages it alleges Tyson owes but has not paid.

Tyson claims that (1) such time is not compensable, (2) if compensable, it has sufficiently compensated plaintiffs, and (3) even if plaintiffs' donning and doffing activities are otherwise compensable such time is *de minimis* or minimal. The specifics of this defense will be explained to you in a few minutes.

The plaintiffs in this case are approximately 2500 5,130 hourly workers at defendants Tyson Foods Inc., and Tyson Fresh Meats, Inc.'s beef processing and slaughtering facility in Finney County, Kansas. During this trial, plaintiffs may be referred to as "plaintiffs" or "employees." We will also refer to defendants collectively as "Tyson" or "defendants."

---

5 The additional language clarifies the nature of Plaintiffs' claim.

In order to perform their jobs, Plaintiffs ~~-~~"don" (put on) certain gear prior to their shift and "doff" (take off) the gear after their shift has ended. Plaintiffs may not enter the production area at Tyson's plant unless they are wearing certain personal protective clothing and gear, as required by Tyson. All employees, regardless of department of job code, are required to wear a hard hat, a hairnet, a beardnet (if necessary) and earplugs. Production employees in slaughter operations also wear a white uniform in lieu of street clothes and production employees in processing wear a white "frock" over their clothes. Employees who use knives are required to wear additional~~, "unique" or "specialized"~~ 6clothing and gear. Additionally, certain employees, depending on the job, must wear steel-toe boots, safety glasses, cotton or rubber gloves, and rubber aprons. Some employees ~~even~~ choose to wear ~~certain~~ additional gear or clothing to perform their jobs ~~even though it is not required~~.

Employees are paid primarily on the basis of "gang time," that is, they are paid for the time product is moving on the line, approximately 8 hours a day. The production line stops twice during a shift, once for the meal period, and once for a rest period. At the end of the day, an employee may leave the production area when he or she has finished working on the last piece of product that passes through his or her workstation.

"Gang time" does not include any time spent on activities outside the movement of the line, such as donning and doffing clothing and equipment. To compensate employees for some of that time, Tyson pays ~~-~~"K-code" time, which is beyond gang time pay. "K-code" time does not represent

---

6. Prior court rulings have described the equipment as "unique" or "specialized" in connection with determining whether the donning and doffing of certain items is compensable. The standard for compensability does not depend on whether the equipment or clothing is "unique" or "specialized," but rather whether it is integral and indispensable. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005).

the actual time employees spend performing such activities. Not all employees have always been eligible for "K-code" time, and the amount of "K-code" time has changed over the years. <u>Until January 2007, Tyson paid 4 minutes "K-code" to any employee working in a knife-wielding department.</u> Beginning in January 2007, Tyson paid only knife-wielding employees "K-code" time. In April 2010, Tyson began paying all hourly workers <u>at least 20 minutes of</u> "K-code" time.

You will decide whether Tyson must compensate its employees for time spent donning and doffing equipment and all pre-shift walking time. In addition, you will decide if plaintiff<u>s</u> may recover for unpaid portions of the rest breaks.

~~Under the FLSA, "work" means physical or mental exertion whether burdensome or not controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.~~ <u>7</u>

Defendants must pay plaintiffs for all compensable time worked during the "continuous workday."

---

<u>7</u> "[E]xertion [is] not in fact necessary for an activity to constitute 'work' under the FLSA." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). *See also DeAsencio v. Tyson Foods, Inc.*, 500 F.3d 361, 365-71 (3d Cir. 2007) (reversing trial court's similar jury instruction and answer to jury question requiring the jury to find that "work" means physical or mental exertion).~~7~~

9

The "continuous workday" ~~is~~ means all time spent by employees between the commencement and completion of the employee's principal activity or activities in the same workday, excluding <u>bona fide</u> meal period. <u>Any activity that is integral and indispensable to a principal activity is itself a principal activity.</u>8  Employees must be compensated for ~~work~~ <u>all time</u>~~performed~~ ~~prior to and after their shift begins if that activity is~~<u>after their first</u> integral and indispensable <u>activity until their last integral and indispensable activity</u>~~to the production of work the employee was hired to perform~~. 9

~~"Principal activity or activities" embrace all activities which are an integral and indispensable part of the principal activities.~~

In order to prove plaintiffs' donning and doffing activities are compensable, plaintiffs must prove by a preponderance of the evidence that the activities are "integral and indispensable" to ~~work performed by~~ employees<u>'</u> ~~that is considered a~~ principal activity or activities. <u>An "integral and indispensable activity" is any activity performed by Plaintiffs which is (1) necessary to Tyson's business and (2) performed by Plaintiffs in the ordinary course of business.</u>10~~Whether an activity is "integral and indispensable" depends on the existence of three things: (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer.~~  Plaintiffs must prove ~~all three~~<u>both</u> factors by a preponderance of the evidence.

---

8 *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (direct quote).

<u>9  The sentence "Employees must be compensated for work…" confuses and contradicts the definition of the compensable workday.  Any activity within the continuous workday, whether independently compensable or not, is compensable by nature of being within the bounds of the continuous workday.  *Id.*</u>

10 *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1290 (10th Cir. 2006).

11Next I will instruct you about plaintiffs' walking time claim. Walking time at the beginning of a shift is only compensable if it is preceded by a principal activity. Similarly, walking time at the end of a shift is only compensable if it takes place before the last principal activity of the workday.

As I instructed you earlier, employees must be compensated for work performedall time12 prior to and after their paid shift begins if that activity is integral and indispensable to the production of work the employee was hired to perform.

Defendants raise as an affirmative defense13  The parties have agreed that time spent by plaintiffs on donning and doffing activities, even if otherwise compensable, is not included in calculating hours worked in a week if the amount spent on those activities is *de minimis*. *De minimis* is a legal term meaning "minimum" or "trivial."

The *de minimis* defense is an "affirmative defense," which means that Tyson has the burden of proving the defense by a preponderance of the evidence.  When determining whether time is *de minimis*, you will first, determine the daily time spent on the donning and doffing activities. Once you have determined the daily time, you will consider three things when deciding if such time is *de minimis*: (1) the practical administrative difficulty of recording the additional time; (2) the size of the

---

11. The passage suggest that "walking time" is a separate claim, which is confusing and contrary to the continuous workday rule.

12. Introduction of "work" as a separate concept confuses the legal standard for compensability, which is defined by the continuous workday. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

13. Plaintiffs contest application of the defense, and anticipate seeking a directed verdict that the defense is inapplicable as a matter of law.

time in the aggregate; and (3) whether plaintiffs performed the donning and doffing activities on a regular basis. However, in weighing the evidence, you must accept that an employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time that the employee is regularly required to perform.14

You need not find that all three factors favor a certain party, rather you will consider the factors together when deciding whether the ~~donning and doffing activities are~~total uncompensated time is15 *de minimis*.

There is no precise amount of time that is considered *de minimis* in all situations.

Plaintiffs are also seeking compensation for the time they spend donning and doffing during their unpaid meal break. Genuine meal periods are not work time. An employee must be "completely relieved from duty" when eating regular meals. An employee is "completely relieved from duty" if his or her time is not spent predominantly for the benefit of the employer.

The portion of a meal period where Plaintiffs are fully and completely relieved from duty is properly excluded from the compensable workday. ~~You will decide whether plaintiffs have proved by preponderance of the evidence that plaintiffs spent their meal period time predominantly for the benefit of Tyson. If you find plaintiffs spent their meal period primarily for Tyson's benefit, such time is compensable unless you find the time is *de minimis*.~~ 16

---

14 *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374-75 (3d Cir. 2007); *Metzler v. IBP, Inc.*, 127 F.3d 959, 964 (10th Cir. 1997); 29 C.F.R. § 785.47.

15 *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374-75 (3d Cir. 2007); *Metzler v. IBP, Inc.*, 127 F.3d 959, 964 (10th Cir. 1997); 29 C.F.R. § 785.47.

16 *Perez v. Mountaire Farms, Inc.* F.Supp.2d 499, 521 (D. Md. 2009) ("once it has been determined that donning and doffing time is compensable, it would be unfair to artificially 'turn

In April 2010, Tyson replaced the 15-minute paid rest break it had provided with a longer unpaid rest break. Plaintiffs must prove by a preponderance of the evidence that the rest break is compensable. There is no bright-line rule establishing whether a rest break is compensable. Rest periods of 5 minutes to about 20 minutes must be compensated. ~~Further, in deciding whether a rest period is compensable you will look at whether: (1) the rest period is spent predominantly for the employer or employees' benefit and (2) whether the time is of a sufficient duration and taken under such conditions that employees may make their own use of it for purposes unrelated to their employment.~~ 17

As I mentioned before, the plaintiffs have asserted a claim under the Kansas Wage Payment Act. In order to prove their claim you must find it is more likely true than not true:

First, that Tyson is an employer;

Second, that the hourly employees in this case were employed by Tyson during the relevant time period.

Third, Tyson failed to compensate plaintiffs as required under the Fair Labor Standards Act.

The parties have stipulated to the first two facts. Plaintiffs must prove only the third element.

---

off the clock' when the company says that lunch time has started."); *accord Chavez v. IBP, Inc. and Tyson Foods, Inc.*, 2005 WL 6304840, *13 (E.D. Wash. May 16, 2005) ("meal break donning and doffing is compensable work").

17 29 C.F.R. § 785.18; *Mitchell v. Greinetz*, 235 F.2d 621, (10th Cir. 1956) (applying 29 C.F.R. § 785.18 and stating of rest breaks, "While no doubt they are beneficial to the employees, they are equally beneficial to the employer in that they promote more efficiency and result in greater output, and that this increased production is one of the primary factors, if not the prime factor, which leads the employer to institute such break periods.").

Plaintiffs have the burden of proving the amount of damages by showing they have performed work for -

which they were not compensated and they must produce sufficient evidence showing the amount and extent of such work as a matter of just and reasonable inference. Where the employer's records of time worked are inaccurate or inadequate, the solution is not to penalize the employees by denying them recovery on the ground that they are unable to prove the precise extent of uncompensated work.  Such a result would improperly reward an employer's failure to keep time records.  Therefore, where Tyson has failed to record compensable time, the Plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of the unpaid time.[18]

If plaintiffs meet that burden, then the burden will shift to Tyson to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from plaintiffs' evidence.

At times during the trial, I likely will rule on the admission of certain testimony and exhibits.  Those matters are questions of law for the court.  Do not concern yourselves with or draw any inferences from those rulings.

I do not and will not express or suggest any opinion regarding the resolution of any issue in this case.

---

[18] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Metzler v. IBP, Inc.*, 127 F.3d 959, 965-66 (10th Cir. 1997) (quoting *Mt. Clemens*)

As I noted at the outset, these are preliminary instructions. Once the parties have finished presenting their evidence, I will give you final, more detailed instructions which will be binding on you and the parties. These preliminary instructions are to give you some guidance in listening to the evidence as the parties present it.

One final note. If you do not understand a lawyer's question, or if you do not hear it, raise you hand immediately and I will ask you if the question needs to be repeated, or if it needs to be clarified. The same rule will apply to a witness's answer. If you do not hear it, or if you do not understand it, raise your hand so the lawyer will have the opportunity to ask the witness to clarify his or her answer.

Date: March 3, 2011                                s/ J. Thomas Marten    19
                                                   J. THOMAS MARTEN, JUDGE

---

19 Plaintiffs omit the signature to avoid any appearance that these objections have been ruled upon by the Court.