IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ADELINA GARCIA, et al., individually, | ) | |
| and on behalf of a class of others similarly | ) | |
| situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-02198-JTM |
| | ) | |
| TYSON FOODS, INC., *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiffs have now had the opportunity to present their case to the jury, and it is apparent that there are substantial evidentiary holes.  First, plaintiffs have not proven that all plaintiffs and other members of the collective action and class action have not already been compensated by K Code time for their compensable time spent donning and doffing and walking to and from their work stations.  Second, plaintiffs have not established that the time spent donning and doffing the standard and sanitary items is compensable under the Portal-to-Portal Act.  Third, plaintiffs have not proven that any time spent donning and doffing during the bona fide meal break is compensable under the FLSA and Kansas Wage Payment Act.  Fourth, plaintiffs have failed to prove that Tyson acted willfully, within the meaning of the FLSA and the Kansas Wage Payment Act, in its implementation of the "K Code" payment system in compliance with the *Reich* rulings. Because of plaintiffs' lack of proof, the jury would lack a legally sufficient evidentiary basis to find for plaintiffs on these issues, and Tyson is entitled to judgment as a matter of law.

## I.  Legal Standard for Judgment as a Matter of Law

Fed. R. Civ. P. 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

Judgment as a matter of law is appropriate "only if evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Riske v. King Soopers*, 366 F.3d 1085, 1088-89 (10th Cir. 2004).  The question is "not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party." *Herrara v. Lufkin Industries, Inc*. 474 F.3d 675, 685 (10th Cir. 2007).  For a jury to find for a party, the party must present more than a scintilla of evidence supporting its claim.  *Id*.; *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003).

## II.  Plaintiffs Have Not Proven That Each Member of the FLSA Collective Class or Each Member of the Rule 23 Class Has Not Been Adequately Paid by K Code Time for Compensable Time Spent in Donning and Doffing and Walking Activities.

### A.    Legal Standards for Collective and Class Treatment

#### 1.    FLSA Collective Actions

Under section 16(b) of the FLSA, Plaintiffs' bear the burden of establishing that they are similarly situated to other class members.  *See Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983) (plaintiffs' evidence was sufficient since at least one employee from each category testified or was deposed); *Murray v. Stuckey's, Inc.*,

939 F.2d 614, 621 (8th Cir. 1991) (in actions where the evidence demonstrates that employees are subject to differing work situations that make pattern evidence unpersuasive, each plaintiff must meet his burden individually); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (to maintain a collective action under the FLSA "plaintiffs must demonstrate that they are 'similarly situated'"); *Grochowski v. Phoenix Construction,* 318 F.3d 80 (2d Cir. 2003) (affirming judgment as a matter of law dismissing the claims of five non-testifying plaintiffs for whom the testifying plaintiff provided no reliable evidence; noting that speculation of testifying plaintiffs is not a proper basis for finding hours worked by non-testifying employees).

This burden initially is low, and some courts have conditionally certified a collective action before discovery based solely on the pleading and affidavits. *Id., see also Wynn v. National Broadcasting Co.,* 234 F. Supp. 2d 1067, 1082 (C.D. Cal 2002). However, once the court has more information about the nature of the case, it can re-evaluate its conditional certification under a more stringent standard analogous to the standard applicable to Rule 23 claims. *See Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294, 308 (N.D. Cal. 1991).

Decertification of an FLSA collective action is appropriate whenever it becomes apparent that the opt-in class is not similarly situated. *See Daggett v. Blind Enterprises of Oregon,* No. CV-95-421-ST, 1996 U.S. Dist. LEXIS 22465 at *16 (D. Or. April 18, 1996). This includes situations where facts or testimony elicited during trial establish that opt-in class members are not similarly situated. *See Ciarocchi v. Provident National Bank,* 83 F.R.D. 357, 365 (E.D. Pa. 1979). Where the asserted claims require individualized factual determinations, class members are not similarly situated and class

certification cannot be sustained.  *See Sheffield v. Orius Corp.,* 211 F.R.D. 411, 417 (D. Or. 2002) (denying class certification where employees performed different job duties, were paid differently, and performed different preparatory and concluding activities); *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying class certification where employees had varying job responsibilities raising different questions of fact such that employees were not similarly situated); *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 568 (N.D. Ala. 1995); *see also Hill et al. v. R&L Carriers, Inc., et al.,* Case No. 4:09-cv-01907 (N.D. Ca. March 3, 2011) (granting defendants' de-certification motion and recognizing that a lack of similarity of comparable circumstances with those of other opt-in plaintiffs precludes adjudication of a case as an FLSA collective action).

## 2.  Rule 23 Class Actions

The requirements for class certification under Federal Rule of Civil Procedure 23 are more stringent than those requirements under Section 261(b).  *See generally Vaughan v. Mortgage Source LLC*, No. CV 08-4737, 2010 WL 1528521, at *4 (E.D.N.Y. Apr. 14, 2010) ("Courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is considerably less stringent than the requirements for class certification under Rule 23."); *Wacker v. Personal Touch Home Care, Inc.*, No. 4:08CV93, 2008 WL 4838146, at *2-3 (E.D. Mo. Nov. 6, 2008) (accord); *Flavel v. Svedala Indus., Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) ("similarly situated requirement of Section 216(b) is considerably less stringent than" requirements of Rule 23).

Under Rule 23, Plaintiffs must present enough evidence to determine liability on a class-wide basis, i.e. on behalf of every single plaintiff.  *Elizabeth M. v. Montenez*, 458

F.3d 779, 786-87 (8th Cir. 2006) ("The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."); *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."); *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191-93 (11th Cir. 2009) (time records showing gap time between punches and productive work not sufficient to establish common proof in Rule 23 class action where employee testimony varied regarding the non-work-related activities that took place during the gap periods and the various personal reasons that employees came in early and stayed late); *Blyden v. Mancusi*, 186 F.3d 252, 266-67 (2d Cir. 1999) (verdict sheet must require findings sufficient to support class-wide liability); *Cimino v. Raymark Indus.*, 151 F.3d 297, 312 (5th Cir. 1998) (class action device does not "alter the required elements which must be found to impose liability and fix damages (or the burden of proof thereon) or the identity of the substantive law."); *In re Welding Fume Products Liability Litig.*, 245 F.R.D. 279, 311 (N.D. Ohio 2007) (finder of fact must be able to "determine, on a class-wide basis, whether the defendant's conduct" was a violation toward every plaintiff).

Rule 23(a) imposes four prerequisites to a class action:  numerosity, commonality, typicality, and adequate protection of class interests.  In addition, Rule 23(b)(3) requires that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3);

*see Amchem Products, Inc. v. George Windsor,* 521 U.S. 591, 615 (1997).   When complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the "superior" method of adjudication. *See Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001), *opinion amended on other grounds,* 273 F.3d. 1266 (citing *Valention v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-35 (9th Cir. 1996)).  In fact, where the issues and facts vary widely such that each class member would have to litigate numerous separate issues to establish his right to recover individually, a class action is not superior. *Zinser,* 253 F.3d at 1192; *In re American Medical Systems, Inc.,* 75 F.3d at 1084-85; *Rutstein v. Avis Rent-A-Car Systems Inc.,* 211 F.3d 1228, 1235-36 (11th Cir. 2000) ("Serious drawbacks to the maintenance of a class action are presented where initial determinations…turn upon highly individualized facts); *Grosz v. The Boeing Co.,* No. SDACV-02-71-CJC (MLGx), 2003 U.S. Dist. LEXIS 25341 at *22 (C.D. Cal. Nov. 7, 2003) ("because the 'formulaic recovery' model plaintiffs suggest is not possible, *determining back pay and punitive damages for the class would require an endless litany of fact-specific inquiries into the circumstances of each individual class member's claim...Under these circumstances, 'a class action is not superior.'*") (emphasis added).

With respect to decertification, Rule 23(c)(1)(C) provides that class certifications are generally conditional and may be altered at any time before a decision on the merits. Fed. R. Civ. P. 23(c)(1)(C); *see Church v. Consolidated Freightways, Inc.,* No. C0-90-2290 DLJ, 1992 U.S. Dist. LEXIS 18234, at *10-11 (N.D. Cal. Sept. 14, 1992); *Slaven v. B.P. America Inc.,* 190 F.R.D. 649, 652 (C.D. Cal. 2002)("before entry of a final judgment on the merits, a district court's order respecting class status is not final or

irrevocable, but rather is inherently tentative." (quoting *Officers for Justice v. Civil Serv. Comm'n.,* 688 F.2d 615, 633 (9th Cir. 1982)).  Accordingly, this Court may decertify a class whenever it appears that it no longer meets the four requirements of Rule 23. *See, e.g., Slaven,* 190 F.R.D. at 652; *Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 85 (S.D.N.Y. 2004).

### B. Plaintiffs Have Not Proven That Each Class Member Has Uncompensated Donning and Doffing and Walking Time.

To recover on behalf of the class under the FLSA and Kansas Wage Payment Act, plaintiffs must prove that each member of the class was not adequately compensated for these activities.  This is not a damages issue; it is the *sine qua non* of liability in a wage case.

The central issues the jury would have to decide in this lawsuit include (i) which pre- and post-shift activities are "integral and indispensable" to Plaintiffs' principal production work and, therefore, compensable within the meaning of the Portal Act 29 U.S.C. § 254(a)(1) and (2) (see *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956)); (ii) if the activities are not excluded by the Portal Act, whether the amount of K Code time paid by Tyson for donning- and doffing-related activities sufficiently covers the amount of time each class member spent engaged in compensable donning and doffing activities; (iii) if the activities are not excluded by the Portal Act and not entirely paid by Tyson, whether the remaining time is de minimis (*see Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 692 (1946)).

In short, to establish liability, plaintiffs must first prove that each class member actually performed compensable donning and doffing activities outside of paid time. Because employees arrive and leave at different times and perform a wide range of pre-

and post-shift activities, there is no systematic way to prove whether a given class member engaged in uncompensated pre- and post-shift activities before and after their production time.  Put differently, there is no reason to assume that, because one employee reasonably required more than K Code time to don and doff unique items, another employee in another position in the plant with different PPE would reasonably require the same amount of time.

The Eleventh Circuit's decision in *Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) demonstrates that class treatment under Rule 23 is inappropriate where there is no systematic way to prove which employees engaged in compensable pre- and post-shift and meal period activities.  In *Babineau*, the Eleventh Circuit affirmed the district court's denial of Rule 23 class action certification of claims that Federal Express failed to pay employees for "all hours worked," including time spent engaged in job-related duties at the beginning and end of their shifts and during their unpaid meal period. Id. at 1186-89.  Though *Babineau* did not involve claims for payment of donning- and doffing-related activities, plaintiffs did assert that they performed work during the period between the time they clocked in and their scheduled start time when their compensation began.  Id.  In affirming the trial court's refusal to grant certification, the Eleventh Circuit agreed with the district court's reasoning that there was no uniform way to tell how long an employee worked during the gap period between the punch-in time and the scheduled start time and during the meal period, making individualized inquiries necessary and defeating the purpose of class treatment.  Id. at 1192-94.  Although Babineau  analyzed Rule 23 class certification, the same individualized "gap time" rationale applies to plaintiff's FLSA claims in this case.

Apart from the lack of systemic evidence, plaintiffs also did not, through the use of representative testimony, carry their burden of proving that each class member is owed additional compensation. To the contrary, plaintiffs offered the testimony from only five of the 5130 class members in this case, inclusive of the three named plaintiffs. These five witnesses represented less than one-tenth of 1% of the Rule 23 class. Decisions relying on "representative" evidence suggest that far more is required. *See, e.g., Donovan v. Del-Loc Diner, Inc.,* 780 F.2d 1113, 1116 (4th Cir. 1985) (upholding an award to 98 employees based on the testimony of 22 waitress-employees (22.4 percent)); *Donovan v. Burger King Corp.,* 672 F.2d 221 (1st Cir. 1982) (the testimony of six employees from six different restaurants along with stipulations that 20 employees would testify similarly supported an award for 246 employees at 44 restaurants (10 percent)); *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468 (11th Cir. 1982) (the testimony of 23 employees supported an award to 207 employees (11 percent)); *McLaughlin v. DialAmerica Mktg., Inc.,* 716 F.Supp. 812 (D.N.J. 1989) (the testimony of 43 researchers was used to award back wages to 393 employees (11 percent)); *McLaughlin v. Seto,* 850 F.2d 586 (9th Cir. 1988) (testimony of 5 employees was sufficient to award damages to 28 employees (17.8 percent)); *Reich v. Benaman Elec. Serv.,* No. 95-CV-3737, 1997 U.S. Dist. LEXIS 4163 (E.D. Pa. Mar. 28, 1997) (testimony of nine employees was sufficient to award damages to 39 employees (23 percent)); *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir. 1973) (finding testimony of 16 employees on behalf of 37 acceptable (43 percent)); *Marshall v. Brunner,* 500 F.Supp. 116 (W.D. Pa. 1980) (the testimony of 48 employees supported an award to 93 employees (51 percent)).

Moreover, the five employees who did testify readily conceded that the Finney County plant contained numerous departments in both the slaughter and processing sides, and they could not testify about the PPE worn by other employees outside their department.   3/7/11 Tr. 181:8-184:20 (Burks), 207:25-209:5 (Cano); 3/8/11 Tr. 8:8-20 (Adelina Garcia), 25:14-16 (Antonio Garcia); 81:1-83:20 (Vargas-Vera).    These employees also admitted that they had no knowledge of the amount of time spent on the pre- and post-shift and meal period activities by other employees.   3/7/11 Tr. 176:17-177:25 (Burks), 210:4-211:1 (Caro); 3/8/11 Tr. 82:8-83:20 (Vargas-Vera).   This evidence, coupled with the unpredictable variety in the pre- and post-shift activities performed by employees, makes their testimony both unrepresentative and inapplicable to the experiences of the other class members.  See Grochowski v. Phoenix Constr., 318 F.3d 80, 88-89 (2d Cir. 2003) (affirming judgment against non-testifying plaintiffs because testimony regarding hours worked by non-testifying plaintiffs was speculative); Murray, 939 F.2d at 621 (holding that, where differing work situations exist, plaintiffs' burden "must be met individually by each plaintiff").

Plaintiffs' failure to prove their case on a class basis is exacerbated by plaintiffs' first and last touch theory of liability.   Though Tyson disagrees with plaintiffs' characterization of the law, plaintiffs' expert's application of their theory demonstrates that plaintiffs and the 1031 opt-ins and 5130 class members are not similarly situated for the purpose of collectively litigating their claims.   Specifically, Dr. Radwin was instructed by plaintiffs' counsel to begin tracking employee's time when they picked up the first item of PPE at the start of the shift and to stop the clock when the last item was put down under the "continuous work day principle."   3/9/11 Tr. 76:6-77:24 (Radwin).

Dr. Radwin's study only serves to demonstrate the myriad variations in employee pre- and post-shift and meal period activities, including variations in the time, manner, and place in which employees don and doff their PPE.  Each employee's first and last touch occurs at different points in time and at different locations, and the time between their first and last touch varies depending on the routines and preferences of a particular employee.   3/9/11 Tr. 146:13-148:25 (Radwin).   Under Dr. Radwin's study, each employee's continuous workday began and ended at different times and varied substantially in length.  3/9/11 Tr. 148:21-151:4 (Radwin); Ex. P-111, Table 2.  Because of the wide variation in individual outcomes, Dr. Radwin's study did not even purport to prove that every member of the FLSA collective action and Rule 23 class action had not received adequate compensation through K code time for the time reasonably spent pre and post shift in donning and doffing.

In the recent decision of *Lugo v. Farmer's Pride Inc.*, Case 2:07-cv-00749-MMB (E.D. Pa. August 25, 2010), Doc. 491, attached hereto as Exhibit A, the court granted defendant's motion to decertify the FLSA collective class in a donning and doffing case, after taking two days of evidence.  As in this case, some plaintiffs arrived significantly before their shift to don their PPE, but the evidence was that the employer did not require them to arrive at these times, or that all workers required this amount of time to prepare.  Doc. 491 at 22.  The evidence was that the donning and could be done in minutes, with the precise amount of time varying by department and position.  *Id*. The court reasoned that:

> The evidence indicates that there may some hourly production workers who have legitimate claims of undercompensation for time spent donning and doffing, and some who may not; the evidence does not demonstrate, however, that the question of undercompensation can be answered in

> manner common to all plaintiffs. If the present case were tried collectively and a verdict were reached for defendant, this result would be unfair to those plaintiffs who may have been denied pay owed them for donning and doffing; similarly, if a verdict were reached for plaintiffs, this would be unfair to defendant, who would be deemed liable as to the entire collective-action class when it may not have undercompensated all individual members of that class.

Doc. 491 at 20. The court concluded that the employer's liability for undercompensation could not be collectively addressed for all employees in the plant. Doc. 491 at 22-23.

Likewise, no reasonable jury could find that plaintiffs had met their burden of proving the core element of both their claims – uncompensated donning and doffing and walking time – as to each member of the FLSA collective action or the Rule 23 class action. This Court should either grant judgment as a matter of law to Tyson on these claims, or, in the alternative, decertify the FLSA collective action and the Rule 23 class action.

### III.   Plaintiffs Have Not Proven That the Time Spent Donning and Doffing Standard and Sanitary Items is Compensable Under the Portal-to-Portal Act.

The Portal-to-Portal Act, 29 U.S.C. § 254, "amended the FLSA to shield employers from 'judicial interpretations of the FLSA [that] had superseded "long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities."'" *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1286 (10th Cir. 2006)(quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 519 (2005)). The Portal-to-Portal Act provides that:

> [N]o employer shall be subject to liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . . –

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary or postliminary to said principal activity or activities, which occur either prior to the tie on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Employers "are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Smith*, 462 F.3d at 1286. Pursuant to the "continuous workday rule," the term "workday" is defined as "the period between the commencement and completion of the same workday of an employee's principal activity or activities." *Alvarez*, 126 S. Ct. at 521. Activities performed either before or after the regular work shift are compensable under the Portal-to-Portal Act if "those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Smith*, 462 F.3d at 1287 (*quoting Steiner v. Mitchell*, 350 U.S. 247, 254 91956)). The Supreme Court "recently clarified this rule in *Alvarez*, explaining that 'any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act,' is thus compensable under the FLSA." *Id*. (*quoting Alvarez*, 126 S.Ct. at 525).

In his summary judgment Memorandum and Order entered in this case, Judge Lungstrum adopted the following three-part test to analyze whether plaintiffs' donning and doffing of standard items are integral and indispensable to the employee's principal activities so as to make them compensable under the FLSA:  (1) whether the activity is

required by the employer; (2) whether the activity is necessary for the employee to perform his or her activities; and (3) whether the activity primarily benefits the employer. Doc. 952 at p. 14.

Plaintiffs have the burden of proof on whether the donning and doffing of standard items such as a hard hat, earplugs, hair net, smock or whites, non-mesh gloves and boots meets the three-part test.  Whether an activity is required by the employer alone is not dispositive in the integral and indispensable analysis.  *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562-63 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir. 2002) (granting summary judgment to a poultry-processor in a case involving an apron, smock, cotton gloves, rubber gloves, rubber boots, cooler boots, hairnet, ear plugs, and plastic sleeves, and rejecting plaintiffs' argument that when employees are "required" to put on certain clothing items, the activities become presumptively integral and indispensable to the principal activity.).  Likewise, in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 23, 39 (2005), the court found the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are integral and indispensable.

In this case, plaintiffs failed to meet their burden of proof on the third element, whether such activity <u>primarily</u> benefits Tyson, the employer.  Witness after witness who testified during plaintiffs' case, including the employees, stated that the standard items benefited primarily the employee rather than Tyson.  3/7/11 Tr. 165:4-8, 171:9-174:3 (Burks), 205:12-16 (Cano); 3/8/11 Tr. 81:24-82:7 (Vargas-Vera), 11:5-12:3 (Adelina Garcia), 37:24-38:1 (Antonio Garcia).  At most, the testimony was that these items equally benefited the employee and Tyson.  3/7/11 Tr. 205:12-16 (Cano); 3/8/11 Tr. 11:5-

11 (Adelina Garcia).  Such evidence is insufficient, as a matter of law, to meet the "integral and indispensable" requirement for the compensability of the donning and doffing of these items under the FLSA.

Based on plaintiffs' lack of evidence, this Court should join the other courts who have found in favor of the employer on this issue.  *See, e.g., Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006) (holding that donning safety equipment such as safety glasses, earplugs, and safety shoes "is purely preliminary in nature" and not compensable); *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 208-09 (7th Cir. 2008) (holding that "a uniform shirt, gloves, and work shoes" are not compensable); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) ("[D]onning and doffing of a helmet, safety glasses and boots are relatively effortless, non-compensable, preliminary tasks."); *In re Tyson Foods, Inc. Fair Labor Standards Act Litig.*, 694 F. Supp. 2d 1358, 1363 (M.D. Ga. 2010) (*citing Bonilla v. Baker Concrete Constr., Inc.,* 487 F.3d 1340, 1344 (11th Cir. 2007) (reciting three-factor test and affirming summary judgment for employer)); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d. 556, 563 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir. 2002) (accord); *Pressley v. Sanderson Farms, Inc.*, No. H-00-420, 2001 WE 850017, at *3 (S.D. Tex. Apr. 23, 2001), *aff'd*, 33 Fed. Appx. 705 (5th Cir. 2002) (holding that washing clothing and equipment is not integral and indispensable).  Therefore, Tyson is entitled to judgment as a matter of law on this issue.

**IV.   Time Spent Donning and Doffing Items During the Bona Fide Meal Break is not Compensable.**

The Department of Labor's regulation pertaining to meal periods states as follows:

> *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter meal period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office worker who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a)

The Tenth Circuit, consistent with the majority of Circuits, has held that an employee is "completely relieved from duty" during a meal break, for purposes of the regulation, when the "employee's time is not spent predominantly for the benefit of the employer." *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1157 (10th Cir. 1992). *See also Burnison v. Memorial Hosp., Inc*., 820 F. Supp. 549, 555 (D. Kan. 1993)("the proper standard for determining the compensability of a meal break is whether the [employee] is . . . primarily . . . engaged in work-related duties during meal periods."). Judge Lungstrum, in his summary judgment Memorandum and Order, adopted the *Lamon* "not predominantly for the benefit of the employer" test as the law of this case for compensability of the unpaid meal break. Doc. 952 at pp. 20-22.

Plaintiffs in this case are not seeking compensation for the meal period itself. Rather, plaintiffs' position is that Tyson did not provide a "bona fide meal period" prior to April 2010 and are seeking damages for only the portions of the unpaid meal period spent first doffing and then donning. Pretrial Order, Doc. 873 at 20. However, Judge Lungstrum has already made it clear that this Court "rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be

compensated even though the remainder of the meal period is unpaid." Doc. 952 at 23.

As Judge Lungstrum has already held:

> The Circuit in *Lamon* made clear that the entire meal period may be noncompensable even when an employee is required to do some amount of work during that meal period. The *Lamon* court simply leaves no room for plaintiffs' argument that the court should "carve out" that portion of the meal period in which compensable work is performed and require an employer to compensate an employee for that portion. Thus, if plaintiffs' donning and doffing activities do not prevent plaintiffs from "comfortably and adequately" passing the meal period, then the entirety of the meal period is properly noncompensable.

Doc. 952 at 23.

Thus, under the law of this case, the only remaining issue is whether plaintiffs' time during the meal period as a whole is spent predominately for the benefit of Tyson. If the evidence demonstrates that the meal break is *not* predominately for Tyson's benefit, then any incidental time spend donning and doffing during the meal break is not compensable as a matter of law.

The evidence presented during plaintiffs' case was that the employees spent their meal breaks away from their work stations while the production on the line was stopped. The employees were free to pass their lunch break as they wished, and the pre- and post-break doffing and donning of some of their PPE did not prevent them from "comfortably and adequately" passing the time. 3/3/11 Tr. 162:11-22, 214:16-215:13 (Karkiainen); 3/8/11 Tr. 34:10-14 (Antonio Garcia), 69:21-70:4 (Vargas-Vera).

Because the evidence presented at trial proved that the unpaid meal period was bona fide, Tyson is entitled to judgment as a matter of law that any doffing and donning time during the meal period is not compensable under the FLSA and the Kansas Wage Payment Act.

**V.    Plaintiffs Have Not Proven that Tyson Acted Willfully in its Implementation of the K Code Payment System.**[1/]

The legal standards for whether Tyson acted "willfully" in its implementation of the K Code payment system are different under the FLSA and the Kansas Wage Payment Act, and will thus be separately addressed.

**A.   Tyson is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim of a Willful Violation of the FLSA**

A two-year statute of limitations applies to an action for unpaid wages under the FLSA, except where an employer acts willfully, which extends the limitations period to three years.  29 U.S.C. § 255(a).  The employee bears the burden of proving that the employer acted willfully.  *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 135 (1988). The test for "willfulness" is whether the employer knew it was violating the statute or acted in "reckless disregard" of whether its conduct violated the statute.  *Id*. at 133*; Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1283 (10th Cir. 2006); *Reich v. Monfort*, 144 F.3d 1329, 1334 (10th Cir. 1998).  The word "willful" is considered "synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional'".  *McLaughlin*, 486 U.S. at 135.

During plaintiffs' case in chief, Tyson established the following facts:

1.      The plant at issue in this case was formerly owned and operated by IBP, Inc., which Tyson acquired in September 2001.  IBP is now named Tyson Fresh Meats. 3/14/11 Tr. 30:12-14 (Kimbro).

---

[1/]      Defendants are not moving for judgment as a matter of law on the issue of whether Tyson acted in good faith, within the meaning of 29 U.S.C. § 260, for purposes of FLSA liability for liquidated damages, because such determination is for the Court and not the jury.  *Robinson v. Food Service of Belton, Inc*., 415 F.Supp.2d 1232, 1239 (D. Kan. 2005*).  See also Brock v. Superior Care Inc*., 840 F.2d 1054, 1063 (2nd Cir. 1988)(since an award of liquidated damages under the FLSA is within the discretion of the district court pursuant to 29 U.S.C. § 260, no right to a jury is available on that issue).

2.      In 1987, the United States Department of Labor ("DOL") began investigating a number of IBP's beef and pork processing plants.  As a result of their investigation, the DOL took the position that certain activities at these plants were compensable.  Such activities included "procuring and changing into sanitary and protective clothing," "procuring, sharpening and maintenance of knives and related equipment," "cleaning and washing of equipment and pieces of protective clothing at the end of the shift," and "walking from the locker to the knife room/supply room/laundry to the work station after the occurrence of the first compensable duty in the work day."  Tr. 3/14/11 44;22-46:20 (Kimbro).

3.      In 1988, the DOL filed a lawsuit known as *Reich v. IBP*.  The lawsuit was filed in this court.  The lawsuit covered a number of IBP facilities, including the Finney County, Kansas facility at issue in the current case. 3/14/11 Tr. 140:17-142:14 (Kimbro).

4.      In 1993, a judge of this court found the following activities compensable when performed before shift or after shift:  time spent by workers walking to and from the knife room, and waiting in the knife room; time spent donning and doffing the "unique" personal protective equipment worn by knife-wielding employees; and time spent cleaning knives and unique protective equipment, including time spent waiting at the wash stations.  The court found the following activities to be non-compensable: donning and doffing white outer garments, hard hats, safety footwear, earplugs, and safety eyewear; retrieving and returning frocks, including time spent walking to and from the laundry facility; time spent waiting at the locker and walking between the locker and work station at the beginning and end of the shift; and time spent cleaning standard protective equipment.  The DOL did not sue over meal-period activities, and the court did

not rule on activities that took place during the meal period.  3/14/11 Tr. 142:18-147:14 (Kimbro).

5.     The Court of Appeals affirmed this court's decision as to which activities IBP was required to pay for and which activities IBP need not pay for.  3/14/11 Tr. 147:15-21 (Kimbro).

6.     In 1996, this court decided the amount of damages to which IBP employees were entitled.   The court ruled that employees who performed the compensable activities were only entitled to compensation for the reasonable time necessary to complete the compensable activities, not the actual time.  3/14/11 Tr. 148:2-20 (Kimbro).

7.     In addition to assessing damages, this court also permanently enjoined IBP from future violations of the FLSA.  Also in that injunction, at the DOL's request, the Court ordered IBP to record the time each employee spends on compensable donning- and doffing-related activities in the future.  3/14/11 Tr. 149:10-150:16 (Kimbro).

8.     After final orders were issued in *Reich v. IBP*, IBP conducted a series of time studies in 1998 to measure the amount of time it took employees to perform the activities that the court had ruled were compensable.   IBP determined that it took approximately 4 minutes a day.  The DOL sent an independent expert to do its own time study, and he agreed that 4 minutes was appropriate.  3/14/11 Tr. 151:3-155:13, 170:4-173:6 (Kimbro); 3/9/11 Tr. 220:9-221:15, 212:9-16 (Hahn).

9.     As a result, IBP began paying 4 minutes per day for donning and doffing activities performed by employees who worked in departments where knives were used. This add-on time was called "K code."   The DOL agreed to settle its lawsuit on the

condition that IBP pay the workers 4 minutes per day of back pay.  The 4 minutes was less than the amount of time per day that the court had found IBP owed, but the court also ruled that IBP had eliminated some of the activities that employees did at the beginning of case in 1988. 3/14/11 Tr. 63:22-67:22, 148:2-149:9; 173:22-175:11 (Kimbro).

10.     When Tyson acquired IBP in 2001, it continued the practice of paying 4 minutes of "K code" to employees who worked in departments where knives were used. 3/3/11 Tr. 137:18-138:5 (Karkiainen).

11.     In 1998, employees at IBP's beef processing facility in Pasco, Washington filed suit to recover unpaid wages for donning- and doffing-related activities, including walking to workstations after donning at the start of the shift, and walking from workstations before doffing at the end of the shift.   On November 8, 2005, in that Washington case, the U.S. Supreme Court ruled that pre-shift walking time is compensable as part of the continuous workday if it occurs after the first principal activity of the day, and post-shift walking is compensable as part of the continuous workday if it occurs before the last principal activity of the day.  The Supreme Court did not rule on whether donning and doffing is compensable.   3/14/11 Tr. 200:16-204:15 (Kimbro).

12.     As a result of the Supreme Court's ruling, which applied to all employers in the country, Tyson conducted further time studies in 2006 to measure walking time. Effective as of January 2007, Tyson began paying the employees in its Finney County facility for up to 3 minutes of walking time per day by increasing its K Code time to 7 minutes.  3/14/11 Tr. 203:8-205:7 (Kimbro); 3/9/11 Tr. 221:16-229:2 (Hahn).

Plaintiffs have come forward with *no evidence* at trial demonstrating knowledge of an actual violation or reckless disregard on the part of Tyson.  To the contrary, Mr. Kimbro testified that Tyson based its K Code practices during the period at issue on the <u>only</u> judicial rulings that applied to the Finney County plant:  *Reich* and *Alvarez*.  In *Reich*, Judge O'Connor, later affirmed by the Tenth Circuit, ruled that Tyson was not required to compensate its employees for time associated with donning and doffing standard and sanitary items pre- and post-shift.  He also found that Tyson could measure compensable time for donning and doffing unique items pre- and post-shift by reasonable, rather than actual, time.  Likewise, the *Reich* injunction did not require Tyson to pay the actual time spent donning and doffing by each employee.

In reliance on the *Reich* rulings, Tyson did time studies at all eleven of the non-union red meat plants to which the *Reich* rulings applied, including Finney County.  Tyson's time study determined that four minutes was a reasonable measure of the compensable donning and doffing time, and Tyson began paying four minutes of K Code time to all employees in knife-wielding departments.  The Department of Labor did its own study, which confirmed Tyson's four minute estimate of reasonable time.  Although the DOL may later have issued an opinion that the meat industry should measure donning and doffing time by actual time, this Court took judicial notice of 29 C.F.R. § 785.2, which explains that DOL merely issues guidance as to construction of the FLSA, and the ultimate determinations of law are issued by the courts.  The fact that Tyson chose to rely on the *Reich* rulings applicable to the Finney County plant, rather than an advisory DOL opinion, cannot support a finding of willfulness.

Likewise, after the Supreme Court's ruling in *Alvarez* came down that applied to all employers in the U.S., Tyson did another time study to determine what a reasonable measure was of pre-shift and post-shift walking time.  Based on this results of this study, Tyson began paying up to seven minutes of K Code time effective as of January 2007.  The *Alvarez* decision did not rule on whether donning and doffing is compensable or how to measure the time involved.  Tyson continued to rely on the *Reich* rulings allowing Tyson to compensate its employees based on reasonable rather than actual time.  Again, a finding of willfulness cannot be based on Tyson's good faith efforts to comply with *Alvarez* and to continue to rely on the *Reich* rulings in the absence of contrary guidance from *Alvarez*.

Tyson also continued to rely on the *Reich* finding that the donning and doffing of standard and sanitary items is non-compensable.  As to the standard and sanitary items, Judge Lungstrum said in his summary judgment Order that "[i]f plaintiffs had asserted distinct claims for unpaid wages for time spent donning and doffing standard protective clothing and gear, then the court would have comfortably granted summary judgment in favor of Tyson on the issues of good faith and willfulness with respect to those claims."  Doc. 952 at 30.   Judge Lungstrum based this determination on the fact that "[t]he evidence reflects that Tyson relied on the *Reich* court's conclusion that the donning and doffing of standard protective clothing and equipment was not compensable and that, in more recent years, the issue has spawned widely divergent results from numerous courts – none of which expressly overruled *Reich*."  *Id.*

Moreover, during the entire period at issue, there has been no further challenge by the DOL to Tyson's practices at issue in the Finney County plant.  *See Cook v. U.S.*, 855

F.2d 848, 850 (Fed. Cir. 1988) (where employer accepted and followed DOL's advice, "any mistake in responding to the demands of the FLSA is not willful"); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 370 F. Supp. 2d 386, 390 (E.D.N.C. 2005) (employer's actions not willful where employer had never been cited for FLSA violations based on the actions at issue).   While DOL may have later challenged Tyson's payment practices in its poultry plants, the DOL's last word on the Finney County plant was its statement in the *Reich* case that Tyson was in compliance with the FLSA by reason of its payment of four minutes of K Code time to its employees in knife-wielding departments.  3/14/11 Tr. 252:9-23 (Kimbro).

Therefore, plaintiffs' evidence was insufficient to prove that Tyson willfully violated the FLSA.  Accordingly, a two year limitations period should apply to the FLSA claim in this case.

**B.  Tyson is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim of a Willful Violation of the Kansas Wage Payment Act.**

All plaintiffs and members of the Rule 23 class assert claims under the Kansas Wage Payment Act ("KWPA") to recover non-overtime wages owed but not paid by Tyson.  K.S.A. 44-315(b) authorizes a penalty where an employer "willfully fails to pay an employee wages. . . ."  "Willfulness" within the meaning of K.S.A. 44-315(b) means an act "indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another."  *Holder v. Kan. Steel Built, Inc*, 582 P.2d 406, 411 (Kan. 1978); *Beckman v. Kan. Dept. of Human Resources*, 43 P.3d 891, 896 ( Kan. App. 2002). The KWPA standard is a more stringent standard than the FLSA standard of whether the act was voluntary, deliberate and intentional.  *See Weinzirl v. The Wells Group, Inc.*, 677 P.2d 1004, 1022-23 (Kan. 1984)(it was not enough for the statutory penalty that the

subject's conduct was done intentionally and that the actor knew what he was doing, because there was no "design, purpose or intent to willfully wrong or injure" the plaintiff); *Coma Corp. v. Kansas Dept. of Labor*, 154 P. 3d 1080, 283 Kan. 625 (2007)("Where an 'honest dispute' arises over the amount of wages due, a statutory penalty will not be assessed against the employer.")

Due to the KWPA's higher standard, Tyson's right to judgment as a matter of law on "willfulness" under the FLSA applies with even greater force to plaintiffs' claim of a willful violation of the KWPA. There was absolutely *no evidence* presented at trial that Tyson had any intent to wrong or injure its employees by paying K Code minutes for reasonable donning, doffing and walking time on time studies. In fact, Mr. Kimbro testified that Tyson was never put on notice by *any* event (other than the Complaint in this case) that the activities at issue here should be considered compensable under Kansas law. 3/14/11 Tr. 191:20-192:9 (Kimbro). This should not be surprising, given that no Kansas court has ever recognized a claim similar to the one plaintiffs are pursuing here.

Again, plaintiffs have presented no evidence adequate to support a finding by the jury that Tyson had the intent to wrong or injure its employees, so judgment as a matter of law is warranted on plaintiffs' claim for willful violation of the KWPA.

**VI.  Conclusion**

For all the foregoing reasons, this Court should grant Tyson's Motion for Judgment as a Matter of Law.

Respectfully submitted,

Michael J. Mueller
Evangeline C. Paschal
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 419-2116

/s/ Terence J. Thum
Craig S. O'Dear (D. Kan. 70379)
Robert J. Hoffman (KS 16453)
Terence J. Thum (D. Kan. 70084)
BRYAN CAVE LLP
1200 Main Street, Suite 3500
Kansas City, Missouri 64105
Telephone: (816) 374-3200
FAX: (816) 374-3300
csodear@bryancave.com
rjhoffman@bryancave.com
tjthum@bryancave.com

Attorneys for Defendants Tyson Foods, Inc.
and Tyson Fresh Meats, Inc

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Eric L. Dirks
George A. Hanson
Lee R. Anderson
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO  64112

Peter J. Antosh
GARCIA & ANTOSH LLP
1401 Central Ave.
Dodge City, KS  67801

Adam T. Klein
Linda a. Neilan
Justin M. Swartz
OUTEN & GOLDEN LLP
3 Park Avenue,  29th Floor
New York, NY  10016

 s/ Terence J. Thum           
Attorney for Defendants