IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADELINA GARCIA, ET. AL.,

       Plaintiffs,

v.                                                    Case No. 06-2198-JTM

TYSON FOODS, INC. ET AL.,

       Defendants.

MEMORANDUM AND ORDER

The following matter comes to the court on the plaintiffs' Motion for Attorney

Fees (Dkt. 1054). In March 2011, the parties litigated in a jury trial wage and hour claims

based on the Kansas Wage Payment Act ("KWPA") and the Fair Labor Standards Act

("FLSA"). The jury entered a verdict form in plaintiffs' favor, finding that the

defendant, Tyson, had violated the KWPA and willfully violated the FLSA. Based on

the outcome, plaintiffs now claim attorneys' fees under the FLSA. It its Response (Dkt.

1085), Tyson argues that the amount requested by plaintiffs for attorney fees is

unreasonable for several reasons. The court has reviewed *in camera* the plaintiffs'

attorneys' timekeeping records. For good cause shown, the court grants the plaintiffs'

Motion and awards the plaintiffs $3,209,926.82 in attorney fees.

**I. Background**

Adelina Garcia and other past and present employees of defendants Tyson

Foods, Inc. and Tyson Fresh Meats, Inc., (collectively Tyson) filed a class action and

collective action lawsuit on May 15, 2006, alleging violations of the KWPA and FLSA

against Tyson at its Finney County and Emporia, Kansas plants. In February 2007, Judge John W. Lungstrum denied defendants' Motion for Partial Summary Judgment. *See* Dkt. No. 599. Tyson filed a motion to amend the court's summary judgment order, which was denied, and Tyson appealed. On August 19, 2008, the U.S. Court of Appeals for the Tenth Circuit dismissed Tyson's appeal. Thereafter, on February 12, 2009, this court granted plaintiffs' motion for class certification and conditional collective action certification. *See* Dkt. No. 741.

Both parties filed summary judgment motions, which the court granted in part and denied in part. *See* Dkt. No. 952. The case was then reassigned to the undersigned, and the case proceeded to trial. *See* Dkt. No. 964. On February 10, 2011, the court held a hearing on Tyson's Motion to Bifurcate (Dkt. No. 951), which the court granted.[1] The court held an *in limine* conference, granting and denying several of the parties' requests and taking some under advisement. The matter went to trial on March 2.

Going into trial, plaintiffs consisted of (i) a Rule 23, KWPA class of 7,187 hourly employees and (ii) a subset of 1,031 hourly employees who filed opt-in consent forms to participate in the FLSA class. The classes each sought to recover unpaid wages for: (1) unpaid time spent donning and doffing required sanitary items and safety equipment ("donning and doffing claims"); (2) unpaid time spent walking between their lockers and the production floor before and after their shift ("walking time claims"); (3) unpaid time spent donning and doffing and walking from and to their workstation before and

---

[1]The court bifurcated the trial by plant, with Finney County being tried first. The parties also agreed to try the liquidated damages and statute of limitations (willfulness) issues to the court. But the willfulness issue was ultimately submitted to the jury.

after the meal period ("meal period claims"); and (4) unpaid rest break time ("rest break claims"). The Plaintiffs' case presented at trial was that Tyson had underpaid their hourly production employees for donning and doffing and walking time before and after their shifts and meal periods.  The KWPA class sought to recover for unpaid time in all weeks in which the total of paid and unpaid time does not meet the FLSA's 40-hour threshold for "overtime." The FLSA class sought to recover for the same unpaid time in all weeks in which the total of paid and unpaid work time met or exceeded 40 hours.

Before submitting the case to the jury and at plaintiffs' request, the court granted a directed verdict for Tyson on the meal period claims. Further, based on the evidence, 2,057 of the KWPA class members had no unpaid working time and thus no submissible claims. The remaining plaintiffs' claims were submitted to the jury. On behalf of the FLSA class Plaintiffs' counsel asked for $1,894,055 for the donning and doffing claims and the walking time claims and $276,187 for the rest break claims. On behalf of the KWPA class, plaintiffs' counsel asked for $3,878,259 for the donning and doffing claims and the walking time claims and $320,830 for the rest break claims. Overall, plaintiffs sought a total of $6,369,311.

The jury returned its verdict on March 16, finding on behalf of the plaintiffs on their donning and doffing claims and walking time claims. The jury found that on these claims, Tyson had violated the KWPA and willfully violated the FLSA. The jury found on behalf of Tyson on the rest break claims. The jury awarded $166,345 for violations of the FLSA and awarded $366,666 for violations of the KWPA, for a total of $533,011. The

3

court denied Tyson's initial motion for a directed verdict on March 16 and entered judgment in favor of the plaintiffs on March 17. The court denied Tyson's motion to alter judgment and its second motion for directed verdict.

Pursuant to FLSA's attorney fees provision, the plaintiffs request $3,389,462.75 in attorney fees and $220,516.08 in costs. Plaintiffs claim fees for 10,619.5 hours of legal work on this case through May 2011, at a blended hourly rate of $302.29.[1] Tyson argues that the amounts and rates claimed should be cut for a variety of reasons.

## II. Legal Standards for Attorney's Fees Under FLSA

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (2008). For purposes of attorneys' fees, plaintiff is considered a "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit she sought in bringing suit. *Jackson v. Austin*, 267 F. Supp. 2d 1059, 1063 (D. Kan. 2003). Though the court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. *Wright v. U-Let-Us Skycap Serv., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986).

To determine a reasonable attorneys' fee, the court multiplies the number of hours reasonably spent by a reasonable hourly rate, which is called the lodestar amount. *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006). The applicant bears the burden of establishing an entitlement to an award and documenting the appropriate

---

[1] The effective blended hourly rate is calculated by taking the total lodestar ($3,389,462.75), subtracting non-recoverable expenses ($179,275.61) and dividing by total time (10,619.5 hours). The court rounds to the nearest cent.

hours expended and hourly rates. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249-50 (10th Cir. 1998).

## III. Analysis

### A. Reasonable Hourly Rate

In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case*, 157 F.3d at 1256. The Tenth Circuit defines the relevant community as the area in which the litigation occurs. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983) (applying local rate to civil rights litigation involving prison conditions). "Unless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state lawyer possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir.1995) (citing *Ramos*, 713 F.2d at 555).

At the outset, the court notes that the Kansas City market is most appropriate for its analysis of the hourly rates requested. Although companies litigating large wage and hour cases in Kansas City have the option of hiring national counsel, there is no shortage of attorneys in the Kansas City legal community who can handle FLSA cases, including class actions. This court cannot find that the litigation was "so unusual or require[d] such special skill" that only an out-of-state lawyer would qualify for trying

5

the case. *See Jane L.*, 61 F.3d at 1510. Thus, the court analyzes the rates requested by applying the fee rates of the Kansas City legal market.

In their Motion, the plaintiffs provide several declarations from other local attorneys stating that Stueve Siegel Hanson LLP enjoys an outstanding reputation in Kansas City for achieving outstanding results in prosecuting wage and hour class actions. Tyson does not dispute the firm's "excellent reputation." Rather, Tyson's arguments against the suggested rates consist of comparisons between the different firms' attorneys' law school graduation dates and number of years practicing. These comparisons result in the appearance that some of the plaintiffs' attorneys are asking for higher rates than Tyson's Kansas City counsel, despite having less experience. However, this narrow analysis does not present the full picture. It leaves out the effective blended hourly rate claimed, the specific wage and hour experience of plaintiffs' counsel, and the risk involved in taking on the plaintiffs' case. The court discusses each of these aspects to provide the full context this analysis requires.

1. Overall Rates Comparison

Plaintiffs' counsel claim an effective blended hourly rate of $302.29. George Hanson, Eric Dirks, and Lee Anderson were the three attorneys from Stueve Siegel Hanson LLP who accumulated 95% of the time in this case on behalf of the plaintiffs. They ask to be reimbursed $600 per hour for Hanson's work, $400 per hour for Dirks's work, $325 per hour for Anderson's work, and $125–175 for legal assistant time. In comparison, Tyson retained Bryan Cave—a multi-city firm with a large presence—and paid rates between $395 and $575 for attorney time and $175 per hour for legal assistant

6

time. A comparison of these ranges for both attorneys and legal assistant reveals their reasonableness. Overall, the blended hourly rate sought by plaintiffs' counsel is nearly $100 per hour less than the lowest rates paid by Tyson to its Bryan Cave counsel.

2. Experience of Plaintiffs' Counsel

Additionally, there is a difference in experience between the plaintiffs' counsel and defense counsel that Tyson's Response does not address. Tyson's attorneys certainly do not lack for knowledge, skill, and practice in general labor and employment law. However, it appears that plaintiffs' counsel's experience in wage-hour class actions has unmatched depth. For instance, plaintiffs' most experienced attorney has litigated 52 wage-hour class actions. Although none of these other class actions proceeded to trial, the repeated complex litigation by plaintiffs' counsel on these narrow issues provided the plaintiffs' in this action a great benefit in both effectiveness and efficiency.

3. Contingency Risk

Finally, the rates claimed by plaintiffs' counsel must be analyzed in the context of the financial risk plaintiffs' counsel took in prosecuting the case, including a delay in payment and the contingency fee basis.  The court notes that the contingent nature of a case does not justify enhancement of the lodestar *after it has been calculated*. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (emphasis added). As the U.S. Supreme Court explained, "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." *Id.* at 562. This is because the contingency risk should already be reflected in the lodestar, in the form of a higher

7

hourly rate for the attorney skilled and experienced enough to overcome this risk. *See id.* "Taking account of it again through lodestar enhancement amounts to double counting." *Id.* at 563.

Based on *Dague,* Tyson's argues that considering the contingency risk in assessing the reasonableness of plaintiffs' counsel's rates is inappropriate. However in *Dague*, the Court merely prohibited *enhancing* the lodestar based on contingency risk. 505 U.S. at 567. The Court explained that a lodestar enhancement for contingency risk would be duplicitous when the risk had already been factored into the hourly rates used to calculate the lodestar. *Id.* at 562–63. In this case, plaintiffs' counsel do not ask for a specific increase in their hourly rates to reflect the contingency risk. They appropriately ask the court to consider their contingency risk in assessing the reasonableness of their requested hourly rates.

The court finds plaintiffs' counsel's claimed rates are reasonable. Accordingly, the court applies an effective blended hourly rate of $302.29 to the lodestar calculation.

B. Reasonable Hours

In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250. "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

8

The plaintiffs are prevailing parties, because they succeeded on a significant issue, achieving some of the benefit they sought in bringing suit. *See Jackson*, 267 F. Supp. 2d at 1063. The court has reviewed plaintiffs' counsel's timekeeping records and finds that plaintiff has met its burden to prove the number of hours it spent on this litigation. The records show which attorneys were completing each task and the time spent on each task. Plaintiffs' counsel have eliminated numerous entries totaling over 500 hours in exercising their billing judgment. The court finds that plaintiffs' counsel has made a good faith effort to use billing judgment by excluding hours that were "excessive, redundant, or otherwise unnecessary." *See Robinson*, 160 F.3d at 1280.

Plaintiffs' counsel spent a total of 10,253 hours on this litigation overall, and Tyson does not dispute this number's reasonableness. However, Tyson argues that the court should not award attorneys' fees for all of these hours because of plaintiff's "limited success." Tyson asks the court to exclude all hours spent on the unsuccessful meal period and rest break claims under the FLSA, the successful KWPA claims, the unsuccessful motion to compel, the fee sharing arrangement, and any clerical work performed by non-lawyers. Finally, Tyson asks for a 50% reduction in the lodestar to reflect what it argues has been "limited success." The court examines each of these proposed reductions in turn.

C. Tyson's Proposed Reductions

9

Once the court determines the lodestar amount, it must determine whether any upward or downward adjustment should be made to account for the particularities of the suit and its outcome. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In these cases, "even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim." *Id.* at 434–35. Work on an unrelated, unsuccessful claim "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* at 435. But when the plaintiff's claims involve a common core of facts or are based on related legal theories, then they are related. *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). The failure to succeed on a related claim does not justify reducing a fee. *Id.*

1. FLSA Claims

Plaintiffs initially brought claims of unpaid time under the FLSA for (1) the donning and doffing of sanitary and safety equipment before and after their shift; (2) walking between their lockers and the production floor before and after their shift; (3) donning, doffing, and walking time from and to their workstation before and after the meal period; and (4) their rest break. The court granted a directed verdict on the meal period claims, and the jury found that the rest break claims were not compensable. The plaintiffs did recover for their time spent donning and doffing and for walking time to and from the production floor.

Tyson argues that the meal period claims and rest break claims were distinct from the donning and doffing claims and the walking time claims. Tyson points to the

different Department of Labor regulations that govern the claims, arguing that these distinguish the claims as unrelated. However, the multiple regulations are all related because they are promulgated under the same FLSA legal theory: paying workers for compensable time. This was the theory behind every one of the plaintiffs' claims, summed up in the Complaint as: "Defendants' practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including overtime compensation." *See* Dkt. 1, ¶ 27. Because of the FLSA claims' common legal theory and facts, the court holds that they were all related. No reduction in fees based on the failure of these two related claims would be appropriate.

2. Successful KWPA Claims

Tyson points out that the KWPA does not provide for recovery of attorneys' fees by a plaintiff in a private action. *See* K.S.A. § 44-324 (2012). It cites two cases as authority for denying plaintiffs' counsel fees for work performed on the KWPA claims in this case. The first case, *Shelley v. State of Kan. Dept. of Human Res.*, 8 P.3d 33, 39 (Kan. Ct. App. 2000), is not on point here. In *Shelley*, the court was reviewing an administrative order involving only a KWPA claim. This court must decide whether KWPA's failure to provide a successful private plaintiff with attorney fees forbids those fees when the plaintiff succeeds on related FLSA claims.

The second case, *Flynn v. Stonegate Mortgage Corp.* No. 10-cv-2058 (D. Kan. Aug. 30, 2010), is more applicable. In *Flynn*, the plaintiffs had brought FLSA and KWPA claims based on the same set of facts. *Id.* In its motion to dismiss, the defendant argued that the plaintiffs' claim for attorneys' fees under KWPA should be dismissed because

the statute does not allow for them in a private action. *Id.* at *19. The plaintiff conceded the argument that if the case proceeded to trial, they would not be permitted to recover attorneys' fees under the KWPA. *Id.* The court, no arguments to the contrary before it, cited to *Shelley* and dismissed the plaintiffs' claim for attorneys' fees under the KWPA. *Id.* In the case at hand, the plaintiffs seek fees under the FLSA, not under the KWPA. This sufficiently distinguishes the case from those cited by defendants.

Whether a plaintiff who prevails on an FLSA claim may recover attorneys' fees for time spent on non-FLSA issues depends on the extent to which those issues interrelate and overlap with the FLSA issues. *See Diaz v. Robert Ruiz, Inc.*, 808 F.2d 427, 429 (5th Cir. 1987); *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 136–37 (3d. Cir. 1984) (abrogated on other grounds); *Fields v. Luther*, No. JH-84-1875, 1988 WL 121791, at *1 (D. Md. July 12, 1988); *see also United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) (holding that the district court must exclude from the lodestar any time expended on issues unrelated or not necessarily intertwined with the FLSA issues). The question before the court is essentially the same as the one regarding the unsuccessful FLSA claims: How interrelated are the claims?

The KWPA claims are based on the same facts and same legal theories as the FLSA claims. The only distinguishing characteristic between the claims is whether the 40-hour FLSA threshold was met. If so, the claim is based on the FLSA; if not, it was a KWPA claim. The interrelatedness of these claims is evidenced in plaintiffs' timekeeping records, which show that only 126 hours of over 10,000 hours were spent

exclusively on the KWPA claims. Most work spent on these claims was inseparable from time spent on the FLSA claims. As this court stated in a prior ruling in this case, "the FLSA is the legal basis for plaintiffs' KWPA claims in this case." *Garcia v. Tyson Foods*, 766 F. Supp. 2d 1167, 11887 (D. Kan. 2011). Because of the clear connection between the claims, the court finds that time attributable to the successful KWPA claims should not be excised from the lodestar calculation of hours.

3. Motion to Compel, Fee Sharing Arrangements, and Clerical Work by Non-Lawyers

Tyson argues that some categories of time for which plaintiffs seek attorneys' fees are not appropriate because the time was not reasonably expended in furtherance of plaintiffs' claims or was time spent on clerical work by non-attorney staff. First, Tyson identifies an unsuccessful motion to compel discovery as one project for which time spent should not be compensated. In support, Tyson argues that courts routinely delete time spent on unsuccessful motions. The court has the discretion to strike hours spent on unsuccessful motions from the lodestar calculations.   In *Lintz v. American General Finance, Inc.*, 87 F. Supp. 2d 1161, 1166 (D. Kan. Jan. 28, 2000), the court analyzed time spent on four unsuccessful motions to compel to determine whether time spent on them should be included in the lodestar. Two of the motions had been denied based on plaintiff's counsel's failure to engage in good faith efforts to resolve the dispute prior to filing the motions; the court deducted hours spent on those motions. *Lintz*, 87 F. Supp. 2d at 1166. The court found no evidence that the other two motions to compel were frivolous or unnecessary; the court found that time expended on those motions was

13

compensable. *Id.* Tyson provides no evidence that this motion to compel was frivolous or unnecessary. Accordingly, this court finds that time spent on the motion to compel was done so by plaintiffs' counsel reasonably and in furtherance of their claims.

Second, Tyson argues that time expended working out the fee and work sharing arrangements among the three plaintiffs' firms should not be recoverable. Plaintiffs agree to this, and consequently, the court reduces the lodestar amount by the .8 hours spent on these arrangements.

Third, Tyson objects to 3,455.35 hours billed by several non-lawyer staff members. Tyson argues that hours spent on clerical work should not be compensable. Plaintiffs' counsel argue that they did not include noncompensable clerical time in their calculation of hours. The court has scrutinized the entries in plaintiffs' counsel's submitted timekeeping records and did not find any examples of noncompensable clerical work. *See Case v. Unified Sch. dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (requiring same scrutiny for professional and paralegal services hours as is used on lawyer hours). Plaintiffs' counsel's professional staff performed many hours of compensable activities that would have otherwise been performed by attorneys who charge higher rates. The court does not exclude these hours.

4. Reductions to Reflect Plaintiffs' Success

Tyson suggests that the court reduce the lodestar by at least 50% as a reflection of what it considers plaintiffs' limited level of success. In considering the reasonableness of the lodestar, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*

14

*v. Eckerhart*, 461 U.S. 424, 435 (1983). When a plaintiff achieves "excellent results," his attorney should recovery full compensatory fees. *Id.* However, when a plaintiff achieves only partial success, the lodestar figure may be excessive. *Id.* at 436. A reduced fee is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.* at 440.

The Tenth Circuit requires the district court to make qualitative comparisons among substantive claims to determine "what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995). There is no precise rule or formula for making such determinations. *Id.* However, the district court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." *Jane L.*, 61 F.3d at 1511 (quoting *Hensley*, 461 U.S. at 435).

The Tenth Circuit's decision in *Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d 1173 (10th Cir. 2010) provides guidance to this court in conducting a qualitative assessment. In *Flitton*, the plaintiff Ms. Yvonne Flitton filed suit alleged discrimination and retaliatory discharge in violation of Title VII and sought compensatory and punitive damages. 614 F.3d at 1175. After two jury trials, an appeal, and a bench trial, Ms. Flitton won a jury verdict only on her retaliation claim and lost on her discrimination and punitive damages claims. *Id.* at 1176. On the issue of attorney fees, the defendant argued that the fees should be reduced to reflect Ms. Flitton's "limited" success on her claims. *Id.* The defendant pointed out that Ms. Flitton had failed on four

15

of the five causes of action brought in her complaint and was awarded only about one percent of the $27.9 million in total damages she had sought. *Id.* at 1777–78.

Despite her low success average on the claims from the complaint and the very small percentage of her recovery in comparison to her claimed damages, the district court did not reduce Ms. Flitton's fee award to reflect a lack of success. *Id.* at 1178. The Tenth Circuit upheld the award of attorney fees, rejecting "the mechanical approach to assessing a plaintiff's degree of overall success" endorsed by the defendant. *Id.*

Applying the court's decision in *Flitton* to the case at hand, the court finds that plaintiffs in this case achieved a successful outcome. This court must decide whether that outcome should be characterized as "excellent" or "a limited success." *See id.* Tyson argues for the latter, claiming that "[b]y any measure" plaintiffs' relief in this case was "extremely limited." However, even within the mechanical framework used by defendants—and rejected by the Tenth Circuit in *Flitton*—the plaintiffs in this case were more successful than Ms. Flitton had been in her case. The plaintiffs succeeded on two of the four counts alleged in their complaint, and the jury awarded the plaintiffs $503,011 on their claims—nearly eight percent of the $6,369,311 sought. This recovery compares favorably to the one in *Flitton*, so the court will not reduce the amount of attorneys' fees claimed by plaintiffs' counsel in this case. They have delivered "excellent" results for their clients.

16

Tyson protests that the attorneys' fees claimed here are more than twenty times the amount of the FLSA jury award.[2] With the related KWPA award added in, the fees are more than six times the amount recovered.[3] Attorneys' fees for prevailing plaintiffs "disable defendants from inflicting with impunity small losses on the people whom they wrong." *Orth v. Wisconsin State Employees Union, Council 24*, 546 F.3d 868, 875 (7th Cir. 2008). This goal will often require granting attorney fees larger than the damages awarded. *Id.*

Although the amount of damages recovered by a plaintiff is relevant to the amount of attorney's fees to be awarded, the U.S. Supreme Court has struck down suggested proportionality requirements. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting proportionality requirement in a civil rights § 1988 claim and ultimately granting an award seven times the amount of the recovery). This court has rejected the proportional approach in FLSA cases. *See Dressler v. Kansas Copters and Wings*, No. 09-1016, 2010 WL 5834819, at *2 (D. Kan. Dec. 22, 2010). Additionally, an attorneys' fee award six times the recovery is not unremarkable in light of results in other FLSA cases. *See generally Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 1313 (M.D. Fl. Dec. 21, 2001) (awarding reduced attorneys' fees of $352,225.40, more than sixteen times the FLSA recovery of $21,000); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fl. May 14, 2007) (awarding reduced attorneys' fees $114,021, more than thirty-two

---

[2]$3,389,462.75 in claimed attorneys' fees/$166,345 FLSA verdict = 20.38
[3]$3,389,462.75 in claimed attorneys' fees/$533,011 total verdict = 6.36

times the total judgment of $3,493.62). Thus, the court will not reduce the award on the basis of proportionality.

To summarize its analysis on Tyson's suggested reductions, the court will not reduce the fee award by the number of hours spent on the unsuccessful interrelated FLSA claims, the successful KWPA claims, the motion to compel, or clerical work performed by non-attorneys. The court reduces the lodestar by .8 hours for the time spent on the three plaintiffs' firms' fee and work sharing arrangements. The court finds that the results of litigation were excellent for the plaintiffs, rather than a "limited success." Therefore, the court will not make the fifty percent reduction of the lodestar suggested by Tyson.

## IV. Conclusion

The court has found plaintiffs' counsel's blended hourly rate of $302.29 to be reasonable. The court excludes the .8 hours plaintiffs' counsel spent in working out co-counsel agreements, but finds reasonable the remainder of the hours (10,618.7) claimed by plaintiffs' counsel. The court declines to further reduce the award in light of the substantial success achieved by plaintiffs' counsel. Multiplying the blended hourly rate by the reasonable hours results in a lodestar of $3,209,926.82.

IT IS THEREFORE ORDERED this 29th day of November 2012, that the Plaintiffs' Motion for Attorney Fees (Dkt. 1054) is granted to the extent set out herein.


s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE